1  Mark D. Kemple (State Bar No. 145219)
   Erik K. Swanholt (State Bar No. 198042)
2  JONES DAY
   555 South Flower Street
3  Fiftieth Floor
   Los Angeles, CA  90071-2300
4  Telephone:    (213) 489-3939
   Facsimile:    (213) 243-2539
5  Email: mkemple@jonesday.com
   Email: ekswanholt@jonesday.com
6
   Attorneys for Defendants
7  Greystone Servicing Corporation, Inc., and
   Greystone CDE, LLC
8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11               **(SAN FRANCISCO DIVISION)**

12

13 SANTA FE POINTE, LP, an Oklahoma          **CASE NO. C 07-05454 JCS**
   limited partnership; SANTA FE
14 MANAGEMENT, LLC, an Oklahoma              Assigned for all purposes to the
   limited liability company; RANT, LLC, a   Honorable Joseph C. Spero
15 Delaware limited liability company; and
   THEOTIS F. OLIPHANT, an individual,
16                                           **NOTICE OF MOTION AND**
                Plaintiffs,                  **MOTION TO TRANSFER VENUE;**
17                                           **MEMORANDUM OF POINTS**
          v.                                 **AND AUTHORITIES IN**
18                                           **SUPPORT THEREOF;**
   GREYSTONE SERVICING                       **STATEMENT IN SUPPORT OF**
19 CORPORATION, INC., a Georgia              **NOTICE OF PENDENCY OF**
   corporation; GREYSTONE CDE, LLC, a        **OTHER ACTION OR**
20 Delaware limited liability company, and   **PROCEEDING (CIVIL L.R. 3-13);**
   DOES 1 through 100, inclusive,            **AND DECLARATIONS OF**
21                                           **MATTHEW JAMES AND ERIK K.**
                Defendants.                  **SWANHOLT**
22
23                                           [[Proposed] Order filed concurrently
                                             herewith]
24
25                                           Date:      December 14, 2007
                                             Time:      9:30 a.m.
26                                           Ctrm:      A (15th Floor)
27
28

## NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC (collectively, "Defendants" or "Greystone") will, and hereby do, move the Court for an order transferring venue of this case to the United States District Court for the Southern District of New York, Foley Square Division. The motion will come before the Court on December 14, 2007 at 9:30 a.m., or on a date and at a time to be designated by the Court as its calendar requires, or as soon thereafter as the parties may be heard in Courtroom A (15th Floor) of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California 94102.

The motion is made pursuant to 28 U.S.C. § 1404(a) on the grounds that the interests of justice, judicial economy, and the convenience of the parties and witnesses will be promoted by a transfer. The motion is based upon: this Notice; the attached Memorandum of Points and Authorities, which shall also serve as Defendants' Statement in Support of the Notice of Pendency of Other Action or Proceeding filed pursuant to Civil L.R. 3-13; the attached First Amended Complaint from a related action pending before the Southern District of New York; the declarations of Matthew James and Erik K. Swanholt; such matters which the Court may consider by way of judicial notice; the pleadings and the records on file herein; and such further written and oral evidence and argument as may be presented at the time of the hearing.

DATED: November 7, 2007

JONES DAY

By: _____
Mark D. Kemple
Erik K. Swanholt

Attorneys for Defendants Greystone
Servicing Corporation, Inc. and Greystone
CDE, LLC

1

# TABLE OF CONTENTS

2

|  | Page |
|---|---|
| I. STATEMENT OF THE ISSUE | 1 |
| II. INTRODUCTION | 1 |
| III. BACKGROUND FACTS | 2 |
| IV. ARGUMENT | 4 |
| A. Venue Is Proper In The Southern District Of New York | 4 |
| B. Transfer Will Serve The Convenience Of The Parties And Witnesses, And Will Promote The Interests Of Justice | 5 |
| 1. New York is a Proper Forum Pursuant to the Forum Selection Clause in the Parties' Agreements | 6 |
| 2. New York Courts Are Most Familiar With New York Law | 7 |
| 3. Transfer and Consolidation of This Action With Greystone's New York Action Will Promote Judicial Efficiency and Reduce the Costs of Litigation for the Parties | 8 |
| 4. Most Party and Third-Party Witnesses Reside in New York or Are Nearer to New York Than California | 9 |
| 5. Sources of Proof are Located in or Near New York | 11 |
| 6. Plaintiff's Choice of Forum Should Receive Minimal Consideration, Because California is not the Locus of the Operative Facts and has No Interest in the Subject Matter | 12 |
| C. Under The Doctrine Of Federal Comity, Judicial Efficiency Would Be Best Served By Declining Jurisdiction Over Plaintiffs' Anticipatory Suit | 13 |
| V. CONCLUSION | 14 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page

## Cases

*Angotti v. Rexam, Inc.,*
2006 U.S. Dist. LEXIS 15488 at *12-13 (N.D. Cal. Feb. 14, 2006) ................. 7, 9

*Barapind v. Reno,*
225 F.3d 1100 (9th Cir. 2000) ......................................................................... 13

*Church of Scientology v. United States Dep't of Army,*
611 F.2d 738 (9th Cir. 1979) ..................................................................... 13, 14

*Coxcom, Inc. v. Hybrid Patents, Inc.,*
2007 U.S. Dist. LEXIS 67168 at *7 (N.D. Cal. Aug. 30, 2007) .......................... 11

*Decker Coal Co. v. Commonwealth Edison Co.,*
805 F.2d 834 (9th Cir. 1986) ............................................................................. 5

*Fabus Corp. v. Asiana Express Corp.,*
2001 U.S. Dist. LEXIS 2568 at *6 (N.D. Cal. Mar. 5, 2001) ............................. 13

*Gates Learjet Corp. v. Jensen,*
743 F.2d 1325 (9th Cir. 1984) .......................................................................... 10

*Gelber v. Leonard Wood Mem'l for the Eradication of Leprosy & the Am. Leprosy Found.,*
2007 U.S. Dist. LEXIS 47535 at *14-15 (N.D. Cal. June 21, 2007) .................... 8

*Greenwell v. Belkin Corp.,*
2006 U.S. Dist. LEXIS 76231 at *4 (N.D. Cal. Oct. 10, 2006) ............................ 4

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947) ........................................................................................... 8

*Hoffman v. Blaski,*
363 U.S. 335 (1960) ........................................................................................... 4

*Jacobson v. Hughes Aircraft Co.,*
105 F.3d 1288 (9th Cir. 1997) *rev'd,* 525 U.S. 432, 119 S.Ct. 755,142 L.Ed.2d
881 (emphasis added) ...................................................................................... 12

*Jones v. GNC Franchising, Inc.,*
211 F.3d 495 (9th Cir. 2000) ..................................................................... 4, 5, 6

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
342 U.S. 180 (1950) ..................................................................................... 13, 14

*Lou v. Belzberg,*
834 F.2d 730 (9th Cir. 1987) ............................................................................. 8

*Lupiani v. Wal-Mart Stores, Inc.,*
2003 U.S. Dist. LEXIS 18804 at *14 (N.D. Cal. Oct. 17, 2003) .................. 12, 13

*Manetti-Farrow, Inc. v. Gucci Am., Inc.,*
858 F.2d 509 (9th Cir. 1988) ......................................................................... 6, 7

*Pacesetter Systems, Inc. v. Medtronic, Inc.,*
678 F.2d 93 (9th Cir 1982) .............................................................................. 13

*Pall Corp. v. Bentley Labs, Inc.,*
523 F. Supp. 450 (D. Del. 1981) ........................................................................ 9

## TABLE OF AUTHORITIES
### (continued)

Page

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
    741 F.2d 273 (9th Cir. 1984) ............................................................... 6

*Ricoh Co. Ltd. v. Honeywell, Inc.*,
    817 F. Supp. 473 (D. N.J. 1993) .......................................................... 9

*Saleh v. Titan Corp.*,
    361 F. Supp. 2d 1152 (S.D. Cal. 2005) ...................................... 5, 10, 11

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
    926 F.2d 865 (9th Cir. 1991) ............................................................... 6

*Stewart Org., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ........................................................................... 4, 5

*The Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ............................................................................... 6

*Unisys Corp. v. Access Co., Ltd.*,
    2005 U.S. Dist. LEXIS 31897 at *13 (N.D. Cal. Nov. 23, 2005) ........... 7

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ........................................................................... 4

*Zeta-Jones v. Spice House*,
    372 F. Supp. 2d 568 (C.D. Cal. 2005) ................................................ 12

**Statutes**

28 U.S.C. § 1332 ................................................................................. 5

28 U.S.C. § 1404(a) ..................................................................... passim

**Other Authorities**

Gibbs & Oliphant LLP,
    *Attorney Profile: Theo T. Oliphant, at*
    http://www.gotolawfirm.com/theo_oliphant.php. ................................. 7

1  **I.    STATEMENT OF THE ISSUE**

2      Whether pursuant to the parties' agreements, for the convenience of parties and

3  witnesses, and/or in the interest of justice the matter should be transferred to the Southern

4  District of New York?

5  **II.    INTRODUCTION**

6      Each Plaintiff in this action "irrevocably and unconditionally" agreed that if a

7  dispute should arise between the parties pursuant to certain agreements the Plaintiffs would

8  (1) submit to personal jurisdiction in New York, (2) waive any objection to the laying of

9  venue there, and (3) have the agreements upon which this action is based governed by New

10  York law.  Each of the agreements at issue in this action has a provision that reads, in

11  substantial part:

12      (a) <u>Pledgors</u> hereby irrevocably and unconditionally:

13      (i) <u>Submit themselves</u> . . . in any legal action or proceeding
         relating to this agreement . . . <u>to the non-exclusive general</u>
14      <u>jurisdiction of the Courts of the State of New York, the Courts</u>
         <u>of the United States of America for the State of New York,</u>
15      and the appellate courts from any thereof[.]

16      (ii) consent that any such action . . . may be brought in such
         courts, and waive[] any objection . . . to the venue of any such
17      action or proceeding in any such court . . . .

18  (Emphasis added.)

19      A dispute has arisen under those agreements.  Pursuant to those agreements,

20  Greystone (defendant in this action) brought suit against the same Santa Fe entities who are

21  plaintiffs in this action, as well as Mr. Oliphant, in the Southern District of New York.[1]

22  Despite the agreements and the forum selection and waiver clauses they contain, the Santa

23  Fe entities and Mr. Oliphant brought their nearly identical action against Greystone in

24  Alameda Superior Court.  Defendants removed that action to this Court and now seek an

25  order transferring this action to its proper venue in New York where it can be heard with

26  the New York Action.

27      [1] Declaration of Erik K. Swanholt ("Swanholt Decl."), ¶ 2, Ex. 3 (Greystone CDE, LLC, v.
    Santa Fe Pointe, L.P., Santa Fe Pointe Management, LLC, RANT, LLC and Theotis F. Oliphant,
28  U.S.D.C. S.D.N.Y. Case No. 07 Civ. 8377 (RPP)).

1    The New York Action will proceed regardless of whether this motion is granted or

2    not. Plaintiffs cannot successfully move to have that matter transferred here as they have

3    contractually agreed not to challenge jurisdiction and venue in New York. Thus, even

4    without resort to the elements of § 1404(a) regarding Greystone's motion to transfer, it is

5    axiomatic that this matter belongs in the Southern District of New York. All witnesses and

6    parties necessarily will need to travel to New York in all events. Further, New York is the

7    only venue in which these nearly identical and interrelated disputes can be resolved at once.

8        Any result other than a transfer of this action to the Southern District of New York

9    would require this Court to duplicate the efforts of the New York court in interpreting the

10   same agreements, applying the same applicable New York law and presiding over the

11   examination of the same witnesses. Further, both party and non-party witnesses expected

12   to be called in both actions, of which there are many, would be unduly burdened by the

13   duplicative demands on their time for travel and testimony should these matters proceed in

14   courts on opposite coasts.

15       Analysis and application of the standard 1404(a) elements applicable to this motion

16   also favors transfer to New York. First, the agreements at issue call for the application of

17   New York law to all disputes relating to those agreements. Second, as explained below, the

18   bulk of the material witnesses to this action are located in New York, or are much nearer to

19   New York than to California. By contrast, Plaintiffs filed their action in a forum that bears

20   no relation to the operative facts or governing law, and that is contrary to the parties'

21   agreement to pursue litigation relating to the agreements in New York. Accordingly,

22   pursuant to the parties' agreements, the interest of judicial efficiency, and for the

23   convenience of the witnesses and parties, Defendants respectfully seek an order transferring

24   this action to the Southern District of New York.

25   **III.    BACKGROUND FACTS**

26       This matter arises out of Plaintiff Theotis F. Oliphant's ("Oliphant") failed pursuit of

27   the development of a multi-million dollar Low Income Housing Tax Credit project (the

28   "Santa Fe project") located in Oklahoma City, for which Plaintiffs obtained $500,000 in

1  bridge financing from Greystone.

2       Greystone was engaged by Plaintiffs to assist in obtaining financing through various

3  government entities, including the U.S. Department of Housing and Urban Development

4  ("HUD"), for the Santa Fe project. [Declaration of Matthew James ("James Decl."), ¶¶ 3,

5  4.] On or about December 20, 2006, Plaintiffs borrowed $500,000 in bridge financing from

6  Greystone to pay for the issuance of the bonds required to finance the project (the "Bridge

7  Loan"). [James Decl., ¶ 11.] Plaintiffs and Greystone entered into certain Bridge Loan

8  agreements which were signed by Oliphant in his individual capacity as well as in his

9  representative capacity on behalf of his Santa Fe project-related entities (the "Bridge Loan

10  documents").[2] The Bridge Loan documents contain choice-of-law and forum selection

11  provisions selecting New York as the governing law and forum for actions relating to the

12  Bridge Loan documents. [*Id.*] Thus, in executing those agreements, every Plaintiff in this

13  action submitted to personal jurisdiction in New York and expressly waived any objection

14  to the laying of venue there. [*See, e.g.,* Swanholt Decl., ¶ 6, Ex. 3D at 15-16 (Sec. 26).]

15       After closing the Bridge Loans, it soon became clear that Plaintiffs would not be

16  able to perform their obligations under their agreements with Greystone. On August 21,

17  2007, Greystone sent Plaintiffs a Notice of Default letter. [Swanholt Decl., ¶¶ 11, 12, Exs.

18  3I & 3J]; [James Decl., ¶¶ 14, 15, Exs. 1, 2.]

19       In response, and anticipation of litigation concerning their inability to perform the

20  Bridge Loan documents, on September 7, 2007 Plaintiffs filed an action in the Superior

21  Court of California for the County of Alameda in plain contravention of the forum selection

22  clause in each of the agreements. *See* Notice of Removal (doc. # 1), Ex. A1[3]. Plaintiff

23  served their First Amended Complaint (they never served their original complaint) on

24  Greystone's registered agent for service of process on September 25, 2007. *See id.*, Ex. A2.

25       [2] Swanholt Decl., ¶¶ 3-9, Exs. 3A-3G. The FAC filed with the court in the New York
Action had appended as exhibits all of the exhibits used in this motion (except for Exhibits 4-6).
26  Thus, for the convenience of the Court and for consistency of reference, the moving parties have
retained the exhibit structure of the FAC. Thus, while Exhibit 3 is the FAC, Exhibit 3A is the same
27  as exhibit A to the FAC, 3B is exhibit B to the FAC, etc.

28       [3] Defendants hereby request the Court to take judicial notice of Defendants' Notice of
Removal filed in this matter on October 25, 2007 and identified as item #1 on the Court's docket.

1  Greystone first learned of the existence of Plaintiffs' action on September 27, 2007.

2  [Swanholt Decl., ¶ 13, Ex. 4.]  On September 26, 2007, pursuant to the parties' agreements

3  and unaware of Plaintiffs' filing of this action, Greystone filed its action against Oliphant

4  and the Santa Fe entities relating to the Bridge Loan documents in the Southern District of

5  New York, where the matter is now pending before Judge Patterson.  [Swanholt Decl., ¶¶ 2,

6  14, Exs. 3, 5.]

7  **IV.    ARGUMENT**

8          "For the convenience of parties and witnesses, in the interest of justice, a district

9  court may transfer any civil action to any other district or division where it might have been

10  brought."  28 U.S.C. § 1404(a).  The purpose of § 1404(a) "is to prevent the waste of time,

11  energy and money 'and to protect litigants, witnesses and the public against unnecessary

12  inconvenience and expense . . . .'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  A

13  motion for transfer lies within the broad discretion of the District Court and must be

14  determined on an individualized basis.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498

15  (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

16          Transfer is appropriate where the moving party establishes that venue is proper in

17  the transferee District, and that the transfer will serve the convenience of the parties and

18  witnesses and will promote the interests of justice.  *See Greenwell v. Belkin Corp.*, 2006

19  U.S. Dist. LEXIS 76231 at *4 (N.D. Cal. Oct. 10, 2006) (citing *Hoffman v. Blaski*, 363 U.S.

20  335, 343-44 (1960)).

21      **A.    Venue Is Proper In The Southern District Of New York.**

22          To prevail on their motion to transfer pursuant to § 1404(a), Defendants must first

23  show that (1) the Southern District of New York has subject matter jurisdiction, (2) venue

24  is proper in the Southern District of New York, and (3) the Southern District of New York

25  can exercise personal jurisdiction over defendants.  28 U.S.C. § 1404(a).  All of these

26  prerequisite conditions are satisfied.

27          Here, the Southern District of New York is a proper venue and the District Court

28  would have both personal jurisdiction over the Plaintiffs because (1) Defendants maintain

1   offices and conduct business in New York; and (2) the same underlying contracts at issue in

2   this action and the New York Action contain valid forum selection clauses by which each

3   of the Plaintiffs submitted to personal jurisdiction in New York, and expressly waived any

4   objection to the laying of venue there.

5       Moreover, the Southern District of New York also has subject matter jurisdiction on

6   the same basis as this Court, because there is complete diversity between the parties and the

7   jurisdictional amount in controversy is met.  *See* 28 U.S.C. § 1332; Notice of Removal.

8   (doc. # 1) ¶¶ 3-18.  As such, this case could have been brought in the Southern District of

9   New York.

10  **B.      Transfer Will Serve The Convenience Of The Parties And Witnesses,**

11          **And Will Promote The Interests Of Justice.**

12      A District Court has broad discretion to grant a motion for transfer of venue, and the

13  decision whether to transfer is to be made based on "'an individualized, case-by-case

14  consideration of convenience and fairness.'"  *Jones*, 211 F.3d at 498 (quoting *Stewart Org.*,

15  *Inc.*, 487 U.S. at 29).  In evaluating a § 1404(a) transfer motion, the District Court may

16  consider a multitude of factors.[4] *See Jones*, 211 F.3d at 498.

17      In this case, the pertinent factors are: (1) the existence of a valid forum selection

18  clause; (2) the transferee forum's familiarity with the governing law; (3) the promotion of

19  judicial efficiency and reduction in the costs of litigation; (4) the convenience of the

20  witnesses and parties; (5) the location of sources of proof; and (6) the lack of a connection

21  between Plaintiffs' causes of action and chosen forum.

22  _____

23      [4] A comprehensive list of potentially relevant factors considered to varying degrees in
    different cases includes: (1) the presence of a forum selection clause; (2) the state that is most
    familiar with the governing law; (3) the location where the relevant agreements were negotiated

24  and executed; (4) the extent to which there is a connection between the plaintiff's causes of action
    and the forum; (5) the convenience of the witnesses; (6) the availability of compulsory process to

25  compel attendance of unwilling non-party witnesses; (7) the existence of administrative
    difficulties resulting from court congestion; (8) the ease of access to sources of proof; (9) the differences in the

26  costs of litigation in the two forums; (10) whether there is a "local interest in having localized
    controversies decided at home"; (11) whether unnecessary problems in conflict of laws, or in the

27  application of foreign law, can be avoided; and (12) the plaintiff's choice of forum.  *See, e.g.*,
    *Jones, Inc.*, 211 F.3d at 498-99; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843

28  (9th Cir. 1986); *Saleh*, 361 F. Supp. 2d at 1156.

1. **New York is a Proper Forum Pursuant to the Forum Selection Clause in the Parties' Agreements.**

The existence of a forum selection clause is a "significant factor in the court's § 1404(a) analysis." *Jones*, 211 F.3d at 498-99. The fact that Plaintiffs' "irrevocably and unconditionally" agreed to venue in New York throughout the parties' contracts weighs considerably in favor of transfer to the Southern District of New York. *See supra*, at 1 n.1.

In cases based on diversity jurisdiction, "federal law . . . applies to [the] interpretation of forum selection clauses." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). Forum selection clauses are presumptively valid and will not be set aside absent a showing that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Manetti-Farrow, Inc.*, 858 F.2d at 512 (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)).[5] Consequently, the party resisting enforcement of a forum selection clause has a "heavy burden" to establish the unreasonableness of the clause. *Pelleport*, 741 F.2d at 281 (citing *The Bremen*, 407 U.S. at 18). The opposing party must "show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *See The Bremen*, 407 U.S. at 18; *Pelleport*, 741 F.2d at 280 (9th Cir. 1984) ("Absent some evidence submitted by the party opposing enforcement of the clause to establish fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties.").

Plaintiffs are sophisticated parties who were assisted by the law firm of Gibbs & Oliphant LLP in executing the Bridge Loan documents. Indeed, Plaintiff Oliphant, a former partner with a large international law firm, holds himself out as possessing

---

[5] Although *The Bremen* involved an international forum selection clause in a commercial contract, the Ninth Circuit has approved *The Bremen* framework for domestic forum selection clauses. *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867-68 (9th Cir. 1991); *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 279 (9th Cir. 1984).

1   experience in a "sophisticated corporate and private equity practice." [Swanholt Decl.,

2   ¶ 15, Ex. 6. (*See* Gibbs & Oliphant LLP, *Attorney Profile: Theo T. Oliphant, at*

3   http://www.gotolawfirm.com/theo_oliphant.php.)]  The bargaining power was equal.

4         The forum selection clauses clearly reflect that the parties contemplated adjudicating

5   matters relating to their agreements in a New York forum.  Moreover, the forum selection

6   clauses at issue here cover all of Plaintiffs' claims, including those sounding in tort,

7   because all claims relate to the underlying agreements.  *See Manetti-Farrow, Inc.*, 858 F.2d

8   at 514.[6]

9         Plaintiffs may argue that the forum selection clauses are permissive and thus should

10  receive less weight.  As one Court in this District stated, however, Plaintiffs' likely

11  argument is not compelling:

12              [A]lthough the forum selection clause is permissive, the fact
                that the parties contemplated [the proposed forum for transfer]
13              as a possible forum is entitled to "substantial consideration" in
                this analysis.  Further, "[w]hile courts normally defer to a
14              plaintiff's choice of forum, such deference is inappropriate
                where the plaintiff has already freely contractually chosen an
15              appropriate venue. . . . [Thus,] the plaintiffs bear the burden of
                demonstrating why they should not be bound by their
16              contractual choice of forum.

17  *Unisys Corp. v. Access Co., Ltd.*, 2005 U.S. Dist. LEXIS 31897 at *13 (N.D. Cal. Nov. 23,

18  2005) (internal citations omitted) (emphasis added); *see also Angotti v. Rexam, Inc.*, 2006

19  U.S. Dist. LEXIS 15488 at *12-13 (N.D. Cal. Feb. 14, 2006).

20              **2.    New York Courts Are Most Familiar With New York Law.**

21        Each of the Plaintiffs also agreed that the Bridge Loan documents "shall be

22  governed by and construed in accordance with the laws of the State of New York."[7]

23  Although this Court is certainly competent to apply the state laws of New York in this

24  matter, the Southern District of New York is more familiar with the relevant New York

25        [6] Indeed, Plaintiffs' tort claims relate to the contracts because, among other reasons, they
    are all subject to dismissal on account of the exculpatory clauses by which Plaintiffs released
26  Greystone from such liability.  [*See, e.g.*, Swanholt Decl., ¶ 2, Ex. 3A at 18 (§ 10.6 of Bridge Loan
    Agreement).]

27        [7] [Swanholt Decl., ¶¶ 3, 5-7 (Ex. 3A at 18 (agreed by Plaintiff Santa Fe Pointe, LP); Ex. 3C
    at 11 (agreed by Plaintiff Oliphant); Ex. 3D at 13 (agreed by Plaintiff Santa Fe Pointe
28  Management, LLC); Ex. 3E at 12 (agreed by Plaintiff RANT, LLC)).]

1    state laws governing these claims.  *See Gelber v. Leonard Wood Mem'l for the Eradication*

2    *of Leprosy & the Am. Leprosy Found.*, 2007 U.S. Dist. LEXIS 47535 at *14-15 (N.D. Cal.

3    June 21, 2007) (finding, in the case of a mixed complaint raising both state and federal

4    claims, familiarity of district court in South Carolina with South Carolina law, as selected

5    in the parties' contractual choice-of-law provision, weighed in favor of transfer to the

6    District of South Carolina).  The familiarity of the Southern District of New York with the

7    governing law of this case also favors  the transfer of this matter to that District.

8           **3.    Transfer and Consolidation of This Action With Greystone's New
             York Action Will Promote Judicial Efficiency and Reduce the
9           Costs of Litigation for the Parties.**

10          In this case, the public and private interests strongly favor transfer to the Southern

11   District of New York because Plaintiffs are already required to appear as defendants in the

12   New York Action.  Plaintiffs cannot challenge venue in the Southern District of New York,

13   having waived such defenses by agreeing to the forum selection and venue clauses

14   discussed above.  Thus, the only way all claims between these parties relating to the Santa

15   Fe project can be litigated in one forum is if they are litigated in the Southern District of

16   New York.  The parties' litigation costs will either stay the same, or, more likely, be

17   reduced by a transfer allowing consolidation of the related cases in the Southern District of

18   New York.  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (affirming district

19   court's decision to transfer case to the Southern District of New York when the costs of

20   litigation would be reduced by having the case heard there).

21          Importantly, a transfer allowing these cases to be heard together by the Southern

22   District of New York will promote the public interest.  Relevant factors of public interest

23   include the avoidance of the potential for inconsistent judgments and the promotion of

24   judicial economy.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  Greystone's

25   contract claims in the New York Action will require the court there to determine the

26   parties' rights and liabilities under the Bridge Loan documents.  As discussed above, all of

27   Plaintiffs' tort and contract claims in this action also relate to the same agreements, and

28   must be resolved pursuant to New York law.  Thus, the court in the New York Action has

1  before it all of the legal and factual issues raised by Plaintiffs' First Amended Complaint in

2  this case, and is familiar with the governing law of both actions.

3       Requiring this Court to duplicate the New York court's efforts would be an

4  unnecessary expenditure of judicial resources, and would create the risk of inconsistent

5  results—the very dangers § 1404(a) was designed to avoid. *See Angotti*, 2006 U.S. Dist.

6  LEXIS 15488 at *12-13 (finding that the transfer of claims "would avoid a risk of

7  inconsistent rulings, based on the law of two different circuits"). Where a related lawsuit

8  exists, "it is in the interest of justice to permit suits involving the same parties and issues to

9  proceed before one court and not simultaneously before two tribunals." *Pall Corp. v.*

10  *Bentley Labs, Inc.*, 523 F. Supp. 450, 453 (D. Del. 1981). As one District has explained:

11  
12  
13         Transfer in such a circumstance has numerous benefits. Cases can be consolidated before one judge thereby promoting judicial efficiency; pretrial discovery can be conducted in a more orderly manner; witnesses can be saved the time and expense of appearing at trial in more than one court; and duplicative litigation involving the filing of records in both courts is avoided, thereby eliminating unnecessary expense and the possibility of inconsistent results.

14  
15  

16  *Ricoh Co. Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 487 (D. N.J. 1993) (citations omitted).

17       In this action, the Southern District of New York is the superior forum. The New

18  York Action involves the same agreements at issue here; those agreements are governed by

19  New York law; the parties have agreed to forum in New York; and Plaintiffs must appear

20  in the Southern District of New York to defend against Greystone's contract claims, having

21  waived all objections to jurisdiction and venue there. In sum, transfer of this action to the

22  Southern District of New York will result in considerable gains in judicial efficiency, and

23  will likely reduce the costs of litigation for the parties.

24         **4.**    **Most Party and Third-Party Witnesses Reside in New York or Are Nearer to New York Than California.**

25  

26       In deciding whether the relative convenience of the witnesses weighs in favor of

27  transfer, "the court must consider not simply how many witnesses each side has and the

28  location of each, but, rather, the court must consider the importance of the witnesses."

1  *Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160-61 (S.D. Cal. 2005) (citing *Gates Learjet*

2  *Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984)).

3        Defendants' witness with the greatest knowledge of the Santa Fe project, Matthew

4  James, is located in New York and New Jersey, while most of the key party and third-party

5  witnesses are also located much nearer to New York than California. [James Decl., ¶ 2.]

6  Most of the services under the agreements were performed in or directed from New York,

7  Virginia, and Florida, and most of the persons who performed services under the

8  agreements, and who have personal knowledge of their negotiation and performance, are in

9  or near New York:

10      • Matthew James of Greystone & Co., Inc., Plaintiffs' primary contact at

11        Greystone for much of the transactions underlying this and the New York

12        Action, is located in New York, New York. [James Decl., ¶ 2.]

13      • Betsy Vartanian, Executive Vice President of Greystone Servicing Corporation,

14        Inc., was Greystone's most senior liaison to HUD on behalf of the Santa Fe

15        project. Ms. Vartanian is located in Warrenton, Virginia. [James Decl., ¶ 7.]

16      • Thom Ruffin, a Senior Vice President of Greystone Servicing Corporation, Inc.,

17        became involved in mid-August of 2007 to oversee possibilities of a "workout"

18        with Plaintiffs. Mr. Ruffin is located in Warrenton, Virginia. [James Decl.,

19        ¶ 13.]

20      • Miriam Simon, Greystone's senior underwriter for the Santa Fe project, is

21        located in Wisconsin. [James Decl., ¶ 8.]

22      • Pharrah Jackson, Greystone's underwriter for Plaintiffs' application for the

23        Bridge Loan, is located in Tampa, Florida. [James Decl., ¶ 12.]

24      • Jeff Englund and Marilyn Willems are Greystone underwriters who evaluated

25        Oliphant's lack of qualifications for Fannie Mae financing for the Santa Fe

26        project. They are located in Tampa, Florida and Bethesda, Maryland

27        respectively. [James Decl., ¶ 6.]

28      These witnesses have personal knowledge of material events relating to the

1  execution, and Plaintiffs default, of the Bridge Loan documents, and will testify thereto.

2  The convenience of these witnesses favors venue in the Southern District of New York.

3  The convenience of the non-party witnesses also favors transfer:

4  • David Henry, Plaintiffs' purported property developer, is located in Arkansas.

5     [James Decl., ¶ 9.]

6  • Andre Blakely, Plaintiffs' advisor from National Equity Fund, is located in

7     Chicago, Illinois.  [James Decl., ¶ 3.]

8      In sum, New York is a more convenient forum for the witnesses, since the majority

9  of witnesses, including the corporate executives responsible for Greystone's negotiations

10  and execution of the contracts, and the persons who performed services under the

11  agreements and possess personal knowledge of the agreements and the facts herein, reside

12  in or near New York.

13      Finally, it is anticipated that most if not all of the non-party witnesses expected to be

14  called in this action will also be called to testify in the New York Action.  Absent a transfer

15  of this action to the Southern District of New York, the party and non-party witnesses will

16  be unduly burdened by the duplicative demands on their time for travel and testimony

17  imposed by Plaintiffs' unreasonable efforts to maintain suit in their home forum.  *Coxcom,*

18  *Inc. v. Hybrid Patents, Inc.*, 2007 U.S. Dist. LEXIS 67168 at *7 (N.D. Cal. Aug. 30, 2007)

19  (finding that transfer of action to the Eastern District of Texas where a related matter was

20  pending would be more convenient for non-party witnesses located on California, because

21  it would eliminate the need to engage in duplicative litigation and travel).  Therefore, the

22  convenience of the party and non-party witnesses weighs in favor of transferring this action

23  to the Southern District of New York.

24      **5.    Sources of Proof are Located in or Near New York.**

25      "[T]he issue is the ease of access to the sources of proof, not whether the evidence

26  would be unavailable absent the transfer." *Saleh*, 361 F. Supp. 2d at 1166 (citation

27  omitted).  Documents and other physical evidence relating to Plaintiffs' claims are in New

28  York, Virginia, Florida and Oklahoma, where Greystone, HUD and OHFA officials

1  involved throughout the project can be found.  [James Decl., ¶ 10.]  Sources of proof of the

2  events giving rise to Plaintiffs' claims are much more likely to be located in those places

3  than in California.  Furthermore, most sources of proof associated with the witnesses will

4  also be found where those witnesses are located.  As explained above, most of the

5  witnesses can be found in New York, or nearer to New York than California.

6          **6.    Plaintiff's Choice of Forum Should Receive Minimal**
           **Consideration, Because California is not the Locus of the**
7          **Operative Facts and has No Interest in the Subject Matter.**

8          As the Ninth Circuit has made evident, plaintiff's choice is merely *"one of several*

9  *factors* a court must consider when ruling on a motion to transfer venue." *Jacobson v.*

10  *Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997) *rev'd*, 525 U.S. 432, 119 S.Ct.

11  755,142 L.Ed.2d 881 (emphasis added); *see also Zeta-Jones v. Spice House*, 372 F. Supp.

12  2d 568, 575 (C.D. Cal. 2005) (acknowledging that "deference should be accorded to

13  plaintiffs' choice of forum" but still transferring the action from the Central District of

14  California to the District of Nevada because "considerations of relative convenience to the

15  parties and likely witnesses, availability of compulsory process, and ease of access to

16  sources of proof" militated in favor of a transfer to Nevada); *Lupiani v. Wal-Mart Stores,*

17  *Inc.*, 2003 U.S. Dist. LEXIS 18804 at *14 (N.D. Cal. Oct. 17, 2003) (granting defendant's

18  motion to transfer venue because other than plaintiff's choice of forum, the other factors

19  weighed in favor of transfer).

20          Here, Plaintiffs have already contractually agreed to venue any action relating to the

21  Bridge Loan documents and Santa Fe project in New York.  Further, to the extent any such

22  right is found to exist, Plaintiffs' choice of forum should be given little weight because the

23  aforementioned factors—including the forum selection clauses, the applicability of New

24  York law, the differences in the costs of litigation, the promotion of judicial efficiency, the

25  convenience of the witnesses and the ease of access to sources of proof—all compel

26  transfer to the Southern District of New York.  Moreover, while it is relevant that Plaintiff

27  Oliphant resides in California, the mere fact that Plaintiffs' or their counsel is located there

28  should not factor into the analysis.  "Courts have consistently held that the convenience of

1  plaintiff's counsel is not a factor to be considered in determining whether a particular locale

2  is a convenient forum." *Lupiani*, 2003 U.S. Dist. LEXIS 18804 at *10 (citing *Fabus Corp.*

3  *v. Asiana Express Corp.*, 2001 U.S. Dist. LEXIS 2568 at *6 (N.D. Cal. Mar. 5, 2001)).

4  Finally, California has no interest in the subject matter of this dispute because, as Plaintiffs

5  allege, this matter arises out of Oliphant's pursuit of a real estate development opportunity

6  in Oklahoma, and the Santa Fe entities were created for only that purpose.  [James Decl.,

7  ¶ 5.]

8    **C.    Under The Doctrine Of Federal Comity, Judicial Efficiency Would Be**

9        **Best Served By Declining Jurisdiction Over Plaintiffs' Anticipatory Suit.**

10      "There is a generally recognized doctrine of federal comity which permits a district

11  court to decline jurisdiction over an action when a complaint involving the same parties and

12  issues has already been filed in another district." *Pacesetter Systems, Inc. v. Medtronic,*

13  *Inc.*, 678 F.2d 93, 94-5 (9th Cir 1982).  It is a discretionary doctrine intended to promote

14  judicial efficiency, and, as such, decisions applying the doctrine are subject to review only

15  for abuse of discretion. *See Barapind v. Reno*, 225 F.3d 1100, 1109 (9th Cir. 2000).

16      The federal comity doctrine has sometimes been referred to by the courts and

17  practitioners as the "first-to-file" rule—a locution that describes the "classic formulation"

18  where deference is traditionally given to the court presiding over the first-filed action

19  unless there is a showing of bad faith, anticipatory suit, or a balance of conveniences

20  favoring the forum of the second-filed action. *See Church of Scientology v. United States*

21  *Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979).  The cases also demonstrate that not all

22  cases fit the mold of the "classic formulation."  As the Supreme Court has observed of the

23  problems inherent to concurrent jurisdiction, "[w]ise judicial administration, giving regard

24  to conservation of judicial resources and comprehensive disposition of litigation, does not

25  counsel rigid mechanical solution of such problems." *Kerotest Mfg. Co. v. C-O-Two Fire*

26  *Equip. Co.*, 342 U.S. 180, 183 (1950).  In sum, federal comity and the "first-to-file" rule

27  remain flexible doctrines subject to the broad discretion of the District Court.

28      In view of circumstances indicative of the anticipatory nature of this action, the

1  forum selection clauses in the subject agreements and the balance of conveniences favoring

2  venue in the Southern District of New York, as discussed above, the "first-to-file" rule does

3  not apply to this action.  Further, allowing these issues to be resolved in the Southern

4  District of New York will best promote the policy of judicial efficiency, which is the

5  underpinning of the broader doctrine of federal comity from which the "first-to-file" rule

6  arises.  *See Kerotest Mfg. Co.*, 342 U.S. at 183; *Church of Scientology*, 611 F.2d at 750

7  ("The [federal comity] doctrine is designed to avoid placing an unnecessary burden on the

8  federal judiciary, and to avoid the embarrassment of conflicting judgments.").

9  **V.    CONCLUSION**

10      Each Plaintiff in this action "irrevocably and unconditionally" agreed to (1) submit

11  to personal jurisdiction in New York, (2) waive any objection to the laying of venue there,

12  and (3) have the agreements upon which this action is based governed by New York law.

13  Plaintiffs have defaulted under their obligations under the Bridge Loan documents, and, as

14  contemplated by those agreements, must now answer for their conduct before the Southern

15  District of New York.  The New York Action cannot be transferred or challenged on

16  grounds of venue or jurisdiction.  Judicial efficiency and the convenience of the witnesses

17  and parties compel transfer to the Southern District of New York.

18      Under the discretionary analysis pursuant to 28 U.S.C. § 1404(a), none of the factors

19  weigh against transfer; instead, five strongly favor transfer: (1) the presence of forum

20  selection clauses selecting New York; (2) the familiarity of the Southern District of New

21  York with the state laws of New York; (3) the promotion of efficiency and avoidance of

22  conflicting judgments; (4) the convenience of the witnesses; and (5) ease of access to

23      //

24      //

25      //

26      //

27      //

28      //

1   sources of proof.  Defendants respectfully request that this Court grant Defendants' motion

2   to transfer this action to the Southern District of New York.

3   Dated:  November 7, 2007                    JONES DAY

4

5                                               By: _____

6                                                   Mark D. Kemple

7                                               Attorneys for Defendants Greystone Servicing
                                                Corporation, Inc. and Greystone CDE, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Professional Indexes & Files 800-422-9191 www.proindexes.com

James Decl.

Mark D. Kemple (State Bar No. 145219)
Erik K. Swanholt (State Bar No. 198042)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone:    (213) 489-3939
Facsimile:    (213) 243-2539
Email:mkemple@jonesday.com
Email:ekswanholt@jonesday.com

Attorneys for Defendants
Greystone Servicing Corporation, Inc., and
Greystone CDE, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# (SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, and Oklahoma limited partnership; SANTA FE MANAGEMENT, LLC, an Oklahoma limited liability company; RANT, LLC, a Delaware limited liability company; and THEOTIS F. OLIPHANT, an individual, | CASE NO. C 07-05454 JCS<br><br>**DECLARATION OF MATTHEW JAMES** |
| Plaintiffs, | |
| v. | |
| GREYSTONE SERVICING CORPORATION., a Georgia corporation; GREYSTONE CDE, LLC, a Delaware limited liability company; and DOES 1 through 100 inclusive, | |
| Defendants. | |

*16*

LAI-2912766v1                                          Declaration of Matthew James

1

## DECLARATION OF MATTHEW JAMES

2     I, Matthew James, declare and state as follows:

3     1.      I am the Director of Greystone CDE, LLC ("Company"). The following is

4 based on my personal knowledge, or upon my review of Company records maintained in

5 the ordinary course of business, or upon information and belief where noted, and, if called

6 upon to do so, I could and would testify competently thereto:

7     2.      I am currently employed as Director of Greystone CDE, LLC's New York,

8 New York office, a position I have held since 2005. I am a citizen and resident of the

9 State of New Jersey.

10    3.      In July of 2006, I was contacted by Andre Blakely of National Equity Fund

11 on behalf of Plaintiff Theotis F. Oliphant ("Oliphant") regarding Oliphant's interest in

12 developing a Low Income Housing Tax Credit project (the "Santa Fe project") located in

13 Oklahoma City. Mr. Blakely is located in Chicago, Illinois.

14    4.      Since that time, I have been closely involved in every aspect of the Santa Fe

15 project on behalf of Greystone.

16    5.      I am informed and believe that Oliphant created Plaintiffs Santa Fe Pointe,

17 LP, Santa Fe Management, LLC, and RANT, LLC for the sole purpose of pursuing the

18 Santa Fe project. My informed belief as to these facts is based on the certifications

19 provided by Oliphant on behalf of his Santa Fe entities in connection with his application

20 to Greystone for bridge financing for the Santa Fe project.

21    6.      Jeff Englund and Marilyn Willems are Greystone underwriters who

22 evaluated Oliphant's lack of qualifications for Fannie Mae financing for the Santa Fe

23 project. They are located in Tampa, Florida and Bethesda, Maryland respectively. My

24 informed belief as to these facts is based upon my review of Company records maintained

25 in the ordinary course of business, as well as on my personal contact with these

26 individuals in regard to their underwriting of Oliphant's qualifications for Fannie Mae

27 financing.

28

7.    Betsy Vartanian, Executive Vice President of Greystone Servicing Corporation, Inc., was Greystone's most senior liaison to HUD on behalf of the Santa Fe project. Ms. Vartanian is located in Warrenton, Virginia.  My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, as well as on my having contacted Ms. Vartanian after HUD's rejection of Oliphant's application to persuade her to intervene on Oliphant's behalf and convince HUD to rescind its rejection.

8.    Miriam Simon, Greystone's senior HUD underwriter for the Santa Fe project, is located in Wisconsin.  My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, as well as on my personal contact with Ms. Simon in regard to the underwriting requirements for the Santa Fe project.

9.    David Henry, a developer with whom Oliphant had claimed to have partnered on the Santa Fe project, is located in Arkansas.  My informed belief as to these facts is based on my personal contact with both Mr. Oliphant and Mr. Henry regarding the Santa Fe project.

10.    Documents and other physical evidence relating to Plaintiffs' claims are located in New York, New York; Warrenton, Virginia; Tampa, Florida; Bethesda, Maryland; Wisconsin; Oklahoma City, Oklahoma; and Arkansas.  My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, as well as on my personal contact with the individuals involved in the review, negotiation, drafting, and execution of documents relating to the Santa Fe project.

11.    In December of 2006, Oliphant borrowed $500,000 in bridge financing from Greystone (the "Bridge Loan") for the Santa Fe project.

12.    Pharrah Jackson, the Greystone underwriter involved in approving Oliphant's application for the Bridge Loan, is located in Tampa, Florida.  My informed belief as to these facts is based upon my review of Company records maintained in the

ordinary course of business, as well as on my personal contact with Ms. Jackson in regard to her underwriting of Oliphant's qualifications for bridge financing.

13.    Thom Ruffin, a Senior Vice President of Greystone Servicing Corporation, Inc., became involved in mid-August of 2007 to oversee possibilities of a "workout" with Plaintiffs. Mr. Ruffin is located in Warrenton, Virginia. My informed belief as to these facts is based upon my review of Company records maintained in the ordinary course of business, my personal contact with Mr. Ruffin on this matter, and my participation in the "workout" negotiations.

14.    On August 21, 2007, Greystone sent Oliphant a Notice of Default letter explaining the events of default that occurred under the Bridge Loan. A true and correct copy of this Notice is attached hereto as Exhibit 1.

15.    On September 18, 2007, Greystone sent Oliphant a Notice of Acceleration letter advising Oliphant of its decision to bring the entire balance of the Bridge Loan due. A true and correct copy of this Notice is attached hereto as Exhibit 2.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed in New York, New York on November 6, 2007.

Matthew James

**EXHIBIT 1**

(                                    )



GREYSTONE SERVICING
CORPORATION, INC.
419 BELLE AIR LANE
WARRENTON, VA 20186
PHONE: 540.341.2100
FAX: 540.341.2121

August 21, 2007

**VIA FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of December
       20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower

Ladies and Gentlemen:

The purpose of this letter is to notify you that you are in default in respect of the loan
from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan
Agreement").  Capitalized terms used herein and not defined herein shall have the meanings
ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)    pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the
contract for purchase and sale of the Project without the same having been extended;

(b)    pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or
expiration of the commitment to provide the equity investment in the Project;

**Exh. __/__, Page 20**

August 21, 2007
Page 2

(c)     pursuant to Section 9.1(k) of the Bridge Loan Agreement, the occurrence of changes in the operation, prospects and financial condition of the Borrower which, in our reasonable judgment materially adversely affect the ability of the Borrower to repay the Note and perform its other obligations under the Bridge Loan Documents, including, without limitation, the expiration without extension of the contract for purchase and sale of the Project, the failure to obtain and maintain a commitment to provide the equity investment in the Project, the deterioration of the physical condition of the Project and the lack of progress in advancement of the application for HUD financing due to unavailability of information required to be provided by the Borrower;

(d)     pursuant to Section 3.06(d) of the Guaranty, the occurrence of the foregoing events of default under the Bridge Loan Agreement;

(e)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(b) of the Guaranty requiring the Guarantor to provide the Lender with notice of the foregoing, which constitute material adverse changes in the business, operations, conditions (financial or otherwise) or prospects of the Guarantor; and

(f)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(a) of the Guaranty requiring the Guarantor to provide the Lender with (i) copies of the Guarantor audited annual financial statements on or before January 20, 2007 and (ii) a copy of the Guarantor's federal income tax return within ten (10) days of the filing thereof.

You are hereby further notified of the following breaches of covenants contained in the Bridge Loan Documents which, if not cured within thirty (30) days of the date of this notice, will constitute additional Events of Default pursuant to Section 9.1(b) of the Bridge Loan Agreement:

(1)     under Section 7.1(a) of the Bridge Loan Agreement, failure to provide annual financial statements of the Borrower for the year ended December 31, 2007, certified by an independent certified public accountant, on or before April 30, 2007;

(2)     under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the borrower for the quarter ended March 31, 2007, on or before May 15, 2007;

(3)     under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the Borrower for the quarter ended June 30, 2007, on or before August 15, 2007;

(4)     under Section 7.5(e) of the Bridge Loan Agreement, failure of the Borrower to notify the Lender of the Events of Default described herein and the other events described herein which, with the giving of notice or the passage of time or both, would constitute Events of Default;

August 21, 2007
Page 3

(5)     under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

(6)     under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

(7)     under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

(8)     under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

(9)     under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

(10)    under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions,

**Exh. __/__, Page 22**

August 21, 2007
Page 4

representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _____

Debi Martin
Vice President

cc:    Dianne Coady Fisher, Greenberg Traurig, LLP
       Matthew James, Greystone & Co., Inc.
       Thom Ruffin, Greystone Servicing Corporation, Inc.

**EXHIBIT 2**

# GREYSTONE CDE, LLC

September 18, 2007

**VIA OVERNIGHT DELIVERY AND E-MAIL**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant (via e-mail: theo.oliphant@gmail.com)

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    **NOTICE OF ACCELERATION:  Bridge Loan Agreement dated as of
December 20, 2006 between Greystone CDE, LLC (the "Lender") and
the Borrower**

Ladies and Gentlemen:

In our Notice of Default dated August 21, 2007 previously sent, a copy of which is annexed hereto, you were notified that the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date thereof (August 21, 2007) until paid in full.  The Lender reserved the right to declare all amounts due under the Note immediately due and payable.

As a result of the Events of Default under the Bridge Loan Agreement identified in items (a) through (c) in our Notice of Default, the Lender hereby declares the indebtedness evidenced by the Note, any and all other amounts payable under the Bridge Loan Agreement and the other Loan Documents and all other indebtedness of the Borrower to the Lender to be immediately due and payable in accordance with Section 9.2(a) of the Bridge Loan Agreement.

September 18, 2007
Page 2

As of September 18, 2007, the following amounts are due and owing under the Loan Documents:

| | |
|---|---|
| Principal: | $500,000.00 |
| Accrued Interest: | 3594.51 |
| Exit Fee: | 10,000.00 |
| Lender's Costs and Expenses: | 21,000.00 |
| Total: | $534,594.51 |

Please note that the above figures are good only through September 18, 2007. The Lender reserves the right to demand immediate payment of any and all additional costs and expenses incurred by the Lender in connection with the enforcement of the Loan Documents, the collection of the foregoing, the preservation of the Collateral and any other amounts which may hereafter become due and payable under the Loan Documents.

In addition, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from August 21, 2007 (the per diem at the default rate is $166.67) until paid in full and the Lender reserves the right to demand immediate payment thereof.

Demand for immediate payment of all amounts due and owing hereunder is hereby made upon the Borrower. In addition, demand for payment is hereby made upon the Guarantor pursuant to the Guaranty, upon the Partners pursuant to the Partner Pledge and upon the Developer pursuant to the Developer Fee Pledge.

Please take further notice, that should you fail to make payment as required, Lender shall be entitled to collect all reasonable costs of collection, including, but not limited to, reasonable attorneys' fees.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions, representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _____
Name: Debi Martin
Title: Vice President

**Exh. 2 , Page 25**

September 18, 2007
Page 3


cc:     Dianne Coady Fisher, Esquire
        Stephen Harnik, Esquire
        Thom Ruffin



GREYSTONE SERVICING
CORPORATION, INC.
419 BELLE AIR LANE
WARRENTON, VA 20186
PHONE: 540.341.2100
FAX: 540.341.2121

August 21, 2007

<u>VIA FEDERAL EXPRESS</u>

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:     Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:     NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of December
        20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower

Ladies and Gentlemen:

The purpose of this letter is to notify you that you are in default in respect of the loan from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan Agreement"). Capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)     pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the contract for purchase and sale of the Project without the same having been extended;

(b)     pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or expiration of the commitment to provide the equity investment in the Project;

August 21, 2007
Page 3

    (5)     under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

    (6)     under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

    (7)     under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

    (8)     under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

    (9)     under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

    (10)   under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions,

August 21, 2007
Page 4

representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _Debi Martin_

Debi Martin
Vice President

cc:    Dianne Coady Fisher, Greenberg Traurig, LLP
       Matthew James, Greystone & Co., Inc.
       Thom Ruffin, Greystone Servicing Corporation, Inc.

Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

Greystone CDE, LLC,                                    Docket No. 07 civ. 8377 (RPP)

                            Plaintiff,

              - against -
Sante Fe Pointe, L.P.,                                **AFFIDAVIT OF SERVICE**
Sante Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant

                            Defendants.
-------------------------------------------------------------X

STATE OF NEW YORK      )
                       )ss.:
COUNTY OF NEW YORK  )

        I, Sarah C. Claridad, being sworn, say:

        I am not a party to the action, am over 18 years of age and reside at 1515 Lexington Avenue, New York, N.Y. 10029.

        On the 5th day of October, 2007, I served the within First Amended Complaint As of Right by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the person at the last known address set forth:

                    Farber & Company Attorneys, LLP
                    Attorneys for Defendants
                    847 Sansome Street, Suite LL
                    San Francisco, California 94111
                    Att'n: Ann McFarland Draper, Esq.

                                                    _____
                                                    / Sarah C. Claridad

Sworn to before me the
5th day of October, 2007.

_____
Notary Public
STEPHEN M. HARNIK
Notary Public State of New York
No. 02HA-4694243
Qualified in New York County
Commission Expires May 31, 2011

                          Exh. 2, Page 29

Professional Indexes & Files 800-422-9191 www.proindexes.com

# DECLARATION OF ERIK K. SWANHOLT

I, Erik K. Swanholt, declare and state as follows:

1.     I am an associate with the law firm of Jones Day, counsel of record for Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC in the above-entitled matter.  I have personal and first-hand knowledge of the facts set forth in this Declaration, and if called and sworn as a witness, I could and would testify competently to those facts.

2.     Attached hereto as Exhibit 3 is a true and correct copy of Greystone CDE, LLC's First Amended Complaint ("FAC") filed in the related action, *Greystone CDE, LLC v. Santa Fe Pointe, LP*, before the Southern District of New York, Case No. 07 CIV 8377 RPP (the "New York Action") on October 5, 2007.

3.     Attached hereto as Exhibit 3A is a true and correct copy of the Bridge Loan Agreement by and between Greystone CDE, LLC and Santa Fe Pointe, LP, dated as of December 20, 2006, that was attached as an exhibit to Greystone CDE, LLC's FAC filed in the New York Action on October 5, 2007.

4.     Attached hereto as Exhibit 3B is a true and correct copy of the Assignment of Purchase Contract by Santa Fe Pointe, LP in favor of Greystone CDE, LLC, dated as of December 20, 2006, that was attached as an exhibit to Greystone CDE, LLC's FAC filed in the New York Action on October 5, 2007.

5.     Attached hereto as Exhibit 3C is a true and correct copy of the Guaranty and Suretyship Agreement by and between Theotis F. Oliphant ("Oliphant") and Greystone CDE, LLC, dated as of December 20, 2006, that was attached as an exhibit to Greystone CDE, LLC's FAC filed in the New York Action on October 5, 2007.

6.     Attached hereto as Exhibit 3D is a true and correct copy of the Partner Guaranty, Pledge and Security Agreement by and between Santa Fe Pointe, Management, LLC and Oliphant, on the one hand, and Greystone CDE, LLC, dated as of December 20,

*30*

1  2006, that was attached as an exhibit to Greystone CDE, LLC's FAC filed in the New

2  York Action on October 5, 2007.

3      7.      Attached hereto as Exhibit 3E is a true and correct copy of the Developer

4  Limited Guaranty, Pledge and Security Agreement by and between RANT, LLC and

5  Greystone CDE, LLC, dated as of December 20, 2006, that was attached as an exhibit to

6  Greystone CDE, LLC's FAC filed in the New York Action on October 5, 2007.

7      8.      Attached hereto as Exhibit 3F is a true and correct copy of the Assignment

8  of Project Documents from Santa Fe Pointe to Greystone CDE, LLC, dated as of

9  December 20, 2006, that was attached as an exhibit to Greystone CDE, LLC's FAC filed

10  in the New York Action on October 5, 2007.

11      9.      Attached hereto as Exhibit 3G is a true and correct copy of the Bridge

12  Promissory Note by and between Greystone CDE, LLC and Santa Fe Pointe, LP, dated as

13  of December 20, 2006, that was attached as an exhibit to Greystone CDE, LLC's FAC

14  filed in the New York Action on October 5, 2007.

15      10.     Attached hereto as Exhibit 3H is a true and correct copy of the Allonge To

16  Bridge Promissory Note dated June 29, 2006, that was attached as an exhibit to Greystone

17  CDE, LLC's FAC filed in the New York Action on October 5, 2007.

18      11.     Attached hereto as Exhibit 3I is a true and correct copy of the Notice of

19  Default letter sent via Federal Express on August 21, 2007 by Greystone Servicing

20  Corporation, Inc. to Santa Fe Pointe, LP, Santa Fe Pointe, Management, LLC, RANT

21  LLC (collectively, the "Santa Fe entities") and Oliphant, which was attached as an exhibit

22  to Greystone CDE, LLC's FAC filed in the New York Action on October 5, 2007.

23      12.     Attached hereto as Exhibit 3J is a true and correct copy of the Notice of

24  Acceleration letter sent via overnight delivery and e-mail on September 18, 2007 by

25  Greystone Servicing Corporation, Inc. to Santa Fe Pointe, LP, Santa Fe Pointe,

26  Management, LLC, RANT LLC (collectively, the "Santa Fe entities") and Oliphant,

27  which was attached as an exhibit to Greystone CDE, LLC's FAC filed in the New York

28  Action on October 5, 2007.                                                    31

1    13.    Attached hereto as Exhibit 4 is a true and correct copy of the Service of

2 Process Transmittal from CT Corporation to Greystone reflecting the receipt stamp of

3 September 27, 2007.

4    14.    Attached hereto as Exhibit 5 is a true and correct copy of Greystone CDE,

5 LLC's Complaint filed in the New York Action on September 26, 2007 (exhibits omitted).

6    15.    On or about November 7, 2007 I accessed the website at

7 http://www.gotolawfirm.com/theo_oliphant.php and printed the "attorney profile" of Theo

8 T. Oliphant, a true and correct copy of which is attached hereto as Exhibit 6.

9    I declare under penalty of perjury under the laws of the United States that the

10 foregoing is true and correct, and that this declaration was executed in Los Angeles,

11 California on November 7, 2007.

12

13

14                                            Erik K. Swanholt

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C 07-05454 JCS

**EXHIBIT 3**

Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

Greystone CDE, LLC,                                              Docket No. 07 civ. 8377 (RPP)

                                    Plaintiff,

                - against -
Sante Fe Pointe, L.P.,
Sante Fe Pointe Management, LLC,                      **FIRST AMENDED COMPLAINT**
Rant LLC, and                                                         **AS OF RIGHT**
Theotis F. Oliphant

                                    Defendants.
------------------------------------------------------------X

Plaintiff, Greystone CDE, LLC, ("plaintiff") files this complaint against defendants, Sante Fe

Pointe L.P., Sante Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant, upon

knowledge with respect to itself and its own acts, and upon information and belief with respect to all

other persons and matters, plaintiff, by its attorneys, respectfully alleges:

### NATURE OF THE ACTION

This action arises out of defendants' breach of a loan agreement, loan documents and a

note to make payment when due, and the failure of defendants, Sante Fe Pointe Management,

LLC, Rant LLC and Theotis F. Oliphant, as guarantors, to make payment when due. Plaintiff

brings suit to recover damages suffered as a result of these actions.

**Exh. 3, Page 33**

1

## PARTIES

1.    Plaintiff is a limited liability company duly organized and existing under the laws of the State of Delaware authorized to do business in New York with an office at 152 West 57th St., 60th floor, New York, NY 10019. Its members are Greystone Development Corp. and Greystone Funding Corp., both duly organized and existing under the laws of Virginia.

2.    At all times relevant hereto, Sante Fe Pointe L.P. was and is a limited liability partnership organized and existing under the laws of the State of Oklahoma, with its principal offices at 16416 Oconee Creek Drive, Edmond, OK 73013. Its Partner is Sante Fe Pointe Management, LLC whose managing member is a citizen of California.

3.    At all times relevant hereto, Sante Fe Pointe Management, LLC, was and is a limited liability company organized and existing under the laws of the State of Oklahoma, with an address at 16416 Oconee Creek Drive, Edmond, OK 73013. Its managing member is a citizen of California.

4.    At all relevant times hereto, Theotis F. Oliphant was and is an individual and a citizen of the State of California with an address at 113 Carmel Avenue, El Cerrito, CA 94530.

5.    At all times relevant hereto, Rant LLC was and is a limited liability company organized and existing under the laws of the State of Delaware, with an address at 113 Carmel Avenue, El Cerrito, CA 94530, and is an affiliate of Sante Fe Pointe, L.P. Its managing member is a citizen of California.

## JURISDICTION AND VENUE

6.    The matter in controversy exclusive of interest and costs exceeds seventy five thousand ($75,000.00) dollars.

7.    The court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 (a) (2), in that there is complete diversity between the parties.

8.    Personal jurisdiction in this forum has been contractually agreed upon.

## BACKGROUND

9.    On or about December 20, 2006,  for good and valuable consideration, Greystone CDE, LLC, as lender (hereinafter "plaintiff" and/or "Lender") entered into a Bridge Loan Agreement (the "the Loan Agreement") with defendant Santa Fe Pointe L.P., as Borrower, (hereinafter "Borrower" and/or "defendant") in the maximum principal amount of $500,000 (the "Loan") to finance predevelopment expenses of an affordable housing development to be known as the Sante Fe Pointe Apartments located at 125 SW 74th St., Oklahoma City, OK which was to be developed and owned by Borrower, (hereinafter the "Project").  A copy of the Loan Agreement is annexed hereto and hereby made a part hereof as exhibit "A."

10.    Prior thereto, on or about July 12, 2006, defendant Rant LLC (hereinafter "Rant" and/or "Guarantor" and/or "defendant") had entered into a certain Contract for Sale of Real Estate, dated July 12, 2006, as amended by Addendum #1, for the purchase by Rant of the Project real estate from Walnut Creek Apartments, Inc., (hereinafter the "Purchase Agreement").   The Purchase Agreement provided for a Closing to occur not later than March 31, 2007 which was extendable under certain conditions.

11.    A condition, among others, of the Loan Agreement between plaintiff and Borrower was that the Purchase Agreement be assigned from Rant LLC to Borrower. On or about December 20, 2006, that assignment was made.

12.    Another condition, among others, of the Loan Agreement was that Borrower's security interest in and to all of Borrower's right, title and interest in the Purchase Contract be assigned to plaintiff.  On or about December 20, 2006, that assignment was made.  A copy of the

Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, is annexed hereto and hereby made a part hereof as exhibit "B."

13.     On or about December 20, 2006, for good and valuable consideration , Lender entered into a Guaranty and Suretyship Agreement (hereinafter "Guaranty") with defendant Theotis F. Oliphant (hereinafter "Oliphant" and/or "Guarantor" and/or "defendant") whereby Oliphant, *inter alia,* unconditionally and irrevocably guaranteed and became a surety to Lender, for the due, punctual and full payment and performance of Borrower's obligations evidenced by the Loan Agreement and/or incurred under the Loan Documents, (as defined in the Loan Agreement) both principal and interest, and any refinancing or refunding of any thereof, and all other amounts due or to become due under the Loan Agreement and the other Loan Documents.  A copy of the Guaranty is annexed hereto and hereby made a part hereof as exhibit "C."

14.     On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe Management , LLC, which is a General Partner of Sante Fe Pointe L.P. (hereinafter the "General Partner" and/or "defendant" and/or "Guarantor") and Oliphant, who is a Limited Partner of Sante Fe Pointe, L.P., as Pledgors, (hereinafter alternately referred to as the "Partners") entered into a Partner Guaranty, Pledge and Security Agreement with Lender whereby *inter alia* the General Partner absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of any and all payment obligations and other covenants and obligations of Borrower to Lender in the Loan Documents; and Oliphant, as Limited Partner, reaffirmed his obligations under the Guaranty.  A copy of the Partner Guaranty, Pledge and Security Agreement with Lender (hereinafter alternately referred to as the "Partner Pledge") is annexed hereto and hereby made a part hereof as exhibit "D."

15.     On or about December 20, 2006, for good and valuable consideration, Rant entered into a Developer Limited Guaranty, Pledge and Security Agreement with Lender wherein, *inter alia,* Rant (hereinafter alternatively referred to as "Developer") absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of its obligations to Lender under the Loan Documents. A copy of the Developer Limited Guaranty, Pledge and Security Agreement (hereinafter alternatively referred to as "Developer Fee Pledge") is annexed hereto and hereby made a part hereof as exhibit "E."

16.     On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. assigned the Project Documents to Lender, and Rant LLC assigned the Construction Contract to Sante Fe Pointe L.P. A copy of the Assignment of Project Documents and the Assignment and Assumption of Construction Contract is annexed hereto and hereby made a part hereof as exhibit "F."

17.     On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. executed and delivered to plaintiff a Bridge Promissory Note ("Note") a Specimen copy of which is annexed hereto and hereby made a part hereof as exhibit "G."

18.     On or about June 29, 2007, for good and valuable consideration, Sante Fe Pointe L.P. executed an Allonge to Bridge Promissory Note whereby the Maturity Date of the Note was amended to be December 15, 2007, and Lender gave its consent thereto. A copy of the Allonge and the Consent is annexed hereto and hereby made a part hereof as exhibit "H."

19.     By the Note, Sante Fe Pointe L.P. promised to pay to plaintiff on the earlier of December 15, 2007, or upon an Event of Default, (as defined in the Loan Agreement) the sum of $500,000 with interest.

20.    On or about August 21, 2007, defendants were notified that they were in default of their obligations under the instruments annexed hereto as exhibits "A" – "F." This Notice of Default is annexed hereto as exhibit "I" and read as follows:

August 21, 2007

**VIA EMAIL AND FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of
       December 20, 2006 between Greystone CDE, LLC (the "Lender")
       and the Borrower

Ladies and Gentlemen:

       The purpose of this letter is to notify you that you are in default in respect of the loan from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan Agreement").  Capitalized terms used herein and not defined herein shall have the meanings ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)     pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the contract for purchase and sale of the Project without the same having been extended;

(b)     pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or expiration of the commitment to provide the equity investment in the Project;

(c)     pursuant to Section 9.1(k) of the Bridge Loan Agreement, the occurrence of changes in the operation, prospects and financial condition of the Borrower which, in our reasonable judgment materially adversely affect the ability of the Borrower to repay the Note and perform its other obligations under the Bridge Loan Documents, including, without limitation, the expiration without extension of the contract for purchase and sale of the Project, the failure to obtain and maintain a commitment to provide the equity investment in the Project, the deterioration of the physical condition of the Project and the lack of progress in advancement of the application for HUD financing due to unavailability of information required to be provided by the Borrower;

(d)     pursuant to Section 3.06(d) of the Guaranty, the occurrence of the foregoing events of default under the Bridge Loan Agreement;

(e)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(b) of the Guaranty requiring the Guarantor to provide the Lender with notice of the foregoing, which constitute material adverse changes in the business, operations, conditions (financial or otherwise) or prospects of the Guarantor; and

(f)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(a) of the Guaranty requiring the Guarantor to provide the Lender with (i) copies of the Guarantor audited annual financial statements on or before January 20, 2007 and (ii) a copy of the Guarantor's federal income tax return within ten (10) days of the filing thereof.

You are hereby further notified of the following breaches of covenants contained in the Bridge Loan Documents which, if not cured within thirty (30) days of the date of this notice, will constitute additional Events of Default pursuant to Section 9.1(b) of the Bridge Loan Agreement:

1.  under Section 7.1(a) of the Bridge Loan Agreement, failure to provide annual financial statements of the Borrower for the year ended December

31, 2007, certified by an independent certified public accountant, on or before April 30, 2007;

2.  under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the borrower for the quarter ended March 31, 2007, on or before May 15, 2007;

3.  under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the Borrower for the quarter ended June 30, 2007, on or before August 15, 2007;

4.  under Section 7.5(e) of the Bridge Loan Agreement, failure of the Borrower to notify the Lender of the Events of Default described herein and the other events described herein which, with the giving of notice or the passage of time or both, would constitute Events of Default;

5.  under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

6.  under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

7.  under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

8.  under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

9.  under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

10. under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

8

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions, representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC


## COUNT I
## AGAINST SANTE FE POINTE, L.P.
### (Breach of Contract)

21.    The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

22.     Upon an Event of Default (as defined in the Loan Agreement) the indebtedness evidenced by the Note became due and payable.

23.     Plaintiff's Notice of Default is a non-exhaustive description of Events of Default (as defined in the Loan Agreement) which have occurred herein as of the date of the Notice of Default.

24.     On September 18, 2007, plaintiff gave defendant Notice of Acceleration of the Note. A copy of the Notice of Acceleration is annexed hereto and hereby made a part hereof as exhibit "J."

25.     Defendant has failed and refused to pay the indebtedness due.

26.     Plaintiff has been damaged as a result of defendant's failure to pay the Note as agreed.

27.     By reason of the foregoing, plaintiff is owed not less than $534,594.51 as of September 18, 2007.

28.     It has been, and is, necessary for plaintiff to institute this action for collection of the amounts due under the Note and plaintiff has been compelled to and has employed attorneys to institute and prosecute this action and is entitled to its reasonable attorneys' fees and costs.

## COUNT II
## AGAINST ALL THE DEFENDANTS
(Breach of Contract)

29.     The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

30.     A condition among others of the Loan Agreement was that Borrower not default on the Purchase Contract.

31.     In the Purchase Contract, borrower, as assignee, committed itself to provide equity investment in the Project by a date certain.

32.    A further condition of the Loan Agreement was that Borrower not default on its commitment to provide equity in the Project by a date certain.

33.    A further condition among others of the Loan Agreement was that there be no change in the financial condition of Borrower or any of the defendants herein which might adversely affect its/their ability to perform its/their obligations under the Loan Agreement.

34.    On or about September 10, 2007, defendants Rant and Sante Fe Pointe, L.P. executed Addendum #3 to the Purchase Contract which purported to extend the Purchase Contract through October 15, 2007 and provided for Buyer extension options with additional earnest money following October 15, 2007.

35.    Section 4, headed "Negative Covenants," of the Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, (previously annexed as exhibit "B") provides in pertinent part that "Borrower shall not …(b) amend or modify any of the terms of the Purchase Agreement, except with the prior written consent of the Lender; (c) terminate or give or join in any material waiver, consent or approval with respect to the Purchase Agreement, except with the prior written consent of the Lender; …(f) take any other action in connection with the Purchase Agreement which would materially impair the value of the rights or interests of the Borrower or the Lender whereunder or therein without the prior written consent of the Lender (to be granted or withheld in the Lender's sole discretion);…"

36.    Defendants Rant and Sante Fe Pointe L.P. neither requested, nor were granted, plaintiff's consents as provided above.

37.    Defendants have not cured the defaults itemized 1-10 in the Notice of Default and their time to cure has expired.

38.    Plaintiff has duly performed any and all conditions on its part to be performed, including disbursement of the Loan.

39.    No part of the Loan disbursed by plaintiff to Borrower, or for its benefit, has been repaid, although duly demanded.

40.    Defendants, and each of them, have breached, and are continuing to breach their respective obligations under the instruments annexed hereto and under the Bond Documents.

41.    By reason of the foregoing, plaintiff is owed not less than $484,950.75 plus interest, costs and attorneys' fees.


### COUNT III
### AGAINST ALL THE DEFENDANTS
(Breach of Contract)


42.    The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

43.    All covenants, agreements obligations and liabilities of the Borrower are a direct and primary obligation of the Guarantor pursuant to the Guaranty, the Partners pursuant to the Partner Pledge, and the Developer pursuant to the Developer Fee Pledge, and each of Guarantor's, Partners' and Developer's obligations are not as a surety. These defendants' respective guarantees are of payment and performance and not of collection. Their obligations are continuing, absolute and unconditional, irrespective of any circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety.

44.    The Guarantor, the Partners and the Developer unconditionally and irrevocably waived any rights and defenses they have, had, or will have, in respect of the causes of action alleged herein.

45.    By reason of the foregoing, plaintiff is owed $534,594.51 plus interest, costs and attorneys' fees.

*WHEREFORE*, plaintiff demands judgment as follows:

a)  On Count I against Sante Fe Pointe L.P. not less than  $534,594.51;

b)  On Count II against all the defendants, jointly and severally, not less than $484,950.75;

c)  On Count III against all the defendants, jointly and severally, not less than $534,594.51;

d)  Awarding plaintiff the cost of this action, including attorneys' fees as permitted pursuant to the instruments at issue and applicable law;

e)  Awarding plaintiff pre-and post-judgment interest;

f)  Granting such other relief as the court deems just and proper.


Dated:        New York, New York
              October 5, 2007


                              Harnik Wilker & Finkelstein LLP


                              by: Stephen M. Harnik, Esq. (SH 9889)
                              Attorneys for Plaintiff
                              Greystone CDE, LLC
                              645 Fifth Avenue, 7th Floor
                              New York, NY 10022
                              (212) 599-7575