#155242 v3

ASSIGNMENT OF PROJECT DOCUMENTS

from

SANTA FE POINTE, L.P.,

to

GREYSTONE CDE, LLC

Dated as of December 20, 2006

## ASSIGNMENT OF PROJECT DOCUMENTS

This ASSIGNMENT OF PROJECT DOCUMENTS (as amended, modified or supplemented from time to time, this "**Assignment**"), dated as of December 20, 2006, made by SANTA FE POINTE, L.P., a limited partnership duly organized, validly existing and in good standing under the laws of the State of Oklahoma (together with its permitted successors and assigns, the "**Borrower**"), to GREYSTONE CDE, LLC, a limited liability company duly organized and validly existing under the laws of the State of Delaware (together with its successors and assigns, the "**Assignee**"),

### W I T N E S S E T H :

WHEREAS, the Assignee has made a $500,000.00 loan to the Borrower (the "**Loan**") pursuant to a Bridge Loan Agreement dated as of December 20, 2006 (as amended, modified or supplemented from time to time, the "**Loan Agreement**") to fund the costs of acquiring certain land located at 125 SW 74th Street in Oklahoma City, Oklahoma, and the site improvements located thereon (the "**Project**");

WHEREAS, the Borrower has entered into certain Bond Documents (as defined in the Loan Agreement) pursuant to which, upon the satisfaction of certain conditions, the Borrower has the right to receive disbursement of the proceeds of the Bonds for the purpose of paying a portion of the costs of acquisition and rehabilitation of the Project;

WHEREAS, the Assignee expects to enter into a letter of intent, commitment letter or similar instrument pursuant to which an investor will agree, upon the satisfaction of certain conditions, become a limited partner in Borrower and make certain equity contributions to Borrower (the "**Capital Contribution Documents**");

WHEREAS, the Borrower has entered into an Architect's Agreement dated October 5, 2006 (as the same may be amended, modified or supplemented from time to time, the "**Architect's Agreement**") with Elliott Architects, Inc. (the "**Architect**"), pursuant to which the Architect has produced plans for the rehabilitation of the Project (the "**Plans**");

WHEREAS, the Borrower's predecessor has entered into a Construction Contract dated September 14, 2006 (as the same may be amended, modified or supplemented from time to time, the "**Construction Contract**") with Wattsco L.L.C. (the "**General Contractor**"), which Construction Contract has been assigned to the Borrower;

WHEREAS, in connection with the rehabilitation and operation of the Project, the Borrower has obtained certain approvals and permits (the "**Project Permits**");

WHEREAS, in connection with the operation of the Project, the Borrower uses or plans to use certain marketing materials, including logos, tradenames and trademarks ( the "**Marketing Materials**").

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, and in order to secure the

Borrower's performance of its obligations to Assignee under the Loan Documents, including payment of all amounts due or to become due to Assignee under the Loan Agreement and the other Loan Documents, and any extensions, renewals, replacements or modifications of any thereof, the Borrower agrees as follows:

      1.    <u>Assignment; Security Interests</u>.  The Borrower hereby assigns and transfers to the Assignee, and hereby creates in favor of Assignee a security interest in and to, all of the Borrower's right, title and interest in and to the following: (a) the Bond Documents; (b) the Capital Contribution Documents, (c) the Architect's Agreement; (d) the Construction Contract; (e) the Management Agreement; (f) the Project Permits; (g) the Marketing Materials, including the tradenames and trademarks; (h) any and all other contracts, agreements, plans, licenses, permits or other items, whether now or hereafter executed, granted, received, acquired or issued to or by the Borrower in connection with the rehabilitation, ownership, management, development or operation of the Project; and (i) all proceeds and products thereof, and all accounts, contract rights and general intangibles related to the foregoing (all of the foregoing being hereinafter sometimes referred to collectively as the **"Project Documents"**).  This Assignment is given as collateral security only, and so long as no Event of Default has occurred and is continuing, the Borrower shall have and may exercise all rights as owner or holder of the Project Documents which are not inconsistent with the provisions of the Loan Documents.

      2.    <u>Representations and Warranties</u>.  The Borrower hereby represents and warrants to Assignee that (a) the Borrower has not assigned, transferred, mortgaged, pledged or otherwise encumbered any of its right, title and interest in, to and under the Project Documents and no part of such right, title and interest is subject to any lien or other encumbrance, except in favor of Assignee; (b) the Bond Documents, the Architect's Agreement and the Construction Contract have not been amended, modified or supplemented; (c) the Borrower has paid all sums required to be paid by it prior to the date hereof under the terms of the Bond Documents, the Architect's Agreement and the Construction Contract; (d) no default exists by the Borrower under the Bond Documents, the Architect's Agreement or the Construction Contract, and (e) no default exists by the Architect under the Architect's Agreement or by the General Contractor under the Construction Contract.

      3.    <u>Affirmative Covenants</u>.  The Borrower hereby covenants with the Assignee that the Borrower shall (a) the Borrower shall afford Assignee a reasonable opportunity to review a draft of the Capital Contribution Documents prior to execution and delivery thereof and will provide Assignee with a copy thereof once the same have been executed and delivered; (b) perform and observe all covenants and agreements to be performed and observed by the Borrower under the Bond Documents, the Capital Contribution Documents, the Architect's Agreement, the Construction Contract and the Management Agreement and the Project Permits; (c) enforce, short of termination, the performance and observance of all covenants and agreements to be performed or observed by the contracting parties under the Bond Documents, the Capital Contribution Documents, the Architect's Agreement, the Construction Contract and the Management Agreement; (d) appear in and defend any action or proceeding arising out of or in connection with any of the Project Documents; and (e) promptly give Assignee copies of any notices of default given or received by the Borrower under any of the Project Documents.

4.    <u>Negative Covenants</u>.  The Borrower hereby covenants with Assignee that the Borrower shall not (a) assign, transfer, mortgage, pledge or otherwise encumber, or permit to accrue or suffer to exist any lien or other encumbrance on or in, any of the right, title and interest of the Borrower in, to and under the Project Documents except in favor of the Assignee; (b) amend or modify any of the terms of the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract or any part of the Plans; (c) terminate the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract or give or join in any material waiver, consent or approval with respect to the Bond Documents, the Capital Contribution Documents, the Construction Contract or the Architect's Agreement; (d) settle or compromise any material claim against the Architect or the General Contractor; (e) waive any default under or material breach of the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract; or (f) take any other action in connection with the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the General Contract or the Project Permits which would materially impair the value of the rights or interests of the Borrower or the Assignee thereunder or therein.

5.    <u>Recognition of Assignee</u>.  The Borrower hereby irrevocably directs the contracting party to, or the grantor of, any Project Document, whether specifically described herein or otherwise, to the extent not prohibited by such Project Document or applicable law, upon request of the Assignee to recognize and accept the Assignee as the holder of such Project Document for any and all purposes.  The Borrower does hereby irrevocably constitute and appoint the Assignee, for so long as this Assignment remains in effect, as its true and lawful attorney, after the occurrence of an Event of Default to demand and enforce compliance with the terms and conditions of the Project Documents and all benefits thereunder.

6.    <u>Right of Assignee To Cure Borrower Defaults</u>.  If the Borrower shall fail to pay, perform or observe any of its covenants or agreements hereunder, the Assignee may pay, perform or observe the same and collect the cost thereof, which costs shall be secured by the Mortgage.

7.    <u>Assignee Not Liable; Indemnification</u>.  Anything contained herein or in any of the Project Documents to the contrary notwithstanding; (a) the Borrower shall at all times remain solely liable under the Project Documents to perform all of the obligations of the Borrower thereunder to the same extent as if this Assignment had not been executed; (b) neither this Assignment nor any action or inaction on the part of the Borrower, the Assignee shall release the Borrower from any of its obligations under the Project Documents or constitute an assumption of any such obligation or liability under the Project Documents or otherwise by reason of or arising out of this Assignment, nor shall the Assignee be required or obligated in any manner to make any payment or perform any other obligation of the Borrower under or pursuant to the Project Documents, or to make any inquiry as to the nature or sufficiency of any payment received by the Assignee, or to present or file any claim, or to take any action to collect or enforce the payment of any amounts which have been assigned to the Assignee or to which it may be entitled at any time or times.  The Borrower shall and does hereby agree to indemnify the Assignee and hold it harmless from and against any and all liability, loss or damage which it might incur, and from and against any and all claims and demands whatsoever which may be asserted against it, in connection with or with respect to the Project Documents or this Assignment, whether by

4

reason of any alleged obligation or undertaking on its part to perform or discharge any of the covenants or agreements contained in the Project Documents or otherwise. Should the Assignee incur any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys fees, shall be paid by the Borrower to the Assignee immediately upon demand, together with interest thereon (as set forth in the Loan Agreement) until paid.

8.    Default. If an Event of Default shall occur, the Assignee may perform any of the obligations and exercise any of the rights, powers, privileges and remedies of the Borrower, and do any and all acts, matters and other things that the Borrower is entitled to do, under or with respect to the Project Documents, including, without limitation, enforcing the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract and paying, settling or compromising any existing bills or claims thereunder.

9.    Further Assurances. From time to time upon the request of the Assignee, the Borrower shall promptly and duly execute, acknowledge and deliver any and all such further instruments and documents as the Assignee may deem reasonably necessary or desirable to carry out the purpose and intent of this Assignment or to enable Assignee to enforce any of its rights hereunder.

10.    Amendments, Waivers, Etc. This Assignment cannot be amended, modified, waived, changed, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of such amendment, modification, waiver, change, discharge or termination is sought.

11.    No Implied Waiver; Cumulative Remedies. No course of dealing and no delay or failure of the Assignee in exercising any right, power or privilege under this Assignment or any other Loan Documents shall affect any other or future exercise thereof or exercise of any other right, power or privilege; nor shall any single or partial exercise of any such right, power or privilege or any abandonment or discontinuance of steps to enforce such a right, power or privilege preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies of the Assignee under this Assignment are cumulative and not exclusive of any rights or remedies which the Assignee would otherwise have under the other Loan Documents, at law or in equity.

12.    Notices. All notices, requests, demands, directions and other communications under the provisions of this Assignment shall be sent pursuant to and subject to the provisions of the Loan Agreement.

13.    Termination; Survival. Provided there has occurred no Default or Event of Default under the Loan Documents, the Assignee shall terminate this Assignment and release the security interests granted hereunder upon final payment in full of all amounts owed under the Loan Agreement. Notwithstanding the foregoing the indemnities contained herein, including the indemnity set forth in Section 7 hereof, shall survive such termination.

14.    Severability. If any term or provision of this Assignment or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Assignment, or the application of such term or provision to persons or

circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Assignment shall be valid and enforceable to the fullest extent permitted by law.

15.     Governing Law. This Assignment shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to its conflicts of laws, principles, except as otherwise required by mandatory provisions of law and except to the extent that the UCC provides that the validity or perfection of security interests hereunder, or remedies hereunder in respect of any particular collateral are governed by the laws of a jurisdiction other than the State of New York.

16.     Successors and Assigns. This Assignment shall bind the Borrower and its successors and assigns, and shall inure to the benefit of the Assignee and its successors and assigns.

IN WITNESS WHEREOF, the Borrower has duly executed and delivered this Assignment of Project Documents as of the date first above written.

SANTA FE POINTE, L.P., an Oklahoma limited partnership

By:     SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

By: _____

Name: Theotis F. Oliphant

Date: 12/20/2006

155740v1

## ASSIGNMENT AND ASSUMPTION OF
## CONSTRUCTION CONTRACT

FOR VALUE RECEIVED, RANT, LLC ("Assignor") hereby assigns, transfers and sets over to SANTA FE POINTE, L.P., an Oklahoma limited liability company ("Assignee"), without recourse or warranty of any kind whatsoever, all right, title and interest of Assignor in and to that certain Standard Form of Agreement Between Owner and Contractor, dated as of September 14, 2006, between Assignor, as the Owner, and Wattsco L.L.C., as the Contractor, relating to Santa Fe Point Apartments (the "Agreement"). Assignee hereby acknowledges receipt of a copy of the Agreement and accepts such assignment and agrees to assume all of the responsibilities and obligations of Assignor under the Agreement.

Dated: December 19, 2006

RANT, LLC

By: _Theotis F. Oliphant_
Name: Theotis F. Oliphant
Title: Managing Member


SANTA FE POINTE, L.P., an Oklahoma
limited partnership

By:     SANTA FE POINTE
        MANAGEMENT, LLC, an
        Oklahoma limited liability company,
        its general partner

By: _Theotis F. Oliphant_
Name: Theotis F. Oliphant
Title: Managing Member

**Exh. _3F_, Page 177**

# A1A    Document A101

## Standard Form of Agreement Between Owner and Contractor
### where the basis of payment is a STIPULATED SUM

AGREEMENT made as of the    14th                                    day of    September
in the year of    2006
*(In words, indicate day, month and year)*    September, Fourteen, Two Thousand and Six

BETWEEN the Owner:
*(Name, address and other information)*
Rant, L.L.C.
113 Carmel Avenue
El Cerrito, Ca
94530
Theo Oliphant, Managing Member

and the Contractor:
*(Name, address and other information)*
Wattsco L.L.C.
1820 East Cavanaugh
El Reno, Oklahoma
73036
Danny Watts, Managing Member

The Project is:
*(Name and location)*
Santa Fe Point Apartments
125 SW 74th Street
Oklahoma City, Oklahoma

The Architect is:
*(Name, address and other information)*
Larry Blackledge & Associates

The Owner and Contractor agree as follows.

A1A A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. A1A is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to A1A. Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with A1A Forms and Standards.

SEP 15,2006 13:18    Watts Danny G

Exh. *3F*, Page 178

## ARTICLE 1  THE CONTRACT DOCUMENTS

The Contract Documents consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein.  The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral.  An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

## ARTICLE 2  THE WORK OF THIS CONTRACT

The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

## ARTICLE 3  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
Commencement Date will begin within 10 days of "Notice to Proceed" issuance

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:
N/A

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than                300        days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*
One Hundred Dollars ($100.00) per day will be charged for failure to complete on time and the same will apply to complete early

## ARTICLE 4  CONTRACT SUM

§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract.  The Contract Sum shall be        Three Million Five Hundred Seventy Five Thousand and Fourty        Dollars
($        3,575,040.00        ), subject to additions and deductions as provided in the Contract Documents.

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA.

SEP 15,2006 13:18  Watts Danny G

**Exh. _3F_, Page 179**

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:

*(State the numbers or other identification of accepted alternates. If decisions on other alternatives are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternatives showing the amount for each, and the date when that amount expires)*

§ 4.3 Unit prices, if any, are as follows:

## ARTICLE 5 PAYMENTS
## § 5.2 PROGRESS PAYMENTS

§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:
Twice per Month, or as follows:

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the          1st and 15th day of month, the Owner shall make payment to the Contractor not later than the                    15th and 30th the     same                                                      month. If an application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than                    Fifteen        (     15     )     days after the Architect receives the Application for Payment.                                                                       day of

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The Schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark.
Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA.
Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

SEP 15,2006 13:19  Watts Danny G


Exh. 3F, Page 180

**§ 5.1.6** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1    Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of percent (    5    %).  Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

.2    Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of percent (    0    %) percent;

.3    Subtract the aggregate of previous payments made by the Owner; and

.4    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.

**§ 5.1.7** The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

.1    add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
*(Section 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)*

.2    add, if final completion of Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201-1997.

**§ 5.1.8** Reduction or limitation of retainage, if any, shall be as follows:
*(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)*
Upon substantial completion retainage shall be reduced to 0%

**§ 5.1.9** Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**§ 5.2 FINAL PAYMENT**
**§ 5.2.1** Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1    the Contractor has fully performed the Contract except for the Contractor's responsibility to correct Work as provided in section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2    a final Certificate for Payment has been issued by the Architect.

**§ 5.2.2** The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

**ARTICLE 6  TERMINATION OR SUSPENSION**
**§ 6.1** The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

**§6.2** The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA. Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

SEP 15,2006 13:19  Watts Danny G

**Exh. 3F, Page 181**

## ARTICLE 7  MISCELLANEOUS PROVISIONS

§ 7.1 Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Documents, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 7.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located. *(Insert rate of interest agreed upon, if any.)*
10%

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision.  Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§7.3 The Owner's representative is:
*(Nam, address and other information)*
Theo Oliphant, Managing Member
113 Carmel Avenue
El Cerrito, Ca 94530

§7.4 The Contractor's representative is:
*(Name, address and other information)*
Danny Watts, Managing Member
1820 E. Cavanaugh
El Reno, Oklahoma 73036

§ 7.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ 7.6 Other provisions:

AIA A101, Copyright 2006 by Computerized-aia-g702-g703-payment-software.com.  AIA is a Registered Trademark.  Computerized-aia-g702-g703-payment-software.com.  Is not affilated with this or this organization and makes no claims to AIA  Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

Exh. *3F*, Page 182

## ARTICLE 8  ENUMERATION OF CONTRACT DOCUMENTS

§ 8.1 The Contract Documents, except for Modifications issued after execution of this AGREEMENT, ARE ENUMERATED AS follows:

§ 8.1.1 The Agreement is this executed 1997 edition of the Standard Form of AGREEMENT Between Owner and Contractor, AIA Document A101-1997.

§ 8.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

§ 8.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project manual dated September 14th 2006        , and are as follows.

| Document | Title | Pages |
|----------|-------|-------|
| Construction Budget | Construction Budget | 1 |

§ 8.1.4 The Specifications are those contained in the Project Manual dated as in Section 8.1.3, and are as follows:
*(Either list the Specifications here or refer to an exhibit attached to this Agreement.)*

| Document | Title | Pages |
|----------|-------|-------|

§ 8.1.5 The Drawings are as follows, and are dated        below:                                                          unless a different date is shown
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Document | Title | Date |
|----------|-------|------|

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA.

Exh. _3F_, Page 182A

§ 8.1.6 The Addenda, if any, are as follows:

Number                                Date              ; Pages

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

§ 8.1.7 Other documents, if any, forming part of the Contract Documents are as follows:
*List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)*

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

RANT, LLC

OWNER (Signature)                              CONTRACTOR (Signature)

Theo Oliphant, Managing Member                 Danny Watts, Managing Member
(Printed name and title)                       (Printed name and title)

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claim to AIA Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

Exh. 3F, Page 183

**Exhibit 3G**

#155241v2

## BRIDGE PROMISSORY NOTE

$500,000.00                                                                   December 20, 2006

FOR VALUE RECEIVED, **SANTA FE POINTE, L.P.**, a limited partnership duly organized, validly existing and in good standing under the laws of the State of Oklahoma (together with its successors and assigns, the "**Borrower**"), hereby promises to pay to the order of **GREYSTONE CDE, LLC**, a limited liability company organized and existing under the laws of the State of Delaware (together with its successors and assigns, the "**Lender**"), or its successors and assigns, at its principal office at 419 Belle Air Lane, Warrenton, Virginia 20186, or at such other address designated in writing by the Lender, the principal sum of Five Hundred Thousand and No/100 Dollars ($500,000.00) (the "**Loan Amount**"), or so much thereof as shall have been disbursed in accordance with and as shall be then outstanding under the Loan Agreement (as hereinafter defined), in lawful money of the United States of America, payable on the dates and in the amounts set forth in the Bridge Loan Agreement dated December 20, 2006 between the Borrower and the Lender (the same may be further amended, modified or supplemented from time to time, the "**Loan Agreement**"), and to pay interest on the full Loan Amount (whether or not disbursed) at such office in like money, as set forth below and in the Loan Agreement. Capitalized terms used herein shall have the respective meanings assigned to them in the Loan Agreement.

This Bridge Loan Promissory Note is the "Note" referred to in the Loan Agreement and evidences a Loan made by the Lender thereunder. This Note is subject to the terms of the Loan Agreement and is secured by the Loan Documents, as more fully set forth in the Loan Agreement, which terms are incorporated herein by reference and made a part hereof.

This Note shall bear interest on the Loan Amount (whether or not disbursed) at a variable rate equal to LIBOR plus two and three-quarters percent (2.75%) per annum, accruing on the full Loan Amount (whether or not disbursed) from the Closing Date; provided, however, if this Note is not paid in full on or prior to the end of the Loan Term or when due pursuant to the Loan Agreement or if an Event of Default shall occur hereunder or under any Loan Documents, this Note shall bear interest on the Loan Amount and all other amounts due and owing under the Loan Documents at an annual rate equal to the lesser of twelve percent (12%) per annum or the highest rate permitted by law from and after the date of the Event of Default, the date of mandatory prepayment or the end of the Loan Term, whichever is earlier, until this Note and all other amounts due and owing under the Loan Documents are paid in full or the Event of Default shall have been cured to the satisfaction of the Lender, if sooner. Accrued interest on this Note shall be due and payable on each March 1, June 1, September 1 and December 1, commencing March 1, 2007, until payment in full at the end of the Loan Term or the date of prepayment in full hereof prior to the end of the Loan Term. Interest hereon shall be calculated on the basis of a 360-day year for the actual number of days elapsed. The entire unpaid principal balance and accrued but unpaid interest and any other unpaid sums or fees due under this Note and/or the Loan Documents, if not sooner paid, shall be due and payable on July 1, 2007, unless extended in accordance with the terms of Section 2.4 of the Loan Agreement (the "**Maturity Date**").

Exh. _36_, Page 184

The Loan Agreement provides for the mandatory repayment hereof in accordance with Section 2.6 thereof.

Except as expressly provided in the Loan Agreement or this Note, the undersigned hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and all other notices or demands in connection with the delivery, acceptance, performance, default, endorsement or guaranty of this instrument.

The obligation to make payments hereunder to the Lender hereunder is absolute and unconditional and the rights of any subsequent holder of this Note shall not be subject to any defense, set-off, counterclaim or recoupment which the undersigned may have against the Lender or by reason of any indebtedness or liability at any time owing by the Lender to the undersigned.

Nothing herein is intended to result in interest being charged which would exceed the maximum rate permitted by law.

Should this Note, or any part of the Loan or any other amounts due and owing under the Loan Documents be collected by law or through an attorney-at-law, the Lender shall be entitled to collect all reasonable costs of collection, including, but not limited to, reasonable attorneys' fees.

No delay or omission on the part of the Lender in exercising any remedy, right or option under this Note or the Loan Documents shall operate as a waiver of such remedy, right or option. In any event a waiver on any one occasion shall not be construed as a waiver or bar to any such remedy, right or option on a future occasion. The rights, remedies and options of the Lender under this Note and the Loan Documents are and shall be cumulative and are in addition to all of the rights, remedies and options of the Lender at law or in equity or under any other agreement.

This Note may not be changed orally. The acceptance by the Lender of any amount after the same is due shall not constitute a waiver of the right to require prompt payment, when due, of all other amounts due hereunder. The acceptance by the Lender of any sum in an amount less than the amount due shall be deemed an acceptance on account only and upon condition that such acceptance shall not constitute a waiver of the obligation of the Borrower to pay the entire sum then due, and the Borrower's failure to pay such amount then due shall be and continue to be a default notwithstanding such acceptance of such amount on account, as aforesaid. Consent by the Lender to any action of the Borrower which is subject to consent or approval of the Lender hereunder shall not be deemed a waiver of the right to require such consent or approval to future or successive actions.

All notices hereunder are to be given in the same manner set forth in the Loan Agreement.

Exh. _36_, Page 185
2

This Note is governed by, and is to be construed in accordance with the laws of the State of New York, without regard to New York's choice of law rules. The Borrower hereby submits to personal jurisdiction in the State of New York for the enforcement of the Borrower's obligations hereunder and under the Loan Documents, and waives any and all personal rights under the law of any other state to object to jurisdiction within the State of New York for the purposes of litigation to enforce such obligations of the Borrower. In the event such litigation is commenced, the Borrower agrees that service of process may be made and personal jurisdiction over the Borrower obtained, by service of a copy of the summons, complaint and other pleadings required by applicable law to commence such litigation upon the Borrower's appointed Agent for Service of Process in the State of New York or, if there is no such agent, to Borrower at its notice address set forth in the Loan Agreement.

The Lender may accept additional or substitute security for this Note, or release any security or any party liable for this Note, or extend or renew this Note, all without notice to the Borrower and without affecting the liability of the Borrower.

This Note inures to and binds the heirs, legal representatives, successors and assigns of the Borrower and the Lender; provided, however, that the Borrower may not assign this Note, or assign or delegate any of its rights or obligations hereunder, without the prior written consent of the Lender in each instance. The Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or part of the Loan, on the terms and subject to the conditions of the Loan Documents, all without notice to or the consent of the Borrower. Also, without notice to or the consent of the Borrower, the Lender may disclose to any actual or prospective purchaser of any securities issued or to be issued by the Lender, and to any actual or prospective purchaser or assignee of any participation or other interest in this Note, the Loan or any other loans made by the Lender to the Borrower (whether evidenced by this Note or otherwise), any financial or other information, data, or material in the Lender's possession relating to the Borrower, any other Obligors, the Loan, and/or the Collateral; provided, however, that the Lender shall use commercially reasonable efforts to obtain an undertaking of confidentiality (on customary commercial lending terms) from any prospective purchaser or assignee prior to disclosure of such information. If the Lender so requests, the Borrower will sign and deliver a new note to be issued in exchange for this Note on the same terms and conditions as this Note. Unless and until the Borrower receives written notice from the Lender of the transfer or assignment of this Note, the Borrower may continue to make payments hereunder to the Lender without any liability to the Lender's assignee or transferee.

If any payment made in connection with this Note is, in whole or in part, subsequently invalidated, declared to be fraudulent or preferential, set aside, or required to be repaid or paid over to a trustee, receiver, or any other entity, whether under any bankruptcy act or otherwise (any payment of this type being referred to as a "**Preferential Payment**"), then the indebtedness intended to be satisfied by the Preferential Payment will be revived and continued in full force and effect as if the Preferential Payment had not been made.

The Borrower warrants that the Loan is being made solely to acquire or carry on a business or commercial enterprise, and/or the Borrower is a business or commercial organization. The Borrower further warrants that all of the proceeds of this Note shall be used for commercial purposes and stipulates that the Loan shall be construed for all purposes as a commercial loan, and is made for other than personal, family, household or agricultural purposes.

THE BORROWER WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE BORROWER AND THE LENDER MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO THIS NOTE OR THE LOAN. THIS WAIVER APPLIES TO ALL CLAIMS AGAINST ALL PARTIES, WHETHER OR NOT PARTIES TO THIS NOTE. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE BORROWER AND THE BORROWER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

Time is of the essence with regard to each provision of this Note as to which time is a factor, including payment obligations.

If any provision of this Note shall be prohibited or invalid under applicable law, such provision shall be ineffective but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or any of the remaining provisions of this Note.

WITNESS the execution hereof under seal this ___20th___ day of December, 2006.

SANTA FE POINTE, L.P, an Oklahoma limited partnership

By:   SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

By: _Theotis F. Oliphant_____
Name: Theotis F. Oliphant
Title: Managing Member

SPECIMEN

Santa Fe/Promissory Note

316214993v3

## ALLONGE TO BRIDGE PROMISSORY NOTE

**FOR VALUE RECEIVED**, this ALLONGE TO BRIDGE PROMISSORY NOTE (the "Allonge") is made on and as of June 29, 2007 and shall be effective as of that date from SANTA FE POINTE, L.P., a limited partnership duly organized, validly existing and in good standing under the laws of the State of Oklahoma (the "Borrower"), to GREYSTONE CDE, LLC, a limited liability company duly organized and validly existing under the laws of the State of Delaware (the "Lender"), and evidences the amendment of that certain Bridge Promissory Note, dated December 20, 2006 from the Borrower to the Lender (the "Original Note")

The Maturity Date of the Original Note is hereby amended to be December 15, 2007.

Except as amended herein, the Original Note shall remain unchanged and in full force and affect. This Allonge shall be permanently affixed to the Original Note (though the failure to do so shall not affect its validly) and shall be deemed to be an integral part of the Original Note and the Original Note and the Original Note together with this Allonge shall constitute a single instrument.

IN WITNESS WHEREOF, the Borrower has executed this Allonge as of the day and year first above written.

SANTA FE POINT, L.P., an Oklahoma limited partnership

By:  SANTA FE POINT MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

By:_____
Name:
Title:

## LENDER'S CONSENT

Greystone CDE, LLC, as the Lender referred to the in the foregoing Allonge to Bridge Promissory Note, Phase I, does hereby consent to the adoption and effectiveness of the same as of June 29, 2007.

**GREYSTONE CDE, LLC**, a Delaware limited liability company

By:_____
Name:
Title:



GREYSTONE SERVICING
CORPORATION, INC.
419 BELLE AIR LANE
WARRENTON, VA 20186
PHONE: 540.341.2100
FAX: 540.341.2121

August 21, 2007

**VIA FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:      Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of December
20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower

Ladies and Gentlemen:

The purpose of this letter is to notify you that you are in default in respect of the loan
from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan
Agreement"). Capitalized terms used herein and not defined herein shall have the meanings
ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)     pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the
contract for purchase and sale of the Project without the same having been extended;

(b)     pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or
expiration of the commitment to provide the equity investment in the Project;

**Exh. _3I_, Page 192**

August 21, 2007
Page 2

(c)    pursuant to Section 9.1(k) of the Bridge Loan Agreement, the occurrence of changes in the operation, prospects and financial condition of the Borrower which, in our reasonable judgment materially adversely affect the ability of the Borrower to repay the Note and perform its other obligations under the Bridge Loan Documents, including, without limitation, the expiration without extension of the contract for purchase and sale of the Project, the failure to obtain and maintain a commitment to provide the equity investment in the Project, the deterioration of the physical condition of the Project and the lack of progress in advancement of the application for HUD financing due to unavailability of information required to be provided by the Borrower;

(d)    pursuant to Section 3.06(d) of the Guaranty, the occurrence of the foregoing events of default under the Bridge Loan Agreement;

(e)    pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(b) of the Guaranty requiring the Guarantor to provide the Lender with notice of the foregoing, which constitute material adverse changes in the business, operations, conditions (financial or otherwise) or prospects of the Guarantor; and

(f)    pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(a) of the Guaranty requiring the Guarantor to provide the Lender with (i) copies of the Guarantor audited annual financial statements on or before January 20, 2007 and (ii) a copy of the Guarantor's federal income tax return within ten (10) days of the filing thereof.

You are hereby further notified of the following breaches of covenants contained in the Bridge Loan Documents which, if not cured within thirty (30) days of the date of this notice, will constitute additional Events of Default pursuant to Section 9.1(b) of the Bridge Loan Agreement:

(1)    under Section 7.1(a) of the Bridge Loan Agreement, failure to provide annual financial statements of the Borrower for the year ended December 31, 2007, certified by an independent certified public accountant, on or before April 30, 2007;

(2)    under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the borrower for the quarter ended March 31, 2007, on or before May 15, 2007;

(3)    under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the Borrower for the quarter ended June 30, 2007, on or before August 15, 2007;

(4)    under Section 7.5(e) of the Bridge Loan Agreement, failure of the Borrower to notify the Lender of the Events of Default described herein and the other events described herein which, with the giving of notice or the passage of time or both, would constitute Events of Default;

August 21, 2007
Page 3

(5)    under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

(6)    under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

(7)    under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

(8)    under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

(9)    under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

(10)    under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions,

August 21, 2007
Page 4

representations, warranties, covenants or agreements contained in the Loan Documents; the
Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents
and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _Debi Martin_

Debi Martin
Vice President

cc:    Dianne Coady Fisher, Greenberg Traurig, LLP
       Matthew James, Greystone & Co., Inc.
       Thom Ruffin, Greystone Servicing Corporation, Inc.

**Exh. _3I_, Page 195**

# GREYSTONE CDE, LLC

September 18, 2007

**VIA OVERNIGHT DELIVERY AND E-MAIL**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant  (via e-mail: theo.oliphant@gmail.com)

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

      Re:    **NOTICE OF ACCELERATION: Bridge Loan Agreement dated as of December 20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower**

Ladies and Gentlemen:

In our Notice of Default dated August 21, 2007 previously sent, a copy of which is annexed hereto, you were notified that the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date thereof (August 21, 2007) until paid in full. The Lender reserved the right to declare all amounts due under the Note immediately due and payable.

As a result of the Events of Default under the Bridge Loan Agreement identified in items (a) through (c) in our Notice of Default, the Lender hereby declares the indebtedness evidenced by the Note, any and all other amounts payable under the Bridge Loan Agreement and the other Loan Documents and all other indebtedness of the Borrower to the Lender to be immediately due and payable in accordance with Section 9.2(a) of the Bridge Loan Agreement.

September 18, 2007
Page 2

As of September 18, 2007, the following amounts are due and owing under the Loan Documents:

| | |
|---|---|
| Principal: | $500,000.00 |
| Accrued Interest: | 3594.51 |
| Exit Fee: | 10,000.00 |
| Lender's Costs and Expenses: | 21,000.00 |
| Total: | $534,594.51 |

Please note that the above figures are good only through September 18, 2007. The Lender reserves the right to demand immediate payment of any and all additional costs and expenses incurred by the Lender in connection with the enforcement of the Loan Documents, the collection of the foregoing, the preservation of the Collateral and any other amounts which may hereafter become due and payable under the Loan Documents.

In addition, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from August 21, 2007 (the per diem at the default rate is $166.67) until paid in full and the Lender reserves the right to demand immediate payment thereof.

Demand for immediate payment of all amounts due and owing hereunder is hereby made upon the Borrower. In addition, demand for payment is hereby made upon the Guarantor pursuant to the Guaranty, upon the Partners pursuant to the Partner Pledge and upon the Developer pursuant to the Developer Fee Pledge.

Please take further notice, that should you fail to make payment as required, Lender shall be entitled to collect all reasonable costs of collection, including, but not limited to, reasonable attorneys' fees.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions, representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _____
Name: Debi Martin
Title:    Vice President

**Exh. 3J, Page 197**

September 18, 2007
Page 3


cc:    Dianne Coady Fisher, Esquire
       Stephen Harnik, Esquire
       Thom Ruffin



GREYSTONE SERVICING
CORPORATION, INC.
419 BELLE AIR LANE
WARRENTON, VA 20186
PHONE: 540.341.2100
FAX: 540.341.2121

August 21, 2007

**VIA FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of December
20, 2006 between Greystone CDE, LLC (the "Lender") and the Borrower

Ladies and Gentlemen:

The purpose of this letter is to notify you that you are in default in respect of the loan
from Greystone CDE, LLC evidenced by the above-referenced agreement (the "Bridge Loan
Agreement"). Capitalized terms used herein and not defined herein shall have the meanings
ascribed thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under the Loan Documents:

(a)    pursuant to Section 9.1(g) of the Bridge Loan Agreement, the expiration of the
contract for purchase and sale of the Project without the same having been extended;

(b)    pursuant to Section 9.1(j) of the Bridge Loan Agreement, the termination or
expiration of the commitment to provide the equity investment in the Project;

August 21, 2007
Page 3

(5)    under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

(6)    under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

(7)    under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

(8)    under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

(9)    under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

(10)    under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions,

Exh. 3J, Page 200

August 21, 2007
Page 4

representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

By: _Debi Martin_

Debi Martin
Vice President

cc:    Dianne Coady Fisher, Greenberg Traurig, LLP
      Matthew James, Greystone & Co., Inc.
      Thom Ruffin, Greystone Servicing Corporation, Inc.

Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Greystone CDE, LLC,

                              Plaintiff,

            - against -

Sante Fe Pointe, L.P.,
Sante Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant

                              Defendants.
-----------------------------------------------------------X

Docket No. 07 civ. 8377 (RPP)

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK     )
                      )ss.:
COUNTY OF NEW YORK    )

I, Sarah C. Claridad, being sworn, say:

I am not a party to the action, am over 18 years of age and reside at 1515 Lexington Avenue, New York, N.Y. 10029.

On the 5th day of October, 2007, I served the within First Amended Complaint As of Right by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to the person at the last known address set forth:

            Farber & Company Attorneys, LLP
            Attorneys for Defendants
            847 Sansome Street, Suite LL
            San Francisco, California 94111
            Att'n: Ann McFarland Draper, Esq.

                                    _Sarah C. Claridad_
                                     Sarah C. Claridad

Sworn to before me the
5th day of October, 2007.

_____
Notary Public
STEPHEN M. HARNIK
Notary Public State of New York
No. 02HA-4694243
Qualified in New York County
Commission Expires May 31, 2011

**Exh. 3J, Page 202**

**EXHIBIT  4**

**CT** CORPORATION
A WoltersKluwer Company

**Service of Process
Transmittal**
09/26/2007
CT Log Number 512626527



**TO:**      Lisa Schwartz
            Greystone & Company
            152 West 57th Street, 60th Floor
            New York, NY 10019-

**RE:**      **Process Served in California**

**FOR:**     Greystone Servicing Corporation, Inc. (Domestic State: GA)

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

**TITLE OF ACTION:**       Santa Fe Pointe, LP, etc., et al., Pltfs. vs. Greystone Servicing Corporation, Inc., etc., et al., Dfts.

**DOCUMENT(S) SERVED:**    Summons, First Amended Complaint and Jury Trial Demand, Cover Sheet, Notice of Case Management Conference and Order, Notice(s), Exhibit(s)

**COURT/AGENCY:**          Alameda County, Oakland, Superior Court, CA
                          Case # RG07345170

**NATURE OF ACTION:**      Negligence - Defendant failed to expedite processing, preparation and submission of the HUD application and withdrew the HUD application without prior notice to or consent by plaintiffs or any of them - Seeking Declaratory Relief for a judicial determination and declaration of the parties' respective rights, duties and obligations

**ON WHOM PROCESS WAS SERVED:**   C T Corporation System, Los Angeles, CA

**DATE AND HOUR OF SERVICE:**     By Process Server on 09/25/2007 at 13:35

**APPEARANCE OR ANSWER DUE:**     Within 30 days after service - file written response // 01/22/2008 at 9:00 a.m. - Case Management Conference

**ATTORNEY(S) / SENDER(S):**      Eric J. Farber
                                 Farber & Company Attorneys, LLP
                                 847 Sansome Street, Suite LL
                                 San Francisco, CA 94111
                                 415 434 5320

**ACTION ITEMS:**          SOP Papers with Transmittal, via  Fed Ex Standard Overnight , 798272871968
                          Email Notification, David Witt DWITT@GREYCO.COM

**SIGNED:**                C T Corporation System
**PER:**                   Dianne Christman
**ADDRESS:**               818 West Seventh Street
                          Los Angeles, CA 90017
**TELEPHONE:**             213-337-4615

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**Exh. _____, Page 203**



**SUMMONS** ON FIRST AMENDED &
*(CITACION JUDICIAL)* SUPPLEMENTAL
COMPLAINT

`-100`
`*5676325*`

9, 25, 07
ENDORSED
FILED
ALAMEDA COUNTY /35

SEP 2 5 2007

CLERK OF THE SUPERIOR COURT
By Tasha Perry, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
GREYSTONE SERVICING CORPORATION, INC., a Georgia
corporation; GREYSTONE CDE, LLC, a Delaware limited liability
company; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
SANTA FE POINTE, LP, an Oklahoma limited partnership; SANTA FE
MANAGEMENT, LLC, an Oklahoma limited liability company; RANT,
LLC, a Delaware limited liability company; THEOTIS F. OLIPHANT,
an individual

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.
Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Alameda County Superior Court
1225 Fallon Street
Oakland, CA 94612

CASE NUMBER: *(Número del Caso):* RG 07-345170

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Eric J. Farber / Farber & Company Attorneys, LLP
847 Sansome Street, Suite LL / San Francisco, CA 94111 / Tel: 415-434-5320

DATE: SEP 2 5 2007    Pat S. Sweeten    Clerk, by _____ Tasha Perry _____, Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

**Exh. 4, Page 204**

EXHIBIT  5



Harnik Wilker & Finkelstein LLP
Attorneys for Plaintiff
Greystone CDE, LLC
Olympic Tower
645 Fifth Avenue, 7th Floor
New York, NY 10022-5937
Tel. No. (212) 599-7575
Facsimile (212) 867-8120
Email: stephen@harnik.com

**DOC # 1**

**JUDGE PATTERSON**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

**07 CIV 8377**

Greystone CDE, LLC,

                                        Plaintiff,

            - against -
Sante Fe Pointe, L.P.,
Sante Fe Pointe Management, LLC,
Rant LLC, and
Theotis F. Oliphant

                                        Defendants.
-----------------------------------------------------------X

**COMPLAINT**

2007 SEP 26 PM 4:47
U.S. DISTRICT COURT
S.D. OF N.Y.

Plaintiff, Greystone CDE, LLC, ("plaintiff") files this complaint against defendants, Sante Fe

Pointe L.P., Sante Fe Pointe Management, LLC, Rant LLC, and Theotis F. Oliphant.  Upon

knowledge with respect to itself and its own acts, and upon information and belief with respect to all

other persons and matters, plaintiff, by its attorneys, respectfully alleges:

### NATURE OF THE ACTION

This action arises out of defendants' breach of a loan agreement, loan documents and a

note to make payment when due, and the failure of defendants, Sante Fe Pointe Management,

LLC, Rant LLC and Theotis F. Oliphant, as guarantors, to make payment when due.  Plaintiff

brings suit to recover damages suffered as a result of these actions.

1

## PARTIES

1.      Plaintiff is a limited liability company duly organized and existing under the laws of the State of Delaware authorized to do business in New York with an office at 152 West 57th St., 60th floor, New York, NY 10019.

2.      At all times relevant hereto, Sante Fe Pointe L.P. was and is a limited liability partnership organized and existing under the laws of the State of Oklahoma, with its principal offices at 16416 Oconee Creek Drive, Edmond, OK 73013.

3.      At all times relevant hereto, Sante Fe Pointe Management, LLC, was and is a limited liability company organized and existing under the laws of the State of Oklahoma, with an address at 16416 Oconee Creek Drive, Edmond, OK 73013.

4.      At all relevant times hereto, Theotis F. Oliphant was and is an individual and a resident of the State of California with an address at 113 Carmel Avenue, El Cerrito, CA 94530.

5.      At all times relevant hereto, Rant LLC was and is a limited liability company organized and existing under the laws of the State of Delaware, with an address at 113 Carmel Avenue, El Cerrito, CA 94530, and is an affiliate of Sante Fe Pointe, L.P.

### JURISDICTION AND VENUE

6.      The matter in controversy exclusive of interest and costs exceeds seventy five thousand ($75,000.00) dollars.

7.      The court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 (a) (2).

8.      Jurisdiction and venue in this forum have been contractually agreed upon.

### BACKGROUND

9.      On or about December 20, 2006,  for good and valuable consideration, Greystone

CDE, LLC, as lender (hereinafter "plaintiff" and/or "Lender") entered into a Bridge Loan Agreement (the "the Loan Agreement") with defendant Santa Fe Pointe L.P., as Borrower, (hereinafter "Borrower" and/or "defendant") in the maximum principal amount of $500,000 (the "Loan") to finance predevelopment expenses of an affordable housing development to be known as the Sante Fe Pointe Apartments located at 125 SW 74th St., Oklahoma City, OK which was to be developed and owned by Borrower, (hereinafter the "Project"). A copy of the Loan Agreement is annexed hereto and hereby made a part hereof as exhibit "A."

10.    Prior thereto, on or about July 12, 2006, defendant Rant LLC (hereinafter "Rant" and/or "Guarantor" and/or "defendant") had entered into a certain Contract for Sale of Real Estate, dated July 12, 2006, as amended by Addendum #1, for the purchase by Rant of the Project real estate from Walnut Creek Apartments, Inc., (hereinafter the "Purchase Agreement"). The Purchase Agreement provided for a Closing to occur not later than March 31, 2007 which was extendable under certain conditions.

11.    A condition, among others, of the Loan Agreement between plaintiff and Borrower was that the Purchase Agreement be assigned from Rant LLC to Borrower. On or about December 20, 2006, that assignment was made.

12.    Another condition, among others, of the Loan Agreement was that Borrower's security interest in and to all of Borrower's right, title and interest in the Purchase Contract be assigned to plaintiff. On or about December 20, 2006, that assignment was made. A copy of the Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, is annexed hereto and hereby made a part hereof as exhibit "B."

13.    On or about December 20, 2006, for good and valuable consideration , Lender entered into a Guaranty and Suretyship Agreement (hereinafter "Guaranty") with defendant Theotis F.

Oliphant (hereinafter "Oliphant" and/or "Guarantor" and/or "defendant") whereby Oliphant, *inter alia*, unconditionally and irrevocably guaranteed and became a surety to Lender, for the due, punctual and full payment and performance of Borrower's obligations evidenced by the Loan Agreement and/or incurred under the Loan Documents, (as defined in the Loan Agreement) both principal and interest, and any refinancing or refunding of any thereof, and all other amounts due or to become due under the Loan Agreement and the other Loan Documents. A copy of the Guaranty is annexed hereto and hereby made a part hereof as exhibit "C."

14.    On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe Management , LLC, which is a General Partner of Sante Fe Pointe L.P. (hereinafter the "General Partner" and/or "defendant" and/or "Guarantor") and Oliphant, who is a Limited Partner of Sante Fe Pointe, L.P., as Pledgors, (hereinafter alternately referred to as the "Partners") entered into a Partner Guaranty, Pledge and Security Agreement with Lender whereby *inter alia* the General Partner absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of any and all payment obligations and other covenants and obligations of Borrower to Lender in the Loan Documents; and Oliphant, as Limited Partner, reaffirmed his obligations under the Guaranty. A copy of the Partner Guaranty, Pledge and Security Agreement with Lender (hereinafter alternately referred to as the "Partner Pledge") is annexed hereto and hereby made a part hereof as exhibit "D."

15.    On or about December 20, 2006, for good and valuable consideration, Rant entered into a Developer Limited Guaranty, Pledge and Security Agreement with Lender wherein, *inter alia*, Rant (hereinafter alternatively referred to as "Developer") absolutely, irrevocably and unconditionally guaranteed and became surety to Lender for the full and punctual payment and performance by Borrower of its obligations to Lender under the Loan Documents. A copy of the

Developer Limited Guaranty, Pledge and Security Agreement (hereinafter alternatively referred to as "Developer Fee Pledge") is annexed hereto and hereby made a part hereof as exhibit "E."

16.    On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. Assigned the Project Documents to Lender, and Rant LLC assigned the Construction Contract to Sante Fe Pointe L.P.  A copy of the Assignment of Project Documents and the Assignment and Assumption of Construction Contract is annexed hereto and hereby made a part hereof as exhibit "F."

17.    On or about December 20, 2006, for good and valuable consideration, Sante Fe Pointe, L.P. executed and delivered to plaintiff a Bridge Promissory Note ("Note") a Specimen copy of which is annexed hereto and hereby made a part hereof as exhibit "G."

18.    On or about June 29, 2007, for good and valuable consideration, Sante Fe Pointe L.P. executed an Allonge to Bridge Promissory Note whereby the Maturity Date of the Note was amended to be December 15, 2007, and Lender gave its consent thereto.  A copy of the Allonge and the Consent is annexed hereto and hereby made a part hereof as exhibit "H."

19.    By the Note, Sante Fe Pointe L.P. promised to pay to plaintiff on the earlier of December 15, 2007, or upon an Event of Default, (as defined in the Loan Agreement) the sum of $500,000 with interest.

20.    On or about August 21, 2007, defendants were notified that they were in default of their obligations under the instruments annexed hereto as exhibits "A" – "F." This Notice of Default is annexed hereto as exhibit "I" and read as follows:

August 21, 2007

**VIA EMAIL AND FEDERAL EXPRESS**

Santa Fe Pointe, L.P. (the "Borrower")
Santa Fe Pointe Management, LLC (the "General Partner")
Theotis F. Oliphant (the "Limited Partner" and "Guarantor")
Rant, LLC (the "Developer")
16416 Oconee Drive
Edmond, Oklahoma 73013
Attention:    Theotis F. Oliphant

Theotis F. Oliphant (the "Limited Partner" and the "Guarantor")
113 Carmel Avenue
El Cerrito, California 94530

Gibbs & Oliphant LLP
300 Frank H. Ogawa Plaza, Third Floor
Oakland, California 94612

Re:    NOTICE OF DEFAULT:  Bridge Loan Agreement dated as of
December 20, 2006 between Greystone CDE, LLC (the "Lender")
and the Borrower

Ladies and Gentlemen:

The purpose of this letter is to notify you that you are in default in
respect of the loan from Greystone CDE, LLC evidenced by the above-
referenced agreement (the "Bridge Loan Agreement").  Capitalized terms
used herein and not defined herein shall have the meanings ascribed
thereto in the Bridge Loan Agreement.

You are hereby notified of the following Events of Default under
the Loan Documents:

(a)    pursuant to Section 9.1(g) of the Bridge Loan Agreement, the
expiration of the contract for purchase and sale of the Project without the
same having been extended;

(b)    pursuant to Section 9.1(j) of the Bridge Loan Agreement, the
termination or expiration of the commitment to provide the equity investment
in the Project;

(c)    pursuant to Section 9.1(k) of the Bridge Loan Agreement, the
occurrence of changes in the operation, prospects and financial condition of

the Borrower which, in our reasonable judgment materially adversely affect the ability of the Borrower to repay the Note and perform its other obligations under the Bridge Loan Documents, including, without limitation, the expiration without extension of the contract for purchase and sale of the Project, the failure to obtain and maintain a commitment to provide the equity investment in the Project, the deterioration of the physical condition of the Project and the lack of progress in advancement of the application for HUD financing due to unavailability of information required to be provided by the Borrower;

(d)     pursuant to Section 3.06(d) of the Guaranty, the occurrence of the foregoing events of default under the Bridge Loan Agreement;

(e)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(b) of the Guaranty requiring the Guarantor to provide the Lender with notice of the foregoing, which constitute material adverse changes in the business, operations, conditions (financial or otherwise) or prospects of the Guarantor; and

(f)     pursuant to Section 3.06(c) of the Guaranty, the breach of Section 2.02(a) of the Guaranty requiring the Guarantor to provide the Lender with (i) copies of the Guarantor audited annual financial statements on or before January 20, 2007 and (ii) a copy of the Guarantor's federal income tax return within ten (10) days of the filing thereof.

You are hereby further notified of the following breaches of covenants contained in the Bridge Loan Documents which, if not cured within thirty (30) days of the date of this notice, will constitute additional Events of Default pursuant to Section 9.1(b) of the Bridge Loan Agreement:

1.   under Section 7.1(a) of the Bridge Loan Agreement, failure to provide annual financial statements of the Borrower for the year ended December 31, 2007, certified by an independent certified public accountant, on or before April 30, 2007;

2.   under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the borrower for the quarter ended March 31, 2007, on or before May 15, 2007;

3.   under Section 7.1(b) of the Bridge Loan Agreement, failure to provide quarterly financial statements of the Borrower for the quarter ended June 30, 2007, on or before August 15, 2007;

4.   under Section 7.5(e) of the Bridge Loan Agreement, failure of the Borrower to notify the Lender of the Events of Default described herein

7

**Exh. _5_, Page 211**

and the other events described herein which, with the giving of notice or the passage of time or both, would constitute Events of Default;

5.  under Section 8.2(a) of the Bridge Loan Agreement, failure of the Borrower not to permit material changes in or to the Project (by failing to cause the seller of the Project properly to maintain the Project);

6.  under Section 3(b) of the Assignment of Purchase Contract, failure of the Borrower to enforce the performance by the seller of the Project properly to maintain the Project;

7.  under Section 3(e) of the Assignment of Purchase Contract, failure of the Borrower to extend the Purchase Contract or close upon the purchase of the Project in accordance with the terms of the Purchase Contract, thereby failing to preserve for the Lender the full benefits of the Assignment of Purchase Contract;

8.  under Section 4(e) of the Assignment of Purchase Contract, the Borrower's allowing the Purchase Contract to expire without extension, thereby materially impairing the value of the rights of the Borrower and the Lender thereunder;

9.  under Section 3(b) of the Assignment of Project Documents, failure of the Borrower to perform and observe all of its covenants and agreements under the Bond Documents; and

10. under Section 4(f) of the Assignment of Project Documents, the taking by the Borrower of the actions hereinabove described, thereby materially impairing the value of the rights and interests of the Borrower and the Lender under the Bond Documents.

We call to your attention that the foregoing circumstances may also constitute events of default under the Bond Documents which, if not cured within any applicable notice, grace or cure period under the Bond Documents will constitute an additional Event of Default under Section 9.1(h) of the Bridge Loan Agreement.

References in this letter to specific defaults and Events of Default are not intended to be exclusive and do not in any way constitute a waiver of any other defaults or Events of Default that are not specified herein that have occurred or might occur in the future.

As a result of the foregoing, interest on the Note and all amounts payable under the Loan Documents shall accrue at the Default Rate from the date hereof until paid in full. In addition, as a result of the Events of

Default described above, the Lender reserves the right to declare the amounts due under the Loan Documents immediately due and payable, to demand immediate payment thereof and to pursue all rights and remedies of the Lender under the Loan Documents (including, without limitation, the Guaranty), at law or in equity.

This letter is written without prejudice to the rights of the Lender to pursue any and all remedies available to the Lender under the Loan Documents, at law or in equity. Nothing in this letter nor any communications between you and the Lender shall constitute a waiver or modifications of any of the Lender's rights or remedies or any of the terms, conditions, representations, warranties, covenants or agreements contained in the Loan Documents; the Lender hereby reserves and preserves all of its rights and remedies under the Loan Documents and/or applicable law.

Very truly yours,

GREYSTONE CDE, LLC

## COUNT I
## AGAINST SANTE FE POINTE, L.P.
### (Breach of Contract)

21.    The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

22.    Upon an Event of Default (as defined in the Loan Agreement) the indebtedness evidenced by the Note became due and payable.

23.    Plaintiff's Notice of Default is a non-exhaustive description of Events of Default (as defined in the Loan Agreement) which have occurred herein as of the date of the Notice of Default.

24.    On September 18, 2007, plaintiff gave defendant Notice of Acceleration of the Note. A copy of the Notice of Acceleration is annexed hereto and hereby made a part hereof as exhibit "J."

25.    Defendant has failed and refused to pay the indebtedness due.

26.    Plaintiff has been damaged as a result of defendant's failure to pay the Note as agreed.

27.    By reason of the foregoing, plaintiff is owed not less than $534,594.51 as of September 18, 2007.

28.    It has been, and is, necessary for plaintiff to institute this action for collection of the amounts due under the Note and plaintiff has been compelled to and has employed attorneys to institute and prosecute this action and is entitled to its reasonable attorneys' fees and costs.

### COUNT II
### AGAINST ALL THE DEFENDANTS
(Breach of Contract)

29.    The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

30.    A condition among others of the Loan Agreement was that Borrower not default on the Purchase Contract.

31.    In the Purchase Contract, borrower, as assignee, committed itself to provide equity investment in the Project by a date certain.

32.    A further condition of the Loan Agreement was that Borrower not default on its commitment to provide equity in the Project by a date certain.

33.    A further condition among others of the Loan Agreement was that there be no change in the financial condition of Borrower or any of the defendants herein which might adversely affect its/their ability to perform its/their obligations under the Loan Agreement.

34.    On or about September 10, 2007, defendants Rant and Sante Fe Pointe, L.P. executed Addendum #3 to the Purchase Contract which purported to extend the Purchase Contract through

October 15, 2007 and provided for Buyer extension options with additional earnest money following October 15, 2007.

35.    Section 4, headed "Negative Covenants," of the Assignment of Purchase Agreement by Sante Fe Pointe L.P. in favor of plaintiff dated as of December 20, 2006, (previously annexed as exhibit "B") provides in pertinent part that "Borrower shall not …(b) amend or modify any of the terms of the Purchase Agreement, except with the prior written consent of the Lender; (c) terminate or give or join in any material waiver, consent or approval with respect to the Purchase Agreement, except with the prior written consent of the Lender; …(f) take any other action in connection with the Purchase Agreement which would materially impair the value of the rights or interests of the Borrower or the Lender whereunder or therein without the prior written consent of the Lender (to be granted or withheld in the Lender's sole discretion);..."

36.    Defendants Rant and Sante Fe Pointe L.P. neither requested, nor were granted, plaintiff's consents as provided above.

37.    Defendants have not cured the defaults itemized 1-10 in the Notice of Default and their time to cure has expired.

38.    Plaintiff has duly performed any and all conditions on its part to be performed, including disbursement of the Loan.

39.    No part of the Loan disbursed by plaintiff to Borrower, or for its benefit, has been repaid, although duly demanded.

40.    Defendants, and each of them, have breached, and are continuing to breach their respective obligations under the instruments annexed hereto and under the Bond Documents.

41.    By reason of the foregoing, plaintiff is owed not less than $484,950.75 plus interest, costs and attorneys' fees.

## COUNT III
## AGAINST ALL THE DEFENDANTS
(Breach of Contract)

42.    The allegations set forth in each of the preceding paragraphs are incorporated herein as if fully restated.

43.    All covenants, agreements obligations and liabilities of the Borrower are a direct and primary obligation of the Guarantor pursuant to the Guaranty, the Partners pursuant to the Partner Pledge, and the Developer pursuant to the Developer Fee Pledge, and each of Guarantor's, Partners' and Developer's obligations are not as a surety.  These defendants' respective guarantees are of payment and performance and not of collection.  Their obligations are continuing, absolute and unconditional, irrespective of any circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of a guarantor or surety.

44.    The Guarantor, the Partners and the Developer unconditionally and irrevocably waived any rights and defenses they have, had, or will have, in respect of the causes of action alleged herein.

45.    By reason of the foregoing, plaintiff is owed $534,594.51 plus interest, costs and attorneys' fees.

*WHEREFORE*, plaintiff demands judgment as follows:

a) On Count I  against Sante Fe Pointe L.P. not less than  $534,594.51;

b) On Count II against all the defendants, jointly and severally, not less than $484,950.75;

c) On Count III against all the defendants, jointly and severally, not less than $534,594.51;

d) Awarding plaintiff the cost of this action, including attorneys' fees as permitted pursuant to the instruments at issue and applicable law;

e) Awarding plaintiff pre-and post-judgment interest;

f) Granting such other relief as the court deems just and proper.

Dated:        New York, New York
              September 26, 2007

                        Harnik Wilker & Finkelstein LLP

                        by: Stephen M. Harnik, Esq. (SH 9889)
                        Attorneys for Plaintiff
                        Greystone CDE, LLC
                        645 Fifth Avenue, 7th Floor
                        New York, NY  10022
                        (212) 599-7575

13

**EXHIBIT  6**



## Our Attorneys

### MEET THEO T. OLIPHANT

**Theo Oliphant** brings a sophisticated corporate and private equity practice to Gibbs & Oliphant LLP. He is a former partner of a large International Firm that also has deep roots in Silicon Valley. Theo has served as a trusted business advisor to senior management of numerous middle market and start-up companies across a broad array of industries.

### Experience

#### Partner at DLA Piper Rudnick Gray Cary

- **Business Transactions** Executed a broad range of corporate business transactions, from mergers and acquisitions to joint ventures and management and shareholder buyouts; also has significant experience in securities compliance and in negotiating, structuring and documenting equity and debt financings and real estate equity fund formation.

- **Corporate Governance & Securities** Advised senior management and boards of directors on significant transactions and fiduciary obligations; developed Company-specific compliance programs to prevent, detect and respond to unethical or illegal conduct by company employees.

- **Intellectual Property Licensing** Negotiated, structured and drafted deal documents for enterprise software, web-based and shrink-wrap products; also advised management and drafted documentation for various licensing, reseller and distributorship arrangements, including joint ventures and co-marketing deals.

**Corporate Associate** at Loeb & Loeb

**Litigation Associate** at McKenna & Cuneo, LLP

**Education:**
**University of California at Irvine.** Bachelor of Arts, 1992
**Boalt Hall School of Law, University of California at Berkeley**
J.D., 1995

Exh. _____, Page 218

**Areas of Expertise:**

☑ Business Transactions

☑ Corporate Governance

☑ Securities

☑ Intellectual Property Licensing

☑ Real Estate and Development Law

**Other:**
Chairman - Alameda County Leadership Board of the United Way

Board Member - United Way of the Bay Area

Board Member - East Bay Community Law Center

:: Disclaimer

Website by KCG   

1

## CERTICATE OF SERVICE

2

I, Jean E. Asuncion, declare:

3

I am a citizen of the United States and employed in Los Angeles County, California. I am

4

over the age of eighteen years and not a party to the within-entitled action. My business address

5

is 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071-2300. On November

6

7, 2007, I served a copy of the within document(s):

7

8

**NOTICE OF MOTION AND MOTION TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; STATEMENT IN SUPPORT OF NOTICE OF PENDENCY OF OTHER ACTION OR PROCEEDING (CIVIL L.R. 3-13); AND DECLARATIONS OF MATTHEW JAMES AND ERIK K. SWANHOLT**

9

10

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

11

12

☐    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

13

14

☐    by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

15

16

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

17

18

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

19

☒    by electronically filing such document(s) through the United States District Court for the Northern District of California CM/ECF which will send electronic notification of such filing to the following registered users:

20

21

22

Eric J. Farber, Esq.                      *Attorneys for Plaintiffs*
Ann McFarland Draper, Esq.

23

FARBER & COMPANY
ATTORNEYS, LLP

24

847 Sansome St., Suite LL
San Francisco, CA 94111

25

Phone: (415) 434-5320
Fax: (415) 434-5380

26

I am readily familiar with the firm's practice of collection and processing correspondence

27

for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same

28

                                             

1  motion of the party served, service is presumed invalid if postal cancellation date or postage

2  meter date is more than one day after date of deposit for mailing in affidavit.

3       I declare that I am employed in the office of a member of the bar of this court at whose

4  direction the service was made.

5       Executed on November 7, 2007, at Los Angeles, California.

6

7                                 _____

8                                       Jean E. Asuncion

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28