Eric J. Farber, SBN 169472
eric@farberandco.com
Ann McFarland Draper, SBN 065669
ann.draper@farberandco.com
FARBER & COMPANY ATTORNEYS, P.C.
847 Sansome Street, Ste. LL
San Francisco, California 94111
Telephone 415.434.5320
Facsimile 415.434.5380

Attorneys for Plaintiffs Santa Fe Pointe,
LP, Santa Fe Management, LLC,
Rant, LLC, and Theotis F. Oliphant

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, et al, | Case No.: C07-05454 JCS |
| Plaintiffs, | |
| vs. | |
| GREYSTONE SERVICING CORPORATION, INC., et al, | **Hearing** |
| | Date:       February 8, 2008 |
| | Time:       9:30 a.m. |
| | Courtroom: A (15th Floor) |
| Defendants. | Judge:      Hon. Joseph C. Spero |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANTS' MOTION
## TO TRANSFER CASE TO SOUTHERN DISTRICT OF NEW YORK

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 1
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES.....................................................................................iii

INTRODUCTION ....................................................................................................1

STATEMENT OF RELEVANT FACTS....................................................................2

    A.    PARTIES .......................................................................................2

    B.    PROCEDURAL HISTORY ............................................................3

    C.    BACKGROUND FACTS................................................................4

    D.    PERTINENT FACTUAL DISTINCTIONS....................................7

LEGAL ANALYSIS .................................................................................................8

    I.    DEFENDANTS MUST ESTABLISH AN ADEQUATE BASIS FOR A TRANSFER UNDER §1404(a) ......................................................8

    II.    THE NEW YORK COURT DOES NOT HAVE PERSONAL JURISDICTION OVER PLAINTIFFS ...................................................9

        A.    FORUM SELECTION PROVISIONS IN THE GUARANTIES DO NOT CONFER PERSONAL JURISDICTION FOR OTHER CONTRACTS OR CLAIMS.................................................................10

        B.    PERSONAL JURISDICTION MAY NOT BE PREDICATED ON A CONTRACT THAT IS VOID OR OBTAINED THROUGH FRAUD, UNDUE INFLUENCE OR OVERWEENING BARGAINING POWER ...........................................12

    III.    THE FACTORS TO BE CONSIDERED EITHER FAVOR A CALIFORNIA FORUM OR ARE NEUTRAL AS BETWEEN CALIFORNIA AND NEW YORK.......................14

        A.    THE PLAINTIFFS' CHOICE OF CALIFORNIA AS A FORUM IS ENTITLED TO DEFERENCE..................................................15

        B.    THE CONTRACTS WERE NEITHER NEGOTIATED NOR EXECUTED IN NEW YORK ............................................................16

        C.    IT IS UNLIKELY THAT NEW YORK LAW WILL BE APPLIED, BUT CALIFORNIA LAW MUST APPLY TO THE ADHESION ISSUES.......................16

        D.    PLAINTIFFS HAVE LITTLE OR NO CONTACTS WITH NEW YORK WHILE DEFENDANTS DO MUCH OF THEIR BUSINESS IN CALIFORNIA...............18

        E.    CONVENIENCE OF THE WITNESSES AND PARTIES .......................................18

F.     NEW YORK WILL BE A MUCH MORE EXPENSIVE VENUE IN WHICH TO LITIGATE..................................................................................................................20

G.    AVAILABILITY OF COMPULSORY PROCESS..........................................................20

H.    ACCESS TO SOURCES OF PROOF ...........................................................................20

I. THE FORUM SELECTION CLAUSE DOES NOT SUPPORT THE APPLICATION OF NEW YORK LAW .....................................................................................................20

    1.    The Forum Selection Clause Is Unenforceable .......................................21

    2.    The Permissive Forum Selection Clause At Issue Here Is Only One Factor (And Not A Central One) To Be Considered..................................................................21

    3.    The Forum Selection Clause Does Not Apply To All The Contracts And Claims At Issue In This Case ...........................................................................................23

J. NEW YORK COURTS ARE MORE CONGESTED THAN THOSE OF CALIFORNIA ...............................................................................................................23

K.    BOTH ACTIONS CAN BE LITIGATED IN CALIFORNIA ...................................24

IV.    PLAINTIFFS ARE ENTITLED TO THE BENEFITS OF THE FIRST-TO-FILE RULE..........................................................................................................................................24

CONCLUSION ..................................................................................................................................25

PROOF OF SERVICE.......................................................................................................................26

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*      - ii
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*
    368 F.3d 1174 (9th Cir. 2004)...........................................................................10, 11

*Advanta Corp. v. Dialogic Corp.*
    2006 U.S. Dist. LEXIS 28214 (N.D. Cal. May 2, 2006)........................................22

*Angotti v. Rexam, Inc.*
    2006 U.S. Dist. LEXIS 15488 (N.D. Cal. Feb. 14, 2006) .....................................23

*Arno v. Club Medical Boutique Inc.*
    134 F.3d 1424 (9th Cir. 1998) ..............................................................................16

*Brunette Machine Works, Ltd. V. Kockum Industries, Inc.*
    406 U.S. 706 (1972) ................................................................................................8

*Burger King Corp. v. Rudzewicz*
    471 U.S. 462 (1985) ..............................................................................................12

*Commodity Futures Trading Commission v. Savage*
    611 F.2d 270 (9th Cir. 1979) ..............................................................................9, 14

*Decker Coal Co. v. Commonwealth Edison Co.*
    805 F.2d 834 (9th Cir. 1986) ..............................................................................9, 15

*Docksider, Ltd. v. Sea Technology, Ltd.*
    875 F.2d 762 (9th Cir. 1989) ................................................................................21

*Evolution Online System, Inc. v. Koninklijke PTT Nederland N.V.*
    145 F.3d 505 (9th Cir. 1998) ............................................................................14, 21

*Fields v. Legacy Health System*
    413 F.3d 943 (9th Cir. 2005) ................................................................................16

*Gulf Oil Corp. v. Gilbert*
    330 U.S. 501 (1947) ..............................................................................................15

*Hsu v. Oz Optics Ltd.*
    211 F.R.D. 615 (N.D. Cal. 2002)..........................................................................21

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*
    817 F.2d 75 (9th Cir. 1987) ..................................................................................22

*Jones v. GNC Franchising, Inc.*
    211 F.3d 495 (9th Cir. 2000) ..............................................................................9, 15

*M/S Bremen v. Zapata Off-Shore Co.*
    407 U.S. 1 (1972)..............................................................................................21, 22

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - iii
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

*Manetti-Farrow, Inc. v. Gucci America, Inc.*
  858 F.2d 509 (9th Cir. 1988) ........................................................................21, 22, 23

*Nagrampa v. MailCoups, Inc.*
  469 F.3d 1257 (9th Cir. 2006) ......................................................................12, 13, 16

*Northern California District Council of Laborers v. Pittsburg-des Moines Steel Co.*
  69 F.3d 1034 (1995)..................................................................................................22

*Oestreicher v. Alienware Corp.*
  502 F. Supp. 2d 1061 (N.D. Cal. 2007) ...................................................................16

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*
  741 F.2d 273 (9th Cir. 1984), *overruled on other grounds, Powerex Corp. v. Reliant Energy*
  *Servs.*, 127 S. Ct. 2411, 2419 (2007) .......................................................................22

*Ruhrgas Ag v. Marathon Oil Co.*
  526 U.S. 574 (1999) ..................................................................................................10

*S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*
  641 F.2d 746 (9th Cir. 1981) .....................................................................................16

*SEC v. Rose Fund, LLC*
  2004 U.S. Dist. LEXIS 224 (N.D. Cal. Jan. 9, 2004).........................................18, 19

*Stewart Organization, Inc. v. Ricoh Corp.*
  487 U.S. 22 (1988) ...............................................................................................8, 9, 21

*Unisys Corp. v. Access Co.*
  2005 U.S. Dist. LEXIS 31897 (N.D. Cal. Nov. 23, 2005) ........................................23

*Winward v. Pfizer, Inc.*
  2007 U.S. Dist. LEXIS 82885 (N.D. Cal. October 22, 2007) ...................................15

*Xtended Beauty v. Xtreme Lashes*
  2007 U.S. Dist. LEXIS 68753 (N.D. Cal. Sept. 7, 2007) .........................................25

## CALIFORNIA CASES

*Nedlloyd Lines B.V. v. Superior Court*
  3 Cal. 4th 459 (1992) ................................................................................................17

*Washington Mutual Bank, FA v. Superior Court*
  24 Cal. 4th 906 (2001) ..............................................................................................17

## FEDERAL STATUTES

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - iv
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

Title 28 U.S.C. § 1404(a) ................................................................................1, 2, 8, 9

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - v
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1

**<u>INTRODUCTION</u>**

2   Plaintiffs (a California resident and his Delaware and Oklahoma entities) brought this action

3 against a defendants (a Georgia corporation based in Virginia and its affiliated Delaware LLC) for

4 various torts and breaches of contract arising out of Plaintiffs' project to acquire and rehabilitate a 224-

5 unit apartment building in Oklahoma City as a low income housing tax credit project offered through

6 the FHA's Office of Housing and Urban Development ("HUD").  The Federal Government subsidizes

7 such tax credit projects to encourage private developers to acquire, construct, renovate, and maintain

8 housing stock that will be income restricted for tenants, and maintained by the private developer.

9   The defendants were Plaintiffs' fiduciary (HUD-approved underwriter) and an affiliated entity

10 that made a bridge loan.  The crux of Plaintiffs' claims is that the fiduciary defendant intentionally and

11 negligently mishandled the HUD application and then, through a "bait and switch" operation, forced

12 plaintiffs into accepting a bridge loan from its affiliate in an inadequate amount and on vastly different

13 (and inferior) terms than promised, following which the fiduciary unilaterally withdrew the HUD

14 application and sabotaged the project so that Plaintiffs could not complete it within the required time

15 frame.

16   Plaintiffs filed suit in Alameda County Superior Court.  After both Defendants were personally

17 served in this action, one of the defendants (the lender affiliate) sued Plaintiffs in the Southern District

18 of New York to collect the bridge loan.  Defendants then filed their answer in the state court and

19 immediately removed the action to this court.  They now seek to have this action transferred to the

20 Southern District of New York pursuant to 28 U.S.C. §1404(a).

21   Plaintiffs oppose the convenience transfer.  Plaintiffs are presumptively entitled to have their

22 claims heard in the jurisdiction of their choice –  California.  Moreover, New York is an odd venue for

23 resolution of Plaintiffs' claims.  By defendants' own evidence, ***<u>not</u>*** ***<u>one</u>*** of the parties resides in New

24 York or is a New York entity.  The contracts at issue were neither negotiated nor executed in New

25 York; the subject real estate is not located in New York; only one of the nine witnesses identified by

26 defendants works in New York (but even he does not live there); most of the documents are located

27 outside New York; and the place for performance is Virginia, not New York.  Why then, would New

28 York be a desirable venue for this action?

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - 1
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1     The primary reason (according to defendants) is that the parties "selected" that forum through

2  a forum selection clause in the bridge loan guaranties – a clause which notably is not present in the

3  bridge loan Term Sheet, the bridge loan agreement or the bridge loan promissory note, but only in the

4  guaranties that Plaintiffs were required to sign at the last minute for a bridge loan that the Term Sheet

5  had described as a non-recourse loan.  Importantly, Plaintiffs contend that the bridge loan documents

6  were signed under economic duress and that the forum selection clauses upon which Defendants seek

7  to rely are invalid and unenforceable.  Even if valid, however, those clauses can have only a minute

8  effect on the analysis of whether this case should be transferred "in the interests of justice."

9     A proper analysis of the pertinent factors in determining a discretionary motion to transfer

10  under 28 U.S.C. §1404(a) leads to the conclusion that a convenience transfer is not warranted in this

11  case.  There is likely no personal jurisdiction over Plaintiffs in New York; Plaintiffs selected the

12  California as the forum state and was the first to file; Plaintiffs' claims arise under California law; the

13  individual plaintiff is a California resident; and the other factors this court must consider are either

14  neutral or favor California as the forum.

15     Defendants have not even come close to meeting their burden, nor have they produced

16  admissible evidence – as they must – to establish that the balance of conveniences ***strongly*** favors

17  transfer.  The motion must be denied.

## STATEMENT OF RELEVANT FACTS

### A.    PARTIES

20     Plaintiffs are THEOTIS F. OLIPHANT ("Oliphant"), an individual who resides in El Cerrito,

21  Contra Costa County, California and three entities owned or managed by him.  *Declaration of Theotis F.*

22  *Oliphant* ("Oliphant Decl."), ¶2.  Plaintiff RANT, LLC ("Rant") is a Delaware limited liability company

23  qualified to do business in the State of California with its principal place of business in Contra Costa

24  County.  Oliphant is the managing member of Rant, LLC.  Oliphant Decl., ¶3.

25     The 224-unit apartment building that Plaintiffs intended to acquire and rehabilitate through

26  HUD's low income housing tax credit program is located in Oklahoma City.  Oliphant Decl., ¶4.

27  Oliphant has been working on this project (the "Santa Fe Pointe Project") since August 2006.

28  Oliphant Decl., ¶4.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*          - 2
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1    Plaintiff SANTA FE POINTE, LP is an Oklahoma limited partnership that was formed as the

2 single-purpose entity to acquire and rehabilitate the project. Oliphant Decl., ¶11. Plaintiff SANTA FE

3 MANAGEMENT, LLC is an Oklahoma limited liability company that was formed to manage the

4 project. Oliphant Decl., ¶11. SANTA FE MANAGEMENT, LLC is the general partner of SANTA

5 FE POINTE, LP, and Oliphant is the managing member of SANTA FE MANAGEMENT, LLC.

6 Oliphant Decl., ¶3.

7    Defendant GREYSTONE SERVICING CORPORATION, INC. ("Greystone Servicing") is a

8 Georgia corporation with its principal place of business in Warrenton Virginia. *Notice of Removal*, ¶9;

9 Draper Decl., ¶2 and Exhibit "A" thereto. Defendant GREYSTONE CDE, LLC ("Greystone CDE")

10 is a Delaware limited liability company whose members are two Virginia corporations (Greystone and

11 Greystone). *Notice of Removal*, ¶10. Greystone Servicing was a fiduciary and HUD-approved

12 underwriter who was appointed to serve as Plaintiffs' exclusive agent to process Plaintiffs' HUD

13 application. Greystone CDE is an affiliate of Greystone Servicing and was brought in to act as bridge

14 loan lender.

15    **B.    PROCEDURAL HISTORY**

16    Plaintiffs filed their action in Alameda County Superior Court on September 7, 2007. *Notice of*

17 *Removal*, Exhibit A-1, p.9. The named defendants are Greystone Servicing and Greystone CDE, but

18 Greystone Servicing is the principal actor in the misconduct alleged in Plaintiffs' complaint. Plaintiffs

19 filed an amended and supplemental Complaint on September 25, 2007, to include additional

20 misconduct that occurred after the filing of their original complaint. *Notice of Removal*, Exhibit A-2,

21 commencing at p.29. Plaintiffs effected personal service on Greystone Servicing on September 25 and

22 on Greystone CDE on September 26. Draper Decl., ¶3 and Exhibits "B" and "C" thereto.

23    On September 26, Greystone CDE filed a collection action (the "New York Action") against

24 Plaintiffs in the United States District Court for the Southern District of New York. Draper Decl., ¶4.

25 Greystone Servicing is not a party to the New York Action. Draper Decl., ¶4. Greystone CDE

26 amended its complaint in the New York Action on October 5, 2007. Swanholt Decl., ¶2. Greystone

27 CDE did not attempt to serve the summons or complaint in the New York action in the usual manner,

28 nor did they follow the Rule 6(d) waiver procedure. Draper Decl., ¶5. They did, however, file an

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 3
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1   Affidavit of Service in the New York action and attempt to obtain a default judgment.  Draper Decl.,

2   ¶5.  Plaintiffs retained New York counsel to appear specially to contest personal jurisdiction in the New

3   York action and oppose the application for default.  Draper Decl., ¶5.

4        On November 29, 2007, the district court judge in the New York action issued an order

5   denying Greystone CDE's motion for default judgment and granting the cross-motion of the Plaintiffs

6   herein to strike the Clerk's Certificate (of default) and the Affidavit of Service.  Draper Declaration, ¶6

7   and Exhibit "D" thereto.  ***As the matter now stands, the district court in New York has not yet***

8   ***acquired personal jurisdiction over the Plaintiffs herein.***

9       ***C.***     ***BACKGROUND FACTS***

10        The underlying facts are set forth in detail in Plaintiffs' First Amended Complaint and in the

11   accompanying declaration of Theotis F. Oliphant filed in opposition to this motion.

12        In August 2006, Oliphant undertook a project to acquire and rehabilitate a 224-unit apartment

13   building in Oklahoma City (the "Santa Fe Pointe Project") as a tax-credit developer of a Low Income

14   Housing Tax Credit project offered through the FHA's Office of Housing and Urban Development

15   ("HUD").  Oliphant Decl., ¶4. The Federal Government subsidizes such tax credit projects to

16   encourage private developers to acquire, construct, renovate, and maintain housing stock that will be

17   income restricted for tenants, and maintained by the private developer.  Such projects contemplate

18   formation of a single purpose entity (in this case, Plaintiff Santa Fe Pointe, LP) to execute the

19   acquisition and rehabilitation of the housing stock and be the borrower on the HUD loan, which is

20   non-recourse.  The tax-credit developer is paid a fee equal to 14% of the total allowable project costs.

21        As a part of the process for developing such a tax-credit project, it was necessary for Oliphant

22   to select and retain a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing

23   (MAP) program.  Oliphant Decl., ¶6; Draper Decl. ¶8 and Exhibit "F".  The MAP program establishes

24   national standards for approved lenders to prepare, process and submit their own loan applications.

25   The role of the HUD-approved underwriter is to serve as an intermediary between the developer and

26   the regional FHA offices, to prepare the HUD application materials, commission any third party

27   reports necessary to support the underwriting analysis, facilitate approval of application and obtain

28   financing within required timeframes.  Only the HUD-approved underwriter is allowed to submit the

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 4

MPA in Opposition to Motion to Transfer Case to Southern District of New York

Farber & Company Attorneys, P.C.

loan application and communicate with HUD; Oliphant was neither authorized nor permitted to communicate directly with HUD with respect to the application. Oliphant Decl., ¶6. Oliphant selected Greystone Servicing as his HUD-approved underwriter. Oliphant Decl., ¶7.

On September 7, 2006, Oliphant signed a written Engagement Agreement appointing Greystone Servicing to act as the exclusive agent to process the HUD application for financing the acquisition and rehabilitation of the Santa Fe Pointe Project, and paid the $14,000 in fees required by the Engagement Agreement. Oliphant Decl. ¶8 and Exhibit "A" thereto. That same date Oliphant engaged Seibert Branford Shank & Company, LLC to serve as investment bank underwriter to sell the $7,095,000 tax exempt bonds. Oliphant Decl. ¶8. The bond financing was required to close by December 20, 2006 or the tax-exempt bond allocation awarded for the Santa Fe Pointe Project would expire, so the HUD application had to be completed by November 2006. Oliphant Decl. ¶8.

By late October, it was apparent that Greystone Servicing was behind schedule and was unable to complete the HUD application on the required time frame. Oliphant Decl. ¶¶10, 12. To protect the project, Greystone Servicing agreed to provide a non-recourse bridge loan to fund the purchase of the Santa Fe Pointe Project and the cost of (timely) issuance for the tax-exempt bonds. Oliphant Decl. ¶¶12, 13, 14. In late November, Greystone Servicing provided a written term sheet for the bridge loan which specified a non-recourse bridge loan in the amount of $4,348,400. Oliphant Decl. ¶14 and Exhibit "B" thereto.

Oliphant made arrangements to travel to Oklahoma on Monday, December 18 (for the scheduled December 20 closing of the Project acquisition). Oliphant Decl. ¶15. The tax-exempt bonds were priced on December 13 and 14, 2006, and were sold by the investment bank to institutional investors. Oliphant Decl. ¶16. At the moment of issue, Plaintiffs incurred approximately $251,000 in bond issuance costs. Oliphant Decl. ¶16.

On the afternoon of Sunday, December 17 (the eve of his departure), Oliphant received drafts of the bridge loan documents. Oliphant Decl. ¶17. The December 17 drafts provided for a bridge loan of only $500,000 (rather than the promised $4,348,400), which would cover the cost of the bond issuance but not acquisition of the Santa Fe Pointe Project. Oliphant Decl. ¶18. The December 17 drafts also included a personal guaranty by Oliphant (even though the term sheet stated that it would be

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - 5
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1   non-recourse financing).  Oliphant Decl. ¶18.  When Oliphant received the drafts on December 17, the

2   $251,000 bond issuance costs had already been incurred because the tax-exempt bonds had been sold.

3   Oliphant Decl. ¶18.  In addition, if Santa Fe Pointe, LP did not close escrow for acquisition of the

4   property by December 20, there was a risk of losing the tax-exempt bond funding because the bonds

5   would expire.  Oliphant Decl. ¶18.

6       The December 17 drafts of the guaranties contained a forum selection clause and a choice of

7   law provision, although these were not in the term sheet and had not been discussed.  Oliphant Decl.

8   ¶19 and Exhibit "B" thereto.  However, the December 17 drafts did not specify New York for either

9   forum or choice of law; the identity of the state was left blank.  Oliphant Decl. ¶19.  "New York" was

10  inserted as the forum and choice of law state in the final version of the bridge loan documents

11  presented for signature in Oklahoma.  Oliphant Decl. ¶19.

12      The bridge loan documents were presented on a take-it-or-leave-it basis.  Oliphant had no

13  choice but to travel to Oklahoma on the morning of December 18 and sign the voluminous bridge loan

14  documents as presented.  Oliphant Decl. ¶18.

15      Greystone Servicing did not submit the final HUD application for the Santa Fe Pointe Project

16  until about March 14, 2007.  Oliphant Decl., ¶20.  There were numerous other acts of misconduct that

17  need not be detailed on this motion.  Oliphant Decl., ¶¶21-35.  On August 9, 2007, Greystone

18  Servicing unilaterally withdrew the HUD loan application without any prior notice or warning to me or

19  anyone else on my development team.  Oliphant Decl., ¶27.  The withdrawal of the HUD application

20  placed at risk the $7,095,000 in tax exempt bond proceeds.  Oliphant Decl., ¶27.  It also caused the

21  seller of the property to terminate extension negotiations with me because the withdrawal of the HUD

22  application made it appear that we could not close the deal in the near future; it would likely take

23  another 10-12 months if the HUD process were started over with a different HUD-approved

24  underwriter. Oliphant Decl., ¶27.

25      By email dated August 21, 2007, Greystone representatives requested that Plaintiffs supply

26  additional documentation for submission to the loan committee.  Oliphant Decl., ¶28.  While this

27  indicated that Greystone intended to go forward with the project, Oliphant later learned that at the

28

_____

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 6 -
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1   same time Greystone CDE had prepared a letter dated August 21 that declared the bridge loan in

2   default.  Oliphant Decl., ¶29.

3          On August 22, 2007, Thom Ruffin of Greystone servicing called Oliphant and told him that

4   Greystone CDE was declaring the bridge loan in default and that Greystone had been talking to David

5   Henry (a contractor and co-developer who had been a part of my team prior to Greystone Servicing's

6   withdrawal of the HUD application) about taking over the Santa Fe Pointe Project.  Oliphant Decl.,

7   ¶29.  Over the next 8 days, Greystone Servicing attempted to pressure Oliphant to allow David Henry

8   to take over the entire Project on terms that were unfavorable to Plaintiffs.  Oliphant Decl., ¶30.  On

9   August 30, 2007, Greystone Servicing's counsel demanded that Oliphant sign documentation to this

10  effect– including a covenant not to sue – by the following day (the Friday of Labor Day weekend).

11  Oliphant Decl., ¶30.  Plaintiffs' action was filed a week later, on September 7, 2007.

12         **D.      *PERTINENT FACTUAL DISTINCTIONS***

13         Several important facts are lost in the moving papers.  First, the Greystone Defendants loosely

14  refer to both defendants as "Greystone" throughout their papers.  While there is a collection of

15  Greystone entities, the principal "bad actor" in this action is Greystone Servicing (who is ***not*** a party to

16  the New York action).  Greystone CDE is the "lender" on the bridge loan that Greystone Servicing put

17  in place when its delays prevented the project from closing as initially scheduled.

18         Second, in their moving papers the Greystone Defendants refer to various agreements among

19  the parties as if they were all part of a single set of transaction documents.  This is not the case.  The

20  seminal agreement for purposes of ***this*** action is the Engagement Agreement of September 7, 2006,

21  wherein Greystone Servicing became the HUD-approved underwriter for the Santa Fe Pointe Project

22  and a fiduciary for Plaintiffs herein.  The bridge loan is an entirely separate transaction, which was not

23  originally contemplated and only became necessary as a result of Greystone Servicing's delay and

24  mishandling of the HUD application.  Provisions in the bridge loan documents (in which Greystone

25  CDE is a party) do not apply to the Engagement Agreement or the fiduciary duties undertaken by

26  Greystone Servicing as a result of its appointment as HUD-approved underwriter for the Santa Fe

27  Pointe Project.

28
_____
*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                          - 7
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1    Third, contrary to the Greystone Defendants' statement in their moving papers (Greystone

2  MPA 1:6-10), __***none***__ of the Plaintiffs herein agreed – let alone "irrevocably and unconditionally" – to

3  submit to personal jurisdiction in New York, to waive any objection to laying venue for ***this*** suit in

4  New York, or have the agreements upon which ***this*** action is based governed by New York law.

5  Moreover, the provisions quoted in the moving papers to that effect (Greystone MPA 1:10-18) are not

6  contained in each of the agreements at issue in this action.  The language advanced by Defendants

7  appears only in the bridge loan guaranties, not in the Engagement Letter or other bridge loan

8  documents.

9    Fourth, Plaintiffs' claims regarding Greystone Servicing's "bait & switch" tactics, and the

10  economic duress created by the circumstances under which the bridge loan was made, go to the heart

11  of whether the asserted provisions are valid or enforceable.  (See Sections II.B and III.I, below.)  The

12  bridge loan only became necessary because Greystone Servicing failed to submit the HUD application

13  within the time frame established for completion of the purchase and issuance of the tax-exempt

14  bonds.  (Oliphant Decl., ¶¶12, 13, 14.)

15    These factual distinctions should be kept in mind in reviewing the evidence proferred by

16  defendants in support of their motion.

17                          **LEGAL ANALYSIS**

18    Federal venue is governed entirely by statute.  *Brunette Machine Works, Ltd. V. Kockum Industries,*

19  *Inc.,* 406 U.S. 706, 709, fn 8 (1972).  Issues raised in determining proper venue in federal actions are

20  governed exclusively by federal law, even when the action is based on diversity jurisdiction.  *Stewart*

21  *Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 28 (1988).

22
   **I.    DEFENDANTS MUST ESTABLISH AN ADEQUATE BASIS FOR A TRANSFER**
23  **      UNDER §1404(a)**

24    Even though venue is otherwise proper, a party may seek discretionary transfer under Title 28

25  U.S.C. § 1404(a), which grants the district court the power to transfer a civil action from one district to

26  another in which it could have been brought "[f]or the convenience of parties and witnesses, in the

27  interest of justice."  Such a determination must be made on an "individualized, case-by-case

28  

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 8 -
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

consideration of fairness and convenience." *Stewart Organization, Inc. v. Ricoh Corp., supra*, 487 U.S. 22 at 29.  As moving parties, defendants bear the burden of establishing each of the required elements.

First, defendants must establish that the proposed alternate venue has both personal and subject matter jurisdiction over the parties and that venue would be proper there.  Then defendants must establish that the convenience of the parties and witnesses and the interests of justice require transfer to another district. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Here, defendants have failed on both elements.

On the first element, Defendants have not shown (and cannot) that the New York forum can exercise personal jurisdiction over plaintiffs, nor that venue for Plaintiffs' claims would be proper in New York.  (See Section II, below, and Draper Declaration, ¶6 and Exhibit "D" thereto.)

On the second element, the federal courts have identified a number of factors to be considered in determining whether a case should be transferred. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000); *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  (See list of twelve factors at pages 15-16, below.)  When the applicable factors are considered, Defendants have failed to show that the convenience of the parties and witnesses, and the interests of justice require transfer of Plaintiffs' claims to New York. (See Section III below.)

Finally, it should be noted that transfer pursuant to 28 U.S.C. § 1404(a) is discretionary.  Given the uncertainty of the personal jurisdiction issue, the significance of Plaintiffs' claims of economic duress and overreaching to the merits of this case, and the fact that it is premature to determine the validity of the forum selection provisions relied upon by defendants for this motion, discretion should not be exercised in favor of transfer.   Defendants' motion should be denied.

## II.     THE NEW YORK COURT DOES NOT HAVE PERSONAL JURISDICTION OVER PLAINTIFFS

Before the district court in New York can try Plaintiffs' claims, it must be able to exercise personal jurisdiction over the ***Plaintiffs*** in this action.  Personal jurisdiction "'represents a restriction on judicial power . . . as a matter of individual liberty.'....Therefore, a party may insist that the limitation be observed, or he may forgo that right, effectively consenting to the court's exercise of adjudicatory

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                        - 9
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1   authority." With out such personal jurisdiction, the court is "'powerless to proceed to an adjudication.'"

2   *Ruhrgas Ag v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

3          Here, defendants have provided no evidence of any such constitutionally-minimum contacts as

4   could form the basis for personal jurisdiction over any of the Plaintiffs herein.  To the contrary, the

5   individual defendant (Oliphant) has never lived or worked in New York (Oliphant Decl., ¶2), let alone

6   had systematic contacts with that state.  Thus jurisdiction, if available at all, would have to be exercised

7   on some other basis.

8          Defendants have the burden of establishing that the district court in New York would have

9   jurisdictional objections over **each** of Plaintiffs' claims.  *Action Embroidery Corp. v. Atlantic Embroidery,*

10  *Inc.*, 368 F.3d 1174, 1176, 1180 (9th Cir. 2004). They attempt to do so by arguing that the New York

11  courts would have personal jurisdiction over plaintiffs because "the same underlying contracts at issue

12  in this action and the New York Action contain valid forum selection clauses by which each of the

13  Plaintiffs submitted to personal jurisdiction in New York, and expressly waived any objection to the

14  laying of venue there."  *See* Defendants' MPA 5:1-4.[1]

15         There are two errors in this argument.  First, there is **no** forum selection clause or waiver of

16  jurisdiction in the Engagement Agreement, the bridge loan agreement or the promissory note, only in

17  the personal guaranty and pledge agreement.  Second, the forum selection clause on which defendants

18  seek to rely is unconscionable, adhesive, and neither valid nor enforceable.

19
        **A.      FORUM SELECTION PROVISIONS IN THE GUARANTIES DO NOT CONFER**
20      **PERSONAL JURISDICTION FOR OTHER CONTRACTS OR CLAIMS**

21         The Engagement Agreement is attached as Exhibit "A" to Plaintiffs' complaint herein (and to

22  the Oliphant Declaration).  By that document, Greystone Servicing was appointed Plaintiffs' HUD-

23  approved underwriter and became a fiduciary with respect to the Santa Fe Pointe Project.  Greystone

24  Servicing's breaches of its obligations arising from the Engagement Agreement and the fiduciary

25
        _____

26
    [1] Defendants also make the puzzling claim that New York would have personal jurisdiction over the
27  *plaintiffs* because the *defendants* maintain offices and conduct business in New York. *See* Defendants'
    MPA 4:27-5:1.  That may be a basis for New York to exercise jurisdiction over the defendants; but it
28  has no effect on the New York forum's exercise of jurisdiction over the *plaintiffs* over their objections.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 10
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1   relationship form the basis of Plaintiffs' claim herein. It is beyond question that the Engagement

2   Agreement contains no forum selection clause.

3          The asserted forum selection provision is contained in only a few of the bridge loan documents.

4   The parties executed four different types of documents relating to the bridge loan: (1) the bridge loan

5   agreement;[2] (2) the bridge loan promissory note and allonge (extension of maturity);[3] (3) the

6   assignments[4] made to secure repayment of the note; and (4) the guaranties[5] made to secure repayment

7   of the note. There was also a written Term Sheet which preceded the formal bridge loan documents.

8   Although defendants, when discussing the forum selection clause, tend to blur the distinctions between

9   these documents by their use of vague references to "certain agreements" and the "Bridge Loan

10  documents," the fact is that ***only the guaranties contained forum selection clauses***. Section 3.08 of the

11  guaranties states, in relevant part:[6]

12          The ***guarantor*** irrevocably agrees (a) that the Lender may bring suit,
            action or other legal proceedings ***arising out of this guaranty*** in the
13          courts of the State of New York or the courts of the United States
            located in New York; (b) consents to the jurisdiction of each such court
14          in any such suit, action or proceeding....

15  (Emphasis added.) Even if this provision were valid or enforceable – which it is not (see Section II.B

16  below) – no *Plaintiff* has submitted to jurisdiction in New York for actions arising out of any of the

17  other contracts, and certainly not for the state law claims alleged in this action (such as breach of

18  fiduciary duty, intentional interference with prospective economic advantage, and breach of the implied

19  covenant of good faith and fair dealing inherent in the Engagement Agreement).[7]

20  _____

21
22  [2] *See  Declaration of Erik K. Swanholt* ("Swanholt Decl."), Exhibit 3A (Bridge Loan Agreement)

    [3] *See* Swanholt Decl., Exhibits 3G (Promissory Note) and 3H (Allonge).

23  [4] *See* Swanholt Decl., Exhibits 3B (Assignment of Purchase Agreement) and 3F (Assignment of Project
    Documents).
24
    [5] *See* Swanholt Decl., Exhibits 3C (Oliphant's guaranty), 3D (Santa Fe Management's guaranty) and 3E
25  (Rant's guaranty).

26  [6] In the December 17 drafts, the language was ". . . in the courts of the State of _____ or the
    courts of the United States located in _____; . . ."

27  [7] It is true that the Ninth Circuit has adopted the "pendent personal jurisdiction" doctrine, under which
    a court may assert pendent personal jurisdiction over a *defendant* with respect to a claim for which there
28  is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of
    operative facts with a claim in the same suit over which the court does have personal jurisdiction. Such

    _____
*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 11
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1    Thus, defendants' reliance on forum selection clauses is an insufficient basis for transfer of

2    plaintiffs' claims to a district court in New York.

3    **B.    PERSONAL JURISDICTION MAY NOT BE PREDICATED ON A CONTRACT THAT IS VOID OR OBTAINED THROUGH FRAUD, UNDUE INFLUENCE OR OVERWEENING BARGAINING POWER**

4

5    Even if the forum selection clause in the guaranties somehow gave the New York courts

6    jurisdiction over plaintiffs' claims, there is another roadblock to jurisdiction: the guaranties (as well as

7    other bridge loan documents) are void and unenforceable.  Personal jurisdiction may not be grounded

8    on a contract whose terms have been obtained through "fraud, undue influence, or overweening

9    bargaining power."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985).  The contracts at issue here

10   were the result of just such "overweening bargaining power" and economic duress.

11   At the outset, it must be noted that California law applies to the issue of whether the forum

12   selection clauses at issue here are valid and enforceable, because the challenge to the validity of the

13   contracts will be heard by the district court (whether in California or New York) sitting in diversity.  *See*

14   *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1280 (9th Cir. 2006) (*en banc*). [8]

15   California courts analyze contract provisions for both procedural and substantive

16   unconscionability.  Procedural unconscionability arises from the manner in which the agreement was

17   extracted; substantive unconscionability arises from the inherent unfairness of the term.  Both forms of

18   unconscionability need not be present to the same degree; there is a sliding scale of sorts: the more

19   substantively oppressive the contract term, the less evidence of procedural unconscionability is required

20   to come to the conclusion that the term is unenforceable, and vice versa.

21   The procedural unconscionability analysis focuses on oppression or surprise.  Oppression arises

22   from an inequality of bargaining power that results in no real negotiation and an absence of meaningful

23

24   jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is

25   not nationwide personal jurisdiction.  *Action Embroidery Corp. v. Atlantic Embroidery, Inc., supra,* at 1180-1181.  That doctrine is not applicable here, however.  Plaintiffs have found *no* case applying this

26   doctrine to force a plaintiff to try his own claims in a foreign jurisdiction merely because there is jurisdiction over him on a related claim in the foreign jurisdiction.

27

28   [8] The choice of law provisions in the guaranty agreements calling for New York law become operative only if the contracts themselves are valid.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 12
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1   choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden in a

2   prolix printed form drafted by the party seeking to enforce them.  *Nagrampa v. MailCoups, Inc.*, *ibid.*

3   Both are present here in abundance.

4        The threshold inquiry in California's unconscionability analysis is whether the agreement is

5   adhesive, i.e., whether it is a standardized contract, imposed upon the subscribing party without an

6   opportunity to negotiate the terms.  The requirements for procedural unconscionability are satisfied by

7   a finding that the contract was presented on a take-it-or-leave-it basis and that it was oppressive due to

8   "'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful

9   choice.'"  *Id.* at 1281.

10        That is exactly the situation here:  Greystone Servicing's delays resulted in failure to timely

11   submit the HUD-application and complete the acquisition of the property.  (Oliphant Decl., ¶¶10,12.)

12   To mitigate the effects of its delay, Greystone Servicing offered non-recourse bridge financing so to

13   complete the acquisition and pay for the issuance of the tax-exempt bonds.  (Oliphant Decl., ¶¶12, 13,

14   14 and Exhibit "B" thereto.)  Then, after the bonds had been issued (and the costs incurred),

15   Greystone Servicing substituted a smaller bridge loan, sufficient only to cover the costs of bond

16   issuance but not acquisition of the property and requiring personal guaranties.  (Oliphant Decl., ¶16,

17   18.)  Drafts of the loan documentation were not provided until the eve of Oliphant's departure for

18   signing in Oklahoma (Oliphant Decl., ¶17, 18)  , and the forum state (New York) was not even

19   identified until Oliphant arrived at the escrow for signing (Oliphant Decl., ¶19).  The bridge loan

20   documents were presented on a take-it-or-leave-it basis, and Plaintiffs had no choice but to take what

21   was provided.  (Oliphant Decl., ¶18.)[9]  Procedural unconscionability exists in substantial measure.

22        Of course, a determination of whether these contracts are in fact void as unconscionable and

23   the product of economic duress must await later proceedings, as this issue goes to the heart of

24   Plaintiffs' substantive claims.  Nonetheless, the fact that these contracts may well be found to be

25

26   _____

27   [9] Although the Greystone Defendants suggest that Oliphant's experience as an attorney precludes
unequal bargaining power, such an argument ignores the very real unequal bargaining power inherent in

28   the circumstances, as well as the economic duress and surprise in the circumstances under which the
bridge loan was consummated.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*      - 13
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

invalid, coupled with Oliphant's initial showing on this subject, casts doubt on the issue of whether a New York court can exercise personal jurisdiction over plaintiffs. Such doubt, as wells as the fact that if the case is transferred the New York court may well have to transfer it back to California after the issue of unconscionability has been determined, do not support this court exercising its discretion to transfer Plaintiffs' action to New York at this juncture. Moreover, such circumstances would not serve the interests of efficiency and convenience for anyone, courts and litigants alike. *See Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 509 (9th Cir. 1998), holding that the district court's finding regarding the forum selection clause was premature when court had not yet determined that a valid contract existed.

Defendants have not met their burden of establishing that the New York court can exercise jurisdiction over plaintiffs, or over Plaintiffs' claims that do not arise out of the guaranties. The uncertainty as to validity of the forum selection clauses undermines any potential efficiency that might arise out of transferring Plaintiffs' claims to New York at this stage. Thus, it would be premature to transfer this case to New York and the motion should be denied.

## III. THE FACTORS TO BE CONSIDERED EITHER FAVOR A CALIFORNIA FORUM OR ARE NEUTRAL AS BETWEEN CALIFORNIA AND NEW YORK

Even assuming that the New York district court could exercise personal jurisdiction over Plaintiffs, for a discretionary transfer under 1404(a) defendants must also establish that the convenience of the parties and witnesses and the interests of justice requires transfer to another district. *Commodity Futures Trading Comm'n v. Savage*, *supra*, 611 F.2d at 279.

Courts have identified a number of factors to be considered in determining whether a case should be transferred, including the following:

    (1)    the location where the relevant agreements were negotiated and executed;

    (2)    the state that is most familiar with the governing law;

    (3)    the respective parties' contacts with the forum;

    (4)    the convenience of witnesses;

    (5)    the differences in the costs of litigation in the two forums

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 14
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

(6) the availability of compulsory process to compel attendance of unwilling non-party witnesses;

(7) the ease of access to sources of proof;

(8) the existence of a forum selection clause;

(9) the relevant public policy of the forum state;

(10) the administrative difficulties flowing from court congestion;

(11) the local interest in having localized controversies decided at home;

(12) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Jones v. GNC Franchising, Inc.*, *supra*, 211 F.3d at 498-499; *Decker Coal Co. v. Commonwealth Edison Co.*, *supra*, 805 F.2d at 843.

Here, defendants have not shown – as they must – that the factors to be considered **strongly** establish inconvenience of such a degree as to outweigh the plaintiffs' right to have their claims heard in the forum of their choice (California). A review of these factors shows that they either favor a California forum or are neutral.

### A. THE PLAINTIFFS' CHOICE OF CALIFORNIA AS A FORUM IS ENTITLED TO DEFERENCE

Courts considering transfer of a case begin with the preference traditionally accorded the plaintiff's choice of forum. In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the U.S. Supreme Court held that although the trial court should consider and weigh all the appropriate factors,

unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

*Gulf Oil Corp. v. Gilbert*, *supra*, 330 U.S. at 508; see also *Winward v. Pfizer, Inc.*, 2007 U.S. Dist. LEXIS 82885, at *8 (N.D. Cal. October 22, 2007). Thus, the defendant must make a strong showing of inconvenience to upset the plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, *supra*, at 843.

Defendants argue that plaintiffs' choice of forum should be disregarded because (1) "[p]laintiff have already contractually agreed to venue any action relating to the Bridge Loan documents and Santa Fe project in New York;" (2) other factors outweigh plaintiffs' choice; and (3) California has no interest

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                     - 15
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

in the subject matter of this suit.  *See* Defendants' MPA 12:20-13:4.  The invalidity of the second point

is addressed in Sub-Sections C, F, I and J, below.  The third claim is a conclusory statement of little

weight given all the other factors.   The first is simply incorrect, and defendants' repetition of it will not

make it so.  ***Plaintiffs did not agree to a New York forum in any agreement except the guaranties on***

***the notes and even those agreements were adhesion contracts and the product of economic duress***.

*See* Section II.B, above, and Sub-Section I, below.

### B.      THE CONTRACTS WERE NEITHER NEGOTIATED NOR EXECUTED IN NEW YORK

The Engagement Agreement was executed in California.  The bridge loan documents were

executed in Oklahoma.  All of the agreements were negotiated cross-country by telephone and email –

from various locations in California, Oklahoma, Florida, Virginia, Wisconsin and Pennsylvania (as well

as New York).  This factor does not favor transfer.

### C.      IT IS UNLIKELY THAT NEW YORK LAW WILL BE APPLIED, BUT CALIFORNIA LAW MUST APPLY TO THE ADHESION ISSUES

The mere fact that a contract has a choice of law provision does not automatically ensure that

that choice of law will be enforced.[10]   Federal courts sitting in diversity look to the law of the forum

state in making choice of law determinations.  *Fields v. Legacy Health System*, 413 F.3d 943, 950 (9th Cir.

2005). ***Because the complaint in the present action was filed in California, California's choice of law***

***rules apply.***  *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061 1065 (N.D. Cal. 2007).  In addition, as

noted in Section II.B, above, California law also applies to the issue of whether the forum selection

clauses at issue here are valid and enforceable, because the challenge to the validity of the contracts will

be heard by the district court (whether in California or New York) sitting in diversity.  *See Nagrampa v.*

*MailCoups, Inc., supra*, 469 F.3d at 1280.

Each issue in a case requires a separate choice of law analysis.  *S. A. Empresa De Viacao Aerea*

*Rio Grandese v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981); *see e.g., Arno v. Club Med Boutique Inc.*, 134

---

[10] Although some of the bridge loan documents contain a choice of law clause specifying New York,
plaintiffs vigorously challenge the validity of the agreements as uconscionable and the product of

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 16
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1    F.3d 1424 (9th Cir. 1998) (under California choice of law analysis, separate choice of law analysis

2    required as to liability issues and attorney's fees issues in tort action).

3         Under California law, the party advocating a contractual choice of law clause bears the burden

4    of showing that the claim falls within the scope of the choice of law provision. *Washington Mut. Bank,*

5    *FA v. Superior Court*, 24 Cal. 4th 906, 916 (2001). If the trial court finds that the claims fall within the

6    scope of a choice-of-law clause, it must next evaluate the clause's enforceability pursuant to the

7    analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of

8    Laws: the court must first determine either: (1) whether the chosen state has a substantial relationship

9    to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties'

10   choice of law. If neither of these tests is met, the court need not enforce the parties' choice of law.  If,

11   however, either test is met, the court must next determine whether the chosen state's law is contrary to

12   a *fundamental* policy of California. If there is no such conflict, the court shall enforce the parties' choice

13   of law. If, however, there is a fundamental conflict with California law, the court must then determine

14   whether California has a materially greater interest than the chosen state in the determination of the

15   particular issue.  If California has a materially greater interest than the chosen state, the choice of law

16   shall not be enforced, for the obvious reason that in such circumstance a court will decline to enforce a

17   law contrary to this state's fundamental policy.  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466

18   (1992).

19        Thus, even if the contracts at issue here were found to be valid – a questionable proposition at

20   best – the law to be used in construing the *contracts* is not necessarily that of New York.

21        Moreover, defendants have ***not*** established that plaintiffs' tort claims for negligence, breach of

22   fiduciary duty (constructive fraud), and intentional or negligent interference with prospective economic

23   advantage come within a choice of law provision that states that a *guaranty agreement* shall be governed by

24   and construed in accordance with the laws of the State of New York.

25        Thus, it appears that the determination of what law applies must be made later.  It also appears

26   that in any event New York law will not necessarily (or even likely) be applied.  Thus, this factor is

27

28   economic duress.  See Part II.B, above.  Moreover, there is no choice of law provision at all in the

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 17
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1  either neutral or does not favor New York, because defendants cannot show that the district court in

2  New York will be more familiar with the law to be applied.

### D.    PLAINTIFFS HAVE LITTLE OR NO CONTACTS WITH NEW YORK WHILE DEFENDANTS DO MUCH OF THEIR BUSINESS IN CALIFORNIA

5         Oliphant and his companies are located in California (or Oklahoma).  Oliphant has never lived

6  or worked in New York.  Oliphant Decl., ¶2.  There is no evidence that he does business there on a

7  regular or systematic basis.

8         Defendant Greystone Servicing, on the contrary, is a **Georgia** corporation with its principal

9  place of business in **Virginia**.  It has fifteen regional offices throughout the United States (including

10  **two in California**) (see (Draper Decl. ¶7 and Exhibit "E")) and primarily finances properties in

11  California, Washington and Nevada (Draper Decl. ¶9 and Exhibit "G").  The Greystone Defendants do

12  not claim to have any special connection to New York.  It would appear that Matt James is the only

13  Greystone representative based in New York and even he does not live there.  *See* James Decl. ¶2 and

14  ¶¶3-13 (residence of others).  Greystone CDE is a **Delaware** LLC whose the members are two **Virginia**

15  corporations (*Notice of Removal*, ¶10), but whose bridge loan underwriter in **Florida** (James Decl., ¶12).

16         This factor certainly does not favor transfer to New York; it favors retention of this case in the

17  Northern District of California.

### E.    CONVENIENCE OF THE WITNESSES AND PARTIES

19         To demonstrate an inconvenience to witnesses, the moving party must identify relevant

20  witnesses, state their location and describe their testimony and its relevance.  *SEC v. Rose Fund, LLC*,

21  2004 U.S. Dist. LEXIS 224, at 9 (N.D. Cal. Jan. 9, 2004).  While Defendants identified a number of

22  purported witnesses, they failed to describe their testimony and relevance; instead, they simply made

23  generic statements that the persons identified have "personal knowledge of material events relating to

24  the execution, and Plaintiffs' default, of the Bridge Loan documents...."  *See* Defendants' MPA 10:28-

25  11:1.  As a result, this court cannot determine whether the witnesses identified by defendants are critical

26  or merely helpful.

27

28  Engagement Agreement (the "contract" which is at the heart of *Plaintiffs'* claims).

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 18
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1    Even if the information provided were sufficient, however, *__eight__ of the nine witnesses identified by*

2  *Defendants are __not__ located in New York;* they are spread out throughout the midwest, the south and the east

3  coast: Virginia, Wisconsin, Florida, Maryland, Arkansas and Illinois.  *See Declaration of Matthew* James

4  ("James Decl."); Defendants' MPA 10:3-11:7.  Only *one* of the witnesses identified by Defendants

5  (Matt James) is located in New York, and even he does not live there; the other eight of the nine

6  witnesses identified by Greystone would be equally inconvenienced, whether the action is heard in San

7  Francisco or New York.  A case will not be transferred for the convenience of a party's executive; a

8  greater showing is required.  Moreover, where the defendant merely seeks to shift the inconvenience

9  from himself to the plaintiff, transfer is not warranted.   *SEC v. Rose Fund, LLC, supra*, at 7.

10    Furthermore, Defendants failed to identify a number of material witnesses, none of whom are

11  located in New York.  The witnesses not mentioned by Defendants include:  HUD personnel

12  (Oklahoma), banking and real estate personnel (Oklahoma), the seller of the 224-unit apartment

13  building (Oklahoma), the investment bank's bond counsel (Washington, D.C.), Plaintiffs' co-developer

14  David Henry and his COO (Arkansas), Greystone's architectural review firm (Missouri), and

15  Greystone's outside counsel participated in negotiations and transmitted the bridge loan documents

16  (Pennsylvania).  *See* Draper Decl. ¶10.

17    Finally, defendants suggest that New York is more convenient for the witnesses because it is

18  "much nearer" to them than is San Francisco.  *See* Defendants' MPA 10:4-5.  But Wisconsin is almost a

19  thousand miles from New York, Florida is over 1200, and Oklahoma is over 1400.  The witnesses, if

20  called, will have to get on a plane and go somewhere.  Defendants have offered *no evidence* that any of

21  these witnesses will be substantially more inconvenienced by going to San Francisco than to New York

22  City.[11]  In fact, both San Francisco and New York are major airline destinations, and both are equally

23  accessible to the witnesses in this case.

24    This factor does not favor – let alone *strongly* favor – transfer.  Defendants have not made the

25  required showing.

26  _____

27  [11] In fact, the non-party out-of-state witnesses cannot be compelled to attend trial in either state; the
    parties likely will take their depositions in their respective home states, which they would have to do

28  regardless of whether the forum is in California or New York.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 19
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

*F.*    *NEW YORK WILL BE A MUCH MORE EXPENSIVE VENUE IN WHICH TO LITIGATE*

New York is a significantly more expensive venue in which to litigate than San Francisco. Although hotels, restaurants and court reporters are more expensive in New York, the primary factor driving the cost disparity is the hourly billing rate of the attorneys. The rates charged by attorneys in New York are ***substantially*** higher than that charged by attorneys in San Francisco. See *Declaration of Donald N. David*, ¶¶11-15.

This factor – which was not even addressed in defendants' moving papers – favors retention of this case in the Northern District of California.

*G.*    *AVAILABILITY OF COMPULSORY PROCESS*

This factor is neutral. Neither California nor New York has the ability to serve process on the out-of-state witnesses who are not party-affiliated. Discovery from such witnesses will likely involve issuance of deposition and document subpoenas from district courts in the various districts in which such witnesses are located (e.g., Oklahoma, Arkansas, etc.)

*H.*    *ACCESS TO SOURCES OF PROOF*

This factor is neutral. Proof in this case will be principally by witness testimony and documentary evidence. Most of the relevant documents are located in Oklahoma and Florida, but others are located in Washington, D.C and Springfield, Missouri. *See* Oliphant Decl ¶¶5 (Oklahoma), 10 (Missouri), 14 (Washington, DC), 15 (Oklahoma), 17 (Pennsylvania), 20 (Arkansas), 21 (Oklahoma), 27 (Oklahoma), 30 (Arkansas), 31 (Pennsylvania), 35 (Oklahoma and Michigan), 36 (Florida, Virginia and Wisconsin); Draper Decl. ¶10. Even Defendants' own evidence indicates that the evidence relevant to this case in located in six states other than New York (*see* James Decl. ¶ 10), and defendants fail to state what volume or portion of those documents are located in New York. Thus, considerable documents will have to be transported regardless of whether the case is litigated in California or in New York. This factor does not favor transfer of the case to New York.

*I.*    *THE FORUM SELECTION CLAUSE DOES NOT SUPPORT THE APPLICATION OF NEW YORK LAW*

Plaintiffs have already discussed several aspects of the forum selection clauses in Part II.B, above, including that the clauses appear in only two of the agreements, are invalid adhesion provisions,

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 20
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

and in any event do not apply to Plaintiffs' claims against Greystone Servicing arising out of its

mishandling of the HUD application and its breaches arising out of the Engagement Agreement and

the fiduciary relationship created therein.  In this section, Plaintiffs will address the forum selection

clauses in the context of the 12-factor analysis applied in evaluating convenience transfers.

### 1.     The Forum Selection Clause Is Unenforceable

For the reasons stated in Part II.B above, the guaranties containing the forum selection clauses

are unenforceable as an unconscionable adhesion contract that is the product of economic duress.  It

goes without saying that if the contract is void, the forum selection clause falls with it.  *Evolution Online

Sys., Inc. v. Koninklijke PTT Nederland N.V.*, *supra*, at 509.

Moreover, as stated in Part II.B above, the forum selection clauses relied upon will not be

enforced because they were the product of fraud, undue influence or overreaching.  *M/S Bremen v.

Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

### 2.     The Permissive Forum Selection Clause At Issue Here Is Only One Factor (And Not A Central One) To Be Considered

Defendants place heavy reliance on the inclusion of a forum selection clause, even though it

appears only in the guaranties.  Such reliance is misplaced.

First, Defendants incorrectly present the analytical framework for considering this forum

selection clause and its effect.  Before determining the effect a forum selection clause will have on a

transfer motion analysis, the court must first determine whether the particular clause is mandatory or

permissive.[12]  As this court has stated, "There is a vast difference between the two."  *Hsu v. Oz Optics

Ltd.*, 211 F.R.D. 615, 618 (N.D. Cal. 2002).  As the Ninth Circuit has said:

> The prevailing rule is clear from these and other cases that where venue
> is specified with mandatory language the clause will be enforced.
> [Citations omitted.]  When only jurisdiction is specified ***the clause will
> generally not be enforced without some further language indicating the
> parties' intent to make jurisdiction exclusive.***

---

10.  In a motion to transfer under § 1404(a), federal law governs whether to give effect to the forum selection clause in diversity cases.  *Stewart Org., Inc. v. Ricoh Corp.*, *supra*, at 28, 32; see also *Manetti-Farrow, Inc. v. Gucci America, Inc.*, *supra*, at 513) (federal law governs in all diversity cases).

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                    - 21
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1  *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (emphasis added).  To be

2  mandatory, a clause must contain language that clearly designates a forum as the *exclusive* one.  *Northern*

3  *California Dist. Council of Laborers v. Pittsburg-des Moines Steel Co.*, 69 F.3d 1034, 1037 (1995).

4       In this case, the venue provision stated that "Lender ***may*** bring suit, action or other legal

5  proceedings arising out of this guaranty in the courts of the State of New York or the courts of the

6  United States located in New York" (emphasis added).  Thus, the clause relied on here is clearly a

7  ***permissive*** clause and there is no preference for enforcement.  Moreover, because the forum selection

8  clause relates only to suit on the guaranty, it could not be mandatory as to Plaintiffs' claims in this

9  action (which do not arise out of the guaranty).

10      Defendants' arguments – that forum selection clauses are presumptively valid and that the party

11  resisting enforcement has a "heavy burden" to establish the unreasonableness of the clause (*see*

12  Defendants' MPA 6:3-22) – are based on the incorrect (albeit unstated) premise that the forum

13  selection clause at issue here is a mandatory one.  Thus its supporting authorities (all involving

14  mandatory clauses)[13] are not persuasive here. *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75,

15  77-78 (9th Cir. 1987) (distinguishing *Pelleport* on the ground that it involved a mandatory forum selection

16  clause).

17      When the forum selection clause is merely permissive, the party opposing the transfer has no

18  burden to show that its enforcement would be "unreasonable or unjust" or invalid for other reasons,

19  much less a "heavy burden."  *See  Advanta Corp. v. Dialogic Corp.*, 2006 U.S. Dist. LEXIS 28214, at *9

20  (N.D. Cal. May 2, 2006) ("without explicit language indicating that the parties consented to exclusive

21  jurisdiction or venue...the forum selection clause in the Agreement is unambiguously permissive and the

22  *Bremen* doctrine analysis does not apply.)   In fact, while a district court considering transfer should take

_____

24  11.  *See M/S Bremen v. Zapata Off-Shore Co*, *supra*, 407 U.S. at 2 ("[a]ny dispute arising must be treated
25  before the London Court of Justice"); *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 511 (9th
    Cir. 1988) ("[f]or any controversy regarding interpretation or fulfillment of the present contract, the
26  Court of Florence has sole jurisdiction.");  *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d
    273, 275 (9th Cir. 1984), *overruled on other grounds, Powerex Corp. v. Reliant Energy Servs.*, 127 S. Ct. 2411,
27  2419 (2007) ("any and all disputes arising out of or in connection with this Agreement shall be litigated
    only in the Superior Court for Los Angeles, California (and in no other)").

_____

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                              - 22
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1  into account a permissive forum selection clause, "neither law nor logic compel the court to consider it

2  "centrally" to its analysis." *Softwareworks Group, Inc. v. IHosting, Inc.*, 2006 U.S. Dist. LEXIS 75989, at *10

3  (N.D. Cal. Oct. 4, 2006).

4       In anticipation of this fatal weakness in their argument (that the forum selection clause here is

5  entitled to great weight), defendants cite two district court cases to suggest that permissive forum

6  selection clauses also require plaintiffs to bear "the burden of demonstrating why they should not be

7  bound by their contractual choice of forum." *See* Defendants' MPA 7:9-19.  In the first cited authority,

8  *Unisys Corp. v. Access Co.*, 2005 U.S.Dist. LEXIS 31897 (N.D. Cal. Nov. 23, 2005), the court relied

9  authority from the Third Circuit, not the Ninth Circuit, in holding that a permissive forum selection

10  clause is entitled to "substantial consideration."  *Id.* at *13.  The second cited authority, *Angotti v.*

11  *Rexam, Inc.*, 2006 U.S. Dist. LEXIS 15488 (N.D. Cal. Feb. 14, 2006), is completely irrelevant because it

12  was a class action that did ***not*** involve a forum selection clause.

13
14       **3.**     ***The Forum Selection Clause Does Not Apply To All The Contracts And Claims At Issue In This Case***

15       Finally, for the reasons stated in Part II, above, the forum selection clause also does not apply

16  to most of the parties' contracts, nor does it apply to the plaintiffs' tort claims.

17       Whether a forum selection clause applies to tort claims depends on whether resolution of the

18  claims relates to interpretation of the contract.  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, *supra*, at 514.

19  The tort claims at issue in this case have nothing to do with interpreting the contract documents.  They

20  are based on defendants' tortious behavior in handling the plaintiffs' Santa Fe Pointe Project and the

21  circumstances forcing Plaintiffs to accept the bridge loan.  These issues do no depend upon an analysis

22  of whether the parties were in compliance with the contract.  *See ibid.* Therefore, the tort claims are not

23  subject to the forum selection clause.

24
25       **J.**     ***NEW YORK COURTS ARE MORE CONGESTED THAN THOSE OF CALIFORNIA***

26       Statistical information reported by the Administrative Office of the United States Courts show

27  that in comparison with the Northern District of California, judges in the Southern District of New

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - 23
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1  York have a significantly a heavier caseload and longer processing time than the Northern District of

2  California.  See Draper Decl., ¶11, and Exhibits "H" and "I".

3      These statistics show that in comparison with the Northern District of California, judges in the

4  Southern District of New York have a much heavier caseload (**23% greater**) and that civil cases have a

5  longer processing time (**2½ times as many cases are still pending after three years**).

6      This factor (which was even not addressed in defendants' moving papers) favors retention of

7  this case in the Northern District of California.

8      ### K.    BOTH ACTIONS CAN BE LITIGATED IN CALIFORNIA

9      Defendants claim that "the only way all claims between these parties relating to the Santa Fe

10  project can be litigated in one forum is if they are litigated in the Southern District of New York."  *See*

11  Defendant's MPA 3:14-16.  This is simply not the case.  If the forum selection clause in the guaranty is

12  rendered unenforceable (as plaintiffs anticipate), then California will be the **only** place in which all

13  claims can be litigated because it will be the only place in which plaintiff Oliphant is subject to personal

14  jurisdiction.

15      Furthermore, a motion in the New York forum to transfer Greystone CDE's collection matter

16  to this district might well be granted, given the fact that the bulk of the contracts between the parties

17  have no such clause and the California tort claims are not subject to the forum selection clause in any

18  event.  The guaranties sued upon in the New York action are only a small piece of the pie, and would

19  be more appropriately integrated into the California action.  This is especially true since plaintiffs have

20  still not been served in the New York case, while all of the defendants (including Greystone CDE, who

21  is the plaintiff in the New York case) have already appeared in this action and the case here is at issue

22  and ready to proceed.

23  ### IV.    PLAINTIFFS ARE ENTITLED TO THE BENEFITS OF THE FIRST-TO-FILE
24  RULE

25      Finally, defendants suggest that the doctrine of federal comity, as expressed in the "first-to-file"

26  rule – a doctrine that favors this court as the appropriate venue – should be ignored in this case.  Their

27  argument is based, in part, on the conclusory allegation of unspecified "circumstances indicative of the

28  anticipatory nature of this action."  *See* Defendants' MPA 13:9-3.  However, Defendants' moving

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 24
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1  papers are devoid of any facts or argument outlining such "circumstances," much less any actual

2  evidence that would support that contention.

3        Such claims without supporting evidence are clearly insufficient to support a motion to transfer.

4  *See Xtended Beauty v. Xtreme Lashes*, 2007 U.S. Dist. LEXIS 68753, at 4-5 (N.D. Cal. Sept. 7, 2007)

5  (defendant's letter to plaintiff alleging trademark confusion was insufficient to support motion for

6  transfer on ground that plaintiff's subsequently filed suit was filed in anticipation of defendant's suit).

7        Plaintiffs not only filed their action first but effected service of process first and have acquired

8  personal jurisdiction over both Greystone Servicing and Greystone CDE – both of whom were

9  personally served before Greystone CDE filed its action in New York[14] and both of whom have

10 answered in the California action.  In comparison, Greystone CDE has still not even properly effected

11 service of process in the New York action on any of the California Plaintiffs.  This is yet another reason

12 militating against transfer of this action.

13       Plaintiffs are entitled to the benefits of the "first to file" rule.  The interests of federal comity

14 favor the retention of this case in this court.

15                                **CONCLUSION**

16       For the reasons set forth above, Plaintiffs respectfully respect that this Court deny the

17 discretionary motion to transfer this case to New York.

18

19 DATED:  November 30, 2007                    FARBER & COMPANY ATTORNEYS, PC
                                               Attorneys for Plaintiffs

20

21

22                          By *Ann McFarland Draper*

23                                Eric J. Farber, SBN 169472
                                  Ann McFarland Draper, SBN 065669

24

25
_____

26

27 [14] Plaintiffs have objected to the transmittal letter attached as Exhibit 4 to the Swanholt Declaration, which in any event does not establish that Greystone was unaware of Plaintiffs' suit until September 27. Greystone Servicing was personally served on September 25, and Greystone CDE was personally served on September 26.

28
_____

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 25
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.

1

### PROOF OF SERVICE

2        I, ANN McFARLAND DRAPER, declare:

3        1.        I am an attorney at law over the age of eighteen years of age and not a party to this

4   action.  My business address is 847 Sansome St., LL, San Francisco, CA  94111.

5        2.        On November 30, 2007, I served true and correct copies of the foregoing pleading

6   **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO**

7   **TRANSFER CASE TO THE SOUTHERN DISTRICT OF NEW YORK** on the interested

8   parties by electronically filing such documents through the CM/ECF system of United States District

9   Court for the Northern District of California, which will send electronic notification of such filing to

10  the following registered users:

11              Mark D. Kemple            mdkemple@jonesday.com

12              Erik K. Swanholt          ekswanholt@jonesday.com

13       I declare under penalty of perjury under the laws of the State of California that the foregoing is

14  true and correct and that this declaration was executed this 30th day of November 2007, at San

15  Francisco, California.

16

17                          *Ann McFarland Draper*

18                          Ann McFarland Draper

19

20

21

22

23

24

25

26

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 26
MPA in Opposition to Motion to Transfer Case to Southern District of New York
Farber & Company Attorneys, P.C.