November 16, 2006

Mr. Theo Oliphant
Rant LLC
113 Carmel Avenue
El Cerrito, CA 94530


Re:     **Bridge Loan from Greystone CDE, LLC**

Dear Mr. Oliphant:

    Greystone CDE, LLC or its affiliate ("Greystone") is pleased to submit to you, or a single asset entity you control, ("Borrower"), the following proposal for a Bridge Loan (the "Bridge Loan") on the following terms and conditions:

| | |
|---|---|
| **PURPOSE:** | To bridge permanent financing for the multifamily housing project known as the Santa Fe Pointe Apartments (the "Project"), located in Oklahoma City, OK. Disbursements against the Bridge Loan will be used exclusively for the acquisition, tax-exempt bond, and bridge financing costs associated with the Project as approved by Greystone in its sole discretion. |
| **PROPOSED AMOUNT:** | $4,348,400 (actual amount to be determined based on underwriting criteria) |
| **TERM:** | Six months with one six month extension subject to, among other things, Greystone's approval and payment by the Borrower of an extension fee of 0.25% of the original principal amount of the Bridge Loan. |
| **ORIGINATION FEE:** | 2.50% of principal amount of Bridge Loan. |
| **APPLICATION FEE:** | Waived |
| **INTEREST RATE:** | The three month LIBOR rate plus 2.75% per annum calculated on the basis of a 360-day year for the actual number of days elapsed. Interest will accrue and be due and payable monthly in arrears. |
| **INTEREST PAYMENTS:** | Interest only payments will be due and payable monthly in arrears. A portion of the interest may be capitalized if NOI is not sufficient to meet a Debt Service Coverage of 1.20%. |
| **LOAN SIZING RATIOS:** | The size of the Bridge Loan will be the lesser of:<br><br>▪ 85% of the amount of anticipated take out financing for the transaction;<br><br>▪ 85% Loan to Value; |

|  |  |
|---|---|
|  | ▪ 85% Loan to project acquisition and interim financing cost. |
| **REPAYMENT:** | All amounts due and owing under the Bridge Loan, including all principal, accrued but unpaid interest and any other fees or costs due under the loan documents, shall be paid on the earlier of: (i) the maturity date of the loan (subject to the provisions described above under *"Term"*); (ii) upon the closing of any permanent or additional financing in connection with the Project; or (iii) any time that same shall become due and payable under the loan documents, including, but not limited to, an event of default. |
| **COLLATERAL:** | Borrower's obligations in respect of the Bridge Loan shall be secured by a pledge all of its personal property in the Project including: its General Partnership interests, its Tax Exempt Bond and LIHTC Awards from the State of Oklahoma, all development fees directly or indirectly to be received by Borrower, its managing member/members or their affiliates in conjunction with the Project, and any assets of the Borrower including any plans, specifications, permits, reports etc.; and a first priority mortgage against all real property. |
| **EXIT FEE:** | Greystone CDE, LLC will charge an exit fee of 2% of the original principal amount of the Bridge Loan, which will be waived if the Borrower elects to close its permanent financing through Greystone. |
| **GUARANTORS:** | This loan is non-recourse except for customary personal guarantees from sponsor's principals against fraud, misdirection of funds and other similar bad acts, and such limited recourse guaranties of the managing member and other affiliates of Borrower as may be necessary to support the pledge by such entity or person of its ownership interests in Borrower, the development fees and profits described above under "Collateral." |
| **DOCUMENTATION:** | Borrower and any of its affiliates entitled to receive development fees or general partner fees or profits shall execute in respect of the Bridge Loan customary and appropriate documents including but not limited to, a promissory note, security agreement, a limited recourse guaranty, a Bridge Loan Agreement and any other documents reasonably requested by Greystone *("Loan Documents"*) which shall contain, without limitation, the following covenants: (1) neither Borrower nor its general partner or any other affiliate who has pledged collateral to secure repayment of the Bridge Loan shall incur indebtedness (direct or contingent) or place additional liens on such pledged collateral without the prior written consent of Greystone; and (2) Borrower shall provide customary financial reporting (including annual audited financial statements) and access to books and records of Borrower, its general partner and affiliates who have |

|  |  |
|---|---|
|  | pledged collateral or have guaranteed or assumed any obligations with respect to the Bridge Loan. |
| **BORROWING PROCEDURES:** | The Bridge Loan shall be deemed fully funded at Bridge Loan Closing. Disbursements under the Bridge Loan shall be made from time to time, but not more frequently than monthly, upon submission by Borrower of a disbursement request and supporting documentation provided Greystone has approved same following Greystone's review. |
| **INVESTMENT ACCOUNT:** | Undisbursed Bridge Loan funds will be invested by Greystone on behalf of the Borrower and the interest earned thereon will be used to offset interest due on the Bridge Loan. |
| **PROJECT DUE DILIGENCE:** | Upon the Borrower's execution and delivery hereof, Borrower shall provide Greystone with access to the housing development site and records with respect thereto.  It is anticipated that Greystone representatives shall conduct site visits at the development.  Borrower shall use its best efforts to cause responsible persons at the development to make themselves available to Greystone's representatives and to provide Greystone's representatives with such information regarding the development as Greystone may reasonably request. |
| **COSTS AND EXPENSES:** | All costs and expenses incurred in connection with the Bridge loan, including fees and expenses of Greystone's counsel, costs of due diligence, and costs of any third party experts or consultants shall be the responsibility of Borrower.  Payment of such amounts is not contingent upon closing of the Bridge Loan. |

Kindly acknowledge your receipt and acceptance of this proposed term sheet by signing in the space below and returning it to Greystone; Attention: Matthew James.

Very truly yours,

GREYSTONE CDE, LLC

By: _____
Name:
Title:


RECEIVED AND ACKNOWLEDGED:


_____
Name: Theo Oliphant
Date:

-4-

> *The foregoing does not constitute, and shall not be deemed, a promise or commitment by Greystone or any of its affiliates to lend or enter into any financing transaction. Any such commitment shall be subject to completion by Greystone of underwriting and due diligence satisfactory to Greystone in its sole discretion, receipt by Greystone of all necessary approvals and consents from all entities and governmental authorities, the preparation and execution of definitive written loan documents and such other requirements as Greystone may require in its sole discretion.*

**GENERAL REQUIREMENTS:**

A.  The documents evidencing or securing or delivered in connection with the Bridge Loan and all due diligence submissions in connection with the Bridge Loan shall be in form and substance satisfactory to Greystone and its counsel.

B.  Borrower shall have delivered such instruments, reports, documents and information as are customarily required by providers of financing facilities of this size and nature, including, without limitation, the following:

1. **Financial Statements.**  Audited financial statements, schedules of contingent liabilities, and federal tax returns of Borrower, its managing member and all affiliates thereof entitled to receive development fees or general partner fees or profits, together with evidence that there has occurred no material adverse change in such parties' financial condition between the respective dates of such financial statements and the closing date of the Bridge Loan, and together with pro forma financial statements of Borrower satisfactory to Greystone.

2. **Project Budget.**  The pro forma construction and operating budgets for Project satisfactory to Greystone.

3. **Other Financing Documents.**  True, correct and complete copies of all documentation relating to:

    1. Tax exempt bond indenture;

    2. Loan application, as submitted to FHA for Firm Commitment;

    3. Receipt of HUD's acceptance of FHA loan application;

    4. Executed Letter of Intent with LIHTC investor.

4. **Financing and Reference Checks.**  Financing and credit reports of Borrower, its managing member and any affiliate referenced in clause (1) above from outside sources selected or approved by Greystone.

5. **UCC, Litigation and Bankruptcy Searches.**  UCC, bankruptcy and litigation searches in respect of Borrower, its managing member and any affiliate.

6. **Organizational Documents.**  For each of Borrower, its managing member and any affiliate, certified copies of the following:

    1. its operating agreement, limited liability company agreement, articles of incorporation, by-laws, as applicable;

    2. certificates of good standing/existence/authorization under the laws of its jurisdiction of organization; and

    3. resolutions or unanimous written consents of members, partners or directors approving the execution and delivery of the documentation evidencing or securing the Bridge Loan and the performance of the obligations thereunder.

7. **Opinion of Counsel.**  Opinions of counsel, as to the following:

1. the valid organization, qualification, existence and good standing of Borrower, its managing member and any affiliate;

2. the due authorization, execution and delivery of the documents evidencing and securing the Bridge Loan (the "Bridge Loan Documents");

3. the legality, validity, binding effect and enforceability of the Bridge Loan Documents and the validity and perfection of the security interests granted thereunder;

4. that the execution and delivery of and performance of the obligations of Borrower, its managing member and any affiliate under the Bridge Loan Documents will not violate any provision of law or any applicable judgment, order, or regulation of any court, or of any public or governmental agency or authority, and will not conflict with or constitute a default under Borrower, its managing member's or any such affiliate's organizational documents or under any instrument to which the Borrower, its managing member or any such affiliate is a party or by which Borrower, its managing member or any such affiliate is bound; and

5. that there are no pending or, threatened actions, claims or proceedings against Borrower, its managing member or any affiliate, before any court or governmental agency, which, if determined adversely to Borrower, its managing member or any such affiliate, would have a material adverse effect upon performance of the Bridge Loan Documents.

8. **Due Diligence Submissions:**

    1. Property Description (be certain that the property meets eligibility requirements set forth on page one of this summary).
    2. Neighborhood Description
    3. Appraisal
    4. Phase I Environmental Report
    5. Color Photographs
    6. City and Neighborhood Maps
    7. Sources and Uses of Funds, Copy of Purchase Agreement, if applicable
    8. Property Ownership History (when purchased, what price and any significant events during Borrower's tenure of ownership)
    9. Existing Debt Data (lender name, contact name and phone number, loan amount, maturity date and interest rate)
    10. Three years' certified tax returns for Borrower and each Guarantor
    11. Certified Financial Statements for Borrower and each Guarantor
    12. Borrower and Key Principal Resumes
    13. Borrower Organizational Documents
    14. Copy of Current Owner's Title Policy
    15. Copy of current survey

9. **Other.**  Such other documents, instruments, opinions and assurances as Greystone may reasonable request.

**Bridge Loan Sources and Uses:**

| Number of Units: | 224 |
|---|---|

| | | |
|---|---:|---|
| Closing Period: | 4 | Months |
| 3-Month LIBOR: | 5.37% | |
| Interest Rate: | 2.75% | |
| All In Rate: | 8.12% | |
| Underwriting Rate: | 0.00% | |
| Underwriting Rate: | 8.12% | |

| **Sources:** | Total | Per Unit |
|---|---:|---:|
| Bridge Loan | 4,348,400 | 19,413 |
| Owner Equity | 824,310 | 3,680 |
| **Total Sources:** | **5,172,710** | 23,092 |
| **Uses:** | | |
| Origination Fees:  2.50% | $ 108,710 | 485 |
| Capitalized Interest*: | $       - | - |
| Interest Offset: | $       - | - |
| Bond Costs: | $ 350,000 | 1,563 |
| Rehabilition Escrow: | $       - | - |
| Acquisition Costs: | $ 4,704,000 | 21,000 |
| Legal: | $ 10,000 | 45 |
| Third Party Costs: | $       - | - |
| **Total Uses:** | **$ 5,172,710** | 23,092 |

*assumes current project NOI will pay interest due on Bridge Loan