1  Eric J. Farber, SBN 169472
   eric@farberandco.com
2  William W. Schofield, SBN 062674
   William.schofield@farberandco.com
3  FARBER & COMPANY ATTORNEYS, P.C.
   847 Sansome Street, Ste. LL
4  San Francisco, California 94111
   Telephone 415.434.5320
5  Facsimile 415.434.5380

6  Attorneys for Plaintiffs

7

8

9              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA

10              (SAN FRANCISCO DIVISION)

11  SANTA FE POINTE, LP, an Oklahoma limited        Case No.: C07-05454 JCS
    partnership; SANTA FE MANAGEMENT, LLC,
12  an Oklahoma limited liability company; RANT,     SECOND AMENDED AND
    LLC, a Delaware limited liability company; and   SUPPLEMENTAL COMPLAINT
13  THEOTIS F. OLIPHANT, an individual,              FOR DAMAGES AND
                                                      DECLARATORY RELIEF
14                          Plaintiffs,
                                                      JURY TRIAL DEMANDED
15          vs.

16  GREYSTONE SERVICING CORPORATION,               BEFORE THE HONORABLE
    INC., a Georgia corporation; GREYSTONE CDE,    JOSEPH C. SPERO
17  LLC, a Delaware limited liability company; and
    DOES 1 through 100, inclusive,
18                          Defendants.

19

20          Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership ("SFP"), THEOTIS F.

21  OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited liability company

22  ("Rant"), allege as follows:

23                       **DEMAND FOR JURY TRIAL**

24          Plaintiffs here demand a jury trial to the fullest extent available under the law, the United

25  States Constitution, and Section 16 of Article I of the California Constitution.

26

27

28

_____
*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 1
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

**INTRODUCTORY ALLEGATIONS**

1.     This is an action for damages, declaratory relief and accounting arising out of the conduct of defendants with respect to Plaintiffs' efforts to acquire and rehabilitate a 224-unit apartment building in Oklahoma City (the "Project") as a tax-credit developer of a Low Income Housing Tax Credit project offered through the FHA's Office of Housing and Urban Development ("HUD").  The Federal Government subsidizes tax credit projects to encourage private developers to acquire, construct, renovate, and maintain housing stock that will be income restricted for tenants, and maintained by the private developer.  The tax-credit developer gets paid a fee equal to 14% of the total allowable project costs, and the project financing is non-recourse.

**PARTIES**

2.     Plaintiff SANTA FE POINTE, LP ("SFP"), is an Oklahoma limited partnership formed for the purpose of acquiring the Project, and having its principal place of business in Edmond, Oklahoma.

3.     Plaintiff SANTA FE MANAGEMENT, LLC, is an Oklahoma limited liability company formed for the purpose of managing the Project, and having its principal place of business in Edmond, Oklahoma.

4.     Plaintiff RANT, LLC ("Rant") is a Delaware limited liability company having its principal place of business in the County of Alameda, State of California.  Plaintiff Rant is now, and at all times material hereto was, qualified to do business as a foreign corporation in the State of California.

5.     Plaintiff THEOTIS F. OLIPHANT is an individual who does now, and at all times material hereto did, maintain his principal residence in the State of California, Contra Costa County. OLIPHANT is now, and at all times material hereto was, the managing member of Santa Fe Management, LLC (the general partner of Plaintiff SFP) and the managing member of Plaintiff RANT.

6.     Defendant GREYSTONE SERVICING CORPORATION, INC. ("Greystone Servicing") is a Georgia corporation having its principal place of business in New York, New York. Defendant Greystone Servicing is now, and at all times material hereto was, qualified to do business

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                    - 2
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1 | as a foreign corporation in the State of California.  Plaintiffs are informed and believe and on that

2 | basis allege that Defendant Greystone Servicing in fact does business in the State of California.

3 | Defendant Greystone Servicing has failed to designate any principal place of business in the State of

4 | California; the only California address identified by Defendant Greystone Servicing on its California

5 | filings is the address of its agent for service of process, which is 818 West Seventh St., Los Angeles,

6 | CA 90017.  Venue for Defendant Greystone Servicing is therefore proper in the County of Alameda

7 | and in any other county in the State of California.

8 |        7.     GREYSTONE CDE, LLC ("Greystone CDE") is a Delaware corporation having its

9 | principal place of business in New York, New York.   Plaintiffs are informed and believe and on that

10 | basis allege that at all times material hereto, defendant Greystone CDE was not qualified to do

11 | business as a foreign corporation in the State of California but in fact did business in said state.

12 | Defendant Greystone CDE has failed to designate any principal place of business in the State of

13 | California.  Venue for Defendant Greystone CDE is therefore proper in any county in the State of

14 | California.

15 |        8.     Defendants Greystone Servicing and Greystone CDE are hereinafter collectively

16 | referred to as the "Greystone Defendants."  Plaintiffs are informed and believe and on that basis

17 | allege that the Greystone Defendants are owned and operated in such a way that each benefited

18 | financially from the conduct of the others alleged hereinbelow.

19 |        9.     The Defendants sued herein as DOES 1 through 100, inclusive, are either natural

20 | persons or business entities, whose true names, capacities and (in the case of business entities) exact

21 | form of entity, are currently unknown to Plaintiffs, who therefore sue said defendants by such

22 | fictitious names.   Plaintiffs are informed and believe and on that basis allege:

23 |           A.    that each of these fictitiously-named defendants is (either alone or in

24 | concert with named Defendants) responsible in some manner for the occurrences,

25 | injuries and damages herein alleged, has participated or is participating in some

26 | manner in the actionable conduct herein alleged, and is liable to Plaintiffs together

27 | with Defendants named herein for damages and/or other relief prayed for herein;

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - 3
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

B.    that Plaintiffs' injuries as herein alleged were legally caused by the acts or omissions of said fictitiously-named defendants;

C.    that at all times mentioned herein, each of the named and fictitiously named Defendants was the officer, director, employee, partner, joint venturer, servant, agent, subsidiary, division and/or alter ego of each of his, her or its co-Defendants, was acting within the course and scope of said employment, partnership, joint venture, joint enterprise, service or agency relationship, with the full knowledge and consent of each of the other defendants and within the authority granted to said defendants, and each of them, and/or that each of the acts of each of the Defendants was ratified by each of the other said Defendants.

10.    Plaintiffs are informed and believe and on that basis allege:

A.    that at all times mentioned herein, each of the named and fictitiously named Defendants was the co-conspirator of the others and was acting in concert of action and within the course and scope of a conspiracy formed amongst them;

B.    that each defendant sued herein received money or property as a result of the conduct described herein without consideration therefor and/or with knowledge that the money or property was obtained as a result of the fraud, deception or other wrongful conduct described herein;

C.    that each of the defendants knowingly and intentionally aided, abetted, encouraged and cooperated with, or turned a blind eye to, the other defendants in the wrongful conduct alleged herein and accordingly are liable as aiders and abettors and/or co-conspirators of each other; and/or

D.    that each defendant sued herein aided and abetted the others with the intent that each would be successful in their mutual endeavors.

11.    Pursuant to California Code of Civil Procedure §474, Plaintiffs will seek to amend this Complaint to substitute the true names, capacities and (in the case of business entities) exact form of entity, of each of the said fictitiously-named defendants, as well as the particulars of the conduct,

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 4
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1    participation and basis for liability for each of said fictitiously-named defendants, as and when such

2    information is ascertained by Plaintiff.

3                                         **VENUE**

4           12.    This case is properly venued in the County of Alameda because each of defendants

5    GREYSTONE SERVICING CORPORATION, INC., a Georgia corporation ("Greystone

6    Servicing"), and GREYSTONE CDE, LLC, a Delaware corporation ("Greystone CDE"), has failed

7    to designate any current California principal place of business and therefore may be properly sued in

8    any county of this state.

9                                **COMMON ALLEGATIONS**

10          13.    Plaintiffs are informed and believe and on that basis allege: that the Greystone

11   Defendants are one of the nation's leading originators of Federal Housing Administration (FHA)

12   multifamily loans; that the FHA financing originated by the Greystone Defendants provides long-

13   term, fully amortizing, fixed rate, non-recourse loans for acquisition and rehabilitation of low-income

14   housing projects such as the Project; that the Greystone Defendants have regional origination offices

15   in California and throughout the United States; and that the Greystone Defendants provide loan

16   officers, underwriters, analysts and consultants to facilitate successful acquisition, rehabilitation and

17   financing of projects such as the Project.

18          14.    Plaintiffs are informed and believe and on that basis allege that the Greystone

19   Defendants are a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing

20   (MAP) program.  This program establishes national standards for approved lenders to prepare,

21   process and submit their own loan applications.  In this process, the Greystone Defendants serve as

22   an intermediary between their developer-clients and FHA offices to facilitate approval of applications

23   and to obtain financing within required timeframes.

24          15.    On or about September 7, 2006, Plaintiffs and Greystone Servicing entered into a

25   written agreement wherein Plaintiffs appointed Greystone Servicing to serve as their exclusive agent

26   to process the HUD application for financing the acquisition and rehabilitation of the Project (the

27   "Engagement Agreement").  A copy of the Engagement Agreement is attached as Exhibit "A" hereto

28
_____

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                      - 5
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1  and incorporated herein by this reference. On the same date, Plaintiffs paid $14,000 in fees to

2  Greystone Servicing as required by the Engagement Agreement.

3       16.    Under the agreement and FHA procedures, the HUD application materials were to be

4  completed by the tax-credit developer (Plaintiffs) and the underwriter (the Greystone Defendants).

5  However, as underwriter, the role of the Greystone Defendants was (A) to underwrite the financing

6  of the acquisition and rehabilitation of the Project; and (B) to submit the application on behalf of the

7  tax credit developer to HUD.   In connection with this role, it was the responsibility of the Greystone

8  Defendants to commission third party reports and submit them as support for the underwriting

9  analysis along with the HUD application materials; Plaintiffs were neither authorized nor permitted to

10 communicate directly with HUD with respect to the HUD application.

11      17.    Also on or about September 7, 2006, Plaintiffs also engaged Seibert Branford Shank &

12 Company, LLC ("SBS") to serve as investment bank underwriter to sell the $7,095,000 of tax-exempt

13 bonds through which the Project was to be financed.  The bond financing was required to close by

14 December 20, 2006 or the bond issue would expire.  In order to accomplish timely sale of the tax-

15 exempt bonds, SBS had to coordinate the sale of the tax-exempt bonds with the filing of the HUD

16 application by the Greystone Defendants.  Toward this end, SBS impressed upon the Greystone

17 Defendants the importance of completing the HUD application by November 2006.

18      18.    On or about September 22, 2006, SBS distributed a financing timetable and

19 responsible parties list for the Project.  The timetable provided that the Greystone Defendants were

20 to submit the HUD application on November 6, 2006.   Miriam Simon ("Simon"), who was

21 Greystone's senior underwriter for the Project, received the SBS document and participated in Project

22 meetings and telephone conferences on behalf of the Greystone Defendants.  Plaintiffs informed

23 Simon that they were willing to pay incremental costs to accelerate the filing of the HUD application.

24      19.    On or about October 5, 2006, Oliphant, Simon, SBS representatives and others met

25 with HUD officials in Oklahoma City regarding the Project.  At that meeting HUD officials

26 emphasized that the HUD application needed to be submitted by the first week of December 2006 or

27 HUD's review of the application would be delayed.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 6
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

20.    One of the supporting documents required for the HUD application is architectural review by a firm designated by the HUD-approved lender. Shortly after the October 5 meeting, Plaintiffs agreed to and did pay additional fees to Greystone's HUD architect review firm to expedite its review process so that the architectural review component would not delay filing of the HUD application.

21.    At the time of this meeting, the Greystone Defendants were aware that Plaintiffs wanted to complete the purchase of the property by December 20, 2006.  The Greystone Defendants were also aware that Plaintiffs would lose the $7,095,000 of tax-exempt bond financing if the bond financing was not closed by December 20, 2006.

22.    On or about October 16, 2006, Oliphant filed the paperwork and expended the funds to form Plaintiff SFP (Santa Fe Pointe, LP) as an Oklahoma limited partnership and Santa Fe Management, LLC as an Oklahoma limited liability company.  Plaintiff SFP was the official, single purpose entity formed to execute the acquisition and rehabilitation of the Project and be the borrower on the HUD non-recourse loan.  Plaintiff Santa Fe Management, LLC was the official, single purpose entity formed to be the general partner of Plaintiff SFP and manage the Project.

23.    On or about October 27, 2006, Simon sent an email stating that the HUD application process was behind schedule.  In light of the December 20, 2006 deadlines, Plaintiffs were troubled by this email, and Oliphant communicated his concerns to Matt James (the business development person at Greystone who initially sold Oliphant on using Greystone's services).   To address Oliphant's concerns, James told Oliphant that Greystone would provide a non-recourse bridge loan to fund the purchase of the Project and the cost of issuance for the bonds to be sold by SBS.

24.    On or about November 13, 2006, Plaintiffs caused the final set of architectural plans and specifications to be delivered to Greystone's architectural review firm.  On or about November 14, 2006, Plaintiffs delivered by FedEx a complete set of financial certifications and list of business entities for all participants in the Project.  These items, which were the final items required from Plaintiffs and the development team, were delivered a full two weeks before Greystone's scheduled delivery of the HUD application.  All other aspects of the HUD application were within Greystone's ability to perform and execute timely.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 7
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

25.     On November 14, 2006, after Plaintiffs had transmitted all items required to be provided by them, Greystone for the first time informed Plaintiffs that the HUD application would not be submitted in 2006. To address the concerns of Plaintiff and the development team and reassure them that the Project would ultimately be a success, James again stated that Greystone was committed to funding the acquisition of the Project and issuance of the tax-exempt bonds, and stated that Greystone would issue a non-recourse bridge loan to fund the acquisition of the Project and the cost of issuing the bonds.

26.     On November 16, 2006, bond counsel for SBS sent an email to confirm that Greystone would fund a bridge loan for the purchase of the Project and the cost of issuing the tax-exempt bonds. That same day, Defendant Greystone Servicing provided a bridge loan term sheet on behalf of Defendant Greystone CDE which provided for a non-recourse bridge loan to Oliphant in the amount of $4,348,400. The November 16 Term Sheet stated that the bridge loan would be for the full purchase price of the Project and that it would be non-recourse.

27.     On November 21, 2006, SBS representatives provided the final financing timetable, again confirming that Greystone had agreed to fund all costs of selling the tax-exempt bonds through bridge financing. Thereafter, the parties proceeded to complete arrangements for issuance of the tax-exempt bonds and acquisition of the Project, and Oliphant made arrangements to travel to Oklahoma City on December 18 through 20 for the closing of the Project acquisition.

28.     The tax-exempt bonds were priced on December 13 and 14, and were sold by SBS to institutional investors. As a result, Plaintiffs incurred approximately $251,000 in bond issuance costs.

29.     On December 17, 2006, the literal eve of Oliphant's departure to Oklahoma City, the Greystone Defendants' counsel delivered the first drafts of the bridge loan documents. The provided loan documents did not provide the financing promised by Greystone. Instead, these documents provided for a bridge loan of only $500,000 rather than the promised $4,348,400. This reduced amount would cover the cost of the bond issuance but not acquisition of the Project. In addition, instead of the promised non-recourse financing, the provided loan documents included a personal guaranty by Oliphant and a spousal guaranty, neither of which had been mentioned previously.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*     - 8
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

30.    When Oliphant received the bridge loan documents on December 17, 2006, the $251,000 bond issuance costs had already been incurred because the tax-exempt bonds had been sold. Moreover, if the Project acquisition was not closed by December 20, 2006, Plaintiffs faced losing the tax-exempt bond funding because the bonds would expire. Oliphant signed the voluminous bridge loan documents as presented. Copies of the following are attached as Exhibits "B," "C," "D," "E," and "F," respectively, hereto and incorporated herein by this reference: Bridge Loan Agreement; the Bridge Loan Promissory Note; the Partner Guaranty, Pledge and Security Agreement; the Developer Limited Guaranty, Pledge and Security Agreement; and the Guaranty and Suretyship Agreement.

31.    On or about March 14, 2007, Greystone submitted the final HUD application on behalf of Oliphant and Plaintiffs.

32.    Part of the financial structure of the Project included sale of the tax credits to a purchaser/syndicator. Under the original HUD application, the tax credit purchaser/syndicator was the Richman Group. On or about April 17, 2007, the Richman Group backed out of the deal. Thereafter, with the knowledge and consent of the Greystone Defendants, Plaintiffs pursued other syndicators and co-developers to complete the financial aspects of the Project. On or about June 14, 2007, Plaintiffs were introduced to David Henry, an experienced Arkansas tax credit developer who would serve as general contractor, property manager, and co-developer, and thereafter Plaintiffs and David Henry worked out terms for their relationship.

33.    On or about June 29, 2007, the seller of the Project agreed to extend the closing date to July 31, 2007 in order to accommodate additional bridge loan financing arranged by David Henry. As a part of this agreement, Plaintiffs paid an additional $25,000 earnest money deposit to the seller, which Oliphant funded through an additional $25,000 advance on the Greystone bridge loan.

34.    On or about July 5, 2007, Oliphant met with HUD personnel in Oklahoma City and learned that the HUD application had been rejected by letter sent out earlier that day. At this meeting, the HUD representative informed Oliphant that at a HUD conference in St. Louis on June 19, Greystone's representative had gone out of her way to make unsolicited disparaging remarks about the Project to the HUD representative from Oklahoma City.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 9
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

35.     On or about July 10, 2007, Matt James acknowledged to Oliphant that Greystone had received the HUD rejection letter, and reassured Oliphant that Betsy Vartanian, who was "one of the top HUD loan executives at Greystone," was going to step in.

36.     On or about July 11, 2007, Betsy Vartanian informed Oliphant that she had spoken with HUD personnel in Oklahoma City and that HUD had agreed to reconsider the application without starting over from the beginning, and that Greystone would submit written materials responsive to HUD's concerns.  On or about July 13, 2007, Greystone sent a letter to HUD confirming that supplemental materials would follow to address HUD's concerns raised in the July 5 letter.

37.     In the meantime, Oliphant and David Henry continued to proceed with the closing of the acquisition of the Project.  Oliphant and David Henry reached an agreement with the seller whereby the seller would carry back a second mortage in the amount of $500,000.  On July 25, 2007, the attorneys for the first mortgage lender sent out drafts of the closing documents.   On July 27, 2007, Greystone threatened to disrupt the acquisition deal unless the seller agreed to subordinate his carry-back loan to Greystone's pre-development bridge loan.  That same day, Oliphant and David Henry made arrangements to meet in Oklahoma on July 30th and 31st to make plans for signing the closing documents, taking control of the Project, and getting the keys.

38.     On July 29, 2007, the eve of travel, David Henry emailed that he was having second thoughts about the deal and had concerns about the cost of the bond issuance in December 2006.  However, Henry was unavailable to discuss his concerns that entire day.

39.     On July 30, 2007, Oliphant and Henry arrived in Oklahoma City.  In a telephone conference call, Greystone rescinded its demand that the seller subordinate his carry-back loan.  Instead, Greystone requested that Henry's bank allow Greystone to purchase its loan after closing, so that Greystone could improve its collateral position.

40.     On July 31, 2007, Oliphant and Henry met for approximately six hours to discuss Henry's concerns.  During this meeting, David Henry proposed taking over the entire Project in exchange for assuming the Greystone loan.  The parties did not reach agreement for modifying their

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 10
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1    prior arrangement, and David Henry left town without signing the escrow documents.  Oliphant,

2    however, signed the closing documents at the title company that day before leaving Oklahoma City.

3        41.    In early August 2007, Greystone began negotiating with David Henry on ways to get

4    the deal done without Oliphant and Plaintiffs, and also began threatening to declare the bridge loan in

5    default.

6        42.    On August 9, 2007, Greystone unilaterally withdrew the HUD loan application

7    without any prior notice or warning to Oliphant or Plaintiffs.  The withdrawal of the HUD

8    application placed at risk the $7,095,000 in tax exempt bond proceeds.  It also caused the seller to

9    terminate negotiations with Oliphant because the withdrawal of the HUD application made it appear

10   that Plaintiffs could not close the deal and that it would take another 10-12 months if the HUD

11   process were started over.

12       43.    By email dated August 21, 2007, Greystone representatives requested additional

13   documentation from Plaintiffs for submission to the loan committee, thus indicating that Greystone

14   intended to go forward with the deal.  On the same date, however, Greystone CDE was apparently

15   preparing a letter declaring the bridge loan in default.

16       44.    On or about August 22, 2007, Thom Ruffin of Greystone telephoned Oliphant and

17   asked if he had received "the letter."  When Oliphant responded in the negative, Ruffin informed

18   Oliphant that Plaintiffs were going to receive a letter that had gone out by FedEx declaring the bridge

19   loan in default.  Ruffin then proceeded to tell Oliphant that Greystone had been talking to David

20   Henry regarding terms upon which Henry would take over Plaintiffs' deal and assume some of the

21   liability of the Greystone bridge loan.

22       45.    After the telephone call, Oliphant received the letter dated August 21, 2007 wherein

23   Greystone CDE declared the bridge loan in default and threatened legal enforcement.  The August 21

24   default letter was transmitted by FedEx to Oliphant at his address in California.  The first alleged

25   default specified in the August 21 default letter was "expiration of the contract for purchase and sale

26   of the Project without the same having been extended."  The August 21 default letter also specified

27   other alleged defaults that were inaccurate, not defaults, and/or had been waived.

28

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                  - 11
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

46.     Over the next several days, the Greystone Defendants continued to pressure Oliphant and Plaintiffs to allow David Henry to take over the entire Project (keeping all the profits). As a part of this proposal, Henry would assume $275,000 of the bridge loan but Greystone required that Oliphant accept responsibility for paying $215,000, release Greystone of all liability, and agree not to sue. By letter dated August 27, 2007, transmitted by email and FedEx, Greystone notified Oliphant that it would pursue all collection remedies unless Plaintiff's agreed to the proposed transaction wherein David Henry would take over the deal. On August 30, 2007, Greystone's counsel delivered an "assignment agreement and covenant not to sue" to this effect and demanded that Oliphant provide written confirmation of acceptance by August 31.

47.     The terms of the proposed "assignment agreement and covenant not to sue" were financially unacceptable to Plaintiffs and Oliphant did not sign the documents by the requested deadline. Instead, after the Labor Day weekend, Oliphant and Ruffin traded phone calls for several days.

48.     By email transmitted on September 11, 2007, Oliphant notified the Greystone Defendants that Plaintiffs had successfully documented extension of the time to close the deal with the Seller and provided copies of the fully executed Addendum effecting the extension. This cured the first-listed alleged default specified in Greystone's August 21 default letter ("expiration of the contract for purchase and sale of the Project without having been extended"). Thus, in this same email, Oliphant also demanded that Greystone rescind its Notice of Default issued August 21, 2007.

49.     The Greystone Defendants ignored Oliphant's email of September 11 and did not rescind the August 21 notice of default nor otherwise respond in writing. On September 13, 2007, Oliphant sent a further email to the Greystone Defendants asking for a written response to the September 11 email.

50.     In response to Oliphant's September 13 email, Thom Ruffin telephoned Oliphant on September 14, 2007, and set up a telephone conference call for later that day. During that conference call, Oliphant again requested that the Greystone Defendants rescind the August 21 notice of default but the Greystone Defendants refused to do so. The Greystone Defendants claimed that the bridge loan was still in default because there was (they claimed) no tax credit syndicator. The Greystone

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 12
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1    Defendants further stated that Greystone was "out" unless Plaintiffs could prove that the Project was

2    a viable deal.

3         51.    In fact, the bridge loan was not in default for the claimed lack of a tax credit

4    syndicator.  First of all, the Greystone Defendants waived this condition in April 2007 when the initial

5    tax credit syndicator withdrew from the deal.  Moreover, Plaintiffs had obtained a commitment from

6    a successor tax credit syndicator in June 2007 which, at the time of the September 14 telephone

7    conference, was still in effect and had not been withdrawn.

8         52.    By letter dated September 21, 2007, Greystone CDE notified Plaintiffs that it was

9    accelerating the bridge loan and declaring all amounts due under the bridge loan note immediately due

10   and payable.

11        53.    On October 29, 2007, Defendant Greystone Servicing caused a letter (the "October

12   29 Letter") to be delivered to the Oklahoma County Finance Authority, the government entity who

13   issued the tax-exempt bonds for the Project.  The letter specifically referenced the tax-exempt bond

14   issue which had been sold for the Project in December 2006.   Although the Greystone Defendants

15   knew, at the time the October 29 Letter was sent, that Plaintiffs had successfully negotiated and

16   documented an agreement with the Project's seller extending the time for completing the purchase,

17   the October 29 letter nonetheless contained a statement that "the borrower's contract for the

18   purchase of the Santa Fe Apartments project expired without being extended," and that this led to "a

19   default under the bridge loan documents" resulting in litigation "in Federal Court in New York."  The

20   October 29 Letter omitted any mention of the fact that Plaintiffs had extended the contract, and was

21   artfully drafted in such a way as to create the impression that Plaintiffs had unilaterally defaulted, that

22   the Project was dead, and that Greystone had filed a collection against Plaintiffs.   Although a copy of

23   the referenced complaint in the New York Action (the "New York Complaint") was included with the

24   October 29 Letter., purportedly for the "information" of the recipient, the letter made no mention of

25   the present action, which Plaintiffs had filed nearly three weeks before Greystone CDE filed the

26   New York Complaint.

27        54.    The October 29 Letter and accompanying New York Complaint conveyed an

28   inaccurate and misleading depiction of the Project and the tax-exempt bonds.  The New York

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                        - 13
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

Complaint also contained disputed, objectionable and scandalous matter.  At the time the October 29 Letter was sent, Plaintiffs herein had not been properly served in the New York Action and had specially appeared in that forum for the sole and limited purpose of disputing personal jurisdiction. As a result, the effect of the October 29 Letter and accompanying New York Complaint was to gratuitously publish the disputed, objectionable and scandalous matter in the New York Complaint before the California Plaintiffs had an opportunity to respond to those statements by answering or moving to strike portions thereof.

55.     In addition to the Oklahoma County Finance Authority, Greystone Servicing also delivered the October 29 Letter and the accompanying New York Complaint to the following recipients:

> Floyd Law Firm, P.C. of Norman, Oklahoma
> (outside counsel for the bond issuer, Oklahoma County Finance Authority)
>
> Bank of Oklahoma, N.A., Corporate Trust Division
> (trustee for the tax-exempt bond issue)
>
> Siebert Brandford Shank
> (investment bank who underwrote for the tax-exempt bond issue)
>
> Eichner & Norris PLLC of Washington, DC
> (outside counsel for the investment bank, Siebert Brandford Shank)
>
> Riggs Abney Neal Turpen Orbison & Lewis of Tulsa, Oklahoma
> (local attorney who issued opinion on Oklahoma law for bond issuance)
>
> ImageMaster, Inc. of Ann Arbor, Michigan
> (commercial printing company who printed the official statement for bond issuance)
>
> Standard & Poor's
> (one of the dominant bond-rating institutions)
>
> Shawn Smith and Smith Real Estate Development, Inc. of Edmond, Oklahoma
> (Plaintiffs' local tax credit real estate professional)
>
> Greystone & Co., Inc.
> (parent company of the Greystone Defendants/member)

56.     Defendant Greystone Servicing's October 29 Letter and the accompanying New York Complaint was designed to, and did, interfere with Plaintiffs' ability to successfully complete the financing, rehabilitation and development of the Project.  For example:

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 14
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

A.    By delivering said materials to Standard & Poors, the predominant and highly influential bond-rating institution, Defendant Greystone Servicing intended to, and did, expose the tax-exempt bonds issued and sold for the Project to a significant risk of being downgraded or de-rated, even though the bonds were guaranteed and there was no meaningful risk of loss to the bond-holders. The effect of downgrading or de-rating the bonds would cause the interest rate to increase, thus making it more difficult and more costly, and potentially impossible, to complete the Project.

B.    By delivering said materials to the Bank of Oklahoma, N.A., the bond trustee, Greystone Servicing intended, and did, damage the marketability of the tax-exempt bonds and placed their marketability at risk.

C.    By delivering said materials to the Department of Housing and Urban Development ("HUD"), Greystone Servicing jeopardized completion of the Project because HUD issues the FHA-backed mortgage and could decline to insure the loan in the face of such incomplete and misleading disparaging statements about Plaintiffs.

57.    The delivery of the October 29 Letter and accompanying New York Complaint constitute yet another act by Greystone Servicing in its continuing course of interfering with Plaintiffs' ongoing efforts to complete the Project. There was no business reason, justification or necessity for Greystone Servicing to publish such inaccurate and misleading statements to the recipients of the October 29 Letter.

58.    The delivery of the October 29 Letter and accompanying New York Complaint was malicious, highly detrimental to Plaintiffs' reputation and business esteem, and was intended to prevent Plaintiffs' from completing the Project and/or from mitigating their damages occasioned by the Greystone Defendants' conduct.

**FIRST CAUSE OF ACTION**
**(For Negligence, Including Professional Negligence)**

59.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through 58, inclusive, and other material allegations set forth above, as though the same were fully set forth at this place.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                - 15
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

60.     Each of the Greystone Defendants owed Plaintiffs and each of them a duty of due care by virtue of the business relationship established through the Engagement Agreement wherein Plaintiffs appointed Greystone Servicing to serve as their exclusive agent to process the HUD application for financing the acquisition and rehabilitation of the Project and Greystone Servicing's and undertakings pursuant thereto.

61.     Each of the Greystone Defendants owed Plaintiffs and each of them a duty of due care by virtue of Greystone Servicing's position as a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program and the respective roles and involvements of Plaintiff in the Project.

62.     Each of the Greystone Defendants owed Plaintiffs and each of them a duty to use such skill, prudence and diligence as other HUD-approved underwriters for the FHA's Multifamily Accelerated Processing (MAP) program commonly possess and exercise.

63.     The Greystone Defendants and each of them breached their respective duties of due care owed to Plaintiffs and each of them with respect to the Project and the HUD financing.  The breaches of the Greystone Defendants, which are ongoing, include, but are not limited to, failing to expedite processing, preparation and submission of the HUD application, causing delay in the processing, preparation and submission of the HUD application, making and publishing unsolicited unprivileged derogatory statements regarding Plaintiffs and the Project to HUD representatives and others, and withdrawing the HUD application without prior notice to or consent by Plaintiffs or any of them.

64.     As a direct and legal result of the Greystone Defendants' respective breaches of the respective duties of due care owed to Plaintiffs and each of them with respect to the Project and the HUD financing, as alleged hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven at trial.

65.     As a direct and legal result of the Greystone Defendants' respective breaches of the respective duties of due care owed to Plaintiffs and each of them with respect to the Project and the HUD financing, as alleged hereinabove, Plaintiffs, and each of them, have been forced to retain attorneys, accountants, investigators, agents and other consultants, and to expend time and money, to

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 16 -
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

discover and remedy the fraud, all according to proof. Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage become known.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## SECOND CAUSE OF ACTION
### (For Breach of Fiduciary Duty / Constructive Fraud)

66. Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through 65, inclusive, and other material allegations set forth above, as though the same were fully set forth at this place.

67. Each of the Greystone Defendants stands in a confidential and fiduciary relationship with Plaintiffs and each of them by virtue of the trust and confidence Plaintiffs and each of them reposed in said defendants by virtue of the Engagement Agreement, the business relationship, and the Greystone Defendants' position as a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program.

68. Each of the Greystone Defendants owed Plaintiffs and each of them a fiduciary duty by virtue of the trust and confidence Plaintiffs and each of them reposed in said defendants by virtue of the Engagement Agreement, the business relationship, and the Greystone Defendants' position as a HUD-approved underwriter for the FHA's Multifamily Accelerated Processing (MAP) program.

69. The Greystone Defendants and each of them were negligent in the performance of the duties owed to Plaintiffs and each of them with respect to the Project and the HUD financing, as alleged hereinabove. The Greystone Defendants and each of them further breached their respective fiduciary duties to Plaintiffs and each of them by failing to expedite processing, preparation and submission of the HUD application, by causing delay in the processing, preparation and submission of the HUD application, by making unsolicited derogatory statements regarding Plaintiffs and the Project to HUD representatives, by changing the terms of the bridge financing, by withdrawing the HUD application without prior notice to or consent by Plaintiffs or any of them, by demanding priority for the bridge loan to which they were not entitled, by negotiating directly with David Henry under terms that cut out Oliphant and Plaintiffs from the deal, and by attempting to force Plaintiffs to

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 17
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1  transfer their prospective financial and non-economic gain in the Project to David Henry.  Said

2  negligence and breaches of fiduciary duties are continuing.

3          70.    The Greystone Defendants and each of them have, and continue to, gain an advantage

4  over Plaintiffs by virtue of the foregoing negligence and breaches, which are ongoing.

5          71.    Plaintiffs and each of them were, and are, prejudiced by the foregoing breaches of

6  duty in that they advanced funds and expended time and energy and incurred obligations in

7  connection with the Project.  Plaintiffs and each of them were further prejudiced by the foregoing

8  breaches of duty in that they now risk losing their prospective financial and non-economic gain from

9  the Project.

10         72.    Plaintiffs' reliance, as set forth above, was reasonable under the circumstances.

11 Plaintiffs could not, in the exercise of reasonable diligence, have anticipated or discovered the

12 misconduct of the Greystone Defendants in the circumstances in a way that Plaintiffs could have

13 protected themselves or their financial interests.

14         73.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

15 hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven

16 at trial.

17         74.    As a direct and legal result of the conduct of the Greystone Defendants, Plaintiffs, and

18 each of them, have been forced to retain attorneys, accountants, investigators, agents and other

19 consultants, and to expend time and money, to discover and remedy the fraud, all according to proof.

20 Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage become

21 known.

22         75.    Plaintiffs should recover punitive damages, in addition to their actual damages, to

23 make an example of and to punish Defendants and each of them.

24         76.    The conduct of the Greystone Defendants, and each of them, as described

25 hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of

26 interfering with Plaintiffs' efforts to complete the project and/or gaining control over Plaintiff's

27 monies and/or opportunities for Defendants' own use and benefit.  The Greystone Defendants, and

28 each of them, also displayed reckless indifference to Plaintiffs and each of them with regard to the

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*          - 18
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

conduct alleged in this complaint.  Plaintiffs should recover punitive damages, in addition to their actual damages, to make an example of and to punish Defendants and each of them.

77.     The conduct of the Greystone Defendants, and each of them, was, in and of itself, fraudulent, malicious and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, wrongfully disparaged Plaintiffs and the Project, acted willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD application and the tax-exempt bond issue, and undertook separate negotiations with David Henry to cut out Oliphant and Plaintiffs. Plaintiffs should recover punitive damages, in addition to their actual damages, to make an example of and to punish Defendants and each of them.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

**THIRD CAUSE OF ACTION**
**(Intentional Interference with Prospective Economic Advantage)**

78.     Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through 77, inclusive, and other material allegations set forth above, as though the same were fully set forth at this place.

79.     At all times material hereto, Plaintiffs had an existing business relationship with the seller of the Project and with the HUD office in Oklahoma City.

80.     At all times material hereto, Plaintiffs had a probability of future economic benefit from successful completion of the financing, rehabilitation and development of the Project.

81.     The past and continuing conduct of the Greystone Defendants disrupted, delayed and interfered with Plaintiffs' prospective economic advantage, as alleged hereinabove.

82.     The past and continuing conduct of the Greystone Defendants in disrupting, delaying and interfering with Plaintiffs' opportunity to complete the Project was wrongful in that said defendants, and each of them, delayed and failed to expedite the HUD application, changed terms of the deal at the last minute, and breached their fiduciary duties to Plaintiffs and each of them.

83.     The past and continuing conduct of the Greystone Defendants in disrupting, delaying and interfering with Plaintiffs' opportunity to complete the Project was substantially certain to result

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 19
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1  in interference with Plaintiffs' prospective economic advantage in the Project. The Greystone

2  Defendants knew of Plaintiffs' business relationship and prospective economic advantage.

3      84.    The Greystone Defendants did, and continue to, intend to disrupt and interfere with

4  Plaintiffs' business relationship and prospective economic advantage and profits from the Project.

5      85.    As a direct and legal result of the conduct of the Greystone Defendants as alleged

6  hereinabove, Plaintiffs, and each of them, have been and continue to be damaged and injured in an

7  amount to be proven at trial.

8      86.    But for the disruption, delay and interference of the Greystone Defendants, and each

9  of them, it is reasonably probably that Plaintiffs would have realized the anticipated prospective

10 economic advantage from the Project.

11     87.    Compelling public policy favors facilitating Low Income Housing Tax Credit projects

12 (such as the Project) offered through the FHA's Office of Housing and Urban Development

13 ("HUD"). This compelling public policy includes providing and facilitating the financial rewards

14 available to tax-credit developers (such as Plaintiffs) so that the developers are incentivized to do such

15 Low Income Housing Tax Credit projects (such as the Project).

16     88.    As a direct and legal result of the foregoing conduct of the Greystone Defendants,

17 Plaintiffs, and each of them, have been forced to retain attorneys, accountants, investigators, agents

18 and other consultants, and to expend time and money, to discover and remedy the fraud, all according

19 to proof. Plaintiffs reserve the right to amend this complaint at such time as the amounts of damage

20 become known.

21     89.    Plaintiffs should recover punitive damages, in addition to their actual damages, to

22 make an example of and to punish Defendants and each of them for their willful conduct.

23     90.    The conduct of the Greystone Defendants, and each of them, as described

24 hereinabove was fraudulent, malicious and oppressive, and done for the specific purpose of

25 interfering with Plaintiffs' efforts to complete the project and/or gaining control over Plaintiff's

26 monies for Defendants' own use and benefit. The Greystone Defendants, and each of them, also

27 displayed reckless indifference to Plaintiffs and each of them with regard to the conduct alleged in this

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 20
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1  complaint.  Plaintiffs should recover punitive damages, in addition to their actual damages, to make an

2  example of and to punish Defendants and each of them.

3      91.    The conduct of the Greystone Defendants, and each of them, was, in and of itself,

4  fraudulent, malicious and oppressive in that said Defendants were guilty of reckless indifference

5  towards Plaintiffs, wrongfully disparaged Plaintiffs and the Project, acted willfully and knowingly in

6  the manner in which they torpedoed the Project and Plaintiffs' HUD application and the tax-exempt

7  bond issue, and undertook separate negotiations with David Henry to cut out Oliphant and Plaintiffs.

8      92.    The conduct of the Greystone Defendants was, in and of itself, fraudulent, malicious

9  and oppressive in that said Defendants were guilty of reckless indifference towards Plaintiffs, acted

10  willfully and knowingly in the manner in which they torpedoed the Project and Plaintiffs' HUD

11  application and the tax-exempt bond issue,  undertook separate negotiations with David Henry to cut

12  out Oliphant and Plaintiffs, and maliciously transmitted inaccurate and misleading disparaging

13  material regarding Plaintiffs as described in Paragraph 34 and Paragraphs 52-55, inclusive,

14  hereinabove.  Plaintiffs should recover punitive damages, in addition to their actual damages, to make

15  an example of and to punish Defendants and each of them

16      WHEREFORE, Plaintiffs pray for judgment as set forth below.

## FOURTH CAUSE OF ACTION
### (Negligent Interference with Prospective Economic Advantage)

19      93.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through

20  92, inclusive, and other material allegations set forth above, as though the same were fully set forth at

21  this place.

22      94.    At all times material hereto, Plaintiffs had an existing business relationship with the

23  seller of the Project and with the HUD office in Oklahoma City.

24      95.    At all times material hereto, the Greystone Defendants, and each of them, owed

25  Plaintiffs a duty of care as alleged hereinabove.

26      96.    At all times material hereto, Plaintiffs had a probability of future economic benefit

27  from successful completion of the financing, rehabilitation and development of the Project.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 21
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

97.    The Greystone Defendants did and continue to wrongfully disrupt, delay and interfere with Plaintiffs' prospective economic advantage, as alleged hereinabove, and in delaying and failing to expedite the HUD application, changing terms of the deal at the last minute, breaching their fiduciary duties to Plaintiffs and each of them, and maligning Plaintiffs and the Project to the Oklahoma County Finance Authority and others, as described in Paragraph 34 and Paragraphs 52-55 hereinabove.

98.    The conduct of the Greystone Defendants in disrupting, delaying and interfering with Plaintiffs' opportunity to complete the Project, as alleged hereinabove, did and continues to foreseeably disrupt and interfer with Plaintiffs' prospective economic advantage in the Project.

99.    As a direct and legal result of the conduct of the Greystone Defendants as alleged hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven at trial.

100.    But for the disruption, delay and interference of the Greystone Defendants, it is reasonably probably that Plaintiffs would have realized the anticipated prospective economic advantage from the Project.

101.    Compelling public policy favors facilitating Low Income Housing Tax Credit projects (such as the Project) offered through the FHA's Office of Housing and Urban Development ("HUD").  This compelling public policy includes providing and facilitating the financial rewards available to tax-credit developers (such as Plaintiffs) so that the developers are incentivized to do such Low Income Housing Tax Credit projects (such as the Project).

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### (Anticipatory Breach)

102.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through 101, inclusive, and other material allegations set forth above, as though the same were fully set forth at this place.

103.    Plaintiffs and Defendants entered into a series of written agreements to accomplish the financing for the acquisition and rehabilitation of the Project.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*    - 22
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

104.     The Greystone Defendants, and each of them, have expressly and unequivocally repudiated those contracts by stating that they will not further perform, by stating that they are "out" of the deal unless Plaintiffs provide proofs and assurances to which the Greystone Defendants are not entitled, by refusing to rescind the August 21 notice of default, and by sending the September 18 notice of acceleration.

105.     Plaintiffs are ready, willing and able to perform under the agreements but for the Greystone Defendants' repudiation and anticipatory breach.

106.     As a direct and legal result of the breaches of the Greystone Defendants, as alleged hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## SIXTH CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

107.     Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through 106, inclusive, and other material allegations set forth above, as though the same were fully set forth at this place.

108.     Plaintiffs and Defendants entered into a series of written agreements (including but not limited to the Engagement Agreement) to accomplish the financing for the acquisition and rehabilitation of the Project.  Inherent in said agreements is an implied covenant of good faith and fair dealing by each party not to do anything which will deprive the other parties of the benefits of the contract.

109.     The Greystone Defendants, and each of them, breached the implied covenants of good faith and fair dealing by interfering as alleged hereinabove and by failing to cooperate with Plaintiffs in the performance of the agreements.

110.     As a direct and legal result of the breaches of the Greystone Defendants, as alleged hereinabove, Plaintiffs, and each of them, have been damaged and injured in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*          - 23
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

### SEVENTH CAUSE OF ACTION
#### (Declaratory Relief)

111.    Plaintiffs refer to and hereby incorporate herein the foregoing Paragraphs 1 through 110, inclusive, and other material allegations set forth above, as though the same were fully set forth at this place.

112.    Plaintiffs and Defendants entered into a series of written agreements (including but not limited to the Engagement Agreement) to accomplish the financing for the acquisition and rehabilitation of the Project, as hereinabove alleged, including but not limited to the bridge loan for the Project, personal guarantees thereof, and written agreements concerning bridge loan for the Project.

113.    An actual controversy now exists between Plaintiffs and the Greystone Defendants concerning their respective legal rights, duties and obligations under the bridge loan, the guarantees and the other agreements relating thereto.  The Greystone Defendants claim that the bridge loan is in default and that they have accelerated maturity of the bridge loan.  Plaintiffs dispute that the bridge loan is in default or has been accelerated.

114.    Plaintiffs and each of them desire a judicial determination and declaration of the parties' respective rights, duties and obligations with respect to (1) whether or not the bridge loan is in default and (2) whether or not maturity of the bridge loan has been accelerated.  In addition, Plaintiff Oliphant desires a judicial determination and declaration as to whether or not any payment is currently due and payable from Oliphant on the bridge loan, the guarantees and/or the related agreements and, if so, the amount thereof.

115.    Plaintiffs and each of them claim an offset against any amounts due any of the Greystone Defendants under the bridge loan, the guarantees and the related agreements by reason of Plaintiffs' respective claims for damages.  Accordingly, Plaintiffs and each of them desire a judicial determination and declaration as to (1) whether or not Plaintiffs or any of them are entitled to offset any damages against any amounts due any of the Greystone Defendants under the bridge loan, the guarantees and the related agreements and, if so, the amount of offset, and (2) whether or not any

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                    - 24
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1  sum is currently due and payable by any of them on the bridge loan, the guarantees and/or the related

2  agreements and, if so, the amount thereof.

3      116.    Plaintiffs and each of them have standing to seek declaratory relief because Plaintiffs,

4  and each of them, face imminent injury if the controversy is not promptly resolved.

5      117.    Under the circumstances, a declaration regarding the respective legal rights and duties

6  of the parties is necessary so that the parties will know how to proceed with respect to the notices

7  given by the Greystone Defendants and their respective rights, duties and obligations under the bridge

8  loan, the guarantees and the related agreements.

9      WHEREFORE, Plaintiffs pray for judgment as set forth below.

10                              **PRAYER FOR RELIEF**

11      WHEREFORE, Plaintiffs SANTA FE POINTE, LP, an Oklahoma limited partnership

12  ("SFP"), THEOTIS F. OLIPHANT ("Oliphant"), an individual, and RANT, LLC, a Delaware limited

13  liability company ("Rant"), pray for judgment against defendants and each of them as follows:

14          A.      For general damages, according to proof;

15          B.      For compensatory damages, according to proof;

16          C.      For punitive and exemplary damages;

17          D.      For any statutory damages or penalties available under statute;

18          E.      For a judicial determination and declaration of the parties' respective rights,

19      duties and obligations with respect to (1) whether or not the bridge loan is in default, (2)

20      whether or not maturity of the bridge loan has been accelerated, (3) whether or not any

21      payment is currently due and payable from Oliphant on the bridge loan, the guarantees and/or

22      the related agreements and, if so, the amount thereof, (4) whether or not Plaintiffs or any of

23      them are entitled to offset any damages against any amounts due any of the Greystone

24      Defendants under the bridge loan, the guarantees and the related agreements and, if so, the

25      amount of offset, and (5) whether or not any sum is currently due and payable by any of them

26      on the bridge loan, the guarantees and/or the related agreements and, if so, the amount

27      thereof

28          F.      For reasonable attorney's fees;

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*                                    - 25
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

1    G.    For costs of suit herein incurred; and

2    H.    For such other and further relief as the Court deems just or proper.

3

4

5   DATED:  February 12, 2008            FARBER & COMPANY ATTORNEYS, P.C.
                                         Attorneys for Plaintiff
6

7                                        By    /s/ Eric Farber
                                              Eric J. Farber, SBN 169472
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*            - 26
Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.

<u>PROOF OF SERVICE</u>

I, ERIC J. FARBER, declare:

1.      I am an attorney at law over the age of eighteen years of age and not a party to this action.  My business address is 847 Sansome St., LL, San Francisco, CA  94111.

2.      On February 12, 2008, I served true and correct copies of the foregoing pleading: **SECOND AMENDED COMPLAINT** on the interested parties by electronically filing such documents through the CM/ECF system of United States District Court for the Northern District of California, which will send electronic notification of such filing to the following registered users:

Mark D. Kemple          mdkemple@jonesday.com

Erik K. Swanholt         ekswanholt@jonesday.com


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this 12th day of February 2008, at San Francisco, California.


        __/s/_____

        Eric Farber

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*          - 27

Second Amended and Supplemental Complaint for Damages and Declaratory Relief
Farber & Company Attorneys, P.C.