#155240v2
GT Draft 12/17/06

DEVELOPER LIMITED GUARANTY
PLEDGE AND SECURITY AGREEMENT

by

[NAME OF DEVELOPER]

in favor of

GREYSTONE CDE, LLC

Dated as of December __, 2006

**DEVELOPER LIMITED GUARANTY,
PLEDGE AND SECURITY AGREEMENT**

This **DEVELOPER LIMITED GUARANTY, PLEDGE AND SECURITY AGREEMENT** (as amended, modified or supplemented from time to time, this **"Agreement"**), dated as of December \_\_\_, 2006, is made by [NAME OF DEVELOPER] a, _____, duly organized, validly existing and in good standing under the laws of the State of _____, with an address at _____ (together with its permitted successors and assigns, the **"Pledgor"**), in favor of GREYSTONE CDE, LLC, limited liability company organized and existing under the laws of the State of Delaware, with an address at 419 Belle Air Lane, Wanenton, Virginia 20186 (together with its successors and assigns, the **"Pledgee"**),

**W I T N E S S E T H:**

WHEREAS, the Pledgor is an affiliate of Santa Fe Pointe, L.P., a limited partnership limited liability company duly organized, validly existing and in good standing under the laws of the State of Oklahoma (together with its permitted successors and assigns, the **"Borrower"**); and

WHEREAS, the Borrower has entered into an Bridge Loan Agreement dated as of December \_\_\_, 2006,  (as the same may be amended, modified or supplemented from time to time, the "Loan Agreement," and together with all documents evidencing or securing the Loan Agreement, collectively, the "Loan Documents") with the Pledgee; and

WHEREAS, the Pledgor is or will be entitled to certain development fees under a development agreement to be entered into by and between the Pledgor and Borrower (as the same may be modified, amended or supplemented from time to time, the "Development Agreement"); and

WHEREAS, the Pledgor will derive substantial economic benefit from the transactions contemplated by the Loan Agreement; and

WHEREAS, the execution and delivery of this Agreement is a condition to the Pledgee's entering into the Loan Agreement.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and intending to be legally bound hereby and in order to secure the Borrower' performance of its obligations to the Pledgee under the Loan Agreement, including payment of all amounts due or to become due to the Pledgee thereunder, and any extensions, renewals, replacements or modifications of any thereof, the Pledgor hereby agrees as follows:

**Section 1. Defined Terms**.  The following terms which are defined in the Uniform Commercial Code in effect in the State of _____ on the date hereof are used herein as so defined:  Accounts, Chattel Paper, General Intangibles, Instruments and Proceeds; and the following terms shall have the following meanings:

**"Collateral"** has the meaning assigned to it below in Section 3 of this Agreement.

"**Event of Default**" means any "Event of Default" as defined in the Loan Agreement.

"**Obligations**" has the meaning assigned to it in Section 2 of this Agreement.

"**UCC**" means the Uniform Commercial Code as from time to time in effect in the State of _____.

All other capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Loan Documents.

**Section 2. Guaranty**. The Pledgor hereby absolutely, irrevocably and unconditionally guarantees and is a surety to the Pledgee for the full and punctual payment and performance by the Borrower of its obligations to the Pledgee under the Loan Documents (collectively, the **"Obligations"**).

(a) **Guaranty Absolute**. The guaranty of the Pledgor under this Agreement is a guaranty of payment and performance and not merely of collection or enforceability and shall remain in full force and effect until all of the Obligations are indefeasibly paid in full. The obligations and liabilities of the Pledgor under this Agreement are the primary, direct and immediate obligations of the Pledgor and shall in no way be affected, limited, impaired, modified or released by, subject to or conditioned upon, and may be enforced against the Pledgor irrespective of (i) any attempt, pursuit, enforcement or exhaustion of any rights and remedies the Pledgee may at any time have to collect any or all of the Obligations (whether pursuant to any of the Loan Documents or otherwise) from the Borrower, from the other Obligors, from any other maker, endorser, surety or guarantor of, or pledgor of collateral and security for, all or any part of the Obligations, and/or by any resort or recourse to or against any collateral and security for all or any part of the Obligations; (ii) the invalidity, irregularity, lack of priority or unenforceability in whole or in part of any or all of the Loan Documents; (iii) any counter-claim, recoupment, setoff, reduction or defense based on any claim the Borrower, any other Obligor, or the Pledgor may now or hereafter have against the Pledgee (other than the defense that payment in full of all amounts claimed to be due by the Pledgee actually has been made); (iv) the voluntary or involuntary liquidation, dissolution, termination or merger of the Borrower or any other Obligor, or the sale or other disposition of the Collateral or any of the assets and properties of the Borrower or any other Obligor; (v) any bankruptcy, reorganization, insolvency or similar proceedings for the relief of debtors under any federal or state law by or against the Borrower or any other obligor, or any discharge, limitation, modification or release of liability of the Borrower or any other Obligor by virtue of any such proceedings; (vi) any event, circumstance or matter to which the Pledgor has consented pursuant to the provisions of clause (b) hereof; and (vii) any other event or circumstance which might otherwise constitute a legal or equitable discharge, release or defense of a guarantor or surety, whether similar or dissimilar to the foregoing (other than the defense that payment in full of all amounts claimed to be due by the Pledgee actually has been made).

(b) **Consents**. Without notice to, or further consent of the Pledgor, the Pledgor hereby agrees that the Pledgee may at any time and from time to time on one or more occasions (i) renew, extend, accelerate, subordinate, change the time or manner of payment or

performance of, or otherwise deal with, in any manner satisfactory to the Pledgee and in accordance with the applicable Loan Documents, any of the terms and provisions of, all or any part of the Obligations; (ii) waive, excuse, release, change, amend, modify or otherwise deal with in any manner satisfactory to the Pledgee any of the provisions of any of the Loan Documents; (iii) release the Borrower or any other Obligor; (iv) waive, omit or delay the exercise of any of its powers, rights and remedies against the Borrower or any other obligor all or any of the collateral and security for all or any part of the Obligations; (v) release, substitute, subordinate, add, fail to maintain, preserve or perfect any of its liens on, security interests in or rights to, or otherwise deal with in any manner satisfactory to the Pledgee, any collateral and security for all or any part of the Obligations; (vi) apply any payments in satisfaction of all or any of the Obligations due under the Loan Documents received from the Borrower or any other Obligor any other party or source whatsoever first to late charges or other sums due and owing to the Pledgee under the Loan Documents, next to accrued and unpaid interest then due and owing under the Loan Documents, and then to any other amounts due under the Loan Documents and any excess, after payment of the Obligations and performance of all other Obligations of the Borrower and any other Obligor to the Pledgee, shall be returned to the Borrower or (vii) take or omit to take any other action, whether similar or dissimilar to the foregoing which may or might in any manner or to any extent vary the risk of the Pledgor or otherwise operate as a legal or equitable discharge, release or defense of the Pledgor under applicable laws.

    (c)  **Waivers**.  The Pledgor hereby waives (i) notice of the execution and delivery of any of the Loan Documents; (ii) notice of the creation of any of the Obligations; (iii) notice of the Pledgee's acceptance of and reliance on this Agreement; (iv) presentment and demand for payment of the Obligations and notice of non-payment and protest of non-payment of the Obligations; (v) any notice from the Pledgee of the financial condition of the Borrower or any other Obligor regardless of the Pledgee's knowledge thereof; (vi) demand for observance, performance or enforcement of, or notice of default under, any of the provisions of this Agreement or any of the other Loan Documents (other than such as are expressly provided for therein), and all other demands and notices otherwise required by law which the Pledgor may lawfully waive; (vii) any right or claim to cause a marshalling of the assets of the Borrower or any other Obligor; and (viii) any defense at law or in equity based on the adequacy or value of the consideration for this Agreement.  The Pledgor agrees not to institute any action or proceeding based on any rights of subrogation and reimbursement against the Borrower or any other Obligor against any collateral or security for any of the Obligations until the Obligations have been indefeasibly paid and satisfied in full.  The Pledgor waives any and all other rights and defenses available to the Pledgor by reason of any statutory provisions now or hereafter in effect in any other jurisdiction, including, without limitation, any and all rights or defenses the Pledgor may have by reason of protection afforded to the Borrower or any other Obligor with respect to the Obligations pursuant to antideficiency or other laws of any state limiting or discharging the Borrower's or any other Obligor's indebtedness (other than the defense that payment in full of all amounts claimed to be due from such parties actually has been made).  The Pledgor waives all rights and defenses arising out of an election of remedies by the Pledgee, even if that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Pledgor's rights of subrogation and reimbursement against the Borrower or any other Obligor.

(d)     **Non-Recourse**.  The obligations of the Pledgor hereunder shall be recoverable solely out of the Collateral pledged pursuant to this Agreement and shall otherwise be without recourse to the Pledgor or any of its other assets or any past, present or future, direct or indirect, partners, members or shareholders in the Pledgor, except that the Pledgee shall have recourse to the assets of any such person or entity if and only to the extent such person or entity has expressly assumed (other than by execution and delivery of this Agreement) or hereafter expressly assumes liability for, or has pledged (other than pursuant to this Agreement) or hereafter pledges any of its other assets as security for the performance of the Obligations or of the Pledgor's obligations hereunder.  Notwithstanding the preceding sentence, the Pledgor and its partners, members and shareholders shall be personally liable for and to the extent of any loss suffered by the Pledgee, as a direct result of (a) any act of fraud or willful misconduct by the Pledgor, (b) the application of any Collateral by the Pledgor other than as provided herein, or (c) the failure by the Pledgor to obtain the Pledgee's prior written consent to take any action otherwise proscribed by the terms hereof.  In addition, nothing herein contained shall be deemed to limit, vary, modify or amend any obligation owed to the Pledgee, under any other guaranty or indemnification agreement to which the Pledgor is a party.

**Section 3. Grant of Security Interest by Pledgor**.

(a)     **Grant of Security Interest**.  The Pledgor hereby pledges to the Pledgee, and grants to the Pledgee, a lien on, and continuing first priority security interest in, all of the following property (collectively, the **"Collateral"**) as security for the prompt and complete payment and performance by the Borrower of the Obligations and by the Pledgor of its obligations hereunder:

(i)     the Pledgor's right to receive payment of the "developer's fee" under the Development Agreement or, if a Development Agreement is never finalized, executed and delivered, the Pledgor's right to receive any amounts in respect of a "developer's fee" or similar fee,, irrespective of the absence of any written agreement with respect thereto;

(ii)     all Accounts arising out of its rights to receive such payment under payment of "developer's fee" as aforesaid;

(iii)     all General Intangibles arising out of its rights to receive payment of "developer's fee" as aforesaid;

(iv)     any such "developer's fee" actually paid; and

(v)     to the extent not otherwise included above, all Proceeds of any and all of the foregoing, including, without limitation, whatever is received upon any collection, exchange, sale or other disposition of any of the Collateral, and any property into which any of the Collateral is converted, whether cash or noncash proceeds, and any and all other amounts paid or payable under or in connection with any of the Collateral.

Notwithstanding the foregoing, "collateral" shall not include any "developer fee" already paid in accordance with the terms of the Development Agreement.

4

(b) **Continuing Interest**. The security interest granted pursuant to this Agreement constitutes a continuing security interest in the Collateral and shall remain in full force and effect until termination of this Agreement in accordance with Section 15 hereof.

**Section 4. Payments in Respect of Collateral**. During the continuation of any Event of Default, the Pledgor hereby directs that amounts the Pledgor is entitled to receive representing any portion of the Collateral shall be immediately transferred to the Pledgee. The Pledgor hereby irrevocably authorizes the Borrower to make such payments directly to the Pledgee by wire transfer in accordance with the following wire transfer instructions, with the same effect as if the same had been paid to the Pledgor in accordance with the Development Agreement:

By execution hereof, the Pledgor acknowledges and agrees to such authorization and agrees to make any such payments to the Pledgee. The Pledgor hereby agrees that, to the extent it receives any amounts on account of the Collateral during the continuance of an Event of Default, it shall immediately apply such funds as received, to the payment of the Obligations, in such order as the Pledgee may determine in its sole discretion.

**Section 5. Limitations on Pledgee's Obligations**. Anything herein to the contrary notwithstanding, the Pledgor shall remain liable under the Development Agreement to observe and perform all the conditions and obligations to be observed and performed by it thereunder, all in accordance with and pursuant to the terms and provisions thereof. The Pledgee shall not have any obligation or liability under this Agreement by reason of or arising out of this Agreement or the receipt by the Pledgee of any payment relating to any Collateral pursuant hereto, nor shall the Pledgee be obligated in any manner to perform any of the obligations of the Pledgor under or pursuant to the Development Agreement or any Account or General Intangible to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party under any thereof, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts that may have been pledged to it or to which it may be entitled at any time or times. Nothing contained in this Agreement shall be construed or interpreted to transfer to the Pledgee any of the obligations of the Pledgor under the Development Agreement.

**Section 6. Representations and Warranties**. The Pledgor hereby represents and warrants as follows:

(a) **Entity Status**. The Pledgor is a _____ duly formed, validly existing and in good standing under the laws of the State of _____.

(b) **Loan Documents**. The Pledgor has examined or has had an opportunity to examine the Loan Agreement.

(c) **Enforceability**. This Agreement has been duly executed and constitutes the valid and binding obligation of the Pledgor, enforceable against the Pledgor in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting creditors' rights generally.

(d) **Ownership of Collateral; Liens**. The Pledgor is or will be the legal and beneficial owner of the Collateral, free and clear of all liens, except for the liens created by this

5

Agreement. The Pledgor has all requisite power and authority and the legal right to pledge to the Pledgee, and to grant to the Pledgee, a lien on and continuing security interest in the Collateral. The execution, delivery and performance by the Pledgor of this Agreement is within the Pledgor's powers, has been duly authorized by all necessary legal action, and does not contravene any agreement applicable to the Pledgor or restriction binding on or affecting the Pledgor or any of its assets. No security agreement, financing statement or other public notice with respect to all or any part of the Collateral is on file or of record in any public office, except such as may have been filed in favor of the Pledgee pursuant to this Agreement.

     (e)    **Security Interest**. The security interests granted and continued pursuant to this Agreement will, upon filing of UCC financing statements in the appropriate filing offices, constitute first priority perfected security interests in the Collateral in favor of the Pledgee and are enforceable as such against all creditors of and purchasers from the Pledgor. All action on the part of the Pledgor necessary or desirable to perfect such security interests in each item of the Collateral requested by the Pledgee, including the execution of financing statements for filing in the appropriate filing offices, has been or will be duly taken upon such filing.

     (f)    **Legal Name**. The Pledgor's exact legal name is set forth at the beginning of this Agreement and the Pledgor does not conduct business under any other names.

     (g)    **Power and Authority**. The Pledgor has and has duly exercised all requisite power and authority to enter into this Agreement, to pledge its interest in the Collateral and to carry out the transactions contemplated by this Agreement.

     (h)    **Place of Business; Organizational Identification Number**. The Pledgor's chief executive office and chief place of business, and the place where the Pledgor keeps its records concerning the Collateral, is located at the Pledgor's address set forth on page 1 hereof, and the Pledgor's jurisdiction of organization is as set forth on page 1 hereof. The Pledgor's organizational identification number is _____.

**Section 7. Covenants**. The Pledgor covenants and agrees that, so long as this Agreement remains in effect:

     (a)    **Development Agreement**. The Development Agreement shall be in form and substance satisfactory to Pledgee in all respects. Pledgor shall afford Pledgee a reasonable opportunity to review a draft of the Development Agreement prior to execution and delivery thereof and will provide Pledgee a copy of the executed Development Agreement once it has been executed and delivered.

     (b)    **Further Documentation; Pledge of Instruments**. At any time and from time to time, upon the written request of the Pledgee, and at the sole expense of the Pledgor, the Pledgor will promptly and duly execute and deliver such further instruments and documents and take such further action as the Pledgee, as applicable, may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted. Without limiting the generality of the foregoing, the Pledgor will execute and file such financing or continuation statements, or amendments thereto, and such other instruments, endorsements or notices, as the Pledgee may deem necessary or desirable in order to perfect and

preserve the liens created or continued or intended to be created or continued hereby. The Pledgor hereby authorizes the Pledgee to file any such financing or continuation statement without the signature of the Pledgor to the extent permitted by applicable legal requirements. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other Instrument or Chattel Paper, such note, Instrument or Chattel Paper shall be immediately delivered to the Pledgee, duly endorsed (without recourse) in a manner satisfactory to the Pledgee, to be held as Collateral pursuant to this Agreement.

(c) **Maintenance of Records**. The Pledgor will keep and maintain at its own cost and expense satisfactory and complete records of the Collateral.

(d) **Limitation on Liens on Collateral**. The Pledgor will not create, incur or permit to exist, will defend the Collateral and the right, title and interest of the Pledgee therein against, and will take such other action as is necessary to remove, any lien, claim, security interest or other encumbrances on or to the Collateral other than the lien created and continued pursuant to this Agreement.

(e) **Further Identification of Collateral**. The Pledgor will furnish to the Pledgee from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as the Pledgee, as applicable, may reasonably request, all in reasonable detail.

(f) **Changes in Locations, Name, etc**. The Pledgor will not, without at least sixty (60) days' prior written notice to such effect to the Pledgee, as applicable (i) change the location of its chief executive offices or chief place of business from that specified on page 1 hereof, or remove its books and records from such location or (ii) change its names, identities, jurisdiction of organization or structure to such an extent that any financing statements filed by the Pledgee in connection with this Agreement would become misleading.

(g) **Amendments to Development Agreement**. The Pledgor shall not, without the prior written consent of the Pledgee, consent to, vote in favor of or otherwise permit any amendment to or modification of the Development Agreement.

(h) **No Transfer of Interests**. The Pledgor shall not sell, assign, transfer, pledge or encumber or permit to be sold, assigned, transferred, pledged or encumbered any of its interests in, to or under the Development Agreement or the other Collateral, nor permit the sale, assignment, transfer, pledge or encumbrance or any interests in, to or under the Development Agreement. Any sale, assignment, transfer, pledge or encumbrance of the Pledgor's interests under the Development Agreement in violation of the foregoing provisions of this Section 7(h) shall be null and void. Nothing in this Section 7(h) shall be construed to prohibit transfers of membership interests in the Pledgor.

(i) **Maintenance of Existence, Etc**. The Pledgor shall at all times preserve and maintain in full force and effect its existence under the laws of the state of its organization and its qualification to do business in each jurisdiction where the nature of business transacted makes such qualifications necessary.

7

(j)     **Claims against Collateral**.  The Pledgor shall, within five (5) days of receipt of knowledge by the Pledgor, notify the Pledgee, in reasonable detail of any lien or claim made or asserted against the Collateral.

(k)     **Notice of Default**.  The Pledgor will forthwith upon learning of the occurrence of any event which would cause a default under either of the Development Agreement, notify the Pledgee in writing thereof.

**Section 8. Pledgee's Appointment as Attorney-in-Fact**.

(a)     **Powers**.  Effective immediately, without limiting any rights or powers granted herein to the Pledgee, the Pledgor hereby irrevocably constitutes and appoints the Pledgee and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority, in the place and stead of the Pledgor and in the name of the Pledgor or in its own name, for the purpose of carrying out the terms of this Agreement, without notice to or assent by the Pledgor, upon the occurrence and continuance of an Event of Default, (A) to direct any party liable for any payment under any of the Collateral to make payment of any and all moneys due or to become due thereunder directly to the Pledgee; (B) to ask or demand for, collect, receive payment of and receipt for, any and all moneys, claims and other amounts due or to become due at any time in respect of or arising out of any Collateral; (C) to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications, notices and other documents in connection with any of the Collateral; (D) to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any part thereof and to enforce any other right in respect of any Collateral; (E) to defend any suit, action or proceeding brought against the Pledgor with respect to any Collateral; (F) to settle, compromise or adjust any suit, action or proceeding described in clause (E) above and, in connection therewith, to give such discharges or releases as the Pledgee, may deem appropriate (provided that Pledgor shall have not less than ten (10) days prior written notice before any such settlement, compromise or adjustment shall become binding and Pledgee shall provide Pledgor with reasonable detail regarding the terms of any such settlement, compromise or adjustment prior to finalization); and (G) upon the occurrence of an Event of Default, generally, to sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though the Pledgee were the absolute owner thereof for all purposes, and to do, at the Pledgee's option, and the Pledgor's expense, at any time, or from time to time, all acts and things that the Pledgee deems necessary to protect, preserve or realize upon the Collateral and the liens thereon created and continued hereby and to effect the intent of this Agreement, all as fully and effectively as the Pledgor might do.  The Pledgor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

(b)     **Other Powers**.  The Pledgor also authorizes the Pledgee, at any time and from time to time, to execute, in connection with any sale provided for in Section 10 hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

**Section 9. Performance by Pledgee of Pledgor's Obligations.** Immediately upon the occurrence of an Event of Default, and without limiting any rights or powers granted herein to the Pledgee while no Event of Default has occurred and is continuing, the Pledgee, without releasing the Pledgor from any obligation, covenant or condition hereof, itself may make any payment or perform, or cause the performance of, any such obligation, covenant or condition or take any other action in such manner and to such extent as the Pledgee may deem necessary to protect, perfect or continue the perfection of the liens created or continued or intended to be created or continued pursuant to this Agreement.

**Section 10. Rights and Remedies**.

(a) **Collateral**. If an Event of Default shall have occurred, all payments made in respect of the Collateral and received by or on behalf of the Pledgee in accordance with the provisions of this Agreement or the Loan Agreement or otherwise shall be applied in accordance with the Loan Agreement, which may result in the Collateral, in the discretion of the Pledgee, (A) being held by or on behalf of the Pledgee as Collateral, and/or (B) then or at any time thereafter being applied to the Obligations in such order as the Pledgee shall determine,

(b) **UCC**. If an Event of Default shall have occurred, then, in addition to any other rights and remedies provided for herein and in any other instrument or agreement securing, evidencing or relating to the Obligations, or that may otherwise be available, the Pledgee may, without any demand, advertisement or notice (except as expressly provided for below in this Section 10(b) or by applicable legal requirements), exercise all the rights and remedies of a secured party under the UCC, and in addition may sell, lease, assign, give option or options to purchase, or otherwise dispose of the Collateral, or any part thereof, as hereinafter provided. The Collateral may be sold or otherwise disposed of in one or more sales, at public or private sale, conducted by any officer or agent of, or auctioneer or attorney for, the Pledgee, at any exchange or broker's board or at the Pledgee's place of business or elsewhere, for cash, upon credit or for other property, for immediate or future delivery, and at such price or prices and on such terms as the Pledgee shall, in its sole discretion, deem appropriate. The Pledgee may be the purchaser of any or all of the Collateral so sold at a sale and thereafter may hold the same, and the Obligations may be applied as a credit against the purchase price. The Pledgee may, in its commercially reasonable discretion, at any such sale restrict the prospective bidders or purchasers as to their number, nature of business, financial capability and investment intention, so long as prospective bidders or purchasers are not limited to the Pledgee and its affiliates (unless no commercially reasonable alternative is available). Upon any such sale, the Pledgee shall have the right to deliver, assign and transfer to the purchaser thereof (including the Pledgee) the Collateral so sold. Each purchaser (including the Pledgee) at any such sale shall hold the Collateral so sold, absolutely free from any claim or right of whatsoever kind, including any equity or right of redemption, of the Pledgor, and the Pledgor hereby specifically waives, to the fullest extent they may lawfully do so, all rights of redemption, stay or appraisal that they have or may have under any rule of law or statute now existing or hereafter adopted. The Pledgor agrees that the Pledgee need not give more than ten (10) days prior notice of the time and place of any public sale or of the time after which a private sale or other intended disposition is to take place and that such notice is reasonable notification of such matters. No notification need be given to the Pledgor if it has signed after the occurrence of an Event of Default a statement renouncing or modifying any right to notification of sale or other intended disposition. Any such public sale shall be held

at such time or times within ordinary business hours as the Pledgee shall fix in the notice of such sale. At any such sale, the Collateral may be sold in one lot as an entirety or in separate parcels. The Pledgee shall not be obligated to make any sale pursuant to any such notice. The Pledgee may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for such sale, and any such sale may be made at any time or place to which the same may be so adjourned without further notice or publication. In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by the Pledgee until the full selling price is paid by the purchaser thereof, but the Pledgee shall not incur any liability in case of the failure of such purchaser to take up and pay for the provisions hereof.

        (c)     **Proceedings**. If an Event of Default shall have occurred and is continuing, instead of exercising the power of sale provided in Section 10(b) hereof, the Pledgee may proceed by a suit or suits at law or in equity to foreclose the pledge and security interest under this Agreement and sell the Collateral or any portion thereof under a judgment or decree of a court or courts of competent jurisdiction.

        (d)     **Attorney-in-Fact**. The Pledgee, as attorney-in-fact pursuant to Section 8 hereof, may, in the name and stead of the Pledgor, make and execute all conveyances, assignments and transfers of the Collateral sold pursuant to Section 10(b) or Section 10(c) hereof, and the Pledgor hereby ratifies and confirms all that the Pledgee, as said attorney-in-fact, shall lawfully do by virtue hereof. Nevertheless, the Pledgor shall, if so requested by the Pledgee, ratify and confirm any sale or sales by executing and delivering to the Pledgee, or to such purchaser or purchasers, all such instruments as may, in the judgment of the Pledgee, be advisable for the purpose.

        (e)     **Collateral Sold Free and Clear**. The receipt of the Pledgee for the purchase money paid at any such sale made by it pursuant to Section 10(b) or 10(c) hereof shall be a sufficient discharge therefor to any purchaser of the Collateral, or any portion thereof, sold as aforesaid; and no such purchaser (or the representatives or assigns of such purchaser), after paying such purchase money and receiving such receipt, shall be bound to see to the application of such purchase money or any part thereof or in any manner whatsoever be answerable for any loss, misapplication or non-application of any such purchase money, or any part thereof, or be bound to inquire as to the authorization, necessity, expediency or regularity of any such sale.

        (f)     **No Pledgee Liability**. The Pledgee shall not incur any liability as a result of the sale of the Collateral, or any part thereof, at any private sale pursuant to and in accordance with Section 10(b) hereof conducted in a commercially reasonable manner and in accordance with applicable legal requirements. The Pledgor hereby waives to the fullest extent permitted by legal requirements, all claims, damages and demands against the Pledgee arising out of the repossession or retention of the Collateral or the sale of the Collateral pursuant to and in accordance with Section 10(b) or Section 10(c) hereof, including, without limitation, any claims against the Pledgee arising by reason of the fact that the price at which the Collateral, or any part thereof, may have been sold at a private sale was less than the price that might have been obtained at a public sale or was less than the aggregate amount of the Obligations, even if the Pledgee accepts the first offer received that the Pledgee in good faith deems to be commercially reasonable under the circumstances and for commercially reasonable reasons does not offer the

10

Collateral to more than one offeree (so long as the offerees are not limited to the Pledgee and its affiliates, unless no commercially reasonable alternative was available). To the fullest extent permitted by law, the Pledgor shall have the burden of proving that any such sale of the Collateral was conducted in a commercially unreasonable manner.

(g) **Availability of Collateral**. If the Pledgee shall demand possession of the Collateral or any part thereof in connection with its rights pursuant to Section 10(b) or Section 10(c) hereof, the Pledgor will, at its own expense, forthwith cause such Collateral or any part thereof designated by the Pledgee to be assembled and made available and/or delivered to the Pledgee at any place reasonably designated by the Pledgee.

(h) **No Release**. No sale or other disposition of all or any part of the Collateral by the Pledgee pursuant to this Section 10 shall be deemed to relieve the Borrower or the Pledgor of their obligations in respect of the Obligations, except to the extent the proceeds thereof are received by the Pledgee.

**Section 11. Waiver**. The Pledgor agrees that it will not at any time insist upon, claim, plead, or take any benefit or advantage of any appraisement, valuation, stay, extension, moratorium, redemption, or similar law now or hereinafter in force in order to prevent, delay, or hinder the enforcement hereof or the absolute sale of any part of the Collateral. The Pledgor, for itself and all who claim through it, so far as it now or hereafter lawfully may do so, hereby waives the benefit of all such laws, and all right to have the Collateral marshaled upon any foreclosure hereof, and agrees that any court having jurisdiction to foreclose this Agreement may order the sale of the Collateral as an entirety. Without limiting the generality of the foregoing, the Pledgor hereby: (a) authorizes the Pledgee, in its sole discretion and without notice to or demand upon the Pledgor and without otherwise affecting the obligations of the Pledgor hereunder or in respect of the Obligations, from time to time to take and hold other collateral (in addition to the Collateral) for payment of Obligations or any part thereof and to exchange, enforce or release such other collateral or any part thereof and to accept and hold any endorsement or guarantee of payment of the Obligations or any part thereof and to release or substitute any endorser or pledgor or any other person or entity granting security for or in any other way obligated upon the Obligations or any part thereof and (b) waives and releases any and all right to require the Pledgee to collect any of the Obligations from any specific item or items of the Collateral or from any other party liable as the Pledgor or in any other manner in respect of any of the Obligations or from any collateral (other than such Collateral) for any of the Obligations.

**Section 12. Indemnity**. The Pledgor shall indemnify the Pledgee from and against any and all claims, losses and liabilities growing out of or resulting from (i) this Agreement (including, without limitation, enforcement of this Agreement), (ii) any refund or adjustment (including any interest thereon) of any amount paid or payable in accordance with the terms hereof to the Pledgee in respect of any Collateral after the occurrence of an Event of Default, that may be ordered or otherwise required by any governmental authority, (iii) any delay in paying any and all excise, sales or other similar taxes which may be payable or determined to be payable with respect to any of the Collateral, (iv) any delay in complying with any legal requirements applicable to any of the Collateral and (v) the transactions contemplated solely by this Agreement, but, in the case of each of clauses (i) through (v), excluding any such claims, losses

11

or liabilities found by a final order of a court of competent jurisdiction to result from the gross negligence or willful misconduct of the Pledgee.

**Section 13. Amendments; Etc**. No amendment or waiver of any provision of this Agreement or consent to any departure by the Pledgor from the terms of this Agreement shall in any event be effective unless the same shall be in writing and signed by the Pledgor and the Pledgee, and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**Section 14. Notices**. All notices, demands and other communications hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, return receipt requested, or by telecopier or private delivery service, addressed to the parties at the addresses specified in Section 10.2 of the Loan Agreement. Each party may change the address to which notices to it are to be sent by written notice given to the other in accordance with this paragraph. All notices shall, when mailed as aforesaid, be effective on the date indicated on the return receipt, and all notices given by other means shall be effective when received.

**Section 15. Termination**. This Agreement shall be a continuing one, and all representations, warranties, covenants, undertakings, obligations, consents, waivers and agreements of Pledgor herein shall survive the date of this Agreement and shall continue in full force and effect until the payment and performance in full of all obligations of the Borrower under the Loan Agreement. Notwithstanding the foregoing the indemnities contained herein, including the indemnity set forth in Section 12 hereof, shall survive such termination. Promptly after termination, Pledgee shall release this Agreement and make any appropriate filings to reflect such release.

**Section 16. GOVERNING LAW**. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF _____, WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAWS PRINCIPLES, EXCEPT AS REQUIRED BY MANDATORY PROVISIONS OF LAW AND EXCEPT TO THE EXTENT THAT THE UCC PROVIDES THAT THE VALIDITY OR PERFECTION OF THE SECURITY INTERESTS HEREUNDER, OR REMEDIES HEREUNDER IN RESPECT OF ANY PARTICULAR COLLATERAL ARE GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF _____.

**Section 17. Headings**. Headings used in this Agreement are for convenience of reference only and do not constitute part of this Agreement for any purpose.

**Section 18. No Waiver; Cumulative Remedies; Integration**. The Pledgee shall not by any act (except by a written instrument pursuant to this Section), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Event of Default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of the Pledgee, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by the Pledgee of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which would otherwise have

on any future occasion. The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

**Section 19. Pledgee's Duties**.  The powers conferred on the Pledgee hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except as provided in the next sentence, the Pledgee shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.  The Pledgee's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the UCC or otherwise, shall be to deal with it in the same manner as the Pledgee deals with similar securities and property for its own account. Neither the Pledgee nor any of its directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of the Pledgor or otherwise.

**Section 20. Severability**.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Where provisions of any law or regulation resulting in such prohibition or unenforceability may be waived, they are hereby waived by the Pledgor and the Pledgee to the full extent permitted by law so that this Agreement shall be deemed a valid and binding agreement, and the liens and security interests created and continued hereby shall constitute continuing liens on and perfected security interests in the Collateral, in each case enforceable in accordance with its terms.

**Section 21. Specific Performance**.  The Pledgor hereby irrevocably waives any defense based on the adequacy of a remedy at law that may be asserted as a bar to the remedy of specific performance in any action brought against the Pledgor for specific performance of this Agreement by the Pledgee or in respect of all or a substantial part of the Pledgor's assets under the bankruptcy or insolvency laws of any jurisdiction to which the Pledgor or its respective assets are subject.

**Section 22. Security Interest Absolute**.  All rights of the Pledgee hereunder, the liens created and continued hereby and all obligations of the Pledgor hereunder shall be absolute and unconditional irrespective of: (a) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to any departure from any documents delivered in connection with the transactions contemplated by the Loan Agreement; or (b) any exchange, release or non-perfection of any other collateral, or any release or amendment or waiver of or consent to or departure from any guaranty, for all or any of the Obligations.

**Section 23. Private Sales**.  The Pledgor recognizes that the Pledgee may be unable to effect a public sale of any or all the Collateral, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire the Collateral for their own account for investment and not with a view to the distribution thereof.  The Pledgor acknowledges and agrees that, subject to compliance with

13

Section 10(b) hereof, any such private sale may result in prices and other terms less favorable to the Pledgee than if such sale were a public sale and agrees that such circumstances shall not, in and of themselves, result in a determination that such sale was not made in a commercially reasonable manner.

**Section 24. Reinstatement**.  This Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations paid prior to the termination hereof in accordance with Section 15 is rescinded or must otherwise be restored or returned by the Pledgee upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of the Pledgor or the Borrower or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, the Pledgor or the Borrower or any substantial part of their property, or otherwise, all as though such payments had not been made.

**Section 25. Powers Coupled with an Interest**.  All authorizations, agencies and powers herein contained with respect to the Collateral are irrevocable and are coupled with an interest.

**Section 26. SUBMISSION TO JURISDICTION; WAIVERS.**

(a)    **PLEDGOR HEREBY IRREVOCABLY AND UNCONDITIONALLY:**

(i)    SUBMITS ITSELF AND ITS PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THE LOAN AGREEMENT, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR THEREOF, TO THE NON-EXCLUSIVE GENERAL JURISDICTION OF THE COURTS OF THE STATE OF _____, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE STATE OF _____, AND THE APPELLATE COURTS FROM ANY THEREOF;

(ii)    CONSENTS THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS, AND WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREE NOT TO PLEAD OR CLAIM THE SAME;

(iii)    AGREES THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO THE PLEDGOR AT THE ADDRESS REFERRED TO ON PAGE 1 OF THIS AGREEMENT; AND

AGREES THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT PLEDGEE'S RIGHT TO SUE IN ANY OTHER JURISDICTION.

(b) **PLEDGOR HEREBY SUBMITS AND CONSENTS TO VENUE IN ANY COURT IN THE COUNTY WHERE THE PROJECT TO WHICH THE COLLATERAL RELATES IS LOCATED WITH RESPECT TO ANY ACTIONS ARISING OUT OF THIS AGREEMENT.**

(c) **PLEDGOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO OR ARISING OUT OF THIS AGREEMENT.**

**Section 27. Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

**Section 28. Successors and Assigns; Beneficiaries**.  This Agreement shall be binding upon the Pledgor, the Borrower and their respective successors and assigns and shall inure to the benefit of the Pledgee and its respective successors and assigns.  The Pledgor shall not assign its obligations hereunder without the prior written consent of the Pledgee.  This Agreement is for the purpose of defining the respective rights and obligations of the Pledgor, the Borrower and the Pledgee and is not for the benefit of any creditor or other third party.

**IN WITNESS WHEREOF,** the Pledgor has caused this Developer Limited Guaranty, Pledge and Security Agreement to be duly executed and delivered as of the date first above written.

        [NAME OF DEVELOPER], a _____

        By: _____
        Name:
        Title:

Acknowledged and Agreed to by:

SANTA FE POINTE, L.P., an Oklahoma limited partnership

By:    SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

        By: _____
        Name:
        Title: