Eric J. Farber, SBN 169472
eric@farberandco.com
William W. Schofield, SBN 062674
william.schofield@farberandco.com
FARBER & COMPANY ATTORNEYS, P.C.
847 Sansome Street, Ste. LL
San Francisco, California 94111
Telephone 415.434.5320
Facsimile 415.434.5380

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, et al.<br><br>　　　　　　　Plaintiffs,<br><br>　vs.<br><br>GREYSTONE SERVICING CORPORATION, INC., et al.,<br><br>　　　　　　　Defendants. | Case No.: C07-05454 JCS<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date:　April 18, 2008<br>Time:　9:30 a.m.<br>Ctrm:　A (15th Flr.)<br>Before: Hon. Joseph C. Spero |

## I.   INTRODUCTION

The Greystone Defendants have raised arguments that border on frivolity in their motion to dismiss portions of Plaintiffs' ("the Oliphant Parties") Second Amended Complaint ("SAC"). One must question why the identical allegations that were contained in Plaintiffs' previous complaint—to which the Greystone Defendants responded by Answer—have somehow become defective when pleaded in the SAC. One might surmise that the present motion to dismiss has been filed for ulterior tactical reasons, perhaps to influence the judge in the Southern District of New York who currently is considering the Oliphant Parties' motion to transfer venue of that case to this Court. Whatever the motive behind its filing, the present motion is meritless.

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corp., et al.* (C07-05454 JCS)　　　　　- 1
Plaintiffs' MPA in Opposition to Motion To Dismiss

Defendants first complain that two Plaintiff entities, which were organized in Oklahoma to buy, rehabilitate and manage an Oklahoma apartment building, have not "registered" in California and therefore do not have capacity to sue here. There is no requirement that foreign entities register unless they have transacted intrastate business in California, which these Oklahoma companies did not. To dispose of any possible future nitpicking on the issue, the two entities have now registered in California, which moots the issue.

Defendants then claim that as to three causes of action—for negligence, breach of fiduciary duty, and negligent interference with prospective business advantage—only a single plaintiff can sue a single defendant. This erroneous argument rests on a tortured interpretation of the Engagement Letter attached to the SAC and on an overly narrow reading of the SAC's allegations.

Finally, Defendants claim they have not been put on proper "notice" of the facts supporting Plaintiffs' claims for anticipatory breach and breach of the covenant of good faith and fair dealing, despite the nineteen paragraphs of highly detailed information in the SAC that relate directly to those causes of action. The SAC gives proper notice to Defendants of their wrongdoing.

## II.   LEGAL ARGUMENT

### A.   Greystone Has Misread California's Foreign Corporation Registration Requirement

Greystone's first argument is that two entity-Plaintiffs were formed out-of-state and therefore "*must be registered in California* to maintain an action" in California courts.[1] Greystone Br., 3:8-9; emphasis in original. Greystone cites no cases to support this bold proposition, and obviously has not even closely read the two California Corporations Code provisions it relies on. It also forgets basic constitutional law.

California does not, and cannot, require corporations formed in other states to "register" (i.e., qualify to do business) in California in order to file suit here. Any such blanket requirement would violate the Commerce Clause of the United States Constitution. See Dahnke-Walker

---

[1] As to the third entity-Plaintiff, Rant, LLC, the SAC alleges that it is a Delaware corporation that **is** registered in California. ("Plaintiff Rant is now, and at all times material hereto was, qualified to do business as a foreign corporation in the State of California." SAC ¶4.)

Milling Co. v. Bondurant, 257 U.S. 282, 291 (1921)( "A corporation of one State may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter State which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause.")

Accordingly, California only requires a foreign corporation[2] to register with the Secretary of State if the corporation "transacts *intrastate* business" in California.[3]   This is to assure that foreign corporations transacting business within the state are placed on equal footing with domestic corporations and pay their fair share of state taxes. United Medical Mgmt. v. Gatto, 49 Cal. App. 4th 1732, 1741 (1996).  A foreign corporation transacting intrastate business in California without registering can be fined by the Secretary of State, and may not "maintain" a lawsuit until it has registered.[4]  California state and federal courts have given guidance to how these basic registration rules affect litigation such as ours.

First, a foreign corporation has "capacity to sue" in California and, as a pleading matter, does not have to allege one way or the other whether it has registered in California.  See Color-Vue, Inc. v. Abrams, 44 Cal. App. 4th 1599, 1604-05 (1996) ("An allegation by a plaintiff that it is a corporation is sufficient to show that it has the general capacity to sue.")   Whether the foreign corporation is non-registered, is transacting intrastate business in California, and cannot "maintain" a lawsuit under the Corporations Code is an affirmative defense, a matter of abatement subject to proof.  Id. at 1605; United Medical Mgmt., 49 Cal. App. 4th at 1740.

Second, whether a foreign corporation must register is a fact issue (not a pleading issue) to be resolved by the Court after evaluating evidence as to whether a foreign entity's activities reach the level of transacting intrastate business.  See United Medical Mgmt., 49 Cal. App. 4th at 1740 ("The defendant bears the burden of proving . . . the action arises out of the transaction of

---

[2] "Foreign corporation" is used generically to refer foreign corporations, foreign limited liability partnerships, and foreign limited liability corporations, as California's Corporations Code registration requirements are the same as to all.
[3] Calif. Corp. Code §2105 (foreign corporation), §15692 (foreign limited partnership), §17451 (foreign limited liability company).
[4] Calif. Corp. Code §2203(a) (foreign corporation), §15697(a) (foreign limited partnership), §17456(a), (b) (foreign limited liability company).

intrastate business by a foreign corporation"); Thorner v. Selective Cam Transmission Co., 180 Cal. App. 2d 89, 90 (1960)(same).

Third, in making that factual determination, the Court must apply the following standard: Did the foreign corporation "enter into repeated and successive transactions of its business in this state, other than interstate or foreign commerce"? Calif. Corp. Code §191(a)(defining "transacting intrastate business" for registration requirement purposes). Again, a factual analysis to be made apart from the pleadings.

Fourth, the Corporation Code's "transacting intrastate business" registration standard for foreign corporations is obviously much narrower than the "minimum contacts" personal jurisdiction standard. See Borgward v. Superior Court, 51 Cal. 2d 72, 76 (1958)(foreign corporation may "do business" in California for purposes of minimum contacts standard but not be deemed to "transact intrastate business" here under Corporations Code). Indeed, many activities satisfying the minimum contacts standard are expressly excluded as "transacting intrastate business" activities. See Calif. Corp. Code §191(c), (d)[5].

Finally, even if a defendant meets its evidentiary burden of establishing intrastate business in California and non-registration, the Court may only abate, or stay, the action until the foreign corporation does register. United Medical Mgmt., 49 Cal. App. 4th at 1740.

### 1. The Greystone Defendants Have Not Shown the Two Entity-Plaintiffs Transacted Intrastate Business in California

The Project that the Oliphant Entities were attempting to develop was an apartment complex in Oklahoma City, Oklahoma. SAC ¶1. Santa Fe Pointe, LP is an Oklahoma limited partnership formed on October 16, 2006 for the purpose of purchasing the Project (SAC ¶2), rehabilitating it, and becoming the borrower on the HUD-insured loan. SAC ¶22. Santa Fe Management, LLC is an Oklahoma limited liability corporation formed on October 16, 2006 for the purpose of managing the Project. SAC ¶¶3, 22. The SAC does not allege these entities transacted any business, much less engaged in "repeated and successive transactions of its

---

[5] Maintaining a lawsuit in California does not constitute transacting intrastate business. Calif. Corp. Code §191(c)(1).

business in this state." Calif. Corp. Code §191(c). The burden of establishing these entities transacted intrastate business in California is on the Greystone Defendants, which they have not met. The only showing they have made is that the Santa Fe entities were Oklahoma entities—nothing more.[6] This alone does not require those entities to register in order to maintain this action.

### 2. All Plaintiff Entities Have Now Registered in California

This entire issue is now mooted. After receiving the Greystone Defendants' motion, the Santa Fe entities registered with the State. See Plaintiffs' Request for Judicial Notice. This is not a concession that those entities actually transacted intrastate business in California. But it should put to rest any hypertechnical arguments Defendants pose about the capacity of the entity-Plaintiffs. To maintain this action. Cf. CLD Construction, Inc. v. City of San Ramon, 120 Cal. App. 4th 1141, 1151 (2004)(even assuming failure to comply with statutory requirements, corporation is permitted to maintain action after compliance); Color-Vue, Inc, 44 Cal. App. 4th at 1605-06 (same); United Medical Mgmt., 49 Cal. App. 4th at 1740 (same).

### B. The SAC States Claims for All Plaintiffs Against Both Greystone Defendants on the First, Second and Fourth Causes of Action

#### 1. The Claims Are Stated on Behalf of all Plaintiffs

Defendants make the remarkable argument that only one plaintiff—Santa Fe Pointe, LP—can assert claims arising from the first (negligence), second (breach of fiduciary duty) and fourth (negligent interference with prospective business advantage) causes of action. Greystone Br., 3:8-9. Defendants argument is that those causes of action arise only because of the relationship

---

[6] The Greystone Defendants may argue that one can infer that Mr. Oliphant, a California resident, must have participated in telephone calls about the Project, or even received documents relating it, at his office or home in California. Even if a factual inquiry revealed he did, however, that is insufficient to establish "repeated and successive transactions" by the Santa Fe entities in California. Cf. United Systems of Arkansas, Inc. v. Moore Business Systems, Inc., 63 Cal. App. 4th 1001, 1007 (1998)(soliciting business within California for performance outside state does not constitute transacting intrastate business); (Mediterranean Exports, Inc. v. Superior Court of San Mateo, 119 Cal. App. 3d 605, 617 (1981)(maintaining office in state is irrelevant if business activity is outside state); Thorner, 180 Cal. App. 2d at 90 (negotiations conducted in California insufficient where contracts involved out of state activity).

---

established in the Engagement Letter, and Santa Fe Pointe, LP is the only Plaintiff that was a party to that letter (a curious claim since that document nowhere even references Santa Fe Pointe, LP).

Defendants have misread the SAC as relying solely on the Engagement Letter to establish duties giving rise to these causes of action, as explained below.  Moreover, these causes of action sound in tort, and there is no privity of contract requirement that would preclude non-contracting parties from asserting these claims.  Cf. Biakanja v. Irving, 49 Cal. 2d 647, 650-651 (1958)(non-contracting parties may sue for negligent performance of contract).

But Defendants are also mistaken in their claim that the SAC establishes Santa Fe Pointe, LP as the sole Plaintiff that was party to the Engagement Letter.  Mr. Oliphant was the signatory to the letter, which states he is signing it "on behalf of an entity to be created," identified as "Applicant."  SAC, Ex. A at 2.  Defendants blithely state that "it is undisputed" that the Applicant was meant to be Santa Fe Pointe, LP because that entity was the "Borrower" under the bridge loan.  Greystone Br., 4:18-19.  Defendants do not explain, however, why the bridge loan "Borrower" is necessarily also the HUD "Applicant."

At best, the Engagement Letter is ambiguous as to which entity would ultimately be the "Applicant."  This is a matter of proof; at the pleading stage any ambiguities are to be resolved in favor of the pleader.  See International Audiotext Network v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)(any contractual ambiguities in the contract attached to the complaint are to be resolved in plaintiff's favor).

Furthermore, the Defendants assume that only the entity applicant—and not Mr. Oliphant personally—would have a claim for duties arising from the Engagement Letter.  Not so.  A controlling member of an entity can, under the circumstances of this case, assert an individual claim for personal losses sustained as a result of the malfeasance.  See Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 530 (1946)(stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong; Nathanson v. Murphy, 132 Cal. App. 2d 363, 370-71 (1955)(same).

### 2. Greystone CDE Is Implicated in These Causes of Action

Defendants make the unwarranted assumption that since Greystone Servicing was the party to the Engagement Letter it alone had duties to the Plaintiffs with respect to the Project. If the cause of action being sued upon was for breach of the Engagement Agreement, such an argument might have force. However, that is not what the SAC is alleging.

These causes of action assert tort claims, and the duties alleged go beyond those imposed by the Engagement letter (although that contract most certainly is important). The duties arise as well because of the "business relationship" (SAC ¶¶67, 68) of the parties, which extends to the bridge loan relationship established in December 2006 (SAC ¶30). The nub of the claim is that the activities of **both** Greystone Defendants contributed to Plaintiffs' inability to complete the Project. It was not only the negligence of Greystone Servicing in the HUD application process that is at issue. Also at issue is the damage caused by changing the terms of the bridge loan financing so the Oliphant Parties were unable to purchase the underlying property (See SAC ¶¶30, 69); the interference with the Oliphant Parties' relationship with the seller of the property by improperly demanding priority of the bridge loan over a loan the seller was offering (SAC ¶¶37, 69); the negotiations with a different developer to take the place of the Oliphant Parties in developing the Project (SAC ¶¶41, 69); and wrongfully maligning Oliphant (SAC ¶¶52-55, 97).

### C. The Fifth and Sixth Causes of Action Adequately Give Notice to the Greystone Defendants of Their Claimed Wrongdoing

The Fifth and Sixth Causes of Action of the SAC state claims for anticipatory repudiation and for breach of the covenant of good faith and fair dealing. Both Greystone Servicing and Greystone CDE are sued.

Defendants do not claim these causes of action fail adequately to state a claim for relief under Rule 12(b)(6). Defendants complain, instead, that the causes of action allegedly do not give proper "notice" of the claim under Federal Rule of Civil Procedure 8(a). Greystone Br., 5:28-6:18. Given the level of detail pleaded in the SAC, this argument is disingenuous.

These causes of action are founded on the activities of both Greystone Defendants during the months of August and September, 2007, they implicate both the Engagement Letter and the

---

bridge loan, and they are pleaded with great specificity in paragraphs 40 through 58 of the SAC. To summarize, Defendants in early August started looking at ways to oust the Oliphant entities from the Project and surreptitiously began negotiating with David Henry, an Arkansas developer. SAC ¶¶40-41. To this end, Greystone Servicing unilaterally withdrew the Oliphant Parties' HUD application on August 9, an event which caused the seller of the apartment building to temporarily terminate negotiations with Oliphant for further extensions of the close date for the purchase of the property. SAC ¶42.

Two weeks later, on August 21, Greystone CDE sent Oliphant a letter declaring the bridge loan to be in default, citing as the event of default the expiration of the close date for the purchase and sale of the apartment building, without that date having been extended. SAC ¶45. Of course, it was Greystone's unilateral act of withdrawing the HUD application that had caused the difficulty in negotiating with the seller in the first place.

Over the next several days, the Greystone Defendants pressured Oliphant to assign all interest in the Project to Henry with Mr. Oliphant assuming responsibility to pay more than $200,000 of the bridge loan and agreeing not to sue Greystone for its malfeasance in handling the HUD application. SAC ¶46.

Although Greystone's unilateral withdrawal of the HUD application had made negotiations with the seller of the apartment building difficult, Oliphant nonetheless was able to obtain another agreement to extend the close date. SAC ¶48. Oliphant notified Greystone of this development, showed Greystone the document that verified the extension, and requested that the Greystone default notice be rescinded. SAC ¶¶48-49. Greystone refused to do so, now claiming the bridge loan was in default because the Oliphant Parties supposedly had no tax credit syndicator. SAC ¶50. Greystone also indicated it was "out" unless Oliphant could prove the Project was a viable deal (id.), an improper condition and an anticipatory breach of the Engagement Agreement.

In fact, the lack-of-tax-credit-syndicator default excuse was pure fiction. Greystone had waived any such condition five months earlier when the initial tax credit syndicator withdrew from the deal. SAC ¶¶51. Moreover, Oliphant had obtained a commitment from a successor tax credit syndicator in June 2007 that was still in effect when Greystone was taking the position. Id.

On September 21, 2007, Greystone CDE notified Oliphant that it was accelerating the bridge loan and declaring all amounts due under the bridge loan note immediately due and payable. SAC ¶52. A month later it circulated to financial institutions and to Oklahoma public entities a letter that wrongfully claimed Oliphant defaulted on the bridge loans, enclosing a copy of the New York lawsuit Greystone CDE had filed. SAC ¶¶52-55. Any hopes Oliphant had in moving forward with the Project had effectively been scuttled by this irresponsible behavior. SAC ¶¶56-58.

These facts, if proven, plainly state claims for both anticipatory repudiation and for breach of the good faith covenant, and Defendants do not argue otherwise. Rather, they claim that the fifth and sixth causes of action address the Greystone Defendants collectively rather than tying Greystone Servicing specifically to the Engagement Letter and Greystone CDE specifically to the bridge loan contracts. But the entire point is that during this seven-week window of time, both of the Greystone Defendants were acting in concert and were not separating their actions as HUD-fiduciary on the one hand versus the bridge loan lender on the other.

It is submitted that these allegations of the SAC have given "fair notice of what the [plaintiffs'] claim is and the grounds upon which it rests" (Conley v. Gibson, 355 U.S. 41 , 47 (1957)) so that Defendants can respond, undertake discovery and prepare for trial, which is all that is required under Federal Rule of Civil Procedure 8.

### III.    CONCLUSION

The Court should stop the procedural game-playing the Greystone Defendants have engaged in from the start of this litigation and allow the case to proceed on the merits. Their motion should be denied.

Dated: March 28, 2008.                FARBER & COMPANY ATTORNEYS, P.C.
                                      Attorneys for Plaintiffs


                                      By /s/ *William W. Schofield*
                                          William W. Schofield

PROOF OF SERVICE

I, Eric J. Farber, declare:

1.   I am an attorney at law over the age of eighteen years of age and not a party to this action. My business address is 847 Sansome St., LL, San Francisco, CA 94111.

2.   On March 28, 2008, I served true and correct copies of the foregoing pleading: **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORIES IN OPPOSITION TO MOTION TO DISMISS** on the interested parties by electronically filing such documents through the CM/ECF system of the United States District Court for the Northern District of California, which will send electronic notification of such filing to the following registered users:

> Mark D. Kemple        mdkemple@jonesday.com
>
> Erik K. Swanholt      ekswanholt@jonesday.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed this 28th day of March 2008, at San Francisco, California.

>              /s/ _Eric J. Farber_____
>                      Eric J. Farber

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corp., et al.* (C07-05454 JCS)                                                                                                                          - 10
Plaintiffs' MPA in Opposition to Motion To Dismiss