Mark D. Kemple (State Bar No. 145219)
Erik K. Swanholt (State Bar No. 198042)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539
Email: mkemple@jonesday.com
Email: ekswanholt@jonesday.com

Attorneys for Defendants
Greystone Servicing Corporation, Inc., and
Greystone CDE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, an Oklahoma limited partnership; SANTA FE MANAGEMENT, LLC, an Oklahoma limited liability company; RANT, LLC, a Delaware limited liability company; and THEOTIS F. OLIPHANT, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>GREYSTONE SERVICING CORPORATION, INC., a Georgia corporation; GREYSTONE CDE, LLC, a Delaware limited liability company, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. C 07-05454 JCS<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF FEBRUARY 4, 2008 ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE<br><br>Ctrm:    A (15th Floor)<br>Before:  Hon. Joseph C. Spero<br><br>Date:    July 25, 2008<br>Time:    9:30 a.m. |

## I. SUMMARY OF REPLY

Three key (and new) facts are not contested and are dispositive:

(1) **All parties agree that this matter must be litigated in only one venue – not concurrently in two venues on opposite coasts.**[1]

(2) **Of the two venues, only New York has before it all claims by all parties. The California action is but a subset of the New York action.**[2]

(3) **The Oliphant Parties *"unconditionally and irrevocably"* consented in writing that New York was a proper venue, *and that they would not challenge New York as a proper venue*.**[3] **There is nothing "permissive" about their agreement.**

These three key points end all reasonable debate; New York is the only proper venue. Were more needed, and though the Oliphant Parties feign otherwise, it is also undisputable that:

(4) **The New York action – with a current trial date of May 2008 and motions for partial adjudication pending – is far more advanced than this action.**[4]

With this, and even putting reason aside, only the *most* intractable and irrational advocate could continue to argue that the larger New York action should be sent to the smaller California action, based on a motion brought in express breach of the parties' written, express "unconditional and irrevocable" consent to New York venue. Patently, the smaller

---

[1] As the Oliphant Parties concede, "the interest of justice mandates against the parties litigating identical issues in two fora." *See* Declaration of Erik Swanholt (doc. # 50) ("Swanholt Decl."), Ex. 1 at 1.

[2] Unlike New York, the claims of Greystone CDE, LLC are not asserted in California.

[3] "Pledgors hereby irrevocably and unconditionally: ... (ii) consent that any such action or proceeding may be brought in such [New York] courts, and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same." Swanholt Decl., Ex. 2 at 1, 15-16 (emph. added).

[4] In contrast, the California Defendants are not obliged even to *answer* the California pleading until July 2008, at the earliest.

California claims – already subsumed in the New York action – should be resolved once, and in New York where they will be resolved in all events.

Indeed, independent of the 4 undisputable truths set further above, the Oliphant Parties' change of position and admission that their California tort claims arise out of the same transaction or occurrence as Defendants' New York claims on the bridge loan guaranties – and therefore are compulsory counterclaims in New York – further reinforces that which is already inescapable. Because the Oliphant Parties' freely concede that their California claims are compulsory counterclaims to the guarantee claims made Defendants in New York,[5] the Oliphant Parties now openly concede that even the permissive venue provisions pertaining to actions commenced outside New York (consent to actions filed inside New York is "unconditional and irrevocable") are directly in play, and further point in the direction of New York. And again, the consent that claims initiated in New York will stay there, is "unconditional and irrevocable."

All agree that the interest of justice mandates proceeding in a single forum. Inescapably, that forum is New York.

The Oliphant Parties' opposition does nothing to undermine, or even address, these controlling truths. In fact, it ignores them. Rather than dispute or even address these key points, the Oliphant Parties seek to (i) mislead this Court as to the procedural posture of the New York matter, (ii) mischaracterize the bases of this Court's prior denial of Defendants' transfer motion and (iii) convince this Court to forebear ruling on this motion until after the New York court has acted on Plaintiffs' motion to transfer that case to California (largely because the Oliphant Parties' entire argument in that motion is based upon this Court's prior rejection of Defendants' motion to transfer this matter to New York). The Oliphant Parties' arguments do not contradict or even challenge the clear and indisputable facts set

---

[5] *See* Fed. R. Civ. P. 13(a); *see also* Swanholt Decl., Ex. 1 at 1 (admitting in their motion to transfer filed in the New York action that "[t]he Oliphant parties [are] required to raise these defenses and Counterclaims in the New York action at the risk of rendering their claims in the California Action moot.") (emph. added).

1  forth above. Accordingly, Defendants respectfully request that this Court grant their
2  motion for reconsideration and order the transfer of this matter to New York.

3  II.   **ARGUMENT**

4      A.    **The Undisputed New Facts Make Clear That New York Is The <u>Only</u> Permissible Venue For All Of These Claims.**

5

6      Plaintiffs argued vehemently in opposition to Defendants' original motion to transfer
7  that the New York and California matters were unrelated and thus transfer and
8  consolidation inappropriate. Now, after asserting *all* of their affirmative claims in the
9  California action as compulsory counterclaims in the New York action, Plaintiffs agree that
10 the two matters are "identical."[6] Indeed, because of this new development, as Defendants
11 argued many months ago, Plaintiffs now agree that "the interest of justice mandates against
12 the parties litigating identical issues in two fora." *See* Swanholt Decl., Ex. 1 at 1. Thus, the
13 parties agree that it makes no sense, practically, legally or otherwise, for this matter to
14 proceed concurrently with the New York matter, but instead that the two should be
15 consolidated into one venue for efficient administration.

16     The only question is where. The answer is New York. This is true because the New
17 York matter will not be transferred to California because it cannot be transferred to
18 California. The New York court has already concluded that (a) the venue provisions in the
19 guaranties are binding and enforceable, (b) Plaintiffs' consent to venue in New York is
20 irrevocable and unconditional and (c) the first-to-file rule carries little weight under the
21 circumstances of this case and thus does not overcome (a) and (b):

22         **More importantly, Plaintiff [Greystone] selected this forum**
23         **based on the forum selection clauses of the loan guaranties,**
24         **which each Defendant [Oliphant Parties] executed in favor of**
25         **Greystone . . . . Having previously agreed to litigate this case in**
26         **New York should Plaintiff institute an action here, Defendants**

27 ──────────────
   [6] Actually, the New York matter includes all of the claims made by and against all of
28 the parties, while the California action includes only a subset of those claims and parties.

> **cannot now claim that their burden in doing so outweighs the interest of Plaintiff in proceeding with this action.**

Swanholt Decl., Ex. 4 (Order of Feb. 20, 2008 in the New York action) at 4 (emph. added).[7]  The Court added:

> Although it is true that Defendants filed an action in California state court prior to Plaintiffs filing this action, they did not serve process until the day before Plaintiff filed its action here in New York, nor did they disclose the filing of their action while they negotiated with Plaintiff.  Moreover, as Plaintiff points out, the California action was filed well after Defendants received a notice of default and of Greystone CDE's intent to pursue collection remedies.  This sequence weighs against an application of the first to file rule.

Swanholt, Ex. 4 (Order of Feb. 20, 2008 in the New York action) at 5.

Thus, given the parties' concurrence that these matters should proceed in only one venue and the undisputable fact that the New York court has already ruled that Defendants' affirmative claims will remain there, New York is the only venue where the parties can achieve their goal of eliminating the possibility of litigating two nearly "identical" matters on opposite coasts.

**B.  Plaintiffs' Opposition Raises Arguments That Are Inapposite And Insufficient To Overcome The Undisputed Facts Set Forth Above.**

Plaintiffs do not dispute any of the changed circumstances that make reconsideration appropriate here, nor can they.  Instead, Plaintiffs attempt to mischaracterize the claims and contracts in this matter to avoid having to perform their promise to litigate in New York.

---

[7] The venue provision interpreted by the New York court reads, in pertinent part: "Pledgors hereby **irrevocably and unconditionally**: (ii) consent that any such action or proceeding may be brought in such [New York] courts, and waives <u>any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court</u> or that such action or proceeding was brought in an inconvenient court and agree not to plead or claim the same." Swanholt Decl., Ex. 2 at 1, 15-16 (emph. added).

**Procedural Posture of the New York Action**: The Plaintiffs claim that Defendants' argument that the New York matter is proceeding faster than the California action is inaccurate because in California discovery has commenced and a mediation is scheduled for late May. *See* Opp'n (doc. # 56) at 4:20-27. While accurate, the point is trivial when compared with the fact that the New York matter is scheduled to commence trial on May 12, 2008 – one year earlier than the May 11, 2009 trial date in this action. Indeed, Defendants' answer in the California action is not due, if at all, before July. Regardless of whether the New York trial date sticks, the New York matter will proceed to trial sooner than this matter. That the parties in that action have chosen not to engage in discovery to date, or that the New York court has not ordered the parties to mediation, does not have any bearing on where that matter is relative to trial and resolution.

**Basis of the Court's Earlier Ruling**: In their opposition, the Plaintiffs suggest that the Greystone Defendants have mischaracterized the Court's February 4, 2008 Order, and claim that "the existence of the New York action had little, if any, bearing on the Court's Order." Opp'n (doc. #56) at 3:1-2. The reality, however, is that in opposing Defendants' motion to transfer, Plaintiffs argued that Defendants' claims in the New York action were unrelated to their tort claims in the California action in an effort (1) to evade the forum-selection clauses to which they had agreed and also (2) to suggest that judicial efficiency would not be advanced by the transfer and consolidation of the two actions in a single forum. The Court accepted Plaintiffs' characterization of their claims and the two pending actions, the venue provisions in the guaranties were not applied to Plaintiffs' affirmative California claims and Defendants' motion was denied.

Since then, the Oliphant Parties have asserted all their claims in this action in New York as "identical" counterclaims raising "identical issues." *See* Swanholt Decl., Ex. 1 at 1. As Plaintiffs now admit, they were "required to raise these defenses and Counterclaims in the New York action at the risk of rendering their claims in the California Action moot." Plaintiffs recognize that the claims in this action are compulsory counterclaims in the New York action because, contrary to their previous representations to this Court, their claims do

"arise[] out of the same transaction or occurrence that is the subject matter of" Greystone CDE, LLC's claims in the New York action, *i.e.*, the bridge loan transaction, *see* Fed. R. Civ. P. 13(a). As they now explain:

> [T]he California Action is not limited to claims pertaining to [Greystone] Servicing's malfeasance. The California Action also asserts a cause of action that directly addresses the [Greystone] CDE loan guarantees, seeks a declaration the parties' rights and liabilities with respect to those guaranties, and seeks a declaration concerning any rights to set-off the Oliphant Parties might possess.

Swanholt Decl., Ex. 1 at 4 n.4.

In their opposition to Defendants' motion to reconsider, Plaintiffs do not contend otherwise. Instead, they seek to avert the issue by characterizing their claims in New York as "protective counterclaim[s] . . . required to place the issues there in proper perspective should that litigation proceed." This nonsensical explanation has no basis in the Federal Rules and, more importantly, does nothing to alter the inexorable conclusion that their claims in this action arise out of the transaction or occurrence at issue in the New York action; namely, Plaintiffs' breach of their obligations under the bridge loan guaranties. And as the parties' choice of venue provision states:

> Pledgors hereby irrevocably and unconditionally: (i) submit themselves and their respective property in any legal action or proceeding **relating to** this agreement, **or any other document executed in connection with the transactions contemplated by the loan agreement** ... to the non-exclusive general jurisdiction of the courts of the State of New York . . . .

Swanholt Decl., Ex. 2 at 1, 15-16 (emph. added).

Accordingly, regardless of Plaintiffs' prior representations to the Court, there can be no dispute now that the New York and California matters *are* related, that they are all based upon the same "transaction or occurrence" and that therefore the venue provisions applying

to "any other document" in connection with those transactions, including the Engagement Agreement forming the basis of Plaintiffs' California claims, should be enforced.

**<u>Consideration of this Motion Is Not Premature</u>:** In a last ditch effort to avoid transfer of this matter, Plaintiffs suggest that the Court should delay its reconsideration of Defendants' motion to transfer until the New York court has had an opportunity to resolve the Plaintiffs' motion to transfer in the New York action. *See* Opp'n (doc. # 56) at 5-6. However, in that motion, Plaintiffs conveniently jettison all of the previous arguments by which they had persuaded this Court to deny Defendants' motion, and, instead, rely on Defendants' argument of judicial efficiency (which they had previously opposed) in their bid to have the New York Court transfer Defendants' affirmative New York action to California.[8] *See* Swanholt Decl., Ex. 1 at 6-11.

Tellingly, Plaintiffs' New York motion relies heavily on this Court's denial of Defendants' transfer motion.[9] Clearly, Plaintiffs hope that the New York court will change its previously stated conclusions and order transfer of the New York matter to California, relying solely upon this Court's order denying Defendants' motion to transfer the California matter to New York. Based upon the foregoing, however, it makes much more sense for this Court to reconsider its prior order <u>before</u> the New York court relies on that order.

Dated: April 25, 2008

JONES DAY

By: /s/ Mark D. Kemple
Mark D. Kemple
Attorneys for Defendants Greystone Servicing Corporation, Inc. and Greystone CDE, LLC

---

[8] Against the backdrop of their double-tongued filings in the two actions, the Oliphant Parties have the audacity to insinuate that the Greystone Defendants are "making this litigation as costly as possible," *see* Opp'n (doc. # 56) at 1:22-25, when, in reality, it is only Mr. Oliphant who benefits from delaying the inevitable, driving up costs, and frustrating Greystone's efforts to collect a sizable debt that Mr. Oliphant does not dispute he owes.

[9] *See* Decl. of W. Schofield (doc. # 56) ("Schofield Decl."), Ex. C at 1 n.4 ("Greystone has already made that motion [to transfer] in California – and they lost. The California court decided to retain jurisdiction; and the California Action proceeds on its course.")