1   Mark D. Kemple (State Bar No. 145219)
    mkemple@jonesday.com
2   Erik K. Swanholt (State Bar No. 198042)
    ekswanholt@jonesday.com
3   JONES DAY
    555 South Flower Street
4   Fiftieth Floor
    Los Angeles, CA  90071-2300
5   Telephone:    (213) 489-3939
    Facsimile:     (213) 243-2539
6
    Attorneys for Defendants
7   GREYSTONE SERVICING CORPORATION, INC.
    AND GREYSTONE CDE, LLC
8
    Eric J. Farber, SBN 169472
9   eric@farberandco.com
    William W. Schofield, SBN 062674
10  william.schofield@farberandco.com
    FARBER & COMPANY ATTORNEYS, P.C.
11  847 Sansome Street, Ste. LL
    San Francisco, CA  94111
12  Telephone:    (415) 434-5320
    Facsimile:     (415) 434-5380
13
    Attorneys for Plaintiffs
14

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17                  (SAN FRANCISCO DIVISION)

18

19  **SANTA FE POINTE, LP, et al.,**          **Case No. C07-05454 JCS**

20          **Plaintiffs,**                   **SECOND JOINT CASE**
                                              **MANAGEMENT STATEMENT**
21          **v.**
                                              **Date:**      **June 6, 2008**
22  **GREYSTONE SERVICING**                   **Time:**      **1:30 p.m.**
    **CORPORATION, INC., et al.,**            **Court:**     **A (15th Floor)**
23
            **Defendants.**
24

25

26

27

28

LAI-2952599v2

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

1    Pursuant to the Court's Order dated February 11, 2008 (doc. #39) and Civil Local Rule 16-

2   9, Plaintiffs Santa Fe Pointe, LP, Santa Fe Management, LLC, Theotis F. Oliphant ("Oliphant"),

3   and Rant, LLC and Defendants Greystone Servicing Corporation, Inc. ("Greystone Servicing") and

4   Greystone CDE, LLC ("Greystone CDE") hereby jointly submit this Second Case Management

5   Statement.

6        **1.      Jurisdiction and Service:**

7    Plaintiffs filed this case in state court (Alameda County) on September 7, 2007, and

8   Defendants removed it to this Court on October 25, 2007 based on diversity jurisdiction, 28 U.S.C.

9   § 1332.  Plaintiffs concede diversity jurisdiction and Defendants concede personal jurisdiction.

10       **2.      Facts:**

11   **Plaintiffs' Statement**.  Plaintiffs allege torts and breaches of contract arising out of

12  Plaintiffs' project to acquire and rehabilitate an apartment building in Oklahoma City as low

13  income housing special funding insured by the FHA's Office of Housing and Urban Development

14  ("HUD").  The Complaint alleges that Defendant Greystone Servicing Corporation, Inc. (a HUD-

15  approved underwriter) was a fiduciary that mishandled the Plaintiffs' HUD application, unilaterally

16  and wrongfully withdrew it from HUD consideration, and sabotaged the project.  Moreover, that

17  Greystone Servicing forced Plaintiffs into accepting a bridge loan from an affiliated Greystone

18  entity (Defendant Greystone CDE, LLC) in an inadequate amount and on vastly different (and

19  inferior) terms than initially promised and later wrongly declared the loan in default.

20   Theotis F. Oliphant resides in Contra Costa County, California and is the managing agent

21  of Rant, LLC, which operates out of Contra Costa County.  In August 2006, Oliphant undertook to

22  acquire and rehabilitate a 224-unit apartment building in Oklahoma City (the "Santa Fe Pointe

23  Project") as a developer under HUD's Low Income Housing program.  The Federal Government

24  encourages private developers, through federally-insured loan incentives, to renovate and maintain

25  housing for low income tenants.  This was to be such a project.  Oliphant formed Santa Fe Pointe,

26  LP, an Oklahoma limited partnership, as the entity that would acquire the apartment complex,

27  rehabilitate it, and be the borrower on the HUD-insured loan.

28

1    HUD does not interact directly with the developer under the Low Income Housing

2  program. Rather, it requires the developer to retain a HUD-approved underwriter, a financial

3  entity that acts as the sole intermediary between the developer and HUD, preparing the HUD

4  application materials, commissioning any third party reports needed to support the underwriting

5  analysis, and facilitating the timely approval of application and financing. In early September

6  2006, Oliphant retained Greystone Servicing, through a written agreement, to act in that capacity,

7  as a fiduciary who would serve as Oliphant's exclusive agent in the HUD application process.

8    Aside from the HUD-insured loan, financing for the Santa Fe Pointe project would come in

9  part in the form of tax-exempt bonds issued by Oklahoma local or state agencies. At about the

10  same time Oliphant engaged Greystone Servicing, he also engaged an investment bank underwriter

11  to sell tax exempt bonds. The bond financing was required to close by December 20, 2006 or the

12  tax-exempt bond allocation awarded for the Santa Fe Pointe Project would expire, so the HUD

13  application had to be completed by November 2006.

14    By late October 2006, however, it was apparent that Greystone Servicing was behind

15  schedule and would be unable timely to complete the HUD application. To protect the project,

16  Greystone Servicing agreed—through a written term sheet—to extend a non-recourse bridge loan

17  of more than $4 million to be used by Oliphant (a) to purchase the real estate at the Santa Fe Pointe

18  Project and (b) to pay for timely issuance of the tax-exempt bonds. The loan would be placed

19  through Defendant Greystone CDE.

20    The loan actually extended, however, was quite different. Shortly before the December 20

21  tax-exempt bond issue deadline, Greystone presented Oliphant with loan documents for only a

22  $500,000 maximum bridge loan, which would allow Oliphant to cover the bond issuance fees but

23  not allow him to purchase the Santa Fe Pointe Project property. Moreover, the loan documents

24  also required Oliphant and his spouse to personally guarantee the bridge loan, even though the

25  term sheet said financing would be non-recourse. Oliphant had no choice but to accept and sign

26  the loan documents as presented on a "take it or leave it" basis. When he was presented with the

27  documents, more than $250,000 in bond issuance costs had already been incurred because the tax-

28  exempt bonds had been sold.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                                    - 3 -

1         For reasons to be developed in discovery, Greystone Servicing waited to submit Oliphant's

2    application to HUD for yet another three months to mid-March 2007. Oliphant claims numerous

3    acts of misconduct by Greystone Servicing that placed the HUD application in jeopardy.  On

4    August 9, 2007, Greystone Servicing unilaterally—without prior notice to or approval from

5    Oliphant—withdrew the HUD loan application.  This placed at risk over $7 million in tax exempt

6    bond proceeds, and caused the seller of the underlying property to terminate negotiations with

7    Oliphant about extending the close date for purchasing that property.

8         In late August 2007, Greystone told Oliphant it was declaring the bridge loan in default,

9    even though no financial default existed.  It demanded that Oliphant allow a third party to take

10   over the entire Project on unfavorable terms and that Oliphant sign a covenant not to sue.  Oliphant

11   declined and filed suit in Alameda County Superior Court on September 7, 2007.

12        **Defendants' Statement**.  Defendants anticipate that the following will be established.  This

13   matter arises out of Plaintiff Theotis F. Oliphant's ("Oliphant") failed pursuit of the development of

14   a multi-million dollar Low Income Housing Tax Credit project (the "Santa Fe project") located in

15   Oklahoma City, for which Plaintiffs obtained $500,000 in bridge financing from Greystone CDE,

16   LLC.

17        On September 7, 2006, defendant Greystone Servicing entered into an Engagement

18   Agreement with Oliphant (also acting on behalf of plaintiff Sante Fe Pointe LP) to assist in

19   obtaining financing for the Santa Fe project ("Project") through various government entities,

20   including the U.S. Department of Housing and Urban Development ("HUD").

21        Between September and November of 2006, several significant outstanding issues stood in

22   the way of presenting a complete underwriting package to HUD.  For example, Plaintiffs' tax credit

23   syndicator and equity provider, National Equity Fund, became unable to participate in the Santa Fe

24   project due to a liquidity crisis, and thereafter Plaintiffs were unable to find a replacement tax

25   credit syndicator (a requirement for HUD approval).  Further, Plaintiffs consistently failed to meet

26   Greystone's numerous requests to provide basic information and materials necessary for

27   completion of the underwriting process and submission of the HUD application.  The final plans

28   and a cost estimate for the Project, for example, were supposed to have been received by the end of

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                                    - 4 -

1    October of 2006.  The final plans were not received from Plaintiff until November 13, 2006, and
2    even then were not accompanied by a cost estimate.

3          In November 2006, Oliphant requested a non-recourse bridge loan from defendant
4    Greystone CDE in the amount of $4,348,400 (85% of purchase price).  Greystone CDE said it
5    would be amenable to the loan if Plaintiffs supplied the remaining 15%.  A term sheet of the
6    proposed non-recourse bridge loan was provided to Oliphant.  Oliphant, however, balked at
7    investing any of Plaintiffs' (his) own money in the Project he sought to pursue, and expressly
8    rejected this proposed loan.  Instead, on December 5, 2006, Oliphant forwarded a term sheet
9    bearing his signature for a different Bridge Loan in the amount of $500,000, subject to personal
10   guarantee.

11         Due to a looming December deadline on the bond allocation, Greystone Servicing urged
12   Plaintiffs to reapply for a new bond allocation the following year after resolving the other
13   outstanding issues affecting the HUD application, such as the lack of a tax credit syndicator,
14   because failure to complete those requirements and close on the HUD-insured mortgage loan in a
15   timely manner would result in forfeiture of the bond issuance.  This was because the collateral for
16   the bond issuance was to be ultimately secured by the HUD loan for both its principal and interest
17   payments, and, as Greystone Servicing explained to Oliphant, obtaining a bond allocation in 2007
18   would have been less difficult than obtaining the necessary HUD approval in 2006 under those
19   circumstances.

20         Oliphant rejected Greystone Servicing's advice.  Instead, (1) without having secured any
21   bridge funding, and (2) against Greystone Servicing's recommendation, and (3) in spite of
22   Oliphant's admission that he knew in November that, given his delays, Plaintiffs' HUD application
23   could not be submitted until sometime in the following year (2007), on December 12, 2006,
24   Plaintiffs approved the sale of tax-exempt bonds by Plaintiffs' investment bank to institutional
25   investors (in escrow), thereby incurring approximately $251,000 in bond issuance costs.

26         Having elected to incur that debt, Oliphant then requested that Greystone CDE forward to
27   him in Oklahoma where he would be attending to other business, Bridge Loan documents for a
28   loan in the amount of $500,000 that required no contribution of capital by Oliphant to the Project,

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                                    - 5 -

1   but required his personal guarantee on the loaned amounts.  We note again that Oliphant earlier

2   had rejected a $4.3 million non-recourse loan, and had specifically requested a recourse $500,0000

3   loan.  Greystone CDE fulfilled Oliphant's request.  To be clear, this was hardly a "surprise" to

4   Oliphant.  Oliphant and the other signatories (including his spouse) then waited at least another 24-

5   hours after delivery of these documents for the requested $500,000 Bridge Loan to review and

6   fully execute them.  They made no request for any change to them.  The Bridge Loan documents

7   contain choice-of-law and forum selection provisions selecting New York as the governing law

8   and forum for actions relating to the Bridge Loan documents.

9          On December 26, 2006, Oliphant's law firm, *Gibbs & Oliphant*, opined in writing to the

10   validity of the Bridge Loan documents.  Plaintiff took from Greystone CDE all of the money

11   loaned to them.  Since notice of their default, they have not repaid a dime.

12          In opposition to the transfer motion made to this Court, Plaintiffs claimed for the first time

13   (as presumably will Oliphant's spouse) that they were under "duress" when they agreed in

14   December 2006 to sign the Bridge Loan documents that they requested, and when they took

15   $500,000 from Greystone CDE pursuant to it.  Plaintiffs' "theory" is that, because they chose the

16   week prior to incur nearly a quarter million dollars in bond issuance costs (against Greystone

17   Servicing's recommendation), they now needed the money, requested it, signed for it, and took it.

18   This, they assert, equals "duress."  Of course, it does not, nor is it legally relevant.  And thereafter,

19   Plaintiffs did not return a dime of the half million dollars they took, and at no time have requested

20   that the Bridge Loan be unwound (including return of the monies they took).  Most of us would

21   welcome such "duress."

22          In March 2007, Oliphant reported to Greystone Servicing that he had finally received a

23   letter of intent from a tax credit syndicator, The Richman Group, as would be required for approval

24   of a HUD application.  Promptly thereafter, on March 19, 2007, Greystone Servicing submitted

25   Plaintiffs' application to HUD.

26          In April 2007, however, Oliphant reported that the Richman Group had backed out of the

27   commitment he had represented they had made to him.  In short, and once again, Plaintiffs did not

28   have a tax credit syndicator – a requirement for HUD approval.  Oliphant was instructed by

1  Greystone Servicing repeatedly that Plaintiffs needed to obtain a tax credit syndicator or their

2  application would be rejected by HUD.

3       Having failed to obtain a tax credit syndicator, on July 7, 2007, Oliphant met directly with

4  HUD, contrary to directions from Greystone Servicing.  Oliphant reported to Greystone that HUD

5  informed him at this meeting that it would reject the application.

6       Greystone Servicing then intervened directly with HUD and convinced it to suspend its

7  rejection and accept a revised and complete application from Plaintiffs within 30 days.  This was

8  confirmed in writing to Oliphant.  Plaintiffs were again instructed by Greystone Servicing that they

9  needed to obtain a tax credit syndicator or its application would be rejected by HUD.  As the 30

10 days period drew to a close, Greystone Servicing told Oliphant that it recommended that Plaintiffs

11 pull their application rather than risk another rejection by HUD – which would be irreversible.

12      On top of this, on July 31, 2007, Plaintiffs permitted their contract for purchase of the

13 subject real property for the Project to expire.  Apart from the implications for any HUD approval,

14 that failure also constituted an express and non-curable default of the Bridge Loan with Greystone

15 CDE.

16      Plaintiffs, who were unable to secure a tax credit syndicator, and did not have a contract to

17 purchase the property, agreed to pull the application.  On August 8, 2007, Greystone Servicing

18 withdrew Plaintiffs' application to HUD.  As Judge Patterson has just found and ruled pursuant to

19 Rule 56 in the New York action (then ordered transferred to the Northern District of California):

20      "the contract for the purchase of the apartment building expired on July 31.  Greystone
        pulled the HUD after it had expired when it was clear that there was no transaction and
21      they hadn't gotten a syndicator.  They had every right to do that. They had the[ir]
        reputation on the line."
22

23 [U.S. District Judge Patterson.]

24      Next, on August 10, 2007, Oliphant emailed Greystone Servicing and told it that he wanted

25 no further participation in any application to the HUD concerning the Project.  In Oliphant's words,

26 "all negotiations with Greystone on all aspects of the HUD deal" should be handled by a third

27 party, David Henry.  Oliphant represented that "David is driving the bus" and that Oliphant would

28 "have ZERO ownership interest" in the Project should it ever go forward.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                                    - 7 -

1    Thereafter, Plaintiffs failed to pay any sums on the Bridge Loan.  On August 21, 2007,

2  Greystone CDE delivered a letter of default to Plaintiffs concerning the Bridge Loan.[1]  All

3  amounts due thereon were accelerated on September 21, 2007.

4    Greystone CDE's New York case followed thereafter, and Greystone CDE moved for

5  summary judgment on its Bridge Loan claim.  As Judge Patterson found in connection with that

6  motion for summary judgment on the Bridge Loan, "the facts weigh heavily in the plaintiff's

7  [Greystone CDE's] favor."  However, the Court denied the motion without prejudice due to

8  technical violations of a local rule concerning the separate statement of undisputed facts, and then

9  transferred the matter to the Northern District of California.  When this claim is properly before the

10  Northern District, Greystone CDE will revise and renew its request for summary judgment on this

11  claim.

12    **3.    Legal Issues:**

13    **Plaintiffs' Statement**.  The Complaint alleges that Greystone Servicing failed to timely

14  present and pursue the HUD application on Plaintiffs' behalf, undermined their ability to succeed

15  with the Santa Fe Pointe Project, improperly saddled Plaintiffs with an inadequate loan, and

16  wrongfully declared default on the loan.  The Complaint alleges causes of action for

17  (a) negligence, (b) breach of fiduciary duty, (c) intentional interference with prospective economic

18  advantage, (d) negligent interference with prospective economic advantage, (e) anticipatory

19  breach, and (f) breach of the covenant of good faith and fair dealing.  Plaintiffs also seek

20  declaratory relief concerning the rights and obligations of the parties under the bridge loans and

21  personal guarantees.

22    Plaintiffs contend that California law applies to Plaintiffs' tort claims.  The elements of

23  those claims are relatively straightforward.  Plaintiffs' case is largely fact driven.

24    [1] We note that in desperation, Plaintiffs have attempted to claim that this letter of default
was not sent by Greystone CDE, and was instead sent by a different "Greystone" entity, based on
25  the mere fact that the first page of the letter bears a different Greystone logo.  Apart from the facts
that (a) the letter is plainly signed by Greystone CDE, (b) that all parties have at all times
26  acknowledged that the default notice is from Greystone CDE and acted accordingly, and (c)
Judge Patterson has made a Rule 56 finding that "it is clear that the notice came from Greystone
27  CDE," Plaintiffs admit in their *pleading* that "Oliphant received the letter dated August 21, 2007,
wherein Greystone CDE declared the bridge loan in default and threatened legal enforcement."
28  In addition to Judge Patterson's finding, this pleading admission is conclusive and binding.

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                                    - 8 -

1    **Defendants' Statement**.  Defendants dispute each of Plaintiffs' claims, and have filed a

2    motion to dismiss Plaintiffs' Second Amended Complaint, the hearing for which is set for July 11,

3    2008.  When, and if, Defendants are required to answer the Second Amended Complaint, they will

4    again dispute each of Plaintiffs' claims and assert affirmative defenses consistent with those

5    asserted in Defendants' original Answer.  Defendants reserve the right to raise additional legal

6    issues as the case progresses.

7        Defendant Greystone CDE may raise counterclaims in this action relating to Plaintiffs'

8    breach of the Bridge Loan documents, which would be asserted with any responsive pleading.

9        **4.      Motions:**

10       Defendants' motion to dismiss is scheduled for hearing on July 11, 2008.

11       The parties presently do not anticipate discovery motions.  Dispositive motions may be

12   filed, depending on facts developed in discovery.  Defendants anticipate filing dispositive motions

13   at the appropriate time(s).

14       **5.      Amendment of Pleadings:**

15       Defendants may bring counterclaims in this action, depending on the assignment of the

16   transferred New York matter and this Court's order relating to Defendants' motion to dismiss.  If

17   counterclaims are brought, they would be brought concurrently with Defendants' answer to

18   Plaintiffs' Second Amended Complaint or the operative complaint if the Court orders Plaintiffs to

19   amend the Second Amended Complaint.  Plaintiffs have no present intention of amending further.

20       **6.      Evidence Preservation:**

21       Both sides have taken steps to preserve hard copy files and electronically-recorded

22   material.

23       **7.      Disclosures:**

24       Counsel have concluded their Rule 26 conference.  Initial disclosures under Federal

25   Rule 26 were made on or about February 1, 2008, concurrent with the service and filing of the first

26   Joint Case Management Conference Statement.

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

1    **8.    Discovery:**

2    The parties have exchanged documents and written discovery.  No depositions have been

3    scheduled or conducted.  The parties do not presently believe it is necessary to deviate from the

4    deposition and interrogatory limitations of Federal Rules of Civil Procedure, with the exception

5    that Defendants agree with the Court's statement at the February 8, 2007 hearing in this matter that

6    Mr. Oliphant's deposition necessarily will exceed seven hours.  Plaintiffs disagree that Mr.

7    Oliphant's deposition should take more than seven hours.  As the Court confirmed at the last

8    hearing on February 8, 2007, the parties will be required to travel to the residences of the person

9    deposed or designated for deposition.

10    The parties believe that depositions of party and non-party witnesses will proceed in the

11    months ahead.  Plaintiffs have presently identified four (and possibly six) employees of Defendants

12    and six non-party witnesses who would have relevant testimony.  Defendants will depose, among

13    others, Plaintiffs and other individuals identified by Plaintiffs in their initial disclosures.

14    **9.    Class Actions:**

15    Not applicable.

16    **10.    Related Cases:**

17    Defendant Greystone CDE, LLC filed suit in the Southern District of New York on

18    September 26, 2007 to collect on the more than $500,000 owed on the loan guaranties made by

19    Plaintiffs.  Defendant Greystone Servicing Corporation, Inc. is not a party to that action.  The New

20    York action was transferred to the Northern District of California on or about May 28, 2008, but

21    has not yet been assigned to any department.  Defendant Greystone CDE, Inc. will pursue its

22    affirmative claims against Plaintiffs in California.

23    **11.    Relief:**

24    Plaintiffs will seek the economic value of the lost business opportunity, which will be

25    subject to expert analysis and proof.  Plaintiffs also seek a declaration that Defendants wrongfully

26    declared default of the bridge loan.  Defendants submit that Plaintiffs are not entitled to any relief

27    by this action.  Defendant Greystone CDE is entitled to the relief originally sought by its claims in

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                                        - 10 -

1  the New York court, now transferred to the Northern District of California, including repayment of

2  all outstanding loan balances owed by Plaintiffs to Greystone CDE.

3  **12.    Settlement and ADR:**

4  The parties engaged in mediation on May 22, 2008 concerning all claims in both the

5  California and New York actions, in San Francisco before Panel Mediator Peter Sherwood. The

6  matter was not resolved. The parties agree that further mediation at this time would not be

7  productive, but are willing to reconsider after discovery has been completed.

8  **13.    Consent to Magistrate Judge for All Purposes:**

9  The Parties have filed written consents (Plaintiffs on November 1, 2007; Defendants on

10  November 8, 2007) to have a Magistrate Judge Spero conduct all further proceedings in the above-

11  captioned case, including trial and entry of judgment.

12  **14.    Other References:**

13  The matter is not suitable for reference to binding arbitration, a special master, or the

14  Judicial Panel on Multidistrict Litigation.

15  **15.    Narrowing of Issues:**

16  The parties believe agreement can be reached as to the authenticity of the underlying

17  contracts. Discovery may develop other areas where issues can be narrowed.

18  **16.    Expedited Schedule:**

19  The parties do not believe expedited scheduling is appropriate.

20  **17.    Scheduling:**

21  The Court set the following discovery cut-off, expert disclosure, dispositive motion, Pre-

22  Trial Conference, and trial dates at the parties' last case management conference:

23
24
25
26

| October 31, 2008: | Discovery cut-off. |
| November 10, 2008: | Expert witness disclosures. |
| December 15, 2008: | Expert discovery cut-off. |
| February 13, 2009: | Hearing on dispositive motions. |
| May 1, 2009: | Pre-trial Conference. |
| May 11, 2009: | Trial commences. |

Depending on the assignment of the New York matter, it may make sense to revisit and

27  extend these dates.

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                                                        - 11 -

1    **18.**    **Trial:**

2    Plaintiffs have demanded a jury.  The parties contemplate 10-15 trial days.

3    **19.**    **Disclosure of Non-party Interested Entities or Persons:**

4    **Plaintiffs' Disclosure**.  Plaintiffs have filed a "Certification of Interested Entities or

5    Persons" under Civil L.R. 3-16 certifying that, other than the named parties, there is no such

6    interest to report.

7    **Defendants' Disclosure**.  Defendants filed a "Certificate of Interested Entities or Persons"

8    under Civil L.R. 3-16 certifying that Greystone Select Holdings LLC is the parent corporation of

9    Greystone Funding Corporation and Defendant Greystone Servicing Corporation, Inc.; Greystone

10   Development Corporation is a member of Defendant Greystone CDE, LLC; and Greystone

11   Funding Corporation is a member of Defendant Greystone CDE, LLC.

12   **20.**    **Other Matters:**

13   Not applicable.

14   Dated: May 30, 2008                       JONES DAY

15

16                                             By: /s/ Mark D. Kemple

17                                                  Mark D. Kemple
                                                   Erik K. Swanholt

18                                             Attorneys for Defendants
                                               Greystone Servicing Corporation, Inc. and
19                                             Greystone CDE, LLC

20   Dated: May 30, 2008                       FARBER & COMPANY ATTORNEYS, P.C.

21

22                                             By: /s/ William W. Schofield

23                                                  Eric J. Farber
                                                   William W. Schofield

24                                             Attorneys for Plaintiffs

25

26

27

28

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corporation, Inc., et al.*
Second Joint Case Management Statement
C07-05454 JCS

LAI-2952599v2                              - 12 -