Eric J. Farber (SBN: 169472)
efarber@pinnaclelawgroup.com
William W. Schofield (SBN: 062674)
wschofield@pinnaclelawgroup.com
Kevin F. Rooney (SBN: 184096)
krooney@pinnaclelawgroup.com
Pinnacle Law Group LLP
425 California Street, Suite 1800
San Francisco, California 94104
Telephone: (415) 394-5700
Facsimile: (415) 394-5003

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, et al.<br><br>            Plaintiffs,<br>vs.<br><br>GREYSTONE SERVICING CORPORATION, INC., et al.,<br><br>            Defendants. | No. C-07-5454 MMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br>Date:     August 1, 2008<br>Time:     9:30 a.m.<br>Ctrm:     7 (19th Flr.)<br>Before:   Hon. Maxine M. Chesney |

## I.     INTRODUCTION

The Greystone Defendants have raised arguments that border on frivolity in their motion to dismiss portions of Plaintiffs' Second Amended Complaint ("SAC"). One must question why the identical allegations that were contained in Plaintiffs' previous complaint—to which the Greystone Defendants responded by Answer—have somehow become defective when pleaded in the SAC. Whatever the motive behind its filing, the present motion is meritless.

Defendants first claim that as to three causes of action—for negligence, breach of fiduciary duty, and negligent interference with prospective business advantage—only a single plaintiff can

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corp., et al.* (C-07-5454 MMC)                                                                  - 1
MPA in Opposition to Motion To Dismiss

sue a single defendant. This argument rests on a tortured interpretation of the Engagement Letter attached to the SAC and on an overly narrow reading of the SAC's allegations.

Defendants next claim the SAC does not give proper "notice" of Plaintiffs' claims for anticipatory breach and breach of the covenant of good faith and fair dealing. The SAC, however, contains nineteen highly detailed paragraphs of allegations concerning the two Greystone defendants and their joint action in contributing to Plaintiffs' loss of the Project that is the subject of this litigation. Defendants have been given adequate notice of their wrongdoing and the facts that support the anticipatory breach and breach of implied covenant claims.

## II.   ARGUMENT

### A.   The SAC Alleges Claims for All Plaintiffs Against Both Greystone Defendants on the First, Second and Fourth Causes of Action

#### 1.   The Claims Are Stated on Behalf of all Plaintiffs

Defendants argue that only one plaintiff—Santa Fe Pointe, LP—can assert the claims of the first (negligence), second (breach of fiduciary duty) and fourth (negligent interference with prospective business advantage) causes of action. Greystone Br., 3:7-10. They argue those causes of action are based solely on the contractual relationship established by the Engagement Letter between Greystone Servicing and Santa Fe Pointe, LP, and therefore only Santa Fe Pointe, LP can sue on it.

In the first place, Defendants misread the SAC as relying solely on the Engagement Letter to establish Defendants' duties. As explained in the next section, the SAC alleges a course of conduct by both Defendants that extended from the inception of the Engagement Letter through the extension of a bridge loan and subsequent wrongful behavior that deprived Plaintiffs of the opportunity to develop the Project.

Second, the first, second and fourth causes of action sound in tort, not in contract. There is no privity of contract requirement that would preclude non-contracting parties from asserting these claims. Cf. Biakanja v. Irving, 49 Cal. 2d 647, 650-651 (1958)(non-contracting parties may sue for negligent performance of contract). Defendants have cited no precedent for the proposition

that a direct contractual relationship is needed to give rise to duties to these Plaintiffs—indeed, Defendants have cited no precedent at all.

Defendants are also mistaken in claiming the SAC establishes Santa Fe Pointe, LP as the party to the Engagement Letter. Santa Fe Pointe, LP is nowhere referenced in the Engagement Letter. Mr. Oliphant signed the letter "on behalf of an entity to be created," identified as "Applicant." SAC, Ex. A at 2. Defendants blithely state that "it is undisputed" that the Applicant was meant to be Santa Fe Pointe, LP because that entity ultimately became the "Borrower" under the bridge loan. Greystone Br., 4:2. Defendants do not explain, however, why the bridge loan "Borrower" is necessarily also the HUD "Applicant." At best, the Engagement Letter is ambiguous as to which entity would ultimately be the "Applicant." This is a matter of proof; at the pleading stage any ambiguities are to be resolved in favor of the pleader. See International Audiotext Network v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)(any contractual ambiguities in the contract attached to the complaint are to be resolved in plaintiff's favor).

Finally, Defendants incorrectly assume only the entity Applicant—and not Mr. Oliphant personally—would have a claim for duties arising from the Engagement Letter. A controlling member of an entity can, under the circumstances alleged here, assert an individual claim for personal losses sustained as a result of the malfeasance. See Sutter v. General Petroleum Corp., 28 Cal. 2d 525, 530 (1946)(stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong; Nathanson v. Murphy, 132 Cal. App. 2d 363, 370-71 (1955)(same).

**2.    Greystone CDE Is Implicated in These Causes of Action**

Defendants also erroneously assume that Greystone Servicing, as party to the Engagement Letter, alone had duties to the Plaintiffs. If Plaintiffs were suing solely for breach of the Engagement Agreement, such an argument might have force. The SAC, however, alleges far more. The crux of the SAC is that the activities of **both** Greystone Defendants, acting jointly, contributed to Plaintiffs' inability to complete the Project.

1    The SAC alleges that Greystone Servicing entered into an agreement in September 2006 to underwrite and be the HUD interface for the Plaintiffs in obtaining a HUD-insured loan. SAC ¶¶15-16. Because of Greystone Servicing's negligence in timely performing that task, the Plaintiffs faced the prospect of losing the Project and its tax-exempt bonds near the end of 2006. Id. at ¶21. Greystone Servicing therefore offered a non-recourse bridge loan of over $4 million that would be funded through an affiliate, Greystone CDE, LLC, to allow the Plaintiffs to (a) purchase the property, and (b) pay for the issuance of the bond. Id. at ¶¶23, 25.

At the eleventh hour, however, when it was impossible for the Plaintiffs to find other funding, the terms of the bridge loan were changed. The loan would be for only $500,000, and therefore would cover only the cost of the bonds, not the purchase price for the property. Id. at ¶29. In addition, instead of the promised non-recourse financing, the loan documents required Mr. Oliphant to personally guarantee the loan, an entirely new and different condition. Id.

After this bridge loan was extended, the actions of Greystone Servicing in dealing with the HUD application were influenced and possibly dictated by the financial interests of the affiliated Greystone CDE in assuring repayment on the bridge loan. Both entities are operated in such a manner that each benefits financially from the actions of the other. Id. at ¶8. The SAC alleges that the activities of *both* Greystone entities, acting as one during the months of August and September 2007, caused the Plaintiffs to lose the project.

Specifically, the Greystone entities—to assure the underlying bridge loan was secure—in early August started looking at ways to oust Plaintiffs from the Project and surreptitiously began negotiating with David Henry, an Arkansas developer. Id. at ¶¶40-41. To this end, Greystone Servicing unilaterally withdrew the Plaintiffs' HUD application on August 9 (id. at ¶42), an event which caused the seller of the apartment building to temporarily terminate negotiations with Oliphant for further extensions of the close date for the purchase of the property. Id.

Two weeks later, on August 21, 2007, Greystone CDE sent Oliphant a letter declaring the bridge loan to be in default, citing as the event of default the expiration of the close date for the purchase and sale of the apartment building, without that date having been extended. Id. at ¶¶45.

Although Greystone Servicing's unilateral withdrawal of the HUD application had made negotiations with the seller of the apartment building difficult, Oliphant nonetheless was able to obtain another agreement to extend the close date. Id. at ¶48. Oliphant notified both Greystone entities of this development, and requested the default notice be rescinded, which Greystone CDE refused to do (id. at ¶49), instead sending notice of acceleration of the loan. Id at ¶52.

A month later Greystone Servicing circulated to financial institutions and to Oklahoma public entities a letter that wrongfully claimed Oliphant defaulted on the bridge loans, enclosing a copy of the New York lawsuit Greystone CDE had filed. Id at ¶¶52-55. Any hopes Oliphant had in moving forward with the Project had effectively been scuttled by this irresponsible behavior. Id. at ¶¶56-58.

The above allegations are directed at the activities of **both** Greystone Defendants and assert that contributed to Plaintiffs' inability to complete the Project. It was not only the negligence of Greystone Servicing in the HUD application process that is at issue. Also at issue is the damage caused by (a) changing the terms of the bridge loan financing so the Plaintiffs were unable to purchase the underlying property; (b) negotiating with a different developer with the intent of freezing the Plaintiffs out of the Project; (c) wrongfully calling default on the bridge loan; and (d) wrongfully maligning Oliphant to others.

Trying to segregate the responsibility of the two Greystone entities for these activities is at this point premature. The relationship between the Greystone entities, their entangled financial interests, and their responsibility for the above activities is a matter of proof that will be subject to discovery.

**B.     The Fifth and Sixth Causes of Action Adequately Give Notice to the Greystone Defendants of Their Claimed Wrongdoing**

The SAC's Fifth and Sixth Causes of Action state claims for anticipatory repudiation and breach of the covenant of good faith and fair dealing. Both Greystone Servicing and Greystone CDE are sued. Defendants do not argue these causes of action fail adequately to state a claim for relief under Rule 12(b)(6). Rather, they complain they have not been given proper "notice" of

what the claim is. Fed.R.Civ.Proc. 8(a). Greystone Br., 6:10-17. In particular, Defendants complain that the SAC does not adequately segregate the claims against Greystone Servicing from the claim against Greystone CDE. Greystone Br., 6:18-23. This argument is disingenuous.

### 1. Defendants Already Lost this Argument in the Southern District of New York

Defendants made this same argument in the Related Case which was recently transferred from the Southern District of New York. Greystone CDE, LLC v. Santa Fe Pointe L.P., et al., No. 08-2756 MMC. There, Greystone CDE's motion to dismiss the Defendants' Counterclaims—which are the same claims being asserted in the SAC here—was heard on the same day (May 13, 2008) as the transfer venue motion. One of the grounds for that motion was that the Counterclaim alleged did not properly segregate the claims against Greystone CDE from the claims against Greystone Servicing. Judge Patterson of the Southern District of New York rejected the argument, stating as follows:

> The Court also denied Plaintiff's motion for a more definite statement with respect to whether Defendants' counterclaims against Greystone CDE, LLC and Greystone Serving were based on an alter ego theory or a joint action theory. . . . The Court noted that while it is preferable for Defendants to state the name of each party that performed the various acts and whether the party was liable jointly or as an alter ego, these matters could be dealt with in discovery.[1] [Exh. A, p.2.]

Defendants are simply wasting judicial resources by asking to have this issue relitigated.

### 2. The SAC Alleges Joint Activity by the Greystone Defendants

The causes of action for anticipatory repudiation and breach of the good faith covenant are founded on the activities of ***both*** Greystone Defendants acting jointly during August and

---

[1] The Court is requested to take judicial notice of the Order, which is attached as exhibit A. It is contained as Document 74 in Greystone CDE, LLC v. Santa Fe Pointe, L.P., et al., Southern District of New York No. 07 CV.8733 (RPP).

---

*Santa Fe Pointe, LP, et al v. Greystone Servicing Corp., et al.* (C-07-5454 MMC)   - 6
MPA in Opposition to Motion To Dismiss

September, 2007. They implicate both the Engagement Letter and the bridge loan, and they are pleaded with great specificity in paragraphs 40 through 58 of the SAC.

The facts are set out in detail in the preceding section, but to summarize as applies to the the anticipatory breach and good faith covenant causes of action, Defendants in early August started looking at ways to oust the Oliphant entities from the Project and surreptitiously began negotiating with another developer. SAC ¶¶40-41. To this end, Greystone Servicing wrongfully withdrew the Plaintiffs' HUD application on August 9, and two weeks later Greystone CDE wrongfully declared a default on the bridge loan. SAC ¶45. The Greystone Defendants then pressured Oliphant to assign all interest in the Project to the substitute developer with Mr. Oliphant assuming responsibility to pay more than $200,000 of the bridge loan and agreeing not to sue Greystone for its malfeasance in handling the HUD application. SAC ¶46.

When Oliphant notified the Greystone entities that any purported default had been cured, the Greystone entities invented a new, fictional ground for default (id. at ¶¶48-51) and wrongfully accelerated the loan. Id. ¶52. A month later it circulated to financial institutions and to Oklahoma public entities a letter that wrongfully claimed Oliphant defaulted on the bridge loans, enclosing a copy of the New York lawsuit Greystone CDE had filed. SAC ¶¶52-55. Any hopes Oliphant had in moving forward with the Project had effectively been scuttled by this irresponsible behavior. SAC ¶¶56-58.

These facts, if proven, plainly state claims for anticipatory repudiation of obligations under both the Engagement Letter and the bridge loan, as well as breach of the good faith covenant. Defendants do not argue otherwise.

Rather, they claim that the fifth and sixth causes of action address the Greystone Defendants collectively rather than tying Greystone Servicing specifically to the Engagement Letter and Greystone CDE specifically to the bridge loan contracts. But the entire point is that during this seven-week window of time, both of the Greystone Defendants were acting in concert and were not separating their actions as HUD-fiduciary on the one hand versus the bridge loan lender on the other.

It is submitted that these allegations of the SAC have given "fair notice of what the [plaintiffs'] claim is and the grounds upon which it rests" (<u>Conley v. Gibson</u>, 355 U.S. 41 , 47 (1957)) so that Defendants can respond, undertake discovery and prepare for trial, which is all that is required under Federal Rule of Civil Procedure 8.

### III.    CONCLUSION

The Court should stop the procedural game-playing the Greystone Defendants have engaged in from the start of this litigation and allow the case to proceed on the merits. Their motion should be denied.

Dated:  July 11, 2008.                         PINNACLE LAW GROUP, LLP
                                               Attorneys for Plaintiffs


                                               By <u>/s/ *William W. Schofield*</u>
                                                    William W. Schofield

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GREYSTONE CDE, LLC,

                Plaintiff,

- against -

SANTE FE POINTE L.P.,
SANTE FE POINTE MANAGEMENT, LLC,
RANT LLC, and
THEOTIS F. OLIPHANT,

                Defendants.
------------------------------------------------------------X

07 CV. 8377 (RPP)

**ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/20/08

**ROBERT P. PATTERSON, JR., U.S.D.J.**

    On May 13, 2008, the Court held oral argument on Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404 (Document No. 47), and Plaintiff's cross-motions to dismiss or for a more definite statement (Document No. 55), and for summary judgment (Document No. 57). At the conclusion of the arguments, the Court made oral rulings which are clarified in this Order.

    After hearing argument on Plaintiff's motions, the Court ruled first to deny the motion to dismiss for failure to properly serve because, based on the facts and circumstances presented, the person who accepted the service had been specifically delegated to accept service and was reasonably believed by Defendants to be authorized to accept service. (Oral Argument Tr. at 44:8-16.)

    The Court also denied Plaintiff's motion to dismiss for failure to obtain leave to file counterclaims against Greystone Servicing. Leave was not required under Rules 19

EXHIBIT A

and 13 of the Federal Rules of Civil Procedure because the counterclaims arose out of the same transactions. (Id. at 44:18-22.)

The Court also denied Plaintiff's motion for a more definite statement with respect to whether Defendants' counterclaims against Greystone CDE, LLC, and Greystone Servicing Corporation were based on an alter ego theory or a joint action theory. (Id. at 44:23-24.) The Court noted that while it is preferable for Defendants to state the name of each party that performed the various acts and whether the party was liable jointly or as an alter ego, these matters could be dealt with in discovery. (Id. at 44-24-45:7.)

The Court also denied Plaintiff's motion for summary judgment without prejudice. With respect to the adequacy of Plaintiff's Local Civil Rule 56.1 statement of material facts, the Court noted that the statement was appropriate in citing to exhibits attached to the amended complaint and that Plaintiff was entitled to rely on facts cited in the Rule 56.1 statement concerning Plaintiff's state of incorporation and place of doing business, which Defendants admitted were not at issue. (Id. at 94:7-23.) The Court noted that the most serious procedural defect was that Plaintiff's 56.1 statement contained no allegations of material fact relating to the events of default, including the fact that Defendants had not obtained an extension of the purchase contract on or before July 31, 2007, as required by the bridge loan agreement. (Id. at 95:3-11.) Instead the Court was required to draw out the specifics of the bridge loan default from both parties at great length during oral argument. It noted that Defendants did not raise again the issue of duress in their papers opposing Plaintiff's motion for summary judgment. (Id. at 95:18-19.)

EXHIBIT A

In denying the motion for summary judgment without prejudice, the Court also noted that the facts appeared to weigh heavily in Plaintiff's favor because the acts of Greystone Servicing that Defendant complained of occurred after July 31, 2007, and "the contract was in default on July 31st, evidently, since [Defendants] admit that addendum no. 3 [extending the purchase contract] was executed on September 10th of 2007, a good 40 days [after the extension to July 31, 2007 expired]." (Id. at 95:13-16.) The Court further noted that even though Plaintiff used the letterhead of Greystone Servicing in notifying Defendants of their default in August 2007, "it is clear that the notice [of default] came from Greystone CDE, because they sent a letter signed that way, and obviously they are the party that was party to the bridge loan." (Id. at 95:25-96:3.)

Finally, the Court granted Defendants' motion to transfer to the United States District Court for the Northern District of California in the interests of justice, as it is unwise for two courts to be engaged in the same litigation with the possibility of jury trials in both cases reaching contrary results. (Id. at 96:6-10.) The Court noted that in bringing the motion to transfer under 28 U.S.C. § 1404(a) based on the interests of justice, Defendants did not appear to violate the explicit terms of the multiple venue clauses in the agreements which they signed. (Id. at 96:11-16.)

The Clerk is ordered to transfer this case to the United States District Court for the Northern District of California.

IT IS SO ORDERED.

Dated: New York, New York
May 19, 2008

Robert P. Patterson, Jr.
U.S.D.J.

EXHIBIT A

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of 18 and not a party to the within action. My business address is 425 California Street, Suite 1800, San Francisco, California 94104.

On July 11, 2008, I served true and correct copies of the document(s) described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**

[X]   BY E-MAIL: Service was accomplished by electronically filing such documents through the CM/ECF system of the United States District Court for the Northern District of California, which will send electronic notification of such filing to the following registered users:

*Attorneys for Defendants*:

Erik Christian Swanholt
Email: ekswanholt@jonesday.com

Mark David Kemple
Email: mkemple@jonesday.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 11, 2008, at San Francisco, California.

/s/ Mike Terry
MIKE TERRY