Mark D. Kemple (State Bar No. 145219)
Erik K. Swanholt (State Bar No. 198042)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071-2300
Telephone:     (213) 489-3939
Facsimile:     (213) 243-2539
Email: mkemple@jonesday.com
Email: ekswanholt@jonesday.com

Attorneys for Defendants
Greystone Servicing Corporation, Inc., and Greystone
CDE, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### (SAN FRANCISCO DIVISION)

| | |
|---|---|
| SANTA FE POINTE, LP, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREYSTONE SERVICING CORPORATION, INC., et al.,<br><br>Defendants. | **CASE NO. C 07-05454 MMC**<br><br>**REPLY OF GREYSTONE SERVICING CORPORATION, INC. AND GREYSTONE CDE, LLC IN SUPPORT OF SECOND MOTION TO DISMISS PURSUANT TO RULES 8(a) AND 12(b)(6)**<br><br>Date:         August 1, 2008<br>Time:        9:00 a.m.<br>Ctrm:       7 (19th Floor)<br>Before:      Hon. Maxine M. Chesney |

LAI-2961972v2                                                    Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF REPLY ................................................................................. 1

II.   PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO
      ESTABLISH THAT A LEGAL DUTY WAS OWED TO ANY PLAINTIFF, LET
      ALONE OF EACH DEFENDANT TO EACH PLAINTIFF ........................................... 2

      A.    The Only Duty Alleged in the SAC Arises by Virtue of the Engagement
            Agreement Entered into Between Greystone Servicing and the "Applicant." ........ 3

      B.    The Sole "Applicant" Alleged and Referred to in the Engagement
            Agreement Is Plaintiff Santa Fe Pointe, LP; Plaintiffs' Assertion that the
            Phrase – and Therefore the Plaintiff – Is "Ambiguous" Concedes the
            Motion ...................................................................................................... 5

      C.    Plaintiffs Have Not Alleged Circumstances Under Which Mr. Oliphant
            Could Assert Third-Party Claims Based on the Engagement Agreement
            Between Greystone Servicing and Santa Fe Pointe, LP .............................. 5

III.  PLAINTIFFS' CLAIMS FOR ANTICIPATORY REPUDIATION AND
      BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR
      DEALING IMPERMISSIBLY COMBINE AGREEMENTS AND PARTIES ................. 8

      A.    The Rule 8(a)(2) Challenges Raised by Defendants in Response to the
            SAC's Allegations in this Case Have Not Been Previously Resolved by
            any Court .................................................................................................. 8

      B.    Plaintiffs' Allegations Fail to Apprise the Defendants of the Nature and
            Extent of the Claims Asserted Against Them and Fail to Satisfy the Notice
            Pleading Requirements of Rule 8(a)(2) .................................................... 10

IV.   CONCLUSION .............................................................................................. 13

LAI-2961972v2                                    i                    Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4
*Arikat v. JP Morgan Chase & Co.*,
  430 F. Supp. 2d 1013 (N.D. Cal. 2006) .................................................................... 13

5
*Bell Atl. Corp. v. Twombley*,
6   127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ............................................................... 5

*Biakanja v. Irving*,
7   49 Cal. 2d 647 (1958) ............................................................................................ 7, 8

8
*Gauvin v. Trombatore*,
  682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ............................................................. 11

9
*Jackson v. County of Los Angeles*,
  60 Cal. App. 4th 171 (1997) ..................................................................................... 4

10
*Lamonds v. Gen. Motors Corp.*,
11   34 F. Supp. 2d 391 (W.D. Va. 1999) ......................................................................... 5

*Lepp v. Gonzales*,
12   2005 U.S. Dist. LEXIS 41525 (N.D. Cal. Aug. 2, 2005)..................................... 6, 11

13
*Nathanson v. Murphy*,
  132 Cal. App. 2d 363 (1955)..................................................................................... 6

14
*O'Brien v. Nat'l Prop. Analysts Partners*,
  719 F. Supp. 222 (S.D.N.Y. 1989).................................................................... 6, 11

15
*In re Stac Elecs. Sec. Litig.*,
16   89 F.3d 1399 (9th Cir. 1996)..................................................................................... 5

*Sutter v. Gen. Petroleum Corp.*,
17   28 Cal. 2d 525 (1946) ............................................................................................... 6

18

### STATUTES

19
Cal. Corp. Code § 15910.02 (West 2008)................................................................... 7

Fed. R. Civ. P. 8(a)(2) ........................................................................................ passim

20
Fed. R. Civ. P. 12(e)................................................................................................... 9

21

22

23

24

25

26

27

28

LAI-2961972v2                              ii                    Reply iso Defs.' Second Mot. to Dismiss

                                                                              C 07-05454 MMC

## I.    SUMMARY OF REPLY

This action involves four Plaintiffs and two Defendants. Plaintiffs' pleading plainly shows that only one of those four Plaintiffs (Santa Fe Pointe, LP) could be owed a duty on their tort claims, and that only one Defendant could owe that duty (Greystone Servicing Corporation, Inc.). These are the sole parties to the Engagement Agreement alleged in the pleading.

Plaintiffs' attempts to "find" within their pleading an allegation that something other than the Engagement Agreement has created whatever duties are at issue, and that some duty is owed to and by additional parties, directly contradicts (1) the allegations of Plaintiffs' pleading[1] and (2) Plaintiffs' prior representations to this Court that the Engagement Agreement alone is the source of any duty.[2] Indeed, Plaintiffs' position in Opposition to this Motion is so strained that Plaintiffs are forced to argue that their own pleading is "ambiguous" as to the identity of the Plaintiff asserting these claims, *i.e.*, the party to the agreement on which they rely to create a duty[3] (an argument that concedes the Motion). In addition, Plaintiffs attempt to "amend" their pleading through their Opposition by adding new factual "allegations" to support their theory of an expanded duty (an impermissible tactic that also concedes the Motion).

Perhaps most remarkably, Plaintiffs argue that in lieu of carrying their pleading obligation under Rule 8(a)(2) as to any duty owed to other Plaintiffs by either or both Defendants, the two Defendants should be forced to chase down the source of any such duty through the Defendants' discovery efforts. Not only does that contention put the cart before the horse, and make arguments outside the scope and context of this Motion, were one to travel that road, she would learn that Defendants already have attempted to obtain these clarifications from Plaintiffs through discovery, and have been rebuffed by the Oliphant parties.[4] Simply, Plaintiffs may not

---

[1] *See* Second Am. Compl. (doc. # 41) ("SAC") ¶¶ 60-62.

[2] Indeed, Plaintiffs' insisted specifically that relations and contracts with defendant Greystone CDE – which expressly would have required that such claims be litigated in New York – were not the source of any duty on which they were suing. *See e.g.,* Pls.' Opp'n to Defs.' Mot. to Transfer (doc. # 16), 7:18-27.

[3] Opp'n (doc. # 79) at 3:9-11.

[4] In response to separate discovery propounded by separate defendants, Plaintiffs' responses continued to speak only in terms of "Greystone Defendants" jointly, and "Plaintiffs" jointly. [*See generally* Declaration of Mark D. Kemple ("Kemple Decl.") ¶¶ 2-4, Exhs. A and B.]

1   convert their pleading obligation into a tremendously magnified discovery burden rested on the

2   shoulders of the Defendants they have sued.  If Plaintiffs can plead additional duties owed, and to

3   and from other parties, Plaintiffs should, and can with the stroke of a pen.  They present no cause

4   to deviate from the Rules and thrust and convert their basic pleading obligation to an elaborate

5   discovery burden on the parties they sue.

6          For these and the reasons in Defendants' moving papers and below, the Court should

7   grant Defendants' motion to dismiss (doc. # 62).

8   **II.    PLAINTIFFS HAVE FAILED TO ALLEGE FACTS SUFFICIENT TO**
    **ESTABLISH THAT A LEGAL DUTY WAS OWED TO ANY PLAINTIFF, LET**
9   **ALONE OF EACH DEFENDANT TO EACH PLAINTIFF.**

10          As set forth in Defendants Greystone CDE, LLC ("Greystone CDE") and Greystone

11  Servicing Corporation, Inc.'s ("Greystone Servicing") moving papers, Plaintiffs have failed to

12  allege – other than in bare conclusory terms – that any of them were owed a duty on which their

13  tort claims could be founded.  Plaintiffs' Opposition to this point is remarkable.  Plaintiffs now

14  argue that: (i) the duty at issue does not arise solely from the Engagement Agreement and, rather,

15  extends from all Defendants to all Plaintiffs (despite allegations to the contrary and express

16  statements by them in earlier proceedings in this case, on which Magistrate Judge Spero relied,

17  that their claims do *not* arise from anything other than the Engagement Agreement); (ii) because

18  they claim that the term referring to the "Applicant" in the Engagement Agreement is

19  "ambiguous," all entity Plaintiffs should be *presumed* to be that one Applicant for pleading

20  purposes and that the identity of the real Plaintiff asserting the claims in this action is a "matter of

21  proof"; and (iii) because, for purposes of claims like those here that are premised on a duty

22  arising solely from a contractual relationship, there are legally conceivable exceptions under

23  which persons other than the contract signatory could be owed a duty, such a duty exists as to

24  Plaintiffs other than the supposedly "ambiguous" "Applicant" here (despite the fact that no

25  allegations approaching those circumstances under which such a duty could be created are pled or

26  at issue here).  Each argument fails.

27  / / /

28

LAI-2961972v2                                    2                    Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1

**A.    The Only Duty Alleged in the SAC Arises by Virtue of the Engagement Agreement Entered into Between Greystone Servicing and the "Applicant."**

2

3    First, Plaintiffs' pleading states expressly that the "duty" on which their tort claims are

based is "<u>established through the Engagement Agreement</u>."  *See* SAC ¶ 60-62.[5]  In spite of the

4

plain language of their pleading in which they explicitly state, in numerous ways, that the duty

5

underling their tort claims arises exclusively from the Engagement Agreement, the "business

6

relationship" established therein, and the role of Greystone Servicing as "a HUD-approved

7

underwriter," *see* SAC ¶¶ 60-62, Plaintiffs now claim that Defendants have "misread the SAC as

8

relying solely on the Engagement Letter to establish Defendants' duties."  *See* Opp'n (doc. # 79)

9

at 2:20-21.  For the reasons already stated in Defendants' moving papers, *see* Mot. (doc. # 62) at

10

5:1-26, and those below, Plaintiffs' arguments have no merit.

11    Plaintiffs previously and successfully insisted that their tort claims "do <u>not</u> arise from the

12

duties and obligations contained in the guaranties that were signed in support of the bridge loan,"

13

the transaction entered into with Greystone CDE.  *See* Order (doc. # 37) at 9:22-23 (emph.

14

added).  In their own words:

15

16    Provisions in the bridge loan documents (in which Greystone CDE is a

17    [5] The only allegations of any duty owed to Plaintiffs appear at paragraphs 60 to 62, which are incorporated elsewhere by reference.  *See* SAC ¶¶ 66, 93.  Nowhere do Plaintiffs allege, as they now argue, that any duty was owed to any of them *other than* by virtue of the Engagement Agreement between Greystone Servicing and the "Applicant," which all know to be Santa Fe Pointe, LP.  *See id.* ¶ 15 (describing Engagement Agreement "wherein Plaintiffs appointed Greystone Servicing to serve as their exclusive agent to process the HUD application . . . .").

18

19

20    At paragraph 60 of their Second Amended Complaint, Plaintiffs allege that "[e]ach of the Greystone Defendants owed Plaintiffs and each of them a duty of due care by virtue of <u>the business relationship established through the Engagement Agreement</u> wherein Plaintiffs appointed Greystone Servicing to serve as their exclusive agent to process the HUD application for financing the acquisition and rehabilitation of the Project and Greystone Servicing's and [sic] undertakings pursuant thereto."  *Id.* ¶ 60 (emph. added).

21

22

23    Similarly, at paragraph 61, Plaintiffs allege that "[e]ach of the Greystone Defendants owed Plaintiffs and each of them a duty of due care <u>by virtue of Greystone Servicing's position as a HUD-approved underwriter</u> for the FHA's Multifamily Accelerated Processing (MAP) program and the respective roles and involvements <u>of Plaintiff</u> in the Project."  *Id.* ¶ 61 (emph. added).

24

25

26    Finally, at paragraph 62, Plaintiffs allege that Defendants "owed Plaintiffs and each of them a duty to use such skill, prudence and diligence <u>as other HUD-approved underwriters</u> for the FHA's Multifamily Accelerated Processing (MAP) program commonly employ and exercise." *Id.* at ¶ 62.  In short, Plaintiffs have made it abundantly clear that the duty underlying their tort claims arises solely out of the Engagement Agreement, the "business relationship" established therein, and the role of <u>Greystone Servicing</u> as "a HUD-approved underwriter."

27

28

LAI-2961972v2                                           3                          Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1              party) <u>do not apply to the Engagement Agreement or the fiduciary</u>

2              <u>duties undertaken by Greystone Servicing</u> as a result of its appointment

3              as HUD-approved underwriter for the Santa Fe Pointe Project.

4  Pls.' Opp'n to Defs.' Mot. to Transfer (doc. # 16) at 7:24-27 (emph. added).

5        Yet now, in response to the present Motion, Plaintiffs attempt an about face and argue that

6  embedded somewhere in their pleading (the same pleading concerning which they made the

7  statement above) is an allegation that a duty actually arises from a source other than the

8  Engagement Agreement, and therefore may extend (somehow, and in ways not pled) to each of

9  the four Plaintiffs and from each of the two Defendants.  Not so.  Their pleading simply does <u>not</u>

10  allege any such <u>duty</u>.  *See* SAC ¶¶ 60-62.  Aware of this fatal shortcoming, Plaintiffs recite a

11  litany of other unrelated allegations relating to the Defendants' alleged <u>conduct</u>, apparently in an

12  effort to present their case for the first time under a theory (also not pled) of either joint liability

13  or alter ego.  *See* Opp'n (doc. # 79) at 2:20-24, 3:22-5:21.  What Plaintiffs fail to appreciate is that

14  simply reciting the conduct which they believe constitutes a <u>breach</u> of duty does not cure their

15  failure to plead the basis and existence of that underlying <u>duty</u>.  Here, the only duty alleged by

16  Plaintiffs arises by virtue of the Engagement Agreement with Greystone Servicing.

17        Moreover, based on their conduct in this case, Plaintiffs are judicially estopped from any

18  belated effort to cure this deficiency by amendment, having already argued and obtained a

19  favorable ruling that their tort claims do <u>not</u> arise from such documents as the Bridge Loan

20  (entered into with Greystone CDE).  Plaintiffs took that position – clearly at odds with their

21  present argument – to evade the New York forum selection clauses in their agreements with

22  Greystone CDE.  As a result, Plaintiffs have effectively deprived Greystone CDE from its right as

23  a plaintiff to lay venue for its claims in the forum of its choice to which each and all of the

24  Plaintiffs had contractually agreed.  *See, e.g.*, Mot. to Transfer (doc. # 10 pt. 3), Ex. 3D § 26

25  ("Submission to Jurisdiction; Waivers").  Having succeeded with this strategy, Plaintiffs are now

26  estopped from arguing that their allegations do – implicitly somewhere – contradict the express

27  allegations of the SAC and their prior express representations to the Court.[6]  Simply, the only

28  

---

[6] *See Jackson v. County of Los Angeles*, 60 Cal. App. 4th 171, 181 (1997) ("Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a

LAI-2961972v2                      4              Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1    duty alleged is one based on the Engagement Agreement executed on behalf of the "Applicant."

2              **B.    The Sole "Applicant" Alleged and Referred to in the Engagement Agreement**
     **Is Plaintiff Santa Fe Pointe, LP; Plaintiffs' Assertion that the Phrase – and**
3    **Therefore the Plaintiff – Is "Ambiguous" Concedes the Motion.**

4            Second, having attempted to turn their pleading and statements to this Court directly on

5    their heads, Plaintiffs next attempt to turn the pleading standards on their heads. Plaintiffs argue

6    that because the "Applicant" to which a duty was owed under the Engagement Agreement is

7    "ambiguous," *see* Opp'n (doc. # 79) at 3:9-11, the Court should assume that each of the four

8    Plaintiffs *could* be the Applicant, and therefore conclude that the pleading has alleged that each

9    *was* the Applicant (though of course, there can be only one, and it is not in dispute that that one

10   was Santa Fe Pointe, LP[7]). Patently, this does not provide the required "short and plain statement

11   of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emph. added).[8]

12   Plaintiffs' incredible argument that the identity of the Plaintiff asserting these claims is a "matter

13   of proof" to be uncovered later in the proceedings, *see* Opp'n (doc. # 79) at 3:10-11, is simply

14   preposterous. The Court and Defendants are not required to waste their time playing an

15   expensive discovery game of "Guess Who?" with Mr. Oliphant and his Santa Fe entities

16   (particularly when everybody knows that the "Applicant" is Santa Fe Pointe, LP).

17             **C.    Plaintiffs Have Not Alleged Circumstances Under Which Mr. Oliphant Could**
     **Assert Third-Party Claims Based on the Engagement Agreement Between**
18   **Greystone Servicing and Santa Fe Pointe, LP.**

19           Third, still without clarifying that the "Applicant" is Santa Fe Pointe, LP, Plaintiffs

20

21   (continued…)

22   position previously taken in the same or some earlier proceeding. The doctrine serves a clear
     purpose: to protect the integrity of the judicial process. . . . Judicial estoppel is intended to protect
     against a litigant playing fast and loose with the courts. It seems patently wrong to allow a person
23   to abuse the judicial process by first [advocating] one position, and later, if it becomes beneficial,
     to assert the opposite.") (internal quotations and citations omitted); *see also Lamonds v. Gen.*
24   *Motors Corp.*, 34 F. Supp. 2d 391, 395 (W.D. Va. 1999) (litigation positions can have a "binding
     effect on parties and preclude conduct that is inconsistent with the prior statements").

25         [7] *See* SAC (doc. # 41) ¶ 2; SAC (doc. # 41), Ex. B at 2.

26         [8] *See also Bell Atl. Corp. v. Twombley*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)
     (pleadings must contain factual allegations definite enough to "raise a right to relief above the
27   speculative level"); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) ("Conclusory
     allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for
28   failure to state a claim.").

LAI-2961972v2                                    5                    Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1  purport to amend their pleading through their opposition – both impermissible[9] and a concession

2  that the *pleading* does not contain sufficient allegations – to infer that Mr. Oliphant, too, may be

3  owed a duty by Greystone Servicing.  Specifically, they purport to "allege" in their *Opposition*

4  that Mr. Oliphant, as the "controlling member of [the entity applicant] can, under the

5  circumstances alleged here, assert an individual claim for personal losses sustained as a result of

6  the malfeasance."[10]  Opp'n (doc. # 79) at 3:14-20 (citing *Sutter v. Gen. Petroleum Corp.,* 28 Cal.

7  2d 525, 530 (1946) and *Nathanson v. Murphy*, 132 Cal. App. 2d 363, 370-71 (1955)).  Neither

8  case supports Plaintiffs' contention that the duty owed to the "Applicant" may extend to Mr.

9  Oliphant (let alone any of the other Plaintiffs).

10      Apart from the fact that the factual basis for the claim is not plead, the claim is legally

11  unsound.  *Sutter* involved claims of fraud by the individual investors of the plaintiff oil drilling

12  company that was formed to lease the defendant's oil rig.  *See Sutter*, 28 Cal. 2d at 527-29.

13  Although acknowledging the general rule that a stockholder may not maintain an action in his

14  own behalf for a wrong done to the corporation, the court held that the individual plaintiffs'

15  claims for fraud were not derivative of the plaintiff corporation's claims.  *See id*. at 530-32.  As

16  the court explained, "[t]he fraud was committed by defendants, and plaintiff Sutter [like the other

17  investors] took steps in reliance upon the misrepresentations including the formation of the

18  Development Company *before that company was formed*."  *Id*. at 531 (emph. in original).  Under

19  those circumstances, the court held that the fact that the plaintiffs' later-formed corporation was

20  also injured did not preclude the individual plaintiffs from asserting their own claims for fraud.

21  *Id*.  Similarly, the *Nathanson* case also involved claims of fraud by the individual promoter of a

22  corporation formed subsequent to, and in reliance on, the defendant's fraud.  *Nathanson*, 132 Cal.

23  App. 2d at 365-66, 370-71 (corporation's promoter had a valid individual claim for fraud to

24  [9] *Lepp v. Gonzales*, 2005 U.S. Dist. LEXIS 41525, at *5-*6 (N.D. Cal. Aug. 2, 2005)
("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to
25  dismiss."); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989)
("These statements encompass a level of particularity that does not exist in the Complaint and it is
26  axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to
dismiss.").

27      [10] The fact that Plaintiffs advance this argument based on Oliphant's capacity as a
controlling member of the entity "Applicant" further reveals the lack of a good faith basis for
28  their earlier assertion that the Applicant's identity is somehow unknown to them.

LAI-2961972v2                           6                    Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1  recover down payment to defendant landowner who misrepresented property's acreage).

2       Here, Plaintiffs do not allege any tort claims resembling the fraud claims of the individual

3  plaintiffs in the above cases.  Rather, the claims for professional negligence (Count I), breach of

4  fiduciary duty (Count II), as well as intentional interference (Count III) and negligent interference

5  (Count IV) with prospective economic advantage deal with the alleged deprivation of corporate

6  opportunities of the supposedly "ambiguous" "Applicant" entity (which we all know – but

7  Plaintiffs curiously refuse to clarify – to be Santa Fe Pointe, LP).  Although the fact that the

8  Engagement Agreement was executed by Oliphant on behalf of "an entity to be formed" presents

9  some factual similarity to these cases, Plaintiffs do not plead that Oliphant suffered any individual

10  harm different from the Santa Fe entities.  Because Oliphant's claims as the controlling member

11  of Santa Fe Pointe, LP (through its general partner, Santa Fe Management, LLC) are derivative of

12  the limited partnership's claims, he cannot maintain an individual action to recover on the same

13  claims.  *Cf.* Cal. Corp. Code § 15910.02 (West 2008) ("A partner may bring a derivative action to

14  enforce a right of a limited partnership if (1) the partner first makes a demand on the general

15  partners, requesting that they cause the limited partnership to bring an action to enforce the right,

16  and the general partners do not bring the action within a reasonable time; or (2) a demand would

17  be futile.").

18       We also note Plaintiffs' contention that "non-contracting parties may sue for negligent

19  performance of contract."  Opp'n (doc. # 79) at 2:27-28 (citing *Biakanja v. Irving*, 49 Cal. 2d 647,

20  650-51 (1958)).  Of course, because in the SAC Plaintiffs have *pled* no duty other than one

21  created by the Engagement Agreement, their legal point has no bearing on this pleading.

22  Moreover *Biakanja*, a case that addressed the liability of a notary to the beneficiary of an

23  unattested will, acknowledges the general rule that, absent privity, there is no third-party liability

24  for negligent performance of a contract.  *Biakanja*, 49 Cal. 2d at 648-49.  The Court found that

25  exceptions may exist where there are strong public policy interests at stake *and* the plaintiff's

26  prospective benefit was the "end and aim" of the contract as opposed to a mere "collateral

27  consideration of the transaction."  *Id*. at 649-50.  Here, no compelling policy would be served by

28  abandoning the traditional requirement of privity, and Plaintiffs would be hard pressed indeed to

LAI-2961972v2                                    7                      Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1    allege (and have not alleged) that any benefit hoped for by Santa Fe Management, LLC, RANT,

2    LLC, or Mr. Oliphant himself was "the end and aim" of the Engagement Agreement as opposed

3    to a mere "collateral consideration of the transaction."[11]  This is particularly so in light of the fact

4    that the Agreement was executed by Oliphant on behalf of "an entity to be formed."  By its terms,

5    focusing on a single entity, the Agreement negates the possibility of other hopeful beneficiaries.

6    Finally, *Biakanja* could apply – only with additional allegations not made here  – to the

7    negligence claim (Count I).  Thus, Plaintiffs' claims for breach of fiduciary duty (Count II) and

8    negligent interference (Count IV) would remain well beyond the reach of the third party

9    beneficiary issue decided in *Biakanja* with respect to the negligent performance of contract claim.

10           The very best that Plaintiffs have alleged is a duty owed by Greystone Servicing (one

11    defendant) to a supposedly "ambiguous" "Applicant."  Though Defendants were willing to

12    concede that that Applicant is Plaintiff Santa Fe Pointe, LP, Plaintiffs refuse even *that*

13    clarification of their pleading.  As such, Plaintiffs have not plead a duty as between even

14    Defendant Greystone Servicing and Plaintiff Santa Fe Pointe, LP, let alone a duty owed by all

15    Defendants to all Plaintiffs.  Accordingly, each Plaintiff has failed to state a cause of action as

16    against any Defendant in Counts I, II, and IV.

17    **III.    PLAINTIFFS' CLAIMS FOR ANTICIPATORY REPUDIATION AND BREACH
            OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
18    **IMPERMISSIBLY COMBINE AGREEMENTS AND PARTIES.**

19           Plaintiffs' Opposition essentially argues that, because the SAC is very long and includes

20    claims against both "Greystone Defendants," there is no need for Plaintiffs to specify which

21    Greystone Defendant is responsible for what conduct, when the Court and Defendants can simply

22    sift through their allegations for kernels of useful information.  *See* Opp'n (doc. # 79) at 6:23-8:4.

23    Plaintiffs also misleadingly argue that Defendants have already lost this argument in a related

24    action in the Southern District of New York.  *Id.* at 6.  Both of Plaintiffs' arguments fail.

25           **A.    The Rule 8(a)(2) Challenges Raised by Defendants in Response to the SAC's
                    Allegations in this Case Have Not Been Previously Resolved by any Court.**
26
27           First, it is not true that Greystone CDE raised and lost any argument under Rule 8(a)(2) in

28    [11] For them to argue otherwise would be to disavow the corporate formality on which their
separate existence is based.

LAI-2961972v2                                        8                        Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1  the Southern District of New York, as Plaintiffs suggest.  Rather, in opposing the Oliphant

2  Parties' motion to transfer in that action, Greystone CDE pointed out that it was unclear from the

3  Oliphant Parties' allegations whether their counterclaims were premised on an alter ego or joint

4  liability theory.  Accordingly, Greystone CDE argued that the counterclaims should be dismissed

5  such that its action would not be transferred, or, in the alternative, that the Oliphant Parties should

6  be ordered to provide a more definite statement pursuant to Rule 12(e) – relief which is not

7  requested here.  *See Greystone CDE, LLC v. Santa Fe Pointe, LP*, Case No. 07-CV-08377-RPP,

8  Pl.'s Opp'n to Defs.' Mot. to Transfer (doc. # 54) at 5-6, 15 (S.D.N.Y. Mar. 17, 2008).

9       Judge Patterson's decision to deny relief under Rule 12(e) in light of those allegations is

10  not pertinent to the Rule 8(a)(2) issue presented here in response to different allegations by

11  Plaintiffs.  Moreover, his decision that the precise theory of liability could be ascertained through

12  discovery does not resolve the question at issue here – namely, whether (apart from any theory of

13  liability) Plaintiffs' allegations concerning the Defendants' *conduct* even satisfy the requirements

14  of Rule 8(a)(2).  Further, it should be noted that the more particularized concern with theories of

15  joint or alter ego liability (as opposed to the notice pleading requirements, more generally) arose

16  in the New York action only because the Oliphant Parties' allegations in those respects were

17  slightly different from those asserted in the SAC in this action, *e.g.*, that there was a "looseness of

18  formal corporate separation" and that "Greystone wore two hats."  *See Greystone CDE, LLC v.

19  Santa Fe Pointe, LP*, Case No. C 08-2756 MMC, Answer & Counterclaim (doc. # 1 pt. 3) ¶¶ 72,

20  92 (Mar. 3, 2008).

21       Finally, it should be emphasized that Plaintiffs' pleading deficiencies are not such that

22  they will be cured through imposing on Defendants additional discovery burdens not

23  contemplated by the Rules.  Defendants have already gone this route, and have been met with the

24  same resistance in the form of Plaintiffs' refusal to give a short and plain statement of the nature

25  and the extent of the allegations against them.  To wit, the individual Plaintiffs' responses are

26  generally identical from Plaintiff to Plaintiff, and fail to distinguish at all between the conduct of

27  the Greystone Defendants.  For example, in response to Greystone CDE's first interrogatory as to

28  facts supporting Plaintiffs' contention in paragraph 57 of the SAC that the "Greystone Defendants

1    and each of them breached their respective duties of due care to Plaintiff and each of them,"

2    Plaintiff Santa Fe Pointe, LP responded in essentially the same vague terms pled in the SAC:

3           Greystone agreed to diligently and faithfully process the application for

4           a HUD-insured loan.  Under the Engagement Agreement Greystone

5           indicated the initial submittals to HUD would be made in 4-6 weeks.

6           Greystone knew when it entered into the Engagement Agreement and in

7           the weeks afterward that timing in the process was critical to Plaintiffs,

8           yet it did not act with any sense of urgency. . . .[12]

9    [Kemple Decl., Ex. A ("Plaintiff Santa Fe Pointe, LP's Responses to First Set of Interrogatories

10   from Greystone CDE, LLC") at 2:25-3:1 (emph. added)].  All considered, the Court should

11   decline Plaintiffs' invitation to excuse their pleading deficiencies in the hopes that, through this

12   manner of discovery, Plaintiffs will some day cure their failure to give proper notice of their

13   claims under Rule 8(a)(2).

14          In sum, the arguments in the New York action were different, were based on different

15   allegations, and were resolved on procedurally different grounds than those pertinent to the

16   present motion.  Accordingly, the Rule 8(a)(2) challenges raised by Defendants in response to the

17   SAC's allegations in this case have not been previously resolved by any court as Plaintiffs imply.

18          **B.     Plaintiffs' Allegations Fail to Apprise the Defendants of the Nature and
               Extent of the Claims Asserted Against Them and Fail to Satisfy the Notice
19             Pleading Requirements of Rule 8(a)(2).**

20          Second, Plaintiffs presumably seek to support their position thereafter by setting forth a

21   litany of conduct alleged in the SAC that is inconsistently ascribed to "Greystone CDE,"

22   "Greystone Servicing," "Greystone Defendants" and sometimes simply "Greystone."  Opp'n

23   (doc. # 79) at 3:22-5:21, 6:23-8:4.  Plaintiffs' Opposition amply demonstrates Defendants' point.

24          Greystone Servicing is not a party to the bridge loan and had little to do with its execution.

25   Mot. (doc. # 62) at 6:20-22.  Greystone CDE is not a party to the Engagement Agreement and had

26   nothing at all to do with the underwriting of Plaintiffs' HUD application.  *Id*. at 6:22-23.  To

27

28   [12] The only thing clear from this response, of course, is that the duty complained of arises
     solely out of the Engagement Agreement, something which Plaintiffs now so curiously deny.

LAI-2961972v2                            10                    Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1  intertwine these two entities is improper and, at a more basic level, makes no sense.  Yet,

2  Plaintiffs' SAC does just that.  *See also Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D.

3  Cal. 1988) (where allegations are made against multiple defendants, "plaintiff must allege the

4  basis of his claim against each defendant to satisfy [Rule] 8(a)(2)").  Plaintiffs' SAC, sets forth

5  the following allegations, also cited (but inaccurately paraphrased) in their Opposition:

6        ● "Greystone unilaterally withdrew the HUD loan application without any

7          prior notice or warning to Oliphant or Plaintiffs."  SAC ¶ 42.

8  This begs the question, unanswered by the pleading, which Greystone entity are Plaintiffs

9  referring to here?  Of course, in their Opposition, Plaintiffs clarify that they had meant to plead

10  that "Greystone Servicing unilaterally withdrew Plaintiffs' HUD application," *see* Opp'n (doc. #

11  79) at 4:21-22, demonstrating that the defects of the SAC are both known to them and easily

12  remedied.  "These statements encompass a level of particularity that does not exist in the

13  Complaint and it is axiomatic that the Complaint cannot be amended by the briefs in opposition to

14  a motion to dismiss."  *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y.

15  1989); *accord Lepp v. Gonzales*, 2005 U.S. Dist. LEXIS 41525, at *5-*6 (N.D. Cal. Aug. 2,

16  2005) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a

17  motion to dismiss.").  Moreover, Defendants cannot be expected to divine Plaintiffs' unstated

18  intention in every such instance throughout the SAC.  This is particularly so because, even where

19  Plaintiffs have been more precise in their pleading (*e.g.*, in alleging that the duties owed to them

20  arise solely out of the Engagement Agreement), they dispute Defendants' ordinary interpretation

21  of that plain language.

22        ● "Oliphant again requested that the Greystone Defendants rescind the

23          August 21 notice of default but the Greystone Defendants refused to do so.

24          The Greystone Defendants claimed that the bridge loan was still in default .

25          . . .  The Greystone Defendants further stated that Greystone was 'out'

26          unless Plaintiffs could prove that the Project was a viable deal."  SAC ¶ 50.

27  The terms "Greystone Defendants" and "Greystone" are used interchangeably at least five times

28  in this paragraph, yet it is entirely unclear which Greystone entity is being referred to in each

LAI-2961972v2                                    11                Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1    instance.  Indeed, it is not possible that Plaintiffs are referring to the same Greystone entity or the

2    actions of both throughout, as some of the allegations relate to the HUD application or the

3    "Project" while others relate to the Bridge Loan and Plaintiffs' default thereunder.  Defendants

4    should not have to guess at Plaintiffs' allegations or assist Plaintiffs in determining which entity

5    is purportedly responsible for any alleged injury.

6                              ● "In fact, the bridge loan was not in default for the claimed lack of a tax

7                                 credit syndicator.  First of all, the Greystone Defendants waived this

8                                 condition in April 2007 when the initial tax credit syndicator withdrew

9                                 from the deal."  *Id*. ¶ 51.

10    Again, the use of the term "Greystone Defendants" in this paragraph is highly imprecise.

11    Determining which Greystone Defendant allegedly "waived" any requirements is important

12    because Greystone CDE did not have the authority to waive requirements under the Engagement

13    Agreement as it was not a party thereto; likewise, Greystone Servicing could not waive

14    requirements under the Bridge Loan.  Defendants are therefore totally uncertain as to which

15    Greystone entity Plaintiffs are referring to in this paragraph.

16          Even in their Opposition, Plaintiffs' paraphrasing fails to identify the basis of their claims

17    as alleged against each Defendant in these paragraphs.  *See* Opp'n (doc. # 79) at 7:13-14 ("[T]he

18    Greystone entities invented a new, fictional ground for default . . . .) (citing SAC ¶¶ 48-51).  And

19    these uncertainties are evident in many of the paragraphs Plaintiffs *chose* to cite to show the

20    clarity of the SAC.[13]  The rest of the SAC is littered with similar ambiguities, and worse.

21          Moreover, Plaintiffs' combination of conduct and claims relating to both the Engagement

22    Agreement and Bridge Loan is particularly perplexing given Plaintiffs' many assertions that the

23    two agreements are "entirely separate transaction[s]" and the provisions of each "do not apply" to

24    one another.  *See, e.g.*, Pls.' Opp'n to Defs.' Mot. to Transfer (doc. # 16) at 7:18-27.  It cannot be

25    simultaneously true that (i) these causes of action "are founded on the activities of both Greystone

26    Defendants" and "implicate both the Engagement Letter and the bridge loan," on the one hand,

27          [13] Plaintiffs facile and belated effort in their Opposition to remedy the SAC's inaccurate

28    allegations through artful paraphrasing, which attempts to ascribe the alleged conduct to particular actors, cannot serve as an end-run around the requirements of Rules 8 and 15.

LAI-2961972v2                                          12                    Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC

1 | *see* Opp'n (doc. # 79) at 7:27-8:1, and, on the other hand, that (ii) the agreements, to which only

2 | one of each of the Defendants is a party, are "entirely separate" and the provisions of each "do not

3 | apply" to one another.  Pls.' Opp'n to Defs.' Mot. to Transfer (doc. # 16) at 7:18-27.

4 |      Plaintiffs' impermissible combining of allegations against both Greystone Defendants

5 | relating to both agreements purportedly at issue in this matter exceeds the bounds of notice

6 | pleading because they fail to apprise the Defendants of the nature and extent of the claims

7 | asserted against them, and prevent the narrowing of issues that would promote efficient case

8 | management.  *See* Fed. R. Civ. P. 8(a)(2); *see also Arikat v. JP Morgan Chase & Co.*, 430 F.

9 | Supp. 2d 1013, 1020 (N.D. Cal. 2006) (allegations "ascribed to defendants collectively rather

10 | than to individual defendants" are insufficient).

## IV.   CONCLUSION

12 |      For the foregoing reasons, Defendants respectfully request that this Court grant

13 | Defendants' motion to dismiss Plaintiffs' Second Amended Complaint.

14 | Dated: July 18, 2008                JONES DAY

16 |                    By: /s/ Mark D. Kemple

17 |                         Mark D. Kemple

                        Erik K. Swanholt

18 |                      Attorneys for Defendants Greystone Servicing

19 |                      Corporation, Inc. and Greystone CDE, LLC

LAI-2961972v2            13            Reply iso Defs.' Second Mot. to Dismiss

C 07-05454 MMC