EXHIBIT D

#155250v3

---

PARTNER GUARANTY, PLEDGE AND SECURITY AGREEMENT

from

SANTA FE POINTE, MANAGEMENT, LLC,

and

THEOTIS F. OLIPHANT

to

GREYSTONE CDE, LLC

Dated as of December 1, 2006

---

## PARTNER GUARANTY,
## PLEDGE AND SECURITY AGREEMENT

This PARTNER GUARANTY, PLEDGE AND SECURITY AGREEMENT (as amended, modified or supplemented from time to time, this **"Agreement"**), dated as of December 20, 2006, is made by SANTA FE POINTE MANAGEMENT, LLC, a limited liability company organized and existing under the laws of the State of Oklahoma, with an address at 16416 Oconee Creek Drive, Edmond, Oklahoma 73013 (together with its permitted successors and assigns, the **"General Partner"**) and THEOTIS F. OLIPHANT, an individual and a resident of the State of California (together with his heirs, executors, personal representatives and permitted successors and assigns, the **"Limited Partner"** and, together with the General Partner, the **"Pledgors"**) with an address at 113 Carmel Avenue, El Cerrito, California 94530, in favor of GREYSTONE CDE, LLC, a limited liability company duly organized and existing under the laws of the State of Delaware (together with its successors and assigns, **"Pledgee"**) with an address at 419 Belle Air, Warrenton, Virginia 20186,

### W I T N E S S E T H:

**WHEREAS,** Pledgors is the general partner and limited partner of Santa Fe Pointe, L.P., a limited partnership duly organized and validly existing under the laws of the State of Oklahoma (together with its permitted successors and assigns, the **"Partnership"**); which is to become owner of certain land located at 125 SW 74th Street in Oklahoma City, Oklahoma, and the site improvements located thereon, known as Santa Fe Pointe Apartments (the **"Project"**);

**WHEREAS,** pursuant to a Bridge Loan Agreement dated as of December 20, 2006 between Pledgee and the Partnership (as the same may be amended, modified or supplemented from time to time, the **"Loan Agreement"**), Pledgee has agreed to make a $500,000.00 loan (the **"Loan"**) to the Partnership to fund certain expenses associated with the financing of the Project;

**WHEREAS,** Pledgors will derive substantial economic benefit from the Loan and the financing of the Project; and

**WHEREAS,** the execution and delivery of this Agreement is a condition to Pledgee's making the Loan.

**NOW, THEREFORE,** in consideration of the premises and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

**Section 1.**    **Defined Terms.**  The following terms, which are defined in the Uniform Commercial Code in effect in the State of New York on the date hereof, are used herein as so defined: Accounts, Chattel Paper, General Intangibles, Instruments and Proceeds; and the following terms shall have the following meanings:

> **"Assignment"** has the meaning assigned to it in Section 3 of this Agreement.

> **"Collateral"** has the meaning assigned to it in Section 3 of this Agreement.

"**Event of Default**" means any "Event of Default" as defined in the Loan Agreement or any of the Loan Documents.

"**Obligations**" has the meaning assigned to it in Section 2 of this Agreement.

"**Partnership Agreement**" means the Agreement of Limited Partnership of Santa Fe Pointe, L.P., dated as of October 16, 2006, as the same may be further amended, modified or supplemented from time to time.

"**UCC**" means the Uniform Commercial Code as from time to time in effect in the State of New York.

All other capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Loan Agreement.

**Section 2.    Guaranty.** The General Partner hereby absolutely, irrevocably and unconditionally guarantees and is surety to Pledgee for, and this Agreement is expressly limited to, the full and punctual payment and performance by the Partnership of any and all payment obligations and other covenants and obligations of the Partnership to Pledgee contained in the Loan Documents and the Limited Partner hereby reaffirms his obligations under the Guaranty (all such obligations hereinafter collectively referred to as the "**Obligations**").

(a)    **Guaranty Absolute.** The guaranty of General Partner under this Agreement is a guaranty of payment and performance and not merely of collection or enforceability and shall remain in full force and effect until all of the Obligations are indefeasibly paid or performed in full. The obligations and liabilities of General Partner under this Agreement are the primary, direct and immediate obligations of General Partner and shall in no way be affected, limited, impaired, modified or released by, subject to or conditioned upon, and may be enforced against General Partner irrespective of (i) any attempt, pursuit, enforcement or exhaustion of any rights and remedies Pledgee may at any time have to collect, any or all of the Obligations (whether pursuant to any of the Loan Documents or otherwise) from the Partnership, from any other Obligor, from any other maker, endorser, surety or guarantor of, or pledgor of collateral and security for, all or any part of the Obligations, and/or by any resort or recourse to or against any collateral and security for all or any part of the Obligations, (ii) the invalidity, irregularity, lack of priority or unenforceability in whole or in part of any or all of the Loan Documents, (iii) any counter-claim, recoupment, setoff, reduction or defense based on any claim the Partnership or any other Obligor may now or hereafter have against Pledgee (other than the defense that payment in full of all amounts claimed to be due by Pledgee actually has been made), (iv) the voluntary or involuntary liquidation, dissolution, termination, merger, sale or other disposition of the Partnership or any other Obligor or any of the assets and properties of the Partnership or any other Obligor, (v) any bankruptcy, reorganization, insolvency or similar proceedings for the relief of debtors under any federal or state law by or against the Partnership or any other Obligor, or any discharge, limitation, modification or release of liability of the Partnership or any other Obligor by virtue of any such proceedings, (vi) any event, circumstance or matter to which Pledgor has consented pursuant to the provisions of paragraph 3 hereof, and (vii) any other event or circumstance which might otherwise constitute a legal or equitable discharge, release or defense of guarantor or surety, whether similar or dissimilar to the

2

foregoing (other than the defense that payment in full of all amounts claimed to be due by Pledgee actually has been made).

(b)    **Consents**. Without notice to, or further consent of, the General Partner, the General Partner hereby agrees that Pledgee may at any time and from time to time on one or more occasions (i) renew, extend, accelerate, subordinate, change the time or manner of payment or performance of, or otherwise deal with, in any manner satisfactory to Pledgee and in accordance with the applicable Loan Documents, any of the terms and provisions of, all or any part of the Obligations, (ii) waive, excuse, release, change, amend, modify or otherwise deal with in any manner satisfactory to Pledgee any of the provisions of any of, the Loan Documents, (iii) release the Partnership or any or all of the other Obligors, (iv) waive, omit or delay the exercise of any of its powers, rights and remedies against the Partnership or any other Obligors or all or any of the collateral and security for all or any part of the Obligations, (v) release, substitute, subordinate, add, fail to maintain, preserve or perfect any of its liens on, security interests in or rights to, or otherwise deal with in any manner satisfactory to Pledgee, any collateral and security for all or any part of the Obligations, (vi) apply any payments of all or any of the Obligations received from the Partnership or any other Obligors or any other party or source whatsoever first to late charges or other sums due and owing to Pledgee, next to accrued and unpaid interest, and then to amounts due under the Loan Agreement and the other Loan Documents and any excess, after payment of the Obligations and performance of all other Obligations of the Partnership and/or any other obligors to Pledgee, shall be returned to the Partnership, or (vii) take or omit to take any other action, whether similar or dissimilar to the foregoing which may or might in any manner or to any extent vary the risk of the General Partner or otherwise operate as a legal or equitable discharge, release or defense of the General Partner under applicable laws.

(c)    **Waivers**. The General Partner hereby waives (i) notice of the execution and delivery of any of the Loan Documents, (ii) notice of the creation of any of the Obligations, (iii) notice of Pledgee's acceptance of and reliance on this Agreement, (iv) presentment and demand for payment of the Obligations and notice of non-payment and protest of non-payment of the Obligations, (v) any notice from Pledgee of the financial condition of the Partnership regardless of Pledgee's knowledge thereof, (vi) demand for observance, performance or enforcement of, or notice of default under, any of the provisions of this Agreement or any of the Loan Documents (other than such as are expressly provided for therein), and all other demands and notices otherwise required by law which the General Partner may lawfully waive, (vii) any right or claim to cause a marshalling of the assets of the Partnership, and (viii) any defense at law or in equity based on the adequacy or value of the consideration for this Agreement. The General Partner agrees not to institute any action or proceeding based on any rights of subrogation and reimbursement against the Partnership or against any collateral or security for any of the Obligations until the Obligations have been indefeasibly paid and satisfied in full. The foregoing sentence is not intended to limit Pledgor's right to accept payments from the Partnership that are otherwise permitted under the Loan Documents. The General Partner waives any and all other rights and defenses available to Pledgor by reason of any statutory provisions now or hereafter in effect in any other jurisdiction, including, without limitation, any and all rights or defenses the General Partner may have by reason of protection afforded to the Partnership or any other Obligor with respect to the Obligations pursuant to antideficiency or other laws of any state limiting or discharging the Partnership's or any other obligor's

indebtedness (other than the defense that payment in full of all amounts claimed to be due from such parties actually has been made). The General Partner waives all rights and defenses arising out of an election of remedies by Pledgee, even if that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the General Partner's rights of subrogation and reimbursement against the Partnership or any other Obligor.

**Section 3.    Grant of Security Interest by Pledgors.** Each of Pledgers hereby pledge to Pledgee, and grant to Pledgee, a lien on, and continuing priority security interest in, all of the following property now owned or at any time hereafter acquired by Pledgors or in which Pledgors now have or at any time in the future may acquire any right, title or interest (collectively, the **"Collateral"**) as security for the prompt and complete payment and performance by the Partnership of the Obligations and by Pledgors of the Obligations:

(a)    its partnership interest in the Partnership and all of its rights as a partner under the Partnership Agreement (including, without limitation, all of its right, title and interest to participate in the operation and management of the Partnership and all of its right, title and interest to property, assets, partnership interest and distributions under the Partnership Agreement);

(b)    all Accounts arising out of its partnership interest in the Partnership and the Partnership Agreement;

(c)    all General Intangibles arising out of its general partnership interest in the Partnership and the Partnership Agreement;

(d)    all present and future rights of Pledgor to receive any payment of money or other distribution or payment arising out of or in connection with its partnership interest in the Partnership and its rights as a partner under the Partnership Agreement;

(e)    any other property of the Partnership to which Pledgor now or in the future may be entitled in its capacity as a partner of the Partnership by way of distribution, return of capital or otherwise;

(f)    any other claim which Pledgor now has or may in the future acquire in its capacity as a partner of the Partnership against the Partnership and its property and of the other partners thereof; and

(g)    to the extent not otherwise included above, all Proceeds of any and all of the foregoing, including, without limitation, whatever is received upon any collection, exchange, sale or other disposition of any of the Collateral, and any property into which any of the Collateral is converted, whether cash or noncash proceeds, and any and all other amounts paid or payable under or in connection with any of the Collateral.

This Agreement constitutes a continuing security interest in the Collateral and shall remain in full force and effect until the satisfaction, release or termination of all of the Obligations. In order to further effectuate the intent of this Agreement, Pledgors have executed and delivered assignments of their partnership interests (the **"Assignments"**) to Pledgee; Pledgee agrees not to execute such Assignments and deliver them to the Partnership unless and until there shall have

4

occurred an Event of Default hereunder.  Upon the occurrence of an Event of Default and the execution and delivery by Pledgor to the Partnership of such Assignment or Assignments, the affected Partnership interests shall be deemed transferred to Pledgee or its designee or assignee, as applicable, without any further action whatsoever on the part of Pledgee or the Partnership, for all purposes.

Section 4.    **Rights of Pledgee; Limitations on Pledgee's Obligations.**

(a)    **Pledgors Remain Liable.**  Anything herein to the contrary notwithstanding, Pledgors shall remain liable under the Partnership Agreement to observe and perform all the conditions and obligations to be observed and performed by them thereunder, all in accordance with and pursuant to the terms and provisions thereof.  Unless Pledgee shall become a general partner and/or a limited partner of the Partnership as a result of its exercise of remedies pursuant to the terms hereof and except as set forth in Section 18 hereof, Pledgee shall not have any obligation or liability by reason of or arising out of this Agreement or the receipt by Pledgee of any payment relating to any Collateral pursuant hereto, nor shall Pledgee be obligated in any manner to perform any of the obligations of Pledgors under or pursuant to the Partnership Agreement or any Account or General Intangible to make any payment, to make any inquiry as to the nature or the sufficiency of any payment received by it or as to the sufficiency of any performance by any party under any thereof, to present or file any claim, to take any action to enforce any performance or to collect the payment of any amounts that may have been pledged to it or to which it may be entitled at any time or times.  Nothing contained in this Agreement shall be construed or interpreted (a) to transfer to Pledgee any of the obligations of a partner of the Partnership or (b) to constitute Pledgee a partner of the Partnership.

(b)    **Proceeds.**  Pledgee hereby authorizes Pledgors to collect all Accounts arising out of the Partnership Agreement in respect of their respective partnership interests in the Partnership.  If required by Pledgee at any time after the occurrence and during the continuation of an Event of Default, such Accounts and any Proceeds, when collected by Pledgors, shall be forthwith deposited by Pledgors in the exact form received, duly endorsed (without recourse) by Pledgors to Pledgee, in a special bank account maintained by Pledgee, subject to withdrawal by Pledgee as hereinafter provided, and, until so turned over, shall be held by Pledgors in trust for Pledgee, segregated from other funds of Pledgor.

Section 5.    **Representations and Warranties.**  Each Pledgor hereby represents and warrants, with respect to himself or itself, as applicable, as follows:

(a)    **Entity Status.**  The General Partner is duly formed and validly existing as a limited liability company under the laws of the State of Oklahoma.

(b)    **Loan Documents.**  Such Pledgor has or has had an opportunity to examine the Loan Documents.

(c)    **Enforceability.**  This Agreement has been duly executed and constitutes a valid and binding obligation of such Pledgor, enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or affecting creditors' rights generally.

5

(d)  **Ownership of Collateral; Liens**. Such Pledgor is the legal and beneficial owner of its Collateral, free and clear of all liens, except for the liens created by this Agreement. Such Pledgor has all requisite power and authority and the legal right to pledge to Pledgee, and to grant to Pledgee, a lien on and continuing security interest in its Collateral. The execution, delivery and performance by such Pledgor of this Agreement is within such Pledgor's powers, has been duly authorized by all necessary legal action, and does not contravene any agreement applicable to the Partnership or such Pledgor or restriction binding on or affecting the Partnership, such Pledgor or any of their respective assets. No security agreement, financing statement or other public notice with respect to all or any part of its Collateral is on file or of record in any public office, except such as may have been filed in favor of Pledgee pursuant to this Agreement.

(e)  **Security Interest**. The security interests granted and continued pursuant to this Agreement will, upon filing of UCC financing statements in the appropriate filing offices, constitute perfected security interests in the Collateral in favor of Pledgee, and are enforceable as such against all creditors of and purchasers from such Pledgor. All action on the part of such Pledgor necessary or desirable to perfect such security interests in each item of the Collateral requested by Pledgee, including the execution of financing statements for filing in the appropriate filing offices, has been or will be duly taken upon such filing.

(f)  **Legal Name**. Such Pledgor's exact legal name is set forth at the beginning of this Agreement and such Pledgor does not conduct business under any other name.

(g)  **Power and Authority**. Such Pledger has and has duly exercised all requisite power and authority to enter into this Agreement, to pledge its interest in the Collateral and to carry out the transactions contemplated by this Agreement.

(h)  **Place of Business; Jurisdiction of Organization; Organizational Identification Number**. Such Pledgor's chief executive offices and chief place of business, in the case of the General Partner, or principal residence, in the case of the Limited Partner, and the place where such Pledgor keeps its records concerning the Collateral, is located at such Pledgor's address set forth on page 1 hereof. The General Partner's jurisdiction of organization is as set forth on page 1 hereof and the General Partner's organizational identification number is 3512119429.

**Section 6.**  **Covenants**. Each Pledgor covenants and agrees that, so long as this Agreement remains in effect:

(a)  **Further Documentation; Pledge of Instruments**. At any time and from time to time, upon the written request of Pledgee, and at the sole expense of such Pledgor, such Pledgor will promptly and duly execute and deliver such further instruments and documents and take such further action as Pledgee may reasonably request for the purpose of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted. Without limiting the generality of the foregoing, such Pledgor will execute and file such financing or continuation statements, or amendments thereto, and such other instruments, endorsements or notices, as Pledgee may deem necessary or desirable in order to perfect and preserve the liens created or continued or intended to be created or continued hereby. Such

6

Pledgor hereby authorizes Pledgee to file any such financing or continuation statement without the signature of such Pledgor to the extent permitted by applicable Legal Requirements. If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other Instrument or Chattel Paper, such note, Instrument or Chattel Paper shall be immediately delivered to Pledgee, duly endorsed (without recourse) in a manner satisfactory to Pledgee, to be held as Collateral pursuant to this Agreement.

        (b)    **Maintenance of Records.** Such Pledgor will keep and maintain at its own cost and expense satisfactory and complete records of the Collateral.

        (c)    **Limitation on Liens on Collateral.** Such Pledgor will not create, incur or permit to exist, will defend the Collateral and the right, title and interest of Pledgee therein against, and will take such other action as is necessary to remove, any lien, claim, security interest or other encumbrances on or to the Collateral other than the lien created and continued pursuant to this Agreement.

        (d)    **Further Identification of Collateral.** Such Pledgor will furnish to Pledgee from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Pledgee may reasonably request, all in reasonable detail.

        (e)    **Changes in Locations, Name, Etc.** Such Pledgor will not, unless it shall give sixty (60) days' prior written notice to such effect to Pledgee, (i) change the location of its chief executive office or chief place of business from that specified on page 1 hereof, or remove its books and records from such location or (ii) change its name, identity, structure or jurisdiction of organization to such an extent that any financing statements filed by Pledgee in connection with this Agreement would become misleading or ineffective to perfect the security interests granted hereunder (to the extent the same can be perfected by filing of financing statements).

        (f)    **Amendments of Partnership Agreement.** Such Pledgor shall not, without the prior written consent of Pledgee, consent to, vote in favor of or otherwise permit any amendment to or modification of the Partnership Agreement.

        (g)    **No Transfer of Interests.** Such Pledgor shall not sell, assign, transfer, pledge or encumber or permit to be sold, assigned, transferred, pledged or encumbered any of its general partnership interest in the Partnership or the other Collateral, nor, in the case of the General Partner, permit the sale, assignment, transfer, pledge or encumbrance any membership interest in the General Partner. Any such sale, assignment, transfer, pledge or encumbrance of Pledgor's partnership interest in the Partnership or of membership interests in the General Partner in violation of the foregoing provisions of this Section 6(g) shall be null and void.

        (h)    **Bankruptcy of the Partnership.** Such Pledgor shall not authorize, seek to cause or permit the Partnership to commence a voluntary case or other proceeding seeking liquidation, reorganization or other relief with respect to itself or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property or to consent to any such relief or to the appointment of or taking possession by any such official

in an involuntary case or other proceeding commenced against it, or to make a general assignment for the benefit of the creditors.

(i) **Maintenance of Existence, Etc**. Such Pledgor shall at all times preserve and maintain in full force and effect its existence under the laws of the state of its organization and its qualification to do business in each jurisdiction where the ownership or leasing of property or the nature of business transacted makes such qualifications necessary.

(j) **Claims against Collateral**. Such Pledgor shall, within five (5) days of receipt of knowledge by such Pledgor, notify Pledgee in reasonable detail of any lien or claim made or asserted against the Collateral.

(k) **Notice of Dissolution**. Such Pledgor will forthwith upon learning of the occurrence of any event which would cause termination and/or dissolution of the Partnership, notify Pledgee in writing thereof.

**Section 7.    Pledgee's Appointment as Attorney-in-Fact.**

(a) **Powers**. Effective immediately, without limiting any rights or powers granted herein to Pledgee while no Event of Default has occurred and is continuing, Pledgors hereby irrevocably constitute and appoint Pledgee and any officer or agent thereof, with full power of substitution, as their true and lawful attorney-in-fact with full irrevocable power and authority, in the place and stead of Pledgors and in the names of Pledgors or in its own name, for the purpose of carrying out the terms of this Agreement, with notice to, but without prior assent by Pledgor, to do the following:

(i) upon the occurrence of any Event of Default, to exercise all partnership rights and powers to the same extent as a partner of the Partnership;

(ii) upon the occurrence of any Event of Default, in the name of Pledgors or its own name, or otherwise, to take possession of and endorse (without recourse) and collect any checks, drafts, notes, acceptances or other instruments for the payment of moneys due under the Partnership Agreement or any Account, Instrument or General Intangible arising thereunder or out of Pledgors' partnership interests in the Partnership and to file any claim or to take any other action or proceeding in any court of law or equity or otherwise deemed appropriate by Pledgee for the purpose of collecting any and all such moneys due under the Partnership Agreement or any Account, Instrument or General Intangible arising thereunder or out of Pledgors' partnership interests in the Partnership whenever payable;

(iii) upon the occurrence of any Event of Default, to pay or discharge taxes and liens levied or placed on the Collateral and to execute any and all documents and instruments that may be necessary or desirable to accomplish the purposes of Section 6(a) hereof; and

(iv) upon the occurrence of any Event of Default, (A) to direct any party liable for any payment under any of the Collateral to make payment of any

8

and all moneys due or to become due thereunder directly to Pledgee or as Pledgee shall direct, (B) to ask or demand for, collect, receive payment of and receipt for, any and all moneys, claims and other amounts due or to become due at any time in respect of or arising out of any Collateral, (C) to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications, notices and other documents in connection with any of the Collateral, (D) to commence and prosecute any suits, actions or proceedings at law or in equity in any court of competent jurisdiction to collect the Collateral or any part thereof and to enforce any other right in respect of any Collateral, (E) to defend any suit, action or proceeding brought against Pledgors with respect to any Collateral, (F) to settle, compromise or adjust any suit, action or proceeding described in clause (E) above and, in connection therewith, to give such discharges or releases as Pledgee may deem appropriate and (G) generally, to sell, transfer, pledge and make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though Pledgee were the absolute owner thereof for all purposes, and to do, at Pledgee's option and Pledgors' expense, at any time, or from time to time, all acts and things that Pledgee deems necessary to protect, preserve or realize upon the Collateral and the liens thereon created and continued hereby and to effect the intent of this Agreement, all as fully and effectively as Pledgors might do.

Pledgors hereby ratify all that said attorneys shall lawfully do or cause to be done by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

      (b)    **Other Powers**. Pledgors also authorize Pledgee, at any time and from time to time, to execute, in connection with any sale provided for in Section 9 hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

      **Section 8.**    **Performance by Pledgee of Pledgors' Obligations; Rights of Pledgors Prior to Event of Default**. Immediately upon the occurrence of an Event of Default, and without limiting any rights or powers granted herein to Pledgee while no Event of Default has occurred and is continuing, Pledgee, without releasing Pledgors from any obligation, covenant or condition hereof, itself may make any payment or perform, or cause the performance of, any such obligation, covenant or condition or take any other action in such manner and to such extent as Pledgee may deem necessary to protect, perfect or continue the perfection of the liens created or continued or intended to be created or continued pursuant to this Agreement. Unless an Event of Default shall have occurred, Pledgors shall be entitled to receive and retain, dividend or otherwise utilize all distributions made pursuant to the Partnership Agreement or otherwise arising out of the Collateral and exercise all voting, partnership and other rights pertaining to the Collateral and take all action it is authorized to take thereunder; provided that no vote or other action taken shall otherwise result in an Event of Default. All such rights of Pledgors with respect to dividends, distributions and voting shall cease upon the occurrence and during the continuation of an Event of Default.

      **Section 9.**    **Rights and Remedies**.

(                                                    (

(a)    **Assignments and Collateral.**  If an Event of Default shall have occurred, (i) all payments made in respect of the Collateral and received by or on behalf of Pledgee in accordance with the provisions of this Agreement or the Loan Agreement or otherwise, may, in the discretion of Pledgee, (A) be held by or on behalf of Pledgee as Collateral, and/or (B) then or at any time thereafter be applied to the Obligations in such order as Pledgee shall determine, and (ii) all shares or certificates of or evidencing the Collateral shall be registered in the name of Pledgee or its nominee, and (whether or not so registered) Pledgee or its nominee may thereafter exercise (A) all voting, partnership and other rights pertaining to the Collateral and (B) any and all rights of conversion, exchange, subscription and any other rights, privileges or options pertaining to the Collateral as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Collateral upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the partnership structure of the Partnership or upon the exercise by Pledgors or Pledgee of any right, privilege or option pertaining to such shares or certificates of or evidencing the Collateral, and in connection therewith, the right to deposit and deliver any and all of the Collateral with any committee, depository, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Pledgee shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.  At Pledgee's option following an Event of Default, Pledgee may execute and deliver to the Partnership one or both of the Assignments, thus effectuating the transfer of the interests in the Partnership to Pledgee.

(b)    **UCC.**  If an Event of Default shall have occurred, then, in addition to any other rights and remedies provided for herein and in any other instrument or agreement securing, evidencing or relating to the Obligations, or that may otherwise be available, Pledgee may, without any demand, advertisement or notice (except as expressly provided for below in this Section 9(b) or by applicable legal requirements), exercise all the rights and remedies of a secured party under the UCC, and in addition may sell, lease, assign, give option or options to purchase, or otherwise dispose of the Collateral, or any part thereof, as hereinafter provided.  The Collateral may be sold or otherwise disposed of in one or more sales, at public or private sale, conducted by any officer or agent of, or auctioneer or attorney for, Pledgee, at any exchange or broker's board or at Pledgee's place of business or elsewhere, for cash, upon credit or for other property, for immediate or future delivery, and at such price or prices and on such terms as Pledgee shall, in its sole discretion, deem appropriate.  Pledgee may be the purchaser of any or all of the Collateral so sold at a sale and thereafter may hold the same, and the Obligations may be applied as a credit against the purchase price.  Pledgee may, in its sole discretion, at any such sale restrict the prospective bidders or purchasers as to their number, nature of business and investment intention.  Upon any such sale, Pledgee shall have the right to deliver, assign and transfer to the purchaser thereof (including Pledgee) the Collateral so sold.  Each purchaser (including Pledgee) at any such sale shall hold the Collateral so sold, absolutely free from any claim or right of whatsoever kind, including any equity or right of redemption, of Pledgors, and Pledgors hereby specifically waive, to the fullest extent they may lawfully do so, all rights of redemption, stay or appraisal that they have or may have under any rule of law or statute now existing or hereafter adopted.  Pledgors agree that Pledgee need not give more than 10 days prior notice of the time and place of any public sale or of the time after which a private sale or other intended disposition is to take place and that such notice is reasonable notification of such matters.  No notification need be given to Pledgors if they have signed after the occurrence of an

10

Event of Default a statement renouncing or modifying any right to notification of sale or other intended disposition. Any such public sale shall be held at such time or times within ordinary business hours as Pledgee shall fix in the notice of such sale. At any such sale, the Collateral may be sold in one lot as an entirety or in separate parcels. Pledgee shall not be obligated to make any sale pursuant to any such notice. Pledgee may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for such sale, and any such sale may be made at any time or place to which the same may be so adjourned without further notice or publication. In case of any sale of all or any part of the Collateral on credit or for future delivery, the Collateral so sold may be retained by Pledgee until the full selling price is paid by the purchaser thereof, but Pledgee shall not incur any liability in case of the failure of such purchaser to take up and pay for the Collateral so sold, and, in case of any such failure, such Collateral may again be sold pursuant to the provisions hereof.

(c)    **Proceedings.** If an Event of Default shall have occurred, instead of exercising the power of sale provided in Section 9(b) hereof, Pledgee may proceed by a suit or suits at law or in equity to foreclose the pledge and security interest under this Agreement and sell the Collateral or any portion thereof under a judgment or decree of a court or courts of competent jurisdiction.

(d)    **Attorney-in-Fact.** Pledgee, as attorney-in-fact pursuant to Section 7 hereof, may, in the name and stead of Pledgors, make and execute all conveyances, assignments and transfers of the Collateral sold pursuant to Section 9(b) or Section 9(c) hereof, and Pledgors hereby ratify and confirm all that Pledgee, as said attorney-in-fact, shall lawfully do by virtue hereof. Nevertheless, Pledgors shall, if so requested by Pledgee, ratify and confirm any sale or sales by executing and delivering to Pledgee, or to such purchaser or purchasers, all such instruments as may, in the judgment of Pledgee, be advisable for the purpose.

(e)    **Collateral Sold Free and Clear.** The receipt of Pledgee for the purchase money paid at any such sale made by it pursuant to Section 9(b) or 9(c) hereof shall be a sufficient discharge therefor to any purchaser of the Collateral, or any portion thereof, sold as aforesaid; and no such purchaser (or the representatives or assigns of such purchaser), after paying such purchase money and receiving such receipt, shall be bound to see to the application of such purchase money or any part thereof or in any manner whatsoever be answerable for any loss, misapplication or non-application of any such purchase money, or any part thereof, or be bound to inquire as to the authorization, necessity, expediency or regularity of any such sale.

(f)    **No Pledgee Liability.** Pledgee shall not incur any liability as a result of the sale of the Collateral, or any part thereof, at any private sale pursuant to Section 9(b) hereof conducted in a commercially reasonable manner and in accordance with applicable legal requirements. Pledgors hereby waive, to the fullest extent permitted by legal requirements, all claims, damages and demands against Pledgee arising out of the repossession or retention of the Collateral or the sale of the Collateral pursuant to Section 9(b) or Section 9(c) hereof, including, without limitation, any claims against Pledgee arising by reason of the fact that the price at which the Collateral, or any part thereof, may have been sold at a private sale was less than the price that might have been obtained at a public sale or was less than the aggregate amount of the Obligations, even if Pledgee accepts the first offer received that Pledgee in good faith deems to

11

be commercially reasonable under the circumstances and does not offer the Collateral to more than one offeree. To the fullest extent permitted by law, Pledgors shall have the burden of proving that any such sale of the Collateral was conducted in a commercially unreasonable manner.

(g) **Availability of Collateral.** If Pledgee shall demand possession of the Collateral or any part thereof in connection with its rights pursuant to Section 9(b) or Section 9(c) hereof, Pledgors will, at their own expense, forthwith cause such Collateral or any part thereof designated by Pledgee to be assembled and made available and/or delivered to Pledgee at any place reasonably designated by Pledgee.

(h) **No Release.** No sale or other disposition of all or any part of the Collateral by Pledgee pursuant to this Section 9 shall be deemed to relieve the Partnership or Pledgors of their obligations in respect of the Obligations, except to the extent the proceeds thereof are received by Pledgee.

(i) **Voting and other Rights.** If an Event of Default shall have occurred and be continuing, Pledgee (i) may (but need not), upon notice to Pledgors, exercise all voting and other rights of Pledgors as partners of the Partnership and exercise all other rights provided under the Partnership Agreement and (ii) shall receive all permitted distributions, if any, made for the account of Pledgor under the Partnership Agreement.

**Section 10.** **Waiver.** Pledgors agree that they will not at any time insist upon, claim, plead, or take any benefit or advantage of any appraisement, valuation, stay, extension, moratorium, redemption, or similar law now or hereinafter in force in order to prevent, delay, or hinder the enforcement hereof or the absolute sale of any part of the Collateral. Pledgors, for themselves and all who claim through them, so far as they now or hereafter lawfully may do so, hereby waive the benefit of all such laws, and all right to have the Collateral marshaled upon any foreclosure hereof, and agrees that any court having jurisdiction to foreclose this Agreement may order the sale of the Collateral as an entirety. Without limiting the generality of the foregoing, Pledgors hereby: (a) authorize Pledgee, in its sole discretion and without notice to or demand upon Pledgor and without otherwise affecting the obligations of Pledgors hereunder or in respect of the Obligations, from time to time to take and hold other collateral (in addition to the Collateral) for payment of Obligations or any part thereof and to exchange, enforce or release such other collateral or any part thereof and to accept and hold any endorsement or guarantee of payment of the Obligations or any part thereof and to release or substitute any endorser or pledgor or any other person or entity granting security for or in any other way obligated upon the Obligations or any part thereof; and (b) waives and releases any and all right to require Pledgee to collect any of the Obligations from any specific item or items of the Collateral or from any other party liable as Pledgors or in any other manner in respect of any of the Obligations or from any collateral (other than such Collateral) for any of the Obligations.

**Section 11.** **Indemnity.** Pledgors shall indemnify Pledgee from and against any and all claims, losses and liabilities growing out of or resulting from (i) this Agreement (including, without limitation, enforcement of this Agreement), (ii) any refund or adjustment (including any interest thereon) of any amount paid or payable in accordance with the terms hereof to Pledgee, in respect of any Collateral after the occurrence of an Event of Default, or any interest therein,

that may be ordered or otherwise required by any Governmental Authority, (iii) any delay in paying any and all excise, sales or other similar taxes which may be payable or determined to be payable with respect to any of the Collateral, (iv) any delay in complying with any Legal Requirements applicable to any of the Collateral and (v) the transactions contemplated solely by this Agreement, but, in the case of each of clauses (i) through (v), excluding any such claims, losses or liabilities found by a final order of a court of competent jurisdiction to result from Pledgee's gross negligence or willful misconduct.

Section 12.    Amendments; Etc.  No amendment or waiver of any provision of this Agreement or consent to any departure by Pledgors from the terms of this Agreement shall in any event be effective unless the same shall be in writing and signed by Pledgors and Pledgee and then such amendment, waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

Section 13.    Notices.  All notices, demands and other communications hereunder shall be in writing and sent by United States certified or registered mail, postage prepaid, return receipt requested, or by telecopier or private delivery service, addressed to the parties at the addresses specified on page 1 of this Agreement. Each party may change the address to which notices to it are to be sent by written notice given to the other in accordance with this paragraph. All notices shall, when mailed as aforesaid, be effective on the date indicated on the return receipt, and all notices given by other means shall be effective when received.

Section 14.    Continuing Pledge and Security Interest.  This Agreement shall be a continuing one, and all representations, warranties, covenants, undertakings, obligations, consents, waivers and agreements of Pledgors herein shall survive the date of this Agreement and shall continue in full force and effect until final payment in full of all amounts owed under the Loan Documents, at which time, provided there exists no Default or Event of Default under the Loan Documents, Pledgee shall terminate this Agreement and release the security interests granted hereunder. Notwithstanding the foregoing the indemnities contained herein, including the indemnity set forth in Section 11 hereof, shall survive such termination. Promptly after termination, Pledgee shall release this Agreement, return the Assignment to the respective assignors thereunder and make any appropriate filings to reflect such release.

Section 15.    Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO ITS CONFLICTS OF LAWS PRINCIPLES, EXCEPT AS REQUIRED BY MANDATORY PROVISIONS OF LAW AND EXCEPT TO THE EXTENT THAT THE UCC PROVIDES THAT THE VALIDITY OR PERFECTION OF THE SECURITY INTERESTS HEREUNDER, OR REMEDIES HEREUNDER IN RESPECT OF ANY PARTICULAR COLLATERAL ARE GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.

Section 16.    Headings.  Headings used in this Agreement are for convenience of reference only and do not constitute part of this Agreement for any purpose.

**Section 17.    No Waiver; Cumulative Remedies; Integration.** Pledgee shall not by any act (except by a written instrument pursuant to this Section), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Event of Default or in any breach of any of the terms and conditions hereof. No failure to exercise, nor any delay in exercising, on the part of Pledgee, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by Pledgee of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Pledgee would otherwise have on any future occasion. The rights and remedies herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights or remedies provided by law.

**Section 18.    Pledgee's Duties.** The powers conferred on Pledgee hereunder are solely to protect its interest in the Collateral and shall not impose any duty upon it to exercise any such powers. Except as provided in the next sentence, Pledgee shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral. Pledgee's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the UCC or otherwise, shall be to deal with it in the same manner as Pledgee deals with similar securities and property for its own account. Neither Pledgee nor any of its directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgors or otherwise.

**Section 19.    Severability.** Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Where provisions of any law or regulation resulting in such prohibition or unenforceability may be waived, they are hereby waived by Pledgors and Pledgee to the full extent permitted by law so that this Agreement shall be deemed a valid and binding agreement, and the liens and security interests created and continued hereby shall constitute continuing liens on and perfected security interests in the Collateral, in each case enforceable in accordance with its terms.

**Section 20.    Specific Performance.** Pledgor hereby irrevocably waive any defense based on the adequacy of a remedy at law that may be asserted as a bar to the remedy of specific performance in any action brought against Pledgors for specific performance of this Agreement by Pledgee or in respect of all or a substantial part of Pledgors' assets under the bankruptcy or insolvency laws of any jurisdiction to which Pledgors or their respective assets are subject.

**Section 21.    Security Interest Absolute.** All rights of Pledgee hereunder, the liens created and continued hereby and all obligations of Pledgors hereunder shall be absolute and unconditional irrespective of: (a) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any other amendment or waiver of or any consent to any departure from any documents delivered in connection with the transactions

contemplated by the Loan Agreement including, without limitation, the Partnership Agreement; or (b) any exchange, release or non-perfection of any other collateral, or any release or amendment or waiver of or consent to or departure from any guaranty, for all or any of the Obligations.

Section 22.    Private Sales. Pledgors recognize that Pledgee may be unable to effect a public sale of any or all the Collateral, by reason of certain prohibitions contained in any federal or state law governing the issuance or sale of securities and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire the Collateral for their own account for investment and not with a view to the distribution thereof. Pledgors acknowledge and agree that any such private sale may result in prices and other terms less favorable to Pledgee than if such sale were a public sale and agree that such circumstances shall not, in and of themselves, result in a determination that such sale was not made in a commercially reasonable manner. Pledgee shall be under no obligation to delay a sale of any of the Collateral for the period of time necessary to permit the Partnership to register for public sale under any federal or state law governing the issuance or sale of securities, even if the Partnership would agree to do so.

Section 23.    Registration of Pledge. Concurrently with the execution of this Agreement, Pledgors have given to the Partnership written instructions, and has caused the Partnership to deliver, and the Partnership has, delivered to Pledgee a statement confirming that the Partnership has registered on its books the pledge effected by this Agreement.

Section 24.    Reinstatement. This Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time payment, or any part thereof, of any of the Obligations is rescinded or must otherwise be restored or returned by Pledgee upon the insolvency, bankruptcy, dissolution, liquidation or reorganization of Pledgors or the Partnership or upon or as a result of the appointment of a receiver, intervenor or conservator of, or trustee or similar officer for, Pledgors or the Partnership or any substantial part of their property, or otherwise, all as though such payments had not been made.

Section 25.    Powers Coupled with an Interest. All authorizations, agencies and powers herein contained with respect to the Collateral are irrevocable and are coupled with an interest.

Section 26.    Submission to Jurisdiction; Waivers.

(a)    PLEDGORS HEREBY IRREVOCABLY AND UNCONDITIONALLY:

(i)    SUBMIT THEMSELVES AND THEIR RESPECTIVE PROPERTY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT, OR ANY OTHER DOCUMENT EXECUTED IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THE LOAN AGREEMENT, OR FOR RECOGNITION AND ENFORCEMENT OF ANY JUDGMENT IN RESPECT HEREOF OR

15

THEREOF, TO THE NON-EXCLUSIVE GENERAL JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK, THE COURTS OF THE UNITED STATES OF AMERICA FOR THE STATE OF NEW YORK, AND THE APPELLATE COURTS FROM ANY THEREOF;

(ii)    CONSENT THAT ANY SUCH ACTION OR PROCEEDING MAY BE BROUGHT IN SUCH COURTS, AND WAIVES ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH COURT OR THAT SUCH ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT COURT AND AGREE NOT TO PLEAD OR CLAIM THE SAME;

(iii)    AGREE THAT SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING MAY BE EFFECTED BY MAILING A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL (OR ANY SUBSTANTIALLY SIMILAR FORM OF MAIL), POSTAGE PREPAID, TO PLEDGORS AT THE ADDRESSES REFERRED TO ON PAGE 1 OF THIS AGREEMENT; AND

(iv)    AGREE THAT NOTHING HEREIN SHALL AFFECT THE RIGHT TO EFFECT SERVICE OF PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT PLEDGEE'S RIGHT TO SUE IN ANY OTHER JURISDICTION.

(b)    PLEDGORS HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO OR ARISING OUT OF THIS AGREEMENT.

Section 27.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

16

IN WITNESS WHEREOF, Pledgors have caused this Partner Guaranty, Pledge and Security Agreement to be duly executed and delivered as of the date first above written.

SANTA FE POINTE MANAGEMENT, LLC, an
Oklahoma limited liability company

By: _____

Name: Theotis F. Oliphant
Title: Managing member

_____
THEOTIS F. OLIPHANT

Santa Fe/Partner Pledge

**Exhibit D-18, Page 113**

### ACKNOWLEDGMENT AND CONSENT

Santa Fe Pointe, L.P., a limited partnership duly organized and validly existing under the laws of the State of Oklahoma (the "**Partnership**"), the Partnership referred to in the foregoing Partner Guaranty, Pledge and Security Agreement (the "**Pledge**"), hereby acknowledges receipt of a copy thereof and agrees to be bound thereby and to comply with the terms thereof insofar as such terms are applicable to it.

The Partnership also agrees that, if an Event of Default (as defined in the Pledge) shall occur, to pay to Pledgee all amounts then due and payable and thereafter as they become due and payable to the general partner and/or limited partner of the Partnership, until the Pledge is no longer in force. The Partnership and its general partner and limited partner hereby consent to the admission of Pledgee or its designee or successor or assign as general partner and/or a limited partner, if any such party, upon acquiring the Collateral in the form of partnership interests, desires to become a substitute general partner and/or limited partner, and agree to provide further written evidence of their consent at any later time if necessary or appropriate to allow or evidence the admission of a substitute general partner and/or limited partner pursuant to the applicable provisions of the Partnership Agreement. The Partnership further agrees that Pledgee will not have any of the obligations of a general partner and/or a limited partner of the Partnership unless Pledgee affirmatively elects to undertake such obligations by becoming a general partner and/or limited partner in the Partnership in accordance with the terms of the Pledge.

December **20**, 2006

<div style="margin-left: 40%;">

SANTA FE POINTE, L.P., an Oklahoma limited partnership

By:   SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

By: _Theotis F. Oliphant_
Name: Theotis F. Oliphant
Title: Managing Member

</div>

Exhibit D-19, Page 114

## Partner Guaranty, Pledge and Security Agreement

### (Instructions to Partnership)

December 20, 2006

Santa Fe Pointe, L.P.
16416 Oconee Creek Drive
Edmond, Oklahoma 73013

Ladies and Gentlemen:

Santa Fe Pointe Management, LLC, and Theotis F. Oliphant hereby instruct you to register the pledge of their respective partnership interests in the above-captioned partnership in favor of Greystone CDE, LLC, pursuant to the Partner Guaranty, Pledge and Security Agreement dated as of December 20 2006.

Very truly yours,

SANTA FE POINT MANAGEMENT, LLC, an
Oklahoma limited liability company

By: _Theotis F. Oliphant_
Name: _Theotis Oliphant_
Title: _managing Member_

_Theotis F. Oliphant_
THEOTIS F. OLIPHANT

Santa Fe/Partner Pledge

**Partner Guaranty, Pledge and Security Agreement**

**(Confirmation of Pledge)**

December 2**0**, 2006

Greystone CDE, LLC
418 Bell Air Lane
Warrenton, Virginia 20186

This statement of Santa Fe Pointe, L.P. (the "Partnership") is to advise you that a pledge of the following uncertificated security has been registered in the name Greystone CDE, LLC, as follows:

1.     Uncertificated Securities:  The entire general partnership interest of Santa Fe Pointe Management, LLC, in the Partnership and the entire limited partnership interest of Theotis F. Oliphant in the Partnership.

2.     There are no liens or restrictions on hypothecation of the partnership interests of the undersigned partnership and no adverse claims to which such uncertificated securities are or may be subject known to the undersigned partnership.

3.     The pledge was registered on December 2**0** 2006.

THIS STATEMENT IS MERELY A RECORD OF THE RIGHTS OF THE ADDRESSEE AS OF THE TIME OF ITS ISSUANCE, DELIVERY OF THIS STATEMENT, OF ITSELF, CONFERS NO RIGHTS ON THE RECIPIENT.  THIS STATEMENT IS NEITHER A NEGOTIABLE INSTRUMENT NOR A SECURITY.

SANTA FE POINTE, L.P., an Oklahoma limited partnership

By:     SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

By: _Sheth F. Oliphant_
Name: Theotis F. Oliphant
Title: Managing Member

Santa Fe/Partner Pledge

155737v1

## ASSIGNMENT AND ASSUMPTION OF PARTNERSHIP INTEREST

FOR VALUE RECEIVED, SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company ("Assignor"), hereby assigns, transfers and sets over to GREYSTONE CDE, LLC, a Delaware limited liability company ("Assignee"), free and clear of all liens, pledges, claims, assessments, security interests and other encumbrances of any nature, its entire partnership interest in Santa Fe Pointe, L.P., an Oklahoma limited partnership (the "Partnership"), and all right, title and interest of Assignor in and to that certain Agreement of Limited Partnership of Santa Fe Pointe, L.P., dated as of October 16, 2006 (the "Agreement"). Assignee hereby acknowledges receipt of a copy of the Agreement and accepts such assignment and agrees to assume all of the responsibilities and obligations of Assignor under the Agreement.

Dated: _December 20, 2006_

ASSIGNOR:

SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company

By: _Theotis F. Oliphant_
Name: _Theotis F. Oliphant_
Title: _Managing Member_

ASSIGNEE:

GREYSTONE CDE, LLC

By: _____
Name:
Title:

155739v1

## ASSIGNMENT AND ASSUMPTION OF PARTNERSHIP INTEREST

FOR VALUE RECEIVED, THEOTIS F. OLIPHANT ("Assignor"), hereby assigns, transfers and sets over to GREYSTONE CDE, LLC, a Delaware limited liability company ("Assignee"), free and clear of all liens, pledges, claims, assessments, security interests and other encumbrances of any nature, his entire partnership interest in Santa Fe Pointe, L.P., an Oklahoma limited partnership (the "Partnership"), and all right, title and interest of Assignor in and to that certain Agreement of Limited Partnership of Santa Fe Pointe, L.P., dated as of October 16, 2006 (the "Agreement"). Assignee hereby acknowledges receipt of a copy of the Agreement and accepts such assignment and agrees to assume all of the responsibilities and obligations of Assignor under the Agreement.

Dated: December 20, 2006

ASSIGNOR:

THEOTIS F. OLIPHANT

ASSIGNEE:

GREYSTONE CDE, LLC

By: _____
Name:
Title: