EXHIBIT F

#155242v3

# ASSIGNMENT OF PROJECT DOCUMENTS

from

## SANTA FE POINTE, L.P.,

to

## GREYSTONE CDE, LLC

Dated as of December 20, 2006

## ASSIGNMENT OF PROJECT DOCUMENTS

This ASSIGNMENT OF PROJECT DOCUMENTS (as amended, modified or supplemented from time to time, this "**Assignment**"), dated as of December 20, 2006, made by SANTA FE POINTE, L.P., a limited partnership duly organized, validly existing and in good standing under the laws of the State of Oklahoma (together with its permitted successors and assigns, the "**Borrower**"), to GREYSTONE CDE, LLC, a limited liability company duly organized and validly existing under the laws of the State of Delaware (together with its successors and assigns, the "**Assignee**"),

### WITNESSETH:

WHEREAS, the Assignee has made a $500,000.00 loan to the Borrower (the "**Loan**") pursuant to a Bridge Loan Agreement dated as of December 20, 2006 (as amended, modified or supplemented from time to time, the "**Loan Agreement**") to fund the costs of acquiring certain land located at 125 SW 74th Street in Oklahoma City, Oklahoma, and the site improvements located thereon (the "**Project**");

WHEREAS, the Borrower has entered into certain Bond Documents (as defined in the Loan Agreement) pursuant to which, upon the satisfaction of certain conditions, the Borrower has the right to receive disbursement of the proceeds of the Bonds for the purpose of paying a portion of the costs of acquisition and rehabilitation of the Project;

WHEREAS, the Assignee expects to enter into a letter of intent, commitment letter or similar instrument pursuant to which an investor will agree, upon the satisfaction of certain conditions, become a limited partner in Borrower and make certain equity contributions to Borrower (the "**Capital Contribution Documents**");

WHEREAS, the Borrower has entered into an Architect's Agreement dated October 5, 2006 (as the same may be amended, modified or supplemented from time to time, the "**Architect's Agreement**") with Elliott Architects, Inc. (the "**Architect**"), pursuant to which the Architect has produced plans for the rehabilitation of the Project (the "**Plans**");

WHEREAS, the Borrower's predecessor has entered into a Construction Contract dated September 14, 2006 (as the same may be amended, modified or supplemented from time to time, the "**Construction Contract**") with Wattsco L.L.C. (the "**General Contractor**"), which Construction Contract has been assigned to the Borrower;

WHEREAS, in connection with the rehabilitation and operation of the Project, the Borrower has obtained certain approvals and permits (the "**Project Permits**");

WHEREAS, in connection with the operation of the Project, the Borrower uses or plans to use certain marketing materials, including logos, tradenames and trademarks ( the "**Marketing Materials**").

NOW THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, and in order to secure the

Borrower's performance of its obligations to Assignee under the Loan Documents, including payment of all amounts due or to become due to Assignee under the Loan Agreement and the other Loan Documents, and any extensions, renewals, replacements or modifications of any thereof, the Borrower agrees as follows:

    1.    Assignment; Security Interests. The Borrower hereby assigns and transfers to the Assignee, and hereby creates in favor of Assignee a security interest in and to, all of the Borrower's right, title and interest in and to the following: (a) the Bond Documents; (b) the Capital Contribution Documents, (c) the Architect's Agreement; (d) the Construction Contract; (e) the Management Agreement; (f) the Project Permits; (g) the Marketing Materials, including the tradenames and trademarks; (h) any and all other contracts, agreements, plans, licenses, permits or other items, whether now or hereafter executed, granted, received, acquired or issued to or by the Borrower in connection with the rehabilitation, ownership, management, development or operation of the Project; and (i) all proceeds and products thereof, and all accounts, contract rights and general intangibles related to the foregoing (all of the foregoing being hereinafter sometimes referred to collectively as the "**Project Documents**"). This Assignment is given as collateral security only, and so long as no Event of Default has occurred and is continuing, the Borrower shall have and may exercise all rights as owner or holder of the Project Documents which are not inconsistent with the provisions of the Loan Documents.

    2.    Representations and Warranties. The Borrower hereby represents and warrants to Assignee that (a) the Borrower has not assigned, transferred, mortgaged, pledged or otherwise encumbered any of its right, title and interest in, to and under the Project Documents and no part of such right, title and interest is subject to any lien or other encumbrance, except in favor of Assignee; (b) the Bond Documents, the Architect's Agreement and the Construction Contract have not been amended, modified or supplemented; (c) the Borrower has paid all sums required to be paid by it prior to the date hereof under the terms of the Bond Documents, the Architect's Agreement and the Construction Contract; (d) no default exists by the Borrower under the Bond Documents, the Architect's Agreement or the Construction Contract, and (e) no default exists by the Architect under the Architect's Agreement or by the General Contractor under the Construction Contract.

    3.    Affirmative Covenants. The Borrower hereby covenants with the Assignee that the Borrower shall (a) the Borrower shall afford Assignee a reasonable opportunity to review a draft of the Capital Contribution Documents prior to execution and delivery thereof and will provide Assignee with a copy thereof once the same have been executed and delivered; (b) perform and observe all covenants and agreements to be performed and observed by the Borrower under the Bond Documents, the Capital Contribution Documents, the Architect's Agreement, the Construction Contract and the Management Agreement and the Project Permits; (c) enforce, short of termination, the performance and observance of all covenants and agreements to be performed or observed by the contracting parties under the Bond Documents, the Capital Contribution Documents, the Architect's Agreement, the Construction Contract and the Management Agreement; (d) appear in and defend any action or proceeding arising out of or in connection with any of the Project Documents; and (e) promptly give Assignee copies of any notices of default given or received by the Borrower under any of the Project Documents.

4. <u>Negative Covenants</u>. The Borrower hereby covenants with Assignee that the Borrower shall not (a) assign, transfer, mortgage, pledge or otherwise encumber, or permit to accrue or suffer to exist any lien or other encumbrance on or in, any of the right, title and interest of the Borrower in, to and under the Project Documents except in favor of the Assignee; (b) amend or modify any of the terms of the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract or any part of the Plans; (c) terminate the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract or give or join in any material waiver, consent or approval with respect to the Bond Documents, the Capital Contribution Documents, the Construction Contract or the Architect's Agreement; (d) settle or compromise any material claim against the Architect or the General Contractor; (e) waive any default under or material breach of the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract; or (f) take any other action in connection with the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the General Contract or the Project Permits which would materially impair the value of the rights or interests of the Borrower or the Assignee thereunder or therein.

5. <u>Recognition of Assignee</u>. The Borrower hereby irrevocably directs the contracting party to, or the grantor of, any Project Document, whether specifically described herein or otherwise, to the extent not prohibited by such Project Document or applicable law, upon request of the Assignee to recognize and accept the Assignee as the holder of such Project Document for any and all purposes. The Borrower does hereby irrevocably constitute and appoint the Assignee, for so long as this Assignment remains in effect, as its true and lawful attorney, after the occurrence of an Event of Default to demand and enforce compliance with the terms and conditions of the Project Documents and all benefits thereunder.

6. <u>Right of Assignee To Cure Borrower Defaults</u>. If the Borrower shall fail to pay, perform or observe any of its covenants or agreements hereunder, the Assignee may pay, perform or observe the same and collect the cost thereof, which costs shall be secured by the Mortgage.

7. <u>Assignee Not Liable; Indemnification</u>. Anything contained herein or in any of the Project Documents to the contrary notwithstanding; (a) the Borrower shall at all times remain solely liable under the Project Documents to perform all of the obligations of the Borrower thereunder to the same extent as if this Assignment had not been executed; (b) neither this Assignment nor any action or inaction on the part of the Borrower, the Assignee shall release the Borrower from any of its obligations under the Project Documents or constitute an assumption of any such obligation or liability under the Project Documents or otherwise by reason of or arising out of this Assignment, nor shall the Assignee be required or obligated in any manner to make any payment or perform any other obligation of the Borrower under or pursuant to the Project Documents, or to make any inquiry as to the nature or sufficiency of any payment received by the Assignee, or to present or file any claim, or to take any action to collect or enforce the payment of any amounts which have been assigned to the Assignee or to which it may be entitled at any time or times. The Borrower shall and does hereby agree to indemnify the Assignee and hold it harmless from and against any and all liability, loss or damage which it might incur, and from and against any and all claims and demands whatsoever which may be asserted against it, in connection with or with respect to the Project Documents or this Assignment, whether by

reason of any alleged obligation or undertaking on its part to perform or discharge any of the covenants or agreements contained in the Project Documents or otherwise. Should the Assignee incur any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys fees, shall be paid by the Borrower to the Assignee immediately upon demand, together with interest thereon (as set forth in the Loan Agreement) until paid.

8. <u>Default</u>. If an Event of Default shall occur, the Assignee may perform any of the obligations and exercise any of the rights, powers, privileges and remedies of the Borrower, and do any and all acts, matters and other things that the Borrower is entitled to do, under or with respect to the Project Documents, including, without limitation, enforcing the Bond Documents, the Capital Contribution Documents, the Architect's Agreement or the Construction Contract and paying, settling or compromising any existing bills or claims thereunder.

9. <u>Further Assurances</u>. From time to time upon the request of the Assignee, the Borrower shall promptly and duly execute, acknowledge and deliver any and all such further instruments and documents as the Assignee may deem reasonably necessary or desirable to carry out the purpose and intent of this Assignment or to enable Assignee to enforce any of its rights hereunder.

10. <u>Amendments, Waivers, Etc</u>. This Assignment cannot be amended, modified, waived, changed, discharged or terminated except by an instrument in writing signed by the party against whom enforcement of such amendment, modification, waiver, change, discharge or termination is sought.

11. <u>No Implied Waiver; Cumulative Remedies</u>. No course of dealing and no delay or failure of the Assignee in exercising any right, power or privilege under this Assignment or any other Loan Documents shall affect any other or future exercise thereof or exercise of any other right, power or privilege; nor shall any single or partial exercise of any such right, power or privilege or any abandonment or discontinuance of steps to enforce such a right, power or privilege preclude any further exercise thereof or of any other right, power or privilege. The rights and remedies of the Assignee under this Assignment are cumulative and not exclusive of any rights or remedies which the Assignee would otherwise have under the other Loan Documents, at law or in equity.

12. <u>Notices</u>. All notices, requests, demands, directions and other communications under the provisions of this Assignment shall be sent pursuant to and subject to the provisions of the Loan Agreement.

13. <u>Termination; Survival</u>. Provided there has occurred no Default or Event of Default under the Loan Documents, the Assignee shall terminate this Assignment and release the security interests granted hereunder upon final payment in full of all amounts owed under the Loan Agreement. Notwithstanding the foregoing the indemnities contained herein, including the indemnity set forth in Section 7 hereof, shall survive such termination.

14. <u>Severability</u>. If any term or provision of this Assignment or the application thereof to any person or circumstance shall to any extent be invalid or unenforceable, the remainder of this Assignment, or the application of such term or provision to persons or

circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Assignment shall be valid and enforceable to the fullest extent permitted by law.

15. <u>Governing Law</u>. This Assignment shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to its conflicts of laws, principles, except as otherwise required by mandatory provisions of law and except to the extent that the UCC provides that the validity or perfection of security interests hereunder, or remedies hereunder in respect of any particular collateral are governed by the laws of a jurisdiction other than the State of New York.

16. <u>Successors and Assigns</u>. This Assignment shall bind the Borrower and its successors and assigns, and shall inure to the benefit of the Assignee and its successors and assigns.

IN WITNESS WHEREOF, the Borrower has duly executed and delivered this Assignment of Project Documents as of the date first above written.

                                    SANTA FE POINTE, L.P., an Oklahoma limited partnership

                                    By:    SANTA FE POINTE MANAGEMENT, LLC, an Oklahoma limited liability company, its general partner

                                      By: _____
                                      Name: Theotis F. Oliphant
                                      Date: 12/20/2006

155740v1

## ASSIGNMENT AND ASSUMPTION OF
## CONSTRUCTION CONTRACT

FOR VALUE RECEIVED, RANT, LLC ("Assignor") hereby assigns, transfers and sets over to SANTA FE POINTE, L.P., an Oklahoma limited liability company ("Assignee"), without recourse or warranty of any kind whatsoever, all right, title and interest of Assignor in and to that certain Standard Form of Agreement Between Owner and Contractor, dated as of September 14, 2006, between Assignor, as the Owner, and Wattsco L.L.C., as the Contractor, relating to Santa Fe Point Apartments (the "Agreement"). Assignee hereby acknowledges receipt of a copy of the Agreement and accepts such assignment and agrees to assume all of the responsibilities and obligations of Assignor under the Agreement.

Dated: December 19, 2006

RANT, LLC

By: *[signature]*
Name: Theotis F. Oliphant
Title: Managing Member


SANTA FE POINTE, L.P., an Oklahoma limited partnership

By:  SANTA FE POINTE
     MANAGEMENT, LLC, an
     Oklahoma limited liability company,
     its general partner

     By: *[signature]*
     Name: Theotis F. Oliphant
     Title: Managing Member

# AIA Document A101

## Standard Form of Agreement Between Owner and Contractor
### where the basis of payment is a STIPULATED SUM

AGREEMENT made as of the 14th day of September
in the year of 2006
*(In words, indicate day, month and year)* September, Fourteen, Two Thousand and Six

BETWEEN the Owner:
*(Name, address and other information)*
Rant, L.L.C.
113 Carmel Avenue
El Cerrito, Ca.
94530
Theo Oliphant, Managing Member

and the Contractor:
*(Name, address and other information)*
Wattsco L.L.C.
1820 East Cavanaugh
El Reno, Oklahoma
73036
Danny Watts, Managing Member

The Project is:
*(Name and location)*
Santa Fe Point Apartments
125 SW 74th Street
Oklahoma City, Oklahoma

The Architect is:
*(Name, address and other information)*
Larry Blackledge & Associates

The Owner and Contractor agree as follows.

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA. Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

SEP 15,2006 13:18  Watts Danny G

Page 1

### ARTICLE 1  THE CONTRACT DOCUMENTS
The Contract Documents consist of the Agreement, Conditions of the Contract (General, Supplementary and other Conditions), Drawings, Specifications, Addenda issued prior to execution of this Agreement, other documents listed in this Agreement and Modifications issued after execution of this Agreement; these form the Contract, and are as fully a part of the Contract as if attached to this Agreement or repeated herein. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. An enumeration of the Contract Documents, other than Modifications, appears in Article 8.

### ARTICLE 2  THE WORK OF THIS CONTRACT
The Contractor shall fully execute the Work described in the Contract Documents, except to the extent specifically indicated in the Contract Documents to be the responsibility of others.

### ARTICLE 3  DATE OF COMMENCEMENT AND SUBSTANTIAL COMPLETION
§ 3.1 The date of commencement of the Work shall be the date of this Agreement unless a different date is stated below or provision is made for the date to be fixed in a notice to proceed issued by the Owner.
*(Insert the date of commencement if it differs from the date of this Agreement or, if applicable, state that the date will be fixed in a notice to proceed.)*
Commencement Date will begin within 10 days of "Notice to Proceed" issuance

If, prior to the commencement of the Work, the Owner requires time to file mortgages, mechanic's liens and other security interests, the Owner's time requirement shall be as follows:
N/A

§ 3.2 The Contract Time shall be measured from the date of commencement.

§ 3.3 The Contractor shall achieve Substantial Completion of the entire Work not later than       300       days from the date of commencement, or as follows:
*(Insert number of calendar days. Alternatively, a calendar date may be used when coordinated with the date of commencement. Unless stated elsewhere in the Contract Documents, insert any requirements for earlier Substantial Completion of certain portions of the Work.)*

, subject to adjustments of this Contract Time as provided in the Contract Documents.
*(Insert provisions, if any, for liquidated damages relating to failure to complete on time or for bonus payments for early completion of the Work.)*
One Hundred Dollars ($100.00) per day will be charged for failure to complete on time and the same will apply to complete early

### ARTICLE 4  CONTRACT SUM
§ 4.1 The Owner shall pay the Contractor the Contract Sum in current funds for the Contractor's performance of the Contract. The Contract Sum shall be     Three Million Five Hundred Seventy Five Thousand and Fourty     Dollars
($    3,575,040.00    ), subject to additions and deductions as provided in the Contract Documents.

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA.

§ 4.2 The Contract Sum is based upon the following alternates, if any, which are described in the Contract Documents and are hereby accepted by the Owner:
*(State the numbers or other identification of accepted alternatives. If decisions on other alternatives are to be made by the Owner subsequent to the execution of this Agreement, attach a schedule of such other alternatives showing the amount for each, and the date when that amount expires)*

§ 4.3 Unit prices, if any, are as follows:

ARTICLE 5 PAYMENTS
§ 5.2 PROGRESS PAYMENTS
§ 5.1.1 Based upon Applications for Payment submitted to the Architect by the Contractor and Certificates for Payment issued by the Architect, the Owner shall make progress payments on account of the Contract Sum to the Contractor as provided below and elsewhere in the Contract Documents.

§ 5.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month, or as follows:
Twice per Month, or as follows:

§ 5.1.3 Provided that an Application for Payment is received by the Architect not later than the    1st and 15th day of month, the Owner shall make payment to the Contractor not later than the    15th and 30th    day of the  same   month. If an application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than   Fifteen   ( 15 ) days after the Architect receives the Application for Payment.

§ 5.1.4 Each Application for Payment shall be based on the most recent schedule of values submitted by the Contractor in accordance with the Contract Documents. The Schedule of values shall allocate the entire Contract Sum among the various portions of the Work. The schedule of values shall be prepared in such form and supported by such data to substantiate its accuracy as the Architect may require. This schedule, unless objected to by the Architect, shall be used as a basis for reviewing the Contractor's Applications for Payment.

§ 5.1.5 Applications for Payment shall indicate the percentage of completion of each portion of the Work as of the end of the period covered by the Application for Payment.

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA. Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

§ 5.1.6 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1 Take that portion of the Contract Sum properly allocable to completed Work as determined by multiplying the percentage completion of each portion of the Work by the share of the Contract Sum allocated to that portion of the Work in the schedule of values, less retainage of percent (  5  %). Pending final determination of cost to the Owner of changes in the Work, amounts not in dispute shall be included as provided in Section 7.3.8 of AIA Document A201-1997;

.2 Add that portion of the Contract Sum properly allocable to materials and equipment delivered and suitably stored at the site for subsequent incorporation in the completed construction (or, if approved in advance by the Owner, suitably stored off the site at a location agreed upon in writing), less retainage of percent (  0  %) percent;

.3 Subtract the aggregate of previous payments made by the Owner; and

.4 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of AIA Document A201-1997.

§ 5.1.7 The progress payment amount determined in accordance with Section 5.1.6 shall be further modified under the following circumstances:

.1 add, upon Substantial Completion of the Work, a sum sufficient to increase the total payments to the full amount of the Contract Sum, less such amounts as the Architect shall determine for incomplete Work, retainage applicable to such work and unsettled claims; and
(Section 9.8.5 of AIA Document A201-1997 requires release of applicable retainage upon Substantial Completion of Work with consent of surety, if any.)

.2 add, if final completion of Work is thereafter materially delayed through no fault of the Contractor, any additional amounts payable in accordance with Section 9.10.3 of AIA Document A201-1997.

§ 5.1.8 Reduction or limitation of retainage, if any, shall be as follows:
(If it is intended, prior to Substantial Completion of the entire Work, to reduce or limit the retainage resulting from the percentages inserted in Sections 5.1.6.1 and 5.1.6.2 above, and this is not explained elsewhere in the Contract Documents, insert here provisions for such reduction or limitation.)
Upon substantial completion retainage shall be reduced to 0%

§ 5.1.9 Except with the Owner's prior approval, the Contractor shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

### § 5.2 FINAL PAYMENT

§ 5.2.1 Final payment, constituting the entire unpaid balance of the Contract Sum, shall be made by the Owner to the Contractor when:

.1 the Contractor has fully performed the Contract except for the Contract's responsibility to correct Work as provided in section 12.2.2 of AIA Document A201-1997, and to satisfy other requirements, if any, which extend beyond final payment; and

.2 a final Certificate for Payment has been issued by the Architect.

§ 5.2.2 The Owner's final payment to the Contractor shall be made no later than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

### ARTICLE 6  TERMINATION OR SUSPENSION

§ 6.1 The Contract may be terminated by the Owner or the Contractor as provided in Article 14 of AIA Document A201-1997.

§ 6.2 The Work may be suspended by the Owner as provided in Article 14 of AIA Document A201-1997.

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA. Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

**ARTICLE 7 MISCELLANEOUS PROVISIONS**

§ 7.1 Where reference is made in this Agreement to a provision of AIA Document A201-1997 or another Contract Documents, the reference refers to that provision as amended or supplemented by other provisions of the Contract Documents.

§ 7.2 Payments due and unpaid under the Contract shall bear interest from the date payment is due at the rate stated below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located. *(Insert rate of interest agreed upon, if any.)*
10%

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

§7.3 The Owner's representative is:
*(Name, address and other information)*
Theo Oliphant, Managing Member
113 Carmel Avenue
El Cerrito, Ca 94530

§7.4 The Contractor's representative is:
*(Name, address and other information)*
Danny Watts, Managing Member
1820 E. Cavanaugh
El Reno, Oklahoma 73036

§ 7.5 Neither the Owner's nor the Contractor's representative shall be changed without ten days written notice to the other party.

§ 7.6 Other provisions:

AIA A101, Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. is not affiliated with this or this organization and makes no claims to AIA. Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

SEP 15,2006 13:20   Watts Danny G                                                                                    Page 5

**ARTICLE 8 ENUMERATION OF CONTRACT DOCUMENTS**

§ 8.1 The Contract Documents, except for Modifications issued after execution of this AGREEMENT, ARE ENUMERATED AS follows:

§ 8.1.1 The Agreement is this executed 1997 edition of the Standard Form of AGREEMENT Between Owner and Contractor, AIA Document A101-1997.

§ 8.1.2 The General Conditions are the 1997 edition of the General Conditions of the Contract for Construction, AIA Document A201-1997.

§ 8.1.3 The Supplementary and other Conditions of the Contract are those contained in the Project manual dated September 14th 2006, and are as follows.

| Document | Title | Pages |
|---|---|---|
| Construction Budget | Construction Budget | 1 |

§ 8.1.4 The Specifications are those contained in the Project Manual dated as in Section 8.1.3, and are as follows:
*(Either list the Specifications here or ref to an exhibit attached to this Agreement.)*

| Document | Title | Pages |
|---|---|---|

§ 8.1.5 The Drawings are as follows, and are dated below;   unless a different date is shown
*(Either list the Drawings here or refer to an exhibit attached to this Agreement.)*

| Document | Title | Date |
|---|---|---|

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com. Is not affiliated with this or this organization and makes no claims to AIA.

SEP 15,2006 13:20 Watts Danny G                               Page 6

09/15/2001 SAT 13:01 FAX                                                                    ☒ 007/009

§ 8.1.6 The Addenda, if any, are as follows:

Number                          Date                          Pages

Portions of Addenda relating to bidding requirements are not part of the Contract Documents unless the bidding requirements are also enumerated in this Article 8.

§ 8.1.7 Other documents, if any, forming part of the Contract Documents are as follows:
(List here any additional documents that are intended to form part of the Contract Documents. AIA Document A201-1997 provides that bidding requirements such as advertisement or invitation to bid, Instructions to Bidders, sample forms and the Contractor's bid are not part of the Contract Documents unless enumerated in this Agreement. They should be listed here only if intended to be part of the Contract Documents.)

This Agreement is entered into as of the day and year first written above and is executed in at least three original copies, of which one is to be delivered to the Contractor, one to the Architect for use in the administration of the Contract, and the remainder to the Owner.

RANT, LLC
_____              _____
OWNER (Signature)                            CONTRACTOR (Signature)

Theo Oliphant, Managing Member               Danny Watts, Managing Member
(Printed name and title)                     (Printed name and title)

AIA A101. Copyright 2006 by Computerized-aia-g702-g703-payment-software.com. AIA is a Registered Trademark. Computerized-aia-g702-g703-payment-software.com is not affiliated with this or this organization and makes no claims to AIA. Computerized-aia-g702-g703-payment-software.com is designed to work in compliance with AIA Forms and Standards.

SEP 15, 2006  12:50   Watts Danny G

Page 4

SEP 15, 2006  13:13   GIBBS AND OLIPH           5108348886

Page 1